Morris J. Peavey, Jr.
C/O Eric Peavey
12315 NW 23rd Avenue
Miami, Florida 33167


July 18, 2008


317/vsc/appeals/man
CSS 23 448 613


Department of Veterans Affairs
St Petersburg Regional Office
PO Box 1437
St. Petersburg FL   33731

Attention BC Gibbard:

The attached affidavit will respond to your letter dated May 20, 2008 with the attached
rating decision dated 4/22/08.    It will respond to various discrepancies and is a
supplement to my VA Form 9 for appeal, which was submitted to you on June 9, 2008
with the attached NOD dated 8/12/07.

Respectfully submitted:

Morris J. Peavey, Jr.
Enc
CC  Secretary of Veterans Affairs.

Morris J. Peavey, JR.
TO VARO 317

Re: Late Rating Decision dated 4/22/08
317 Appeals and appellate issues
C-23-448-613

AFFIDAVIT:

I am Morris J. Peavey, Jr. the veteran in the appellate matters herein. These facts are provided to VBA as being material to the most recent COWC which I filed in response to the SSOC which I filed before receiving a copy of the rating decision. There statements included with the SSOC which are procedural correct and attempt to reassign the date of claim and diminish the issues related to proper scheduler rates of disability, claim date for unemployability; and other actionable claims.

I.       The Decision and rating dated 4/22/08 was submitted approximately one month after the SSOC dated April 22, 2008. Adjudicative actions noted in SSOC dated 4/22/08 show:  4/16/07 Claim considered based on all the evidence of record; 4/19/07 Claimant notified of decision; 8/15/07 Notice of Disagreement received.   See attachment exhibit 1 herein.

        a)    VARO Decision and rating herein noted 4/19/07 was responded to in my NOD dated May 3, 2007 and the more detailed supplemental NOD dated August 12, 2007. I have responded to the SSOC dated April 22, 2008 prior to receiving the rating decision dated April 22, 2008. My response materially provides the Department of Veterans Affairs with my legal position on all rating decisions arising out of the claims for increased disabilities and for unemployability which VA SOC dated 6/29/05 indicates was filed 4/10/03. The rating decision is dated 4/22/08 and received after May 20, 2008 is based on the same set of facts used in rating decision dated 4/19/07.

        b)    Rating decisions dated April 22, 2008 provided by VARO 317 in this matter ignore the facts of the claim and arbitrarily change the Date of "Claim received" from 4/10/03 contained in SOC 6/29/05 to "Claim received" 11-28-2005. VARO 317 note "Claim received" 11-28-05 when this actually was additional material evidence submitted after SOC dated 6/29/05 was submitted and before the records were certified and submitted to BVA.

        c)    The Evidence in Rating decision dated 4/22/08 notes "Treatment records from Columbia [sic] Hospital for admission of September 16, 2005 to September 27, 2005" ; "Treatment records from University Hospital of New Jersey for admission of August 22, 2006 to August 27, 2006." This is evidence showing VARO 317 noted additional material evidence submitted after SOC dated 6/29/05. VARO 317 recorded information in its files showing that SOC dated 6/29/05 was submitted to the US District Court in 1:05CV-0819 Peavey V. Gonzalez et al as proof that there was an active VA claim. I was sent information showing VARO received a timely VA Form 9 and COWC in the matter and it was pended [171] effective 9/21/05. These facts show that VARO 317 was clearly aware that "Claim received" was not 11-28-05.

See § 19.31 (b) (1) When a SOC has been furnished the agency of original jurisdiction will furnish the appellant and his or her representative, if any, a Supplemental Statement of the Case if the agency of original jurisdiction receives additional pertinent evidence

after a Statement of Case or the most recent Statement of Case has been issued and before the appeal is certified to the Board of Veteran's Appeals and the appellate record is transferred to the Board.

II.      Rating Decision dated 4/22/08 received after 5/20/08 notes as evidence " Rating decision of September 26, 1994, December 4, 1995, March 20, 2004 and Statement of case dated September 30, 2005.

     a)      I have requested copies of rating decisions dated September 26, 1994 and September 30, 2005. I have also requested information from VA records supporting VA allegations in SSOC 4/22/08 "Social Security Administration records show that you claimed that you were unable to work due to your hypertension and heart disease. It is noted that you were granted social security disability benefits due to your disabilities as of September 1994. This request was made in NOD 5/3/07 and repeated in supplemental NOD dated 8/12/07. I have not received copies of this information listed as evidence by VA.

     b) Rating decision dated 12-4-1995 contain CUES and COWC 317 243C and 317 Appeals were present for BVA review: VA Decision dated December 4, 1995 rated my service connected disabilities at 60% 7007 Hypertensive Cardiovascular disease and 10% 5295 lower back strain.    The 12-4-1995 rating did not evaluate the claim for unemployability. The records will show that the 60% rating on one disability qualified to apply for rating on unemployability which was refused.    The CUE relate to medical issues which the VA suppressed or ignored and medical facts which were misrepresented in the VA examinations and the material facts presented to VA by certified medical doctors which VA provided minimal weight.    DR. Wilson diagnosed Hypertensive cardiovascular disease with cardio-myeopathy; Dr. Lavin diagnosis of Hypertensive cardio-myeopathy with symptoms of CHF with enlargement of heart and liver.  VA 1993 X-ray showed enlarged heart and examinations show symptoms of CHF [i.e. edema in lower extremities and $CO_2$ 33] VA omit history of heart disease, kidney dysfunction from VA Hosp 1968 and VAMC 1993.

     317 243C COWC provided the VA with CUE contained in its 12-4-1995 rating decision. These CUE disregard the VA historical records which show an initial rating based upon VA 9/18/67 examination finding 7007 30% and 5295 10% upon release from the US Army. These findings were based upon VA establishing facts while ignoring material evidence from the same page in the US Army records. Diastolic pressure of 120 was on the same page with pressure of diastolic 90 and 100 and the VA chose the two lesser pressure readings and did not document the higher pressure. VA ignored the more material pressure of 112 while the US Army records ignored the injury and trauma from my being struck as a pedestrian. The CUE shows that VA intentionally ignored the medical facts following the US Army attempt to trivialize my injuries.

     The US Army records provided three doctors medical opinions. Dr. Wise the primary doctor suggested cardio-renal injury with possible hydronephrosis after I suffered blunt force trauma to my lower torso. Dr. Lafallet indicates fit for full duty "as far as back is concerned. Dr. Jackson diagnosis indicate essential hypertension and dismiss injury due to trauma and every lab indication related to that diagnosis; he notes heart murmur, bruit in abdomen, double collecting on IVP but rules out each abnormal finding to stick to his essential hypertension. Dr. Jackson labels the IVP normal and the VA followed his flawed diagnosis. The VA first diagnose Hypertensive heart disease with LVH in 1967 and VA records show hospitalization in VA Brooklyn Hospital 1/26/68 through 3/4/68 due to Chest pains and SOB cause by employment as a library

clerk. It is CUE to indicate that I was fit for more than sedentary employment when discharged from the US Army. The facts indicate that my medical condition caused me to be discharged from the US Military and a job working as a library clerk caused hospitalization six months after discharge. The BVA 70-501-16 diagnosed the medical condition as GR. II atherosclerosis 7007 100% during hospitalization and 7007 30% with 5295 10% one month after release from Hospital.

IVP taken during the period of VA hospitalization indicate more serious injury than the double collecting system which Dr. Jackson noted as normal. The VA found hydronephrosis effect in both kidneys; double pelvis with double collecting system; possible aberrant vessel on right; narrowing of pelvo-uterthal junction, urine loaded with WBC, protein and RBC in urine and a persistent non social discharge from my penis. These conditions could be traced back to the US Army and VA CUE to deny the association of injury to my KUB with the US Military service. These medical findings provide more support to Dr. Wise suggested diagnosis of Cardio-renal disease and point directly to trauma due to injures to the lower torso. The US Army accepted the flawed medical opinion of Dr. Lafallet not withstanding the obvious prejudice represented in his methods of examination. The VA continued to provide Dr. Jackson flawed diagnosis which indicated that the IVP was normal. VA's IVP indicate gross abnormalities, yet continued Dr. Jackson's misrepresentations and medical mis-diagnosis while suppressing the more current IVP. A copy of a kidney with double pelvis and collecting system is illustrated as Exhibit 2 herein.

317 243C argue CUE shows VA knowingly and intentionally suppressed facts related to KUB injuries to cover-up US Army malpractice. VA arbitrary actions show a continual effort to misrepresent the historical etiology of the claim. VA set up a brill in 1993 and when it could not successfully dispose of the history of this claim the 12-4-95 decision and rating misstated the facts by excluding the 1968 and 1993 VA treatment records. VA has since denied the medical records which indicate VA medical examinations show VA was aware of various complaints and objective findings of kidney dysfunctions: 1968 VA Hosp records show protein in urine, penile discharge and dysfunction of right kidney; 1972 VA records show complaints of non-social discharge from penis and examination support the discharge; 1995 VA examination show protein in urine; 2005 Columbus hospital show multifactor dysfunction of kidney; 2006 University Hospital examinations show casts, and protein and RBC in urine.

VA SOC dated 6/29/05 indicates "you claimed service connection for a kidney condition on February 18, 1971, which you indicated was found while you were hospitalized at VA in Brooklyn in 1968. Review of those records shows no permanent or residual Kidney condition was found. You were notified of denial of your claim in our letter of June 23, 1971. You again claimed service connection for kidney condition in September 1994 and the rating decision of December 4, 1995, determined that no kidney condition was incurred in or aggravated by Military service or manifested to a compensable degree within one year of separation from military service."

The VA records show that another claim for increase for KUB injuries was made 9/25/72 which present rating decision does not recount in its statement of facts. VA examination was completed on this date and the record will show that the claim contained information that I was being treated for the non-social discharge from the KUB from 1968 through that period of VA examination. VA had suppressed all information showing the kidney dysfunction which appeared in VA records. The VA Dr. Paulson noted the abnormal IVP in his doctor's progress report but did not mention the

abnormality in his summary. The 12-4-95 VA rating decision is a subject of fraud in 317
243C. The 12-4-95 rating decision contains 9/25/72 as the last VA examination. This is
false because it excluded 1993 VA exam which showed active symptoms of CHF. NOD
to VA 6/23/04, 5/3/07, and 8/12/07 have provided my position on these matters. I have
also provided signed and timely executed VA form 9 and COWC for appeal to the BVA
on these specific issues.

III.    The matter relating to VA procedural evaluation of this claim and the VA
suppression of material US Army and VA documents have been submitted to the US
District Court for the District of Columbia 1:05CV 0819 RWR Peavey V. Alberto
Gonzalez et al.

        The VA submitted copies of SOC dated 6/29/05 to the US District Court 1:05CV
0819 Peavey V. Alberto Gonzalez indicating that I had an active claim based upon claims
filed 4/10/03. It should be noted that during that time before the Court VA alleged that it
had provided all FOIA request. VA alleged that there were no records of my being in the
VA Brooklyn Hospital system of records [1968]. VA alleged that all IVP were normal.
These allegations were categorically false. To day VA allege in its 4/22/08 submissions
that it address claims filed 11/28/05 and base its findings upon the claim as an original
claim for disability and attempt to disregard the earlier rating decisions and CUE claims
with them. VA notes that their new 5/20/08 rating decision dispenses with all appeal able
issues. This is a procedural violation of 38 Title § 511 requiring VARO rating decisions
to be final when based upon a specific set of facts. I have responded to these violations
of the procedural process in my execution of the VA Form 9 and COWC effectively June
9, 2008. Please accept this addendum to those documents.

        The outstanding appeal able issues in this matter are the CUE matters related to
317 243C which relate to KUB injuries which were suppressed. The VA Hospital 1968
report deliberately concealed facts showing injury, abnormality, and disease of the KUB.
These injuries, abnormalities, and disease caused persistent discharge from my penis
from the time of my suffering trauma due to my injuries and assault while in the US
Army. The IVP findings by the VA in 1968 were within six months of being discharged
from the US Military. The VA IVP [1968] findings indicate more than the US Army
report of only a double collecting system. The issue of the abnormalities of the kidney
showing double pelvis and collecting system have not been diagnosed as congenital or
resulting from injury and untreated disease of the area. The difference between the US
Army [1966] and VA [1968] IVP show a degenerative pathology. No further test
indicates whether this is due to trauma. Neither the US Army nor the VA completed
more definitive examinations to determine the exact origin or causes of the abnormality.
Both followed the pattern of denying the abnormality and allowing me to struggle to
acquire information which should have been available to me just upon request be cause
these were records resulting from what was suppose to be a fair and objective
examination directed toward my treatment and care. A copy of what a double pelvis with
double collecting systems is provided from similar pathological examination. See
document attached hereto as Exhibit 2.

IV.     Rating Decision dated 4/22/08 note evidence of VA Form 21-8940 dated April 7,
2003 "Application for increased compensation **based on unemployability**." This
information is contained in the SOC dated 6/29/05 showing VA receipt of form 21-8940
on 4/10/03. This evidence is not included in the SSOC dated 4/22/08.

        a)    SSOC dated 4/22/08 rates unemployability at 100% effective 11/28/05
erroneously indicating that 11/28/05 is the date of claim.

4

     b)     Rating Decision dated 4/22/08 provide the reason for decision "We have assigned an effective date of November 28, 2005, the date we received your claim, as you have evidence shows that your condition have worsened and you have continually pursued your claim.

     This is CUE because the SOC dated 6/29/05 shows the dates VA received the claim for unemployability as 4/10/03; VA note as a reason "You are service connected evaluated at 60 percent, hypertensive heart disease evaluated at 30 percent, and lumbosacral strain evaluated at 10 percent. You have a 4 year college degree. You last worked on July 12, 2001 in accounting at a restaurant. Records also show that you worked in construction from May to June 2001. These are appellate issues because VA continues to use Shanty Restaurant as substantial gainful employment when VA indicates that it received a statement from Shanty Restaurant which shows casual per diem assignment. The construction work for Kurt Johnson was also casual work aggravated the groin pulls that developed into the hydrocele.

V.     SOC Dated 6/29/05 indicated that based upon these facts that unemployability was not found. VA does not indicate what facts show me substantial or gainfully employed on the SSA report which they acknowledge receiving. 8/12/07 NOD supplemental addressed this matter at paragraph 36 and 37 indicating that my disability compensation show at least 60% for one disability 7007. CUE issues in the claim would indicate 100% scheduler disability to include 60% 7007; 60% 7101; 10 5279 and during various periods 30%7509 indicating a scheduler rating of 100%. Regarding the fact finders allegations of employment the records shows that I have not been able to maintain anything more than casual employment since 1990. VA has been provided the SSA records regarding my long term employment.

     VA SOC dated 6/29/05 argued I was employed while saying I was disabled due to unemployability. VA also indicated that I missed C&P appointments scheduled for March 25, 2004. The 6/23/04 NOD and 8/28/05 COWC addressed these arguments. VA admit receiving Shanty Restaurant statement of employment showing I was not substantially or gainfully employed by Shanty's for any period of time. The record also shows that the work for Kurt Johnson was terminated because it was beyond my physical ability and I believed I aggravated a groin pull doing finish carpentry because VA had terminated my disability income under the pretext that I was dead. The records also show that I requested reschedule C&P examination for April 17 and 19 because of problems which I had with VARO 317 and MIA Medical Center. I had provided VA with a timely notification and I was out of state and was treated by VA EO emergency for chest pains and shortness of breath on April 19, 2004. VA admits to evidence that I was treated by EO VA April 19, 2004. The SOC dated 6/29/05 evidence show treatment by EO VA April 19, 2004 and May 3, 2004. Those same records indicate that I was homeless and referred to various homeless shelters by VA EO during those examinations.

     VA SSOC dated 4/22/08 omit the treatment by VA EO April 19, 2004 which show I provided a reasonable excuse for my missing a schedule C&P appointment and VA continue using the missing appointment as a cause for denial of benefits. These facts show that I was in the state of New Jersey in a homeless situation and the schedule appoints were in Florida. The VA indicates that the appointment was scheduled for March 25, 2004 and this was false. The VA eliminated the date [April 19, 2004] from the SSOC dated 4/22/08 and notes only May 3, 2004 indicating that I was being treated for high blood pressure showing a callous disregard for the truth and a deliberate and intentional effort of suppress and mis-diagnose my medical condition. The very records

which VA quotes show treatment of chest pains and SOB with nitrates and diuretics. VA does not conclude these facts in its statement showing only complaint of hypertension.

VA issued its rating decision showing zero for 7007 not withstanding that the rating in 1995 by VA was 60%; After approx 13 years rating 7007, VA admit Columbus hospital showing left ventricle dysfunction and 40% LVEH, sepsis, pneumonia, and dysfunctional kidney September 16, 2005. VA admit University hospital showing ACS with CHF and bradycardia as low as 33 and persistently in the low range the entire period of hospitalization. VA misrepresents the University hospital records, treatment, and my decisions to sign myself out of the hospital. These two periods of hospitalization were within a year of each other while the SOC dated 6/29/05 and the timely filed COWC was pending when they occurred. VA discontinued all actions and appeals and provided false information about the status of the various actions including the action which it had presented to the US District Court. I had provided information to the Secretary of VA about the abuses of process existing in 317 VARO and MIA VAMC.

VA has provided various erroneous statements about the diagnosis of University Hospital August 21, 2006 admissions. VA indicates that I refused an echocardiogram, and that I refused various medical treatments or thallium stress test when the record clearly shows ACS with bradycardia of 33bpm. I have requested copies of these records from the VA administrators file showing these medical facts. VA further erroneously indicates that I was awarded Social Security Disability Benefits effectively 1994 which is false. I have also requested copies of these records from VARO 317 administrator's files and to date have not received these records.

VI.    Rating decision dated 4/22/08 does not provide any notations about the claim for the hydrocele however, the SSOC dated 4/22/08 deny the hydrocele indicating that the IVP in US Army "but no renal condition associated with a back injury was found and no residuals of that procedure are shown." VA further indicates "A double upper collecting system in the left urether was noted but this was seen as an anomaly and no problem was associated with the finding."

a)    There are various diagnosis related to untreated injures and the degenerative pathologies resulting from the injuries. The area of my lower torso was clearly injured and the US Army has provided records to the VA. US Army and VA have acted to minimize my injuries and the progress of diseases resulting from those injuries. The actions of both government agencies have been in concert and extreme to the point of being absurd. Today the VA argues that hydrocele and or hernia is connected to the injuries which I suffer because they are too remote. This is clearly just a statement and not a fact. VA further argues that there is no residual injury to my kidney. The facts are that I suffered injuries which were untreated for months while I was illegally retained in the US Army. I received more traumas to my groin by being kicked in the groin by soldiers directed by NCO. Untreated injuries create various types of abnormalities, infections, and degenerative diseases. I have made numerous complaints about pains to the groin and right flank over the years to US Army and the VA after the injuries. VA has documented and diagnosed these injuries the latest evidence is the grotesque swelling in my pelvis area and scrotum. These swellings have been diagnosed as a hydrocele and hernia. The cause is not established. See copy of illustration of the injury exhibit -3.

b)    VA can not prove that the present injuries to my scrotum and groin are not caused by deteriorations and weaknesses or malignancies resulting from untreated medical conditions directly caused by the injuries which I suffered from the accident. This more probable cause considers the differences in what the US Army IVP [1966]

6

indicates and what the VA IVP [1968] indicates. The VA IVP indicates a progressive degeneration beyond those taken by the US Army sixteen months earlier. Bruits in abdomen indicate various abnormalities in the area which would more probable than not indicate wall weaknesses which present hernia and hydrocele. The VA is liable pursuant to 38 Title §1511 due to its neglect in providing proper medical examination and treatment for injuries shown in its IVP and because VA refused proper compensation during March 1, 2001 through July 26, 2001 while erroneously alleging I was dead.

     c) 4/22/08 SSOC reason for denial of hydrocele misrepresent the records by indicating that IVP taken at VA Hospital was normal with no evidence of kidney disease found. The SSOC erroneously account "You had a penile discharge...there is no other evidence of a penile discharge at any time since then." VA goes further with its CUE because facts in VA records show that the IVP taken by VA showed more than the double collecting system noted I US Army records. VA suppressed the more material injures or abnormalities shown in the VA IVP; the discharge lasted from the time of the injury through 1972; additional test show protein (albumin) in urine 1968-1972 verified by VA examinations; Protein in urine 1995 verified by VA MIA; 2005 kidney dysfunction by Columbus hospital; 2005 Cast and protein in urine by University Hospital.

VII. 4/22/08 rating decision evaluation for Hypertensive Cardio Vascular disease note "a left ventricle ejection factor of 40%" during hospitalization 9/16/05 at Columbia Hospital; University Hospital of New Jersey August 22, 2006 noting "you refused cardiac testing and remained asymptomatic at discharge on August 25, 2006; VA examination March 7, 2007 "Echocardiogram done March 6, 2007, noted left ventricle ejection factor of 65% with evidence of left ventricle hypertrophy---diastolic dysfunction and edema in the lower extremities. These findings make VA rating of zero 4/17/07 and 30% effective 11/28/05 because VA cite LEVH of 40% during hospitalization 9/16/05 through 9/27/05 CUE. They are CUE because VA admits LVEH between 30% and 50% which require 60% for hypertensive heart disease. VA does not show improvement in the heart from the 12/4/1995 rating.

     a) A rating of 30% based upon the above facts which the VA cite is CUE because the notice just below the VA findings indicate that 60% is warranted where there is a more than one episode of acute congestive heart failure in the past year. The fact finder has noted three with hospitalization for two within a year. The finding also indicte that 60% is warranted where LVEF is between 30% and 50%. The fact finder indicate a factor of 40% 2005 with continuing left ventricle dysfunction and symptoms of CHF 2007. The fact finder indicates that symptoms of chronic CHF which is rated at 100% is a minimal finding in my case in rating decision dated 4/19/07.

     b) Rating Decision dated 4/22/08 indicate that I refused cardiac testing while in University Hospital of NJ. The fact finder indicated that I remained asymptomatic upon release against medical advice. 4/19/07 indicated that the fact finder noted that being asymptomatic indicated zero % for CHF. 4/22/08 arbitrarily find that being asymptomatic indicate 30%. The rating above indicates the facts of records require a minimum of 60% and with the chronic nature and history of the disease it requires 100%.

VIII. The fact finder indicates "This is the highest available evaluation for this condition. Therefore, this is a complete grant of the benefits sought on appeal therefore removed from your pending appeal.

     a) Assignment of 80% disability with 100% due to unemployability effectively 11/28/05 is not the highest available evaluation based upon the facts. The NOD has

*1*

provided argument showing scheduler disability of 100% which is total and permanent due to the chronic nature and history of the diseases and their effect on the total body functions. It is unlike that I will recover to be ever gainfully employed again. This must be the rating effective from 1993 to accommodate the 317 VARO matters. All other CUE matters must be evaluated by the Secretary with an evaluation upon the facts of record regarding the kidney dysfunction 1967-1972 periods of claim.

b) The rating does not address any CUE or previously claimed benefits and the VA continue to cite erroneous statements as facts. These statements have been provided to VARO in NOD throughout the course of this matter. VA had changed records of evidence between its 4/17/07 decision and its 4/22/08 statement and attempt to dismiss the claim without providing the proper evaluation of this claim and correct the CUE which show increased benefits based upon the date of claim. A copy of my supplemental to the COWC filed June 9, 2008 is attached. This will supplement that document attached as Exhibit -3 herein for your records and information.

The present perpetual issuance of CUE by 317 VARO are serious violations of due process. They are intentional and deliberate and attempt to deny my claim and arbitrarily decide various decisions denying me the right to BVA review. Many of the actions are fraud and beyond the identification of CUE because they are malicious actions totally without regard to my medical condition and the mandate of 38 Title § 511.

I am Morris J. Peavey, Jr., the affiant herein. I have made the statements and are aware of their content. The statements are true to the best of my knowledge and belief. Respectfully submitted:

/S Affiant Morris J. Peavey, Jr.      Date July 17, 2008
MORRIS J. PEAVEY JR.
PRINTED NAME OF AFFIANT

NOTARY PUBLIC

Signature of Notary      Date July 17, 2008

MY COMMISSION EXPIRES:

LESLIE J. ERB
MY COMMISSION # DD581468
EXPIRES: August 03, 2010
Fl. Notary Discount Assoc. Co

8

# TAB-1

VARO sent copies of SSOC dated 4/22/08 while withholding the rating decision. The SSOC erroneously indicated 11-28-05 Claim received and that " Claimant was notified of decision 4/19/2007. SSOC dated 4/22/08 also indicated Notice of disagreement was received 8/15/07. The most recent notice dated May 20, 2008 indicates "We have enclosed a copy of your rating decision for your review. It provides a detailed explanation of our decision, the evidence considered, and the reasons for our decision. Your Rating Decision and this letter constitute our decision based on your claim received on August 15, 2007. It represents all claims we understood to be specifically made, implied, or inferred in that claim."

1)      The date of claim differ from the SOC dated 6/29/05 which indicate " Claim received 4/10/03. See US District Court 1: 5CV 0819 [8-3] Cynthia Stock Exhibit 1 page 1 SOC.

2)      Rating Decision Dated 4/22/08 does not contain information related to claims for hydrocele; lower back syndrome; and indicate " Evaluation of hypertensive heart disease, which is currently evaluated 60% disabling, is decreased to 30% percent effectively November 28, 2005. This disregard VARO rating decision dated 4/17/07 showing this condition as zero based upon the same facts. This disregard VARO no 3 evaluation for Hypertensive heart disease which admit 40% LEVH September 16, 2005 after hospitalization for MI showing elevated cardiac enzymes. VARO misstates. the records of Columbus Hospital indicating I was taken to the hospital for pneumonia and sepsis. I fainted [had ACS] and was taken to hospital. The VARO is aware of the history of CHF which became Acute. VA rated the heart condition with CHF at 60% for 13 years before the MI which was diagnosed by certified doctors at Columbus Hospital.

3)      VARO note on page 4 of rating decision dated 4/22/08 that University Hospital admitted me August 22, 2006 with chest pains. There were other material complaints which VA ignore to indicate the chest pains resolved shortly after admission and that I remained Asymptomatic at discharge. VA notes I was discharged against medical advice and refused cardiac testing [thallium stress]. The VA noted these mis statements in its 4/17/07 rating and they were addressed in the NOD dated 5/3/07 and 8/12/07. It is CUE that if the admission was for ACS and history of CHF that this does not provide information to show improvement beyond the minimal 60% previously rated for 13 years and evident of the LEVH of 40% which in itself require a minimum of 60%. VA ignore that the fact show two periods of hospitalization for CHF within two years because it notes hospitalization on 9/16/05 for MI and 8/22/06 for ACS and CHF.

4)      VA notes treatment by Miami VA Medical Center and East Orange, NJ VA medical center for uncontrolled blood pressure in May 2004. This statement suppress material facts which show the treatment at East Orange, NJ VA Medical Center for

uncontrolled angina pains which I went to the hospital for on April 19, 2004 because they wouldn't resolve. May 3. 2004 was a follow up for those treatments. VA provided me a list of homeless shelters.    The VA clear and unmistakable errors are intentional misstatements of my medical condition This is fraud because the VA knowingly suppress material medical facts.   VA SOC submitted to the US District Court by Cynthia Stock Show Treatment reports from East Orange VAMC NJ from April 19, 2004 to May 3, 2004. It should be noted that my NOD provided April 19 2004 as one of the days when I was not able to make MIA VMAC scheduled C&P appointments.   VA erroneously indicated that the C&P was scheduled for March 25, 2004. Now VA suppress these facts by issuing the new rating decision dated 4/22/08.   VA RX  323335473 dated April 19, 2004 and RX 323556760 document the fact that these treatments were uncontrollable angina and complaints of chest pains and shortness of breath.



**DEPARTMENT OF VETERANS AFFAIRS**
St. Petersburg Regional Office
P.O. BOX 1437
St. Petersburg FL 33731

MAY 20 2008

MORRIS J PEAVEY
C/O ERIC E PEAVEY
12315 NW 23RD AVENUE
MIAMI, FL 33167

In Reply Refer To: 317/vsc/appeals/man
CSS 23 448 613
PEAVEY, Morris J

Dear Mr. Peavey:

We made a decision on your Notice of Disagreement for service connected compensation received on August 15, 2007.

This letter tells you about your entitlement amount and payment start date and what we decided. It includes a copy of our rating decision that gives the evidence used and reasons for our decision. We have also included information about additional benefits, what to do if you disagree with our decision, and who to contact if you have questions or need assistance.

## What Is Your Entitlement Amount And Payment Start Date?

Your monthly entitlement amount is shown below:

| Monthly Entitlement Amount | Payment Start Date | Reason For Change |
|---|---|---|
| $2,393.00 | Dec 1, 2005 | Grant of Benefits |
| 2,471.00 | Dec 1, 2006 | Cost of Living Increase |
| 2,527.00 | Dec 1, 2007 | Cost of Living Increase |

We are paying you as a single veteran with no dependents.

## When Can You Expect Payment?

Your payment begins the first day of the month following your effective date. You will receive a payment covering the initial amount due under this award, minus any withholdings. Thereafter, payment will be made at the beginning of each month for the prior month. For example, benefits due for May are paid on or about June 1.

**Your payment will be directed to the financial institution and account number that you specified. To confirm when your payment was deposited, please contact that financial institution.**



2

CSS
Peavey, Morris J

> *If this account is no longer open,
> please notify us immediately.*

## What Did We Decide?

We determined that the following condition was related to your military service, so service connection has been granted:

| Medical Description | Percent (%) Assigned | Effective Date |
|---|---|---|
| Hypertension | 60% | Nov 28, 2005 |

The evaluation of hypertensive heart disease, which is currently evaluated at 60% is decreased to 30% effective November 28, 2005.

Basic eligibility to Dependents' Educational Assistance is established from November 28, 2005.

We granted entitlement to the 100% rate effective November 28, 2005, because you are unable to work due to your service connected disability/disabilities.

Your overall or combined rating is 80%. We do not add the individual percentages of each condition to determine your combined rating. We use a combined rating table that considers the effect from the most serious to the least serious conditions.

We have enclosed a copy of your Rating Decision for your review. It provides a detailed explanation of our decision, the evidence considered, and the reasons for our decision. Your Rating Decision and this letter constitute our decision based on your claim received on August 15, 2007. It represents all claims we understood to be specifically made, implied, or inferred in that claim.

We enclosed a VA Form 21-8760, "Additional Information for Veterans with Service-Connected Permanent and Total Disability," which explains certain factors concerning your benefits.

We enclosed a VA Form 21-8764, "Disability Compensation Award Attachment-Important Information," which explains certain factors concerning your benefits.



**DEPARTMENT OF VETERANS AFFAIRS**
**VA Regional Office**
**P.O. Box 1437**
**St. Petersburg, FL  33731**

**Morris J. Peavey**

**VA File Number**
**23 448 613**

**Decision Review Officer Decision**
**April 22, 2008**

## INTRODUCTION

The records reflect that you are a veteran of the Vietnam Era and Peacetime.  You served in the Army from July 24, 1964 to August 5, 1967.  We received a Notice of Disagreement from you on August 15, 2007 about one or more of our earlier decisions. Based on a review of the evidence listed below, we have made the following decision(s) on your claim.

## DECISION

1 . Entitlement to individual unemployability is granted effective November 28, 2005.

2 . Entitlement to a separate evaluation for hypertension is granted with an evaluation of 60 percent effective November 28, 2005.

3 . Evaluation of hypertensive heart disease, which is currently evaluated 60 percent disabling, is decreased to 30 percent effective November 28, 2005.

4 . Basic eligibility to Dependents' Educational Assistance is established from November 28, 2005.

Morris J. Peavey
23 448 613
Page 2

## EVIDENCE

- VA examination, Miami VA Medical Center, dated March 7, 2007
- Social Security Administration records received in January 2008
- VA Form 21-8940, "Application for increased compensation based on unemployability" dated April 7, 2003
- Treatment records from University Hospital of New Jersey for admission of August 22, 2006 to August 27, 2006.
- Treatment records from Columbia Hospital for admission of September 16, 2005, to September 27, 2005.
- Rating decisions of September 26, 1994, December 4, 1995, March 20, 2004, and Statement of the Case dated September 30, 2005, and all evidence cited therein are incorporated herein by reference.
- Treatment records, Miami VA Medical Center, dated January 4, 2006
- Treatment records, East Orange, NJ VA Medical Center, dated May 3, 2004 through September 28, 2005

## REASONS FOR DECISION

### 1. Entitlement to individual unemployability.

Entitlement to individual unemployability is granted because you are unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities.

You are service connected for hypertension evaluated at 60 percent, hypertension heart disease evaluated at 30 percent, and lumbosacral strain evaluated at 10 percent. You have a 4 year college degree. You last worked on July 12, 2001 in accounting at a restaurant. Records also show that you worked in construction from May to June 2001.

Social Security Administration records show that you were granted social security disability benefits and found to be disabled as of September 1994. Records show that your disabilities are your hypertension and heart disease.

Due to the severity of your service connected hypertension and hypertensive heart disease, employment history, and education level, it is conceded that you are unable to obtain and retain a substantially gainful occupation.

We have assigned an effective date of November 28, 2005, the date we received your claim, as you have the evidence shows that your conditions have worsened and you have continuously pursued your claim.

**This is a complete grant of the issue on appeal and therefore removed from your pending appeal.**

Morris J. Peavey
23 448 613
Page 3

## 2. Entitlement to a separate evaluation for hypertension.

Entitlement to a separate evaluation for hypertension has been granted and an evaluation of 60 percent.

The treatment records received from Columbia Hospital show you were admitted on September 16, 2005, with pneumonia, sepsis, elevated hypertension and altered mental status. Additional assessments of congestive heart failure, renal insufficiency and a hydrocele were made while you were hospitalized. An echocardiogram noted left ventricle ejection fraction of 40 percent.

You were again hospitalized on August 22, 2006, at University Hospital of New Jersey with chest pain which resolved shortly after admission. You refused cardiac testing and remained asymptomatic at discharge on August 25, 2006. You were released against medical advice. A hydrocele was also noted and you were referred for outpatient treatment for that condition.

Treatment records from the Miami VA Medical Center and East Orange, NJ VA Medical Center were reviewed and showed that you were seen for uncontrolled blood pressure in May 2004. You refused to do a thallium stress test or echocardiogram. You were again seen in September 2005 for complaints of chest pain and high blood pressure. It was noted that you were uncooperative and did not want any treatment. You only wanted to have your scripts filled. In January 2006, you were found to have hypertensive urgency. After reviewing your case and determining a management plan, the physician noted that you left the office without received medical advice or care. It was recommended that your undergo a thallium est and echocardiogram. A review of your vital signs showed a blood pressure reading of 228/130 in April 2004, 210/102 in May 2004, 214/123 on September 28, 2005, and 227/133 and 235/145 in January 2006.

On the VA examination of March 7, 2007, the history of your refractory hypertension since military service was noted as were the hospitalizations in 2005 and 2006. It was noted that preliminary studies during the 2006 hospitalization detected no cardiac damage. Echocardiogram done on March 6, 2007, noted left ventricle ejection fraction of 65 percent with evidence of left ventricle hypertrophy which was seen as consisted with your long-standing hypertension. Diastolic dysfunction was also noted. Examination reported blood pressures of 242/141, 224/143, 222/143 and 242/159 in various positions. There was chronic edema of bilateral lower extremities but pedal and peripheral pulses were palpable. Diagnosis was severe hypertension. You were referred to the emergency room to treat the severely elevated blood pressure but declined this treatment.

Morris J. Peavey
23 448 613
Page 4

The rating criteria for evaluating the cardiovascular system changed on January 12, 1998 and allowed for separate evaluations for hypertension and heart disease. As the additional evidence further clarifies that your hypertension has worsened and warrants a higher evaluation, we have assigned a separate 60 percent evaluation. An evaluation of 60 percent is assigned if diastolic pressure is predominantly 130 or more.

We have assigned an effective date of November 28, 2005, the date we received your claim for an increase, as the additional evidence shows that your condition has worsened and you have continuously pursued your claim.

**This is the highest available evaluation for this condition. Therefore, this is a complete grant of the benefit sought on appeal and therefore removed from your pending appeal.**

**3. Evaluation of hypertensive heart disease currently evaluated as 60 percent disabling.**

The evaluation of hypertensive heart disease is decreased to 30 percent.

The treatment records received from Columbia Hospital show you were admitted on September 16, 2005, with pneumonia, sepsis, elevated hypertension and altered mental status. Additional assessments of congestive heart failure, renal insufficiency and a hydrocele were made while you were hospitalized. An echocardiogram noted left ventricle ejection fraction of 40 percent.

You were again hospitalized on August 22, 2006, at University Hospital of New Jersey with chest pain which resolved shortly after admission. You refused cardiac testing and remained asymptomatic at discharge on August 25, 2006. You were released against medical advice. A hydrocele was also noted and you were referred for outpatient treatment for that condition.

Treatment records from the Miami VA Medical Center and East Orange, NJ VA Medical Center were reviewed and showed that you were seen for uncontrolled blood pressure in May 2004. You refused to do a thallium stress test or echocardiogram. You were again seen in September 2005 for complaints of chest pain and high blood pressure. It was noted that you were uncooperative and did not want any treatment. You only wanted to have your scripts filled. In January 2006, you were found to have hypertensive urgency. After reviewing your case and determining a management plan, the physician noted that you left the office without received medical advice or care. It was recommended that your undergo a thallium est and echocardiogram.

A VA examination was ordered to evaluate your level of disability.

Morris J. Peavey
23 448 613
Page 5

On the VA examination of March 7, 2007, the history of your refractory hypertension
since military service was noted as were the hospitalizations in 2005 and 2006. It was
noted that preliminary studies during the 2006 hospitalization detected no cardiac
damage. Echocardiogram done on March 6, 2007, noted left ventricle ejection fraction of
65 percent with evidence of left ventricle hypertrophy which was seen as consisted with
your long-standing hypertension. Diastolic dysfunction was also noted. Examination
reported blood pressures of 242/141, 224/143, 222/143 and 242/159 in various positions.
There was chronic edema of bilateral lower extremities but pedal and peripheral pulses
were palpable. Diagnosis was severe hypertension. You were referred to the emergency
room to treat the severely elevated blood pressure but declined this treatment.

The rating criteria for evaluating the cardiovascular system changed on January 12, 1998.
This changed allowed for separate evaluations for heart disease and hypertension. As the
evidence shows that assigning separate evaluations for your heart and hypertension
would warrant an overall higher evaluation, we are now evaluating your disability under
the new criteria.

We have assigned a 30 percent evaluation based on objective evidence of left ventricular
hypertrophy. An evaluation of 30 percent is assigned if there is workload greater than 5
METs but not greater than 7 METs resulting in dyspnea, fatigue, angina, dizziness, or
syncope; or evidence of cardiac hypertrophy or dilatation on electrocardiogram,
echocardiogram, or X-ray. A higher evaluation of 60 percent is not warranted unless
there is more than one episode of acute congestive heart failure in the past year; or
workload greater than 3 METs but not greater than 5 METs resulting in dyspnea, fatigue,
angina, dizziness, or syncope; or left ventricular dysfunction with an ejection fraction of
30 to 50 percent. One MET (metabolic equivalent) is the energy cost of standing quietly
at rest and represents an oxygen uptake of 3.5 milliliters per kilogram of body weight per
minute.

We have assigned an effective date of November 28, 2005, the date we received your
claim, and the evidence shows that separate evaluations are warranted.

**4. Eligibility to Dependents' Educational Assistance under 38 U.S.C. chapter 35.**

Eligibility to Dependents' Educational Assistance is derived from a veteran who was
discharged under other than dishonorable conditions; and, has a permanent and total
service-connected disability; or a permanent and total disability was in existence at the
time of death; or the veteran died as a result of a service-connected disability. Also,
eligibility exists for a serviceperson who died in service. Finally, eligibility can be
derived from a service member who, as a member of the armed forces on active duty, has
been listed for more than 90 days as: missing in action; captured in line of duty by a
hostile force; or forcibly detained or interned in line of duty by a foreign government or
power.

Morris J. Peavey
23 448 613
Page 6

Basic eligibility to Dependents' Education Assistance is granted as the evidence shows
the veteran currently has a total service-connected disability, permanent in nature.

We have assigned an effective date of November 28, 2005, the date we granted
entitlement to individual unemployability, as the evidence shows that your conditions are
permanent in nature.

## REFERENCES:

Title 38 of the Code of Federal Regulations, Pensions, Bonuses and Veterans' Relief
contains the regulations of the Department of Veterans Affairs which govern entitlement
to all veteran benefits.  For additional information regarding applicable laws and
regulations, please consult your local library, or visit us at our web site, www.va.gov.

**Rx# 323335473**  APR 19,2004  Fill 1 of 1

Qty: 100  TAB   Days supply: 30
NITROGLYCERIN(ETHEX) 0.4MG SL TAB
**NO REFILL**
**NO COPAY**                                    EAST ORANGE-561

PEAVEY,MORRIS J  Rx#: 323335473   NITROGLYCERIN(ETHEX) 0.4MG SL TAB

**NITROGLYCERIN - SUBLINGUAL:** (nye-troh-GLISS-er-in)

**USES:** Nitroglycerin relaxes blood vessels allowing more blood to flow through. This reduces the workload on the heart and improves blood flow to the heart. Sublingual nitroglycerin tablets act quickly to relieve chest pain (angina).

**HOW TO USE:** At the first sign of chest pain, sit down and place one tablet under the tongue or between your cheek and gum allowing it to dissolve. The drug is absorbed directly through the lining of the mouth. Do not chew or swallow the tablet. Do not eat, drink or smoke while the nitroglycerin is in your mouth. Effects should begin in 1 to 3 minutes. If after 5 minutes there is no relief of chest pain, take another tablet. If there is no relief after taking three tablets, call your doctor immediately or go to a hospital emergency room.  Carry this medication with you at all times.

**SIDE EFFECTS:** Headache, dizziness, flushing, rapid heartbeat or restlessness may occur as your body adjusts to the medication. If they persist or become bothersome, inform your doctor. To prevent dizziness and lightheadedness when rising from a seated or lying position, get up slowly.  Notify your doctor if you experience blurred vision, dry mouth, skin rash or nausea. Heaache is often a sign the medication is working. Treat headaches with an aspirin or non-aspirin pain reliever as recommended by your doctor. If the headaches continue or become severe, notify your doctor.  In the unlikely event you have an allergic reaction to this drug, seek medical attention immediately. Symptoms of an allergic reaction include: rash, itching, swelling, dizziness, trouble breathing.  If you notice other effects not listed above, contact your doctor or pharmacist.

**PRECAUTIONS:** Before using this medication tell your doctor your medical history especially of: heart problems, head injury or surgery, glaucoma, thyroid conditions, anemia, alcohol usage, any drug allergies. Use caution engaging in activities that require alertness or in operating machinery if this medication makes you dizzy or drowsy. Alcoholic beverages may increase the risk of fainting or of experiencing dizziness. This medication should be used during pregnancy only if clearly needed. Discuss the risks and benefits with your doctor.  It is not known if this drug is excreted into breast milk. Consult your doctor before breast-feeding.

**DRUG INTERACTIONS:** This drug is not recommended for use with sildenafil. Ask your doctor or pharmacist for more details. Tell your doctor of all medications you may use including prescription and nonprescription drugs and especially: drugs for high blood pressure, certain migraine drugs (ergot alkaloids), aspirin.  Do not start or stop any medicine without doctor or pharmacist approval.

**OVERDOSE:** If overdose is suspected, contact your local poison control center or emergency room immediately. Symptoms of overdose may include a persistent, throbbing headache; dizziness; confusion; weakness; sweating; changes in heart rate; changes in vision; flushing; nausea; and vomiting.

**NOTES:** Some persons may develop a tolerance to the effects of this medication over time. Notify your doctor if the medication appears to be losing its effectiveness or if the chest pain continues while taking this drug.

**MISSED DOSE:** This medication is used only at the onset of an attack of chest pain or 10 to 15 minutes before engaging in an activity that may cause chest pain. This medication is not for routine use.

Rx# 323556760   SEP 28,2005  Fill 1 of 1

Qty: 30  EA   Days supply: 30
NITROGLYCERIN 0.4MG/HR PATCH
00085-3320-35
NO REFILL
NO COPAY                                    EAST ORANGE-561



Additional Warning Labels:
20N: For external use only.
13N: It is very important that you take or use this exactly as directed.  Do not skip doses or discontinue
    unless directed by your doctor.

PEAVEY,MORRIS J  Rx#: 323556760  NITROGLYCERIN 0.4MG/HR PATCH

**NITROGLYCERIN - TRANSDERMAL:** (nye-troh-GLISS-er-in)

**USES:** Nitroglycerin relaxes blood vessels allowing more blood to flow through and improves blood flow to the heart.
Topical nitroglycerin skin patches are used to prevent angina (chest pain). This medication is NOT for treating an attack of
chest pain that has already started.

**HOW TO USE:** Transdermal skin patches are to be applied to a clean, hairless area on the upper arm or chest not subject
to excessive movement. The patch should remain in place while bathing or showering. Remove the previous patch before
applying a new one. Apply the new patch to a different area to minimize skin irritation by using a new area of skin. The
patch is usually worn for 12 to 14 hours a day and then a new patch put on 10 to 12 hours later or as directed. This drug-free
period improves the drug's effectiveness.  Do not stop using this drug suddenly without consulting your doctor. Some
conditions may worsen when the medication is suddenly stopped. Your dose may need to be gradually decreased.

**SIDE EFFECTS:** Headache, dizziness, flushing, rapid heartbeat, restlessness, or skin irritation at patch site may occur as
your body adjusts to the medication. If any of these effects persist or become bothersome, inform your doctor. To prevent
dizziness and lightheadedness when rising from a seated or lying position, get up slowly.  Notify your doctor if you
experience: blurred vision, dry mouth, skin rash, nausea.  Headache is often a sign the medication is working.  Treat
headaches with an aspirin or non-aspirin pain reliever as recommended by your doctor. If the headaches continue or
become severe, notify your doctor.  In the unlikely event you have an allergic reaction to this drug, seek medical attention
immediately. Symptoms of an allergic reaction include: rash, itching, swelling, dizziness, trouble breathing. If you notice
other effects not listed above, contact your doctor or pharmacist.

**PRECAUTIONS:** Before using this medication tell your doctor your medical history especially of: heart problems, head injury
or surgery, glaucoma, thyroid conditions, anemia, alcohol usage, allergies (especially allergies to drugs or adhesives).  Use
caution engaging in activities that require alertness or in operating machinery if this medication makes you dizzy or drowsy.
Alcoholic beverages may increase the risk of fainting or of experiencing dizziness.  This medication should be used during
pregnancy only if clearly needed. Discuss the risks and benefits with your doctor.  It is not known if this drug is excreted into
breast milk. Consult your doctor before breast-feeding.

**DRUG INTERACTIONS:** This drug should not be used with the following medications because very serious (possibly fatal)
interactions may occur: drugs to treat impotence (e.g., sildenafil, vardenafil, tadalafil). If you are currently using any of these
medications, tell your doctor or pharmacist before starting nitroglycerin.  Before using this medication, tell your doctor or
pharmacist of all prescription and nonprescription/herbal products you may use, especially of: drugs for high blood pressure
(e.g., ACE inhibitors such as fosinopril or lisinopril, alpha blockers such as prazosin or doxazosin, beta-blockers such as
propranolol), certain migraine drugs (ergot alkaloids such as ergotamine), high doses of aspirin.  Do not start or stop any
medicine without doctor or pharmacist approval.

**OVERDOSE:** If overdose is suspected, remove the patch. Contact your local poison control center or emergency room
immediately. US residents can call the US national poison hotline at 1-800-222-1222. Canadian residents should call their
local poison control center directly. Symptoms of overdose may include a persistent, throbbing headache; dizziness;
confusion; weakness; sweating; changes in heart rate; changes in vision; flushing; nausea; and vomiting.

**NOTES:** Some persons may develop a tolerance to the effects of this medication over time. Notify your doctor if the
medication appears to be losing its effectiveness or if the chest pain continues while taking this drug.

**MISSED DOSE:** Do not double dose if missed. Apply it as soon as possible and resume regular dosing schedule.

# TAB-2

SSOC dated 4/22/08 notes evaluations for hypertensive heart disease currently rated at 30% is continued. This contradicts 4/17/07 and 4/22/08 rating which indicated rating for this condition as 60% changed to 30%. The SSOC indicate Social Security benefits effective September 1994. This is erroneous and VA has not provided information supporting these allegations. VA note that I was seen at VA EO VAMC for high blood pressure 9/05 this is CUE because VA admit I was released from Columbus Hospital after suffering MI with LEVH of 40% on September 27, 2005. The records herein show that I was seen at EO VAMC on September 28, 2005 and prescribed meds for chest pains and edema and other problems related to chronic CHF.

SSOC dated 4/22/08 notes evaluation for lower back strain at page 23 remains at 10 percent.

SSOC dated 4/22/08 evaluates hydrocele indicating IVP was completed by military service in connection with back injury but no renal condition associated with a back injury was found and no residual of that procedure are shown. A double upper collecting system on the left urethra was noted but this was an anomaly and no problems were associated with the finding.

VA continues to call the IVP taken at VA Hospital Brooklyn normal and without kidney disease. That report indicates hydronephrosis, double pelvis, aberrant vessel on the right and abnormalities below the pelvo-ureter junction. The VA continues to misrepresent the matter related to the findings of urine loaded with wbc; albumin in urine; the long running non social discharge 1968-1972 is document and VA continue to say normal. The VA summary ignored the actual report of abnormalities to the kidney seen on the IVP and suppressed this information indicating no hospitalization and attempted to create a phony record to substitute the facts. A copy of an abnormal kidney is submitted from the Annals of surgery with a cross section. See exhibits herein.

The US Army notes only the double collecting system and notes normal. The VA has continue to suppress the additional finding on its IVP after the US Army suppressed one IVP result and indicated only noted double collecting system on the left. The VA findings on their IVP would indicate that after US Army refused medical treatment damage, pathologies, either gave rise to further disease or metastases. The US Army and the VA acted to cover-up these facts and continue to attempt to cover-up these facts. .

The issues relate to untreated conditions, which were discovered in the US Army after I was injured by being struck by and automobile. There is nothing normal about a double pelvis and the records are in the open and the VA continue to call abnormal normal and suppress more material facts related to injuries to my KUB. The extent of those injures have never been the concern of the US Army and the VA. Their actions have been to

suppress medical findings, call their own doctors and tell them to change records, and ignore certified medical findings of private doctors.

10E

PATIENT'S LAST NAME—FIRST NAME—MIDD.. NAME

PEAVEY MORRIS J JR
7 21 45        P
264 72 69 75

REGISTER NO.

| AGE | SEX | (Check one) |
| | | ☐ BED SIDE, WHEELCHAIR, OR STRETCHER ☐ BED PATIENT ☐ AMBULATORY |

EXAMINATION REQUESTED

VAH BKLYN NY

REQUESTED BY

Condon

DATE OF REQUEST

[Above space for mechanical imprinting, if used]

PERTINENT CLINICAL HISTORY, OPERATIONS, PHYSICAL FINDINGS, AND PROVISIONAL DIAGNOSIS

22 year old hypertensive with
hist of disease for one year

FEB 2 1968

FILM NO. 76150          76150          DATE OF REPORT  2/12/68

RADIOGRAPHIC REPORT

IVP 2/2/68: Preliminary abdominal view is essentially normal. Following intravenous injection of the opaque media there is faint nephrographic effect at 1 minute which is symmetrical and equal. The excretory urogram shows prompt clearance bilaterally. There is noted a slight narrowing at the pelvo-ureteral junction on the right side and the possibility of an aberrant vessel cannot be excluded. There is a double pelvis and proximal ureter on the left uniting about 5 cm below the pelvo-ureteral junction. The visualized portions of both ureters are not dilated or otherwise abnormally changed. The urinary bladder is well outlined with dye and is normal in appearance.
IMPRESSION: Suggest selective renal arteriography on the right to confirm or rule out the presence of an aberrant vessel.
/VAH BKLYN 9,N.Y.mg          I. KRUSZELNYCKA MD.

SIGNATURE: (Specify location of laboratory if not part of requesting facility)

Standard Form 519-A (Rev. Aug. 1954)
Prescribed by Bureau of the Budget

---

PATIENT'S LAST NAME—FIRST NAME—MIDDLE NAME

PEAVEY MORRIS J JR   264 72 69 75   10E
6047A  M PL358   DIR 1 26 68
... ... PL BKLYN NY      P HO S M
... ...        7 21 45
... ...    493 1622
... ...    Z 24 64    8 5 67  N

REGISTER NO.          WARD NO.

VA HOSPITAL
BROOKLYN N.Y.

| AGE | SEX | (Check one) |
| | | ☐ BEDSIDE, WHEELCHAIR, OR STRETCHER ☐ BED PATIENT ☐ AMBULATORY |

EXAMINATION REQUESTED
527            P & Lat

REQUESTED BY          DATE OF REQUEST

PERTINENT CLINICAL HISTORY, OPERATIONS, PHYSICAL FINDINGS, AND PROVISIONAL DIAGNOSIS

ORGANIC DIS

JAN 29 1968

76150          DATE OF REPORT  FEB 1 1968

RADIOGRAPHIC REPORT

"There is no x-ray evidence of cardiovascular, pulmonary, pleural, mediastinal or osseous abnormality."

... Hospital
... N. Y. 11209

Irma Kruszelnycka, M.D.

SIGNATURE: (Specify location of laboratory if not part of requesting facility)

Standard Form 519-A (Rev. Aug. 1954)
Prescribed by Bureau of the Budget
Circular ...
RADIOGRAPHIC REPORT          519-A



# ANNALS OF SURGERY

### A Monthly Review of Surgical Science Since 1885

Journal List > Ann Surg > v.65(5); May 1917

Ann Surg. 1917 May; 65(5): 534–537.                    PMCID: PMC1426580

Copyright notice

Summary
■ Page Browse
PDF (1.4M)
Contents
Archive

Related material:
PubMed related arts

PubMed articles by:
   Pilcher, L.

## KIDNEY WITH DOUBLE PELVIS AND DOUBLE URETER: NEPHROLITHIASIS: PYONEPHROSIS: NEPHRECTOMY

Lewis Stephen Pilcher

| 534 | 534-1 | Page 534-2 | 534-3 | 535 | 536 | 537 |



FIG. 2.—Double kidney with pelvis and ureter for each portion, each portion the subject of pyo-
nephrosis.  Large calculus in lower sac.  External appearance at time of removal.

| 534 | 534-1 | Page 534-2 | 534-3 | 535 | 536 | 537 |

Get a printable copy (PDF file) of the **complete article** (1.4M).

Images on the current page



Upper
ureter

Lower



## ANNALS OF SURGERY
### A Monthly Review of Surgical Science Since 1885

Journal List > Ann Surg > v.65(5); May 1917

Ann Surg. 1917 May; 65(5): 534–537.

PMCID: PMC1426580

Copyright notice

Summary
Page Browse
PDF (1.4M)
Contents
Archive

Related material:
PubMed related arts

PubMed articles by:
Pilcher, L.

# KIDNEY WITH DOUBLE PELVIS AND DOUBLE URETER: NEPHROLITHIASIS: PYONEPHROSIS: NEPHRECTOMY

Lewis Stephen Pilcher

| 534 | 534-1 | 534-2 | Page 534-3 | 535 | 536 | 537 |



Fig. 3.—Double kidney with pelvis and ureter for each portion, each portion the subject of pyo-nephrosis. Large calculus in lower sac. Sagittal section.

| 534 | 534-1 | 534-2 | Page 534-3 | 535 | 536 | 537 |

Get a printable copy (PDF file) of the **complete article** (1.4M).

Images on the current page



*Upper ureter*

Approved Exception to SF88
Budget Bureau No. 76-R0246

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS

**REPORT OF MEDICAL EXAMINATION
FOR DISABILITY EVALUATION**

1. SERIAL / SOCIAL SECURITY NO. C 234 486 13 | 26 372-6975

2. INSURANCE FILE NO. *(V.H.K. etc., if pertinent)*

**INSTRUCTIONS FOR PREPARING THIS FORM.**—This report must be completely executed. Describe the results of a general examination of every system and body part including, but not restricted to, the systems and body parts involved in the history and present complaints. Wherever indicated, specialists' examinations, X-rays, laboratory examinations, etc., should be recommended. If additional space is needed, comments may be continued in item 24 or on separate sheets attached to this form.

3. LAST NAME—FIRST NAME—MIDDLE NAME OF VETERAN *(Type or print)*
PEAVEY   Morris   James   Jr.

4. PURPOSE OF EXAMINATION
Comp

5. DATE OF EXAMINATION
9-25-72

6. HOME ADDRESS *(Street or RFD number, city, State, and ZIP Code)*
P.O. Box 1993
Newark, New Jersey 07101

7. PLACE OF EXAMINATION
VAOPC NWK, N.J

8. AGE
27

**SECTION A—OCCUPATIONAL HISTORY SINCE LATEST DISCHARGE FROM MILITARY SERVICE OR LATEST VA EXAMINATION**

| 9. NAME AND ADDRESS OF EMPLOYER *(If unemployed enter "None".)* | 10. TYPE OF WORK | 11. MONTHLY WAGES | 12. FROM | 13. TO | 14. TIME LOST IN PAST 12 MONTHS |
|---|---|---|---|---|---|
| None | | | | | |
| | | | | | |
| | | | | | |

14B. REASON FOR TIME LOST *(if any)*
Medical — Lived on Social welfare for past 5 yrs.

**SECTION B—MEDICAL HISTORY SINCE LATEST VA EXAMINATION AS RELATED BY PERSON EXAMINED**

15. NARRATIVE HISTORY *(Include manner and date of origin)*
Treated 1968 - 1970 by Dr. P. Hersh   Eastern Parkway for High Blood and Heart Condition. - Medication Daily
Treated 1968 To present by Brooklyn Health clinic for penial Discharge (non social in origin)
Treated 1970 To present by Doctor Carr High street Newark N.J. High Blood & Heart Condition

| NAME AND ADDRESS OF DOCTOR OR HOSPITAL | CONDITION TREATED | FROM | TO |
|---|---|---|---|
| 16A. Dr Paul J. Hersh 1145 Eastern Pky | High Blood Heart Cond | 1968 | 1970 |
| 16B. Sheri Tampa Florida | Kidney infection | 1970 | |
| Dr Edmond East orange N.J. | Penis Discharge (non soc) | 1971 | |
| 16C. Dr J.C Carr 608 High street | High Blood Heart Cond. | 1970 | Present |

17. PRESENT COMPLAINT *(Symptoms only, not diagnosis)*
Frequent pains in groin and Back and discharge from penis. Poor circulation in feet and burning and stinging in feet and toes. Pain in chest and shortness of breathe and headaches and dizziness.
▓▓▓▓ back pains. Occasional lost of memory.

FOR RATING PURPOSES
OCT 20 1972

I HEREBY CERTIFY that the entries under Occupational and Medical History are complete and correct to the best of my knowledge.

18. DATE SIGNED
9-25-72

19. SIGNATURE OF PERSON EXAMINED *(Do not print)*
X Morris Peavey Jr.

**PENALTY.**—The law provides severe penalties which include fine or imprisonment, or both, for the willful submission of any statement or evidence of a material fact, knowing it to be false, or for the fraudulent acceptance of any payment to which you are not entitled.

VA FORM
OCT. 1968   **21-2545**   EXISTING STOCKS OF VA FORM 21-2545, MAR. 1965, WILL BE USED.