UNITED STATES DISTRICT COURT

MORRIS J. PEAVEY, JR.
PLAINTIFF                                    1:05 CV 0819  RWR

VS.

ALBERTO GONZALEZ, ATTORNEY GENERAL ET AL.,
DEFENDANTS:

NOTICE:  MOTION: TO ENTER DOCUMENT
         SHOWING DELAYS AND ABUSE OF PROCESS
         AND FRUAD IN PROCESS

PLEASE TAKE NOTICE

THAT A MOTION TO ENTER A DOCUMENT above Captioned in this
proceeding separately and submission to the court is here by made.   The
document provides information material to the Plaintiff Petition which allege the
defendants US Army, VA, and NPRC suppressed, altered, and destroyed federal
documents to cover-up US Army violation of the rights which he otherwise had
under **10 USC** 886 AR-86 AWOL; AR 59 Error of Law and the lesser included offense;
AR 107 False Official Statements; AR 20 Lack of jurisdiction for Summary Court-
martial.

**AR 40-401 Standards of Medical Fitness** [11 March 66] Para. 3-26 (a), (b); MCM
120b Lack of mental responsibility

The limitations periods for the corrections boards and the discharge review boards are not jurisdictional and may be (and often are) waived.17 Indeed, 10 U.S.C. § 1552(b) expressly provides that correction boards may excuse an untimely application "if it finds it to be in the interest of justice."

VA substantial evidence before this court was the SOC dated 6/29/05 to support its allegations Peavey action was a VA action pursuant to 38 Title § 511 seeking a dismal upon jurisdictional grounds. Plaintiff completely responded to VA actions through filing COWC for BVA review. VA simply ignored the COWC and indefinitely pended the action and provided the Plaintiff with false and erroneous information about the status of the claims until he contacted Senator Nelson member of the Armed Services Committee.

This summarily dismiss the whole of the 4/10/03 claim without due process as proscribed by 38 Title § 511 requiring VARO rating decisions to be final when based upon a specific set of facts. See § 19.31.

The results are created by VA acts to continue with its cover-up. The new SOC dated 4/22/08 does not contain the adjudicative actions showing the issuance of SOC dated 6/29/05 or any related claims in that document. This action is totally arbitrary and unsupported by facts or law. It continues to indicate that the IVP and KUB were normal showing the 4/22/08 SOC as responding to a claim filed 11/28/05 not as an SSOC evaluating additional material medical evidence related to SOC dated 6/29/05 and the adjudicative actions. The attempt to show normal IVP is a continuation of the conspiracy and fraud. The VA is depository of plaintiff US Army Medical records which show abnormal IVP and support these findings in VA Hospital 1968 records. Today ABCMR indicate that such records do not exist showing Plaintiff suffered hypertension with injury or disease to his heart and kidney. It attempt to dismiss VA actions in 1968, 1993, 2001 to suppress, alter, and cover-up all medical records showing the US Army violation of Plaintiff right which he had under AR 40-501 par. 3.23 and par. 8-3.

This information is material to this case because VA submitted SOC dated 6/29/05 to this court as evidence that there was an active VA claim. It sent the

plaintiff information showing VARO received a timely filed COWC which was pent effectively 9/21/05; the Plaintiff sent this court and defendants information showing that he was incapacitated due to Chronic CHF, MI, Sepsis, Kidney dysfunctions and Pneumonia [pleurisy].    Plaintiff also submitted this court a COWC 317/243C containing complaints of constitutional violations which VBA indicated was not in the VA jurisdiction. VA 4/22/08 rating decision dated 4/22/08 submitted to plaintiff after May 20, 2008 attempt to dismiss these claims as well.

Plaintiff respectfully moves the court to enter a copy of this document because it provided the court with evidence showing deliberate delays and violations of 5 USC § 706g. The documents show violations of plaintiff rights which exists under 5 USC § 552 because NPRC admit various investigative records probably still exist with the US Army or have been destroyed and ABCMR deny existence or such files.

These continued acts and violations by the defendant are with total disregard of the plaintiff rights to due process and equal protection.

Plaintiff further moves the court that service of notice of entry of the documents into the proceeding and upon all defendants shall be proper service upon all defendants.

Respectfully submitted:

Morris J. Peavey, Jr.
C/O Eric Peavey
12315 NW 23rd Avenue
Miami, Florida   33167

305-688-0759

CERTICATE OF SERVICE BY MAIL:

I certify the the enclosed document of substantial evidence and its motion to enter it into these proceedings was served upon the attorney for the defendants:

Eric E. Holder
US Attorney General
950 Pennsylvania Avenue, SW
Washington, DC  20420

Will A. Gunn
General Counsel for
Secretary of Department of Veterans Affairs
810 Vermont Avenue NW
Washington,  DC  20420

Office of the US Attorney
Kenneth Aboneojo Esq.
501 3rd Street NW 4th Floor
Washington, DC  20530

Submitted.
Norman Peavey, Jr
305-688-0759

Morris J. Peavey, Jr.
C/O Eric Peavey
12315 NW 23rd Avenue
Miami, Florida   33167

                                317/SSD/PA/tmd
                                317/243C all appeals
                                C 23 448 613
                                Peavey Morris J

June 29, 2009

Will A. Gunn, General Counsel
Secretary of Veterans Affairs
Department of Veterans Affairs
Washington, DC  20420

Dear Attorney Gunn:

       This statement will supplement my letter dated May 24, 2009 and response to VARO 317 correspondence by Jennifer Kaldor.  Her letter included a rating decision dated April 22, 2008 and labeled [Decision Review Officers' Decision] DROD.  The DROD is non-responsive to my request to the Chairman of Board of Veterans Appeals and provide no information regarding the Docketing for the COWC and VA Form 9 which I filed with the Department of Veterans Administrations.  VARO 317 submissions did not provide any copy of the SSOC dated 4 22, 2007 and pended 9-04-2007. See Correspondence to James P. Terry dated April 3, 2009 attached at Tab – 2 EX -1 herein.

       Ms Kaldor's letter warns "If you are not satisfied with our response, you have the right to appeal the disclosure to the office of General Counsel, Department of Veterans Affairs within 60 days." See Correspondence Tab 1 Ex-1 pg.1 herein.

       This statement includes exceptions to the DROD because its findings of facts does not resolve the issues contain in the NOD dated 5/3/2007 or the supplemental NOD dated 8/12/07 which the VA marked received August 22, 2007 and pended 9-04-2007.  See tab-2 Ex-12 herein.

       Ms. Kaldor's letter provides "if you are not satisfied with our response, you have the right to appeal this discourse to the office of General Counsel, Department of Veterans Affairs, 810 Vermont Avenue NW, Washington, DC  20420, within 60 days.  The Office of General Counsel will make the final decision on such an Appeal.

VARO 317 instruction does not provide the BVA docket information which I requested and truncate all my rights to process the timely filed COWC. This is an arbitrary dismissal of appellable issues and matters which oppose VARO 317 decisions and adverse actions in these matters. DROD dated 4/22/08 is an attempt to arbitrarily dismisses all pending COWC and actions which are CUE and violate my rights to due process. I responded to MS. Kaldor but realize this is an abuse of process and violate the VA appellate process.

Many alleged VA facts are clearly unmistakably erroneous [CUE] because they are contradicted by the medical facts within the VA records. Abstracts and tabulations of evidence are included to identify these CUE and show the VARO317 attempts to deny me the right to appellate review of material issues; deny corrections of CUE; VARO 317 violations of my rights to substantial due process; mute the complaints which I have made showing the VA destruction of material US Army medical records which VA allege it was legal custodian. Department of Veterans Affairs suppression, alteration, and destruction of my US Army medical records have been intentional, and malicious and over a long period of time and in concert with the US Army and NPRC in an afford to cover-up my injuries which I received while in t he US Army and also to deny me the rights which I have under various US Army regulations and Federal Statutes including 10 USC sec 1552 which require US Army Records to be Corrected. This statement will more specifically respond to Ms. Kaldor submissions and the DROD dated April 22, 2008.

This statement will also note the differences in the VARO 317 statements submitted to Senator Bill Nelson by Mr. Barry Baker Director of VARO 317. Mr. Barry Baker letter to Senator Nelson was dated March 3, 2009 acknowledging evidentiary documents from the Senator on October 17, 2008 and October 27, 2008. He indicated, "March 6, 2009 the VARO Appeals Team will review the aforementioned documents for the continued processing of "Mr. Peavey's written notification once an appellate decision is rendered and authorized." See Tab-1 Ex-3 pg. 1 herein.

The VA letter to Senator Nelson acknowledges my concern about VA acts in concert with the US Army which suppress, alter, and or destroy my US Army medical records. The letter to Senator Nelson invite "you should contact DVA Inspector General" if Mr. Peavey feels the DVA has acted inappropriately, in any manner." This matter has been forwarded to the US Secretary of VA, VBA and US Attorney in 2004 and returned to GB Gibbard a principal offender named in the fraudulent acts.

2

This statement will respond to Ms. Kaldor's warning and refusal to provide the lawfully BVA Docket number filed COWC, VA Form 9's and multitude of BVA appellate documents that would have VA stamps showing dates received and docketed of the most recently received documents.

EXCEPTIONS TO DROD:

*DROD "INTRODUCTION: alleges "WE received a notice of disagreement from you on August 12, 2007, about one of more of our earlier decisions," and note "we have made the following decisions (s) on your claim."*

EXECTIONS: The document is a dated VARO document which does not respond to the issues contained in thee NOD dated 8/12/2007. Those various appealable issues are available to the reader from the document which responds to adverse rating decisions and the action which reduced the 7007 from 60% to zero then to 30%. The NOD also pointed out the service connection for the injuries to my KUB which are continually denied using information from the VARO 12/4/95 rating decision which is also CUE and attempt to maintain VA actions to suppress all medical records showing injury to my KUB and disease and treatment by VA and private physicians showing injury to my groin, KUB, right flank and subsequently developing a grotesque hydrocele. See Tab 2-EX -12 herein.

This report will provide a point by point exception to DROD arbitrary actions
*THE DROD DECISION SECTION:*

1. **The DROD find unemployability effective November 28, 2005; 2. Grant separate evaluations for hypertension at 60%; 3. Heart Disease was reduced from 60% to 30%; 4. The basic eligibility for educational assistance was also established from November 28, 2005. See Tab-1 Ex-2 pg. 1.**

a) **The DROD find unemployability effective November 28, 2005.** This finding does not reflect the facts of this case or the requirements of the law. VA assign November 28, 2005 arbitrarily while admitting it received this claim for increase on April 10, 2003. [Tab-3 Ex-1 pg.1] VA provided this information to the US District Court 1:05CV 0819 Peavey vs. Gonzalez Doc 8 in an affidavit by Cynthia Stock. The VA changed this matter of fact on a number of occasions to suit its argument. VA alleged I did not report for VAMC appointment on March 25, 2004 when the appointment was made for April 19, 2004. Id. I provided information showing I received emergency medical treatment from VA EO Medical Center on that date; VA was aware that I had a pending SOC dated June 29, 2005 which it submitted to the court as proof that I had a pending 38 Title sec 511 claim. I notified the US District Court and VA that is had been hospitalized for a cardiac injury on September 16,

3

2005 and provided the VA with supplemental medical documentation. VA erroneously interpret the supplemental submission as opening a new claim for increased disability when in fact VA show the effective date as 4/10/03 in the SOC filled with the US District Court. VA was provided a release for medical records. § 20.302(b) (2); 19.31 (b) (1). Also See Tab-3 Ex-5 herein.

DROD have also established the effective date of the claim for unemployability as 4/10/03. See Tab 1 EX-2 Evidence p.2 herein.

The VA records clearly show that the matter was pending effectively 9/21/2005 and all other filing of medical documents was supplemental. The VA ignored the supplemental filing which showed the hospitalization. Columbus Hospital diagnosed the medical conditions as CHF, MI, Sepsis, Dysfunctional kidneys, [Tab 3 Ex 2]. VA did not provide convalescence assistance. I reported this supplemental medical information and the VA refused convalescence benefits and also submitted me a notice that I was priority 5 which indicated that I did not have a compensated disability although I was rated 60% 7007 Cardio-vascular disease with insipient heart disease from 1994 [tab 2- Ex 9 herein]  10% 5295 lower back injury from 1967.

I was again hospitalized University Hospital on or about August 21, 2006 and diagnosed ACS with severe bradycardia and left ventricle dysfunction. I provided VA with additional medical information regarding the period of hospitalization. The VA did not acknowledge the receipt of any information and continued to provide clearly erroneous information about the status of my medical claims and the COWC which I had timely filed. I notified Senator Bill Nelson and the VA provided false information indicating that my claim had been dismissed because of me missing a filing dead line and that my claim was refiled May 26, 2006. This was deliberate and intentions misrepresentation of the status and facts surrounding my claims. VA continues incorrect compensation for section 7007. DROD does not contain the history of the etiology 7007 for from 10/01/67 through 1973. See Tab -1 Ex -2 DROD pg. 1.

Subject Compensation is misstated and reads:  See Tab 1 Ex-2 p.1 herein.

7101 HYPERTENSION

Service Connected, Vietnam Era, Incurred

60% from 11/28/2005

7007 HYPERTIVENSIVE HEART DISEASE

service connected Vietnam Era Incurred

0% from 3/01/1973

60% from 8/30/1994

30% from 11/28/2005

*Exception this misrepresentation does not include the medical history of Service connected compensation from the following period for 7007 disability compensation. See Tab – 7 Ex-2. This earlier rate combination and facts were found by earlier RO ratings and BVA and is not subject to arbitrary adjustments or changes by 317 VARO attempt to change the history or compensation.

30% from 8/6/67

30% from 10/01/1967

100% from 1/26/68

30% from 4/1/68

b) **Grant separate evaluations for hypertension at 60%:** VA admits "The rating criteria for evaluating the cardiovascular system changed on January 1998 and allowed for separate evaluation for hypertension and heart disease." Based upon the evidence of record VA evaluated the hypertension at 60% alone. VA indicated that the 60% evaluation of 7101 was made because the diastolic reading was over 130 or more. VA does not attempt to make the separate evaluation at any time between 1998 when the change was mandated. VA considers the effective date [November 25, 2005] this is CUE. The records indicate that VA had readings of diastolic or 120-140 from the time of the accident in US Army records to the readings of diastolic 140 during VA initial examination to 242/141, 224/143, 242/159 which it cites from VA C&P dated March 6, 2007. See Tab 1 Ex- 2 DROD pg. 4-5; Also see Tab -7 Ex -2, & 8 herein.

c) **Heart Disease was reduced from 60% to 30%:** VA provide this rating by intentionally ignoring the medical facts the VA requirements under VA Occupational Handbook 5019; 38 CFR sec 4 disability rating and the Physician's Guide for Disability Evaluation Examinations. VA records show that I was evaluated for 7007 Hypertensive heart disease upon discharge from the US Army showing the following disability ratings while the VA suppressed various material findings of the disability: See Tabs 7 Ex-2,8,9,10; Tab – 6 herein.

US ARMY NOTED CAD, HEART MURMUR, HYPERTENSION AS HIGH AS 190/120 AND 154/112 ON DECEMBER 23, 1967 DR. HENRY WISE SUGGESTED CARDIO-RENAL INJURY WITH POSSIBLE HYDRO-NEPHROSIS. DR. WISE SUGGESTED MEB AND COMPENSATION CASE WHICH WAS REQUIRED UNDER AR 40-501. DR. JACKSON INDICATED THAT IVP WAS NORMAL AND HE DIAGNOSED THE CONDITION AS ESSENTIAL

HYPERTENSION. THE US ARMY MEDICAL RECORDS INDICATE THAT THERE WERE TWO IVP COMPLETED. ONE WAS MADE AVAILABLE AND THAT SHOWED IMPRESSIONS "DOUBLE COLLECTING SYSTEM ON THE LEFT." SEE TAB -7 EX 3, 4, 5  HEREIN.

THESE DOCUMENTS SHOWING US ARMY PERFORMED IVP SHOW DIFFERENCES, ALTERATIONS, AND CHANGES IN MATERIAL FACTS SHOWING "TO DUTY "PERMANENT 3P PROFILE" IN A DIFFERENT HAND THAN DR. JACKSON WHO PREPARED THE DOCUMENT IT IS CHANGED "TO DUTY WITHOUT PERMANENT ASSIGNMENT LIMITATIONS." THE DATES ARE DIFERRENT ON TWO SHOWING 26 SEP 66 ON THE HANDWRITTEN SIGNED ONE AND 29 SEP 66 ON THE TYPED VERSION OF THE DOCUMENT.

9/18/67 VA EXAMINATIONS SUPPRESS DR. WISE AND THE MATERIAL FINDINGS OF DIASTOLIC HYPERTENSION READINGS AS HIGH AS 120 OR WITH ANY HYPERTENSION OVER 110 WHILE IN THE US ARMY. VA RECORDED THE LESSER READINGS TAKEN FROM THE SAME PAGES AS THE HIGHER READINGS. THE US ARMY DISPENSARY RECORDS DO NOT PROVIDE ANY RECORDING OF HYPERTENSION AFTER JANUARY 31, 1967 READINGS PROVIDED BY DR. JACKSON. THE US ARMY RECORDS SHOW THAT FROM JANUARY 31, 1967 US ARMY REFUSED TO FOLLOW THE MEDICAL PROTOCOL BY REFUSING TO TAKE MY BLOOD PRESSURE DURING MEDICAL EVALUATIONS. THE RECORD SHOW THAT DURING THE PERIOD FROM JANUARY 31, 1967 THROUGH AUGUST 5, 1967 THAT I WAS EVALUATED AS UNSUITABLE FOR STRENUOUS PHYSICAL ACTIVITIES, FURTHER PARATROOPER DUTIES AND HELD TWO PERMANENT LIGHT DUTY PROFILES WERE NOT NOTED BY THE VA EXAMINERS AND RATING SPECIALIST WHO INDICATED THAT THEY HAD MY US ARMY MEDICAL RECORDS. THE VA EXAMINATIONS ON 9/18/67 PRODUCED READINGS OF 240/140 AND 220/120. THE BLOOD PRESSURE READINGS CONTAINED IN THE US ARMY RECORDS HIGHER THAN 110 WERE NOT RECORD IN THE INITIAL RATING WHILE LESSER ONES WERE NOTED.

1/26/68 THROUGH 3/4/68 I WAS HOSPITALIZED AT BROOKLYN VA HOSPITAL DUE TO SHORTNESS OF BREATH AND SEVERE CHEST PAINS. DURING THE PERIOD OF HOSPITALIZATION UPON ADMISSION EXAMINATION HEART AND LIVER COMPETE FOR THE 5TH ICS; I NOTIFIED THE VA PAIN IN BACK AND A NON SOCIAL DISCHARGE THAT I HAD EXPERIENCED FOR 9 OR 10 MONTHS AND HAD RETURNED A MONTH AGO. I HAD MADE COMPLAINTS OF PAINS IN STOMACH AND GROIN VA FORMS 21-2545 FILED 9/18/67; VA URINALYSIS SHOW LOADED WITH WBC AND BACTERIA AND OCC RED CELLS ON 1/27/68; DR. CONDON PROGRESS REPORT SHOW CONTINUED COMPLAINT ABOUT THE NON-SOCIAL DISCHARGE FROM THE PENIS ON 2/15/68; PROGRESS REPORT SHOW THAT 2/19/68 DR. CONDIN WAS CHANGED BY VA TO DR. PAULSON WHO NOTE QUESTIONABLE ABNORMAL IVP AND ORDER CULTURE; IVP TAKEN 2/2/68 SHOW FAINT NEPHROGRAPHIC EFFECT; SLIGHT NARROWING AT THE PELVO-URETERAL JUNCTION; DOUBLE PELVIS AND PROXIMAL UTHERER ON THE LEFT UNITING BELOW THE PELVO-

6

URETERAL JUNCTION AND POSSIBLE ABERRANT VESSEL. HOSPITALIZATION SHOWS 7007 FROM 30% EFFECTIVE AUGUST 5, 1967 TO 100%. SEE TAB – 6 EX-5 HEREIN.

These injuries were intentionally suppressed by the VA. Dr. Paulson progress notes noted 2/19/68 that there was a questionable abnormality with the KUB and ignored Dr. IKruszel 2/2/68 suggestion "Selective ateriography on the right to confirm or rule out aberrant vessel." The renal scan shows dysfunction in the right kidney. Dr. Paulson wrote the hospital summary upon discharge from the VA hospital 3/4/68 and suppresses all of these medical findings. He wrote "while in the hospital he developed urthethral discharge which was treated with erythromycin. Culture of the smear proved to be negative. Culture revealed staphylococcus epidermatous.

Dr. Paulson progress notes just a few days earlier showed questionable abnormal IVP and the medical records show that I had complained of non-social discharge from my penis on the day I was admitted to the VA hospital. Numerous tests discovered urine loaded with WBC and occasional red blood cells i.e. draining from the KUB. The Renal gram supported Dr. Wise earlier concerns about Cardio-renal injury. The VA continued to follow the US Army earlier actions suppressing the abnormal IVP. Dr. Paulson summary did not include the abnormal IVP and he misrepresented these material medical findings in his summary.

The discharge from my penis continued and I was treated by Brooklyn Health Department, a Private physician who diagnosed the condition as kidney infection in some cases but in all cased I was treated with anti-biotic. There was always a complaint of groin and back pains with the condition which I suffered after the accident. The complaints were always accompanied with hypertension which had not existed before the accident. It was clearly associated with the accident and the refusal of the US Army to provide proper treatments and tendency of some of the doctors like Dr. Jackson and Lafallet to write down what they wanted not regarding what was in the reports and examinations. The VA followed this pattern with the back injury and refused to record like Dr. Paulson suppressed medical findings. The VA continued to suppress these medical records just as the US Army had done continuing the violation of my rights to material medical records and engaging in malpractice my denying me the best possible care for service connected injuries. See VA Form 21-2545 dated 9/25/72 Tab-5 EX 4 herein.

1971 VBA Docket 70-16 501 grant from 100% effective April 1, 1968 to 40% combined. The findings show ratings as 30% 7007 and 10% 5295. The decision concluded a diagnosis of

7

Lumbar myslgia and hypertensive arteriosclerosis heart disease Class II. Pg. three also see Tab- 5 Ex -1  herein.

1991-1993 I worked as a light carpenter and painter from 1991-1993 and the medical problems continued.  Peavey went to the VA Medical Center in Miami, Fla and filed a claim for increased benefits.  The objective medical findings in 1993 were high blood pressure with a diastolic pressure above 110 [in the range of 120] readings sometimes 240 over 120; left ventricle hypertrophy; Bradycardia [51] below 60; CO2 levels of 33; protein [albumin] in urine and other evidence of enlarged aorta. See Tab 4 Ex-4 herein.

The VA acted to suppress the all records of treatment during 1993 and indicated that the application for increased disability for 7007, 7101.  I made an application for unemployability during 1993 and the records show that I was not gainfully employed since 1990.  VA act with NPRC to create a Brill file which shows no original history of service connected disability.  The VA acted 1993 intentionally to suppress and attempt to destroy the earlier VA compensation history for Cardio-vascular disease.  VA deliberated created a brill file to replace my original medical records and also suppressed all VA medical treatment records which pre-dated the new VA claim taken in 1994 when I complained to Senator Sam Nunn about the adverse VA actions. See Tab – 5, 6, 7 herein.

**1994 I complained to Senator Sam Nunn and the VA took another claim for disability increase and I was given a C&P and examined by VA Miami Medical Center August 3, 1995.** Dr. Lavin examination for disease of the heart show blood pressure of 240/120 and pulse of 72, no adventitious sounds heard in the lungs, no pedal edema, suspect possible enlargement of liver, he has a quiet early systolic murmur GR 1-2; there is straightening of the retinal arteries but no hemorrhagic areas found.  He notes enlarged heart with apex beat beyond the mid-clavicle at 5th ICS but not confirmed by X-ray' diagnosing hypertensive cardiovascular disease, CHF incipient; Hypertensive retinopathy (mild) Coronary artery disease Subjective: complains about swollen ankles; pain in the left chest down the left arm at times, and swelling but not recently; Frequent headaches and since he has been working hard, he has found that he has lost his strength. He has had no recent chest pains. See Digital 1:05CV0819 TAB CUE EXHIBIT.
IN 1993 VA X-RAYS AT MIA VAMC SHOWED ROUNDING OF THE APEX DUE TO HYPERTROPHY. SEE TAB 4 EX-8.

VA CONTINUED TO SUPPRESS INFORMATION BY FRAUD IN 12/4/95 RATING.  VA INDICATES EXAMINATION 9/5/95 WHICH DID NOT OCCUR, VOID CERTIFIED MEDICAL REPORT OF HEART DISEASE 8/3/95 BY DR. LAVIN SUBSTITUTE DR. KNOPHA 9/5/95 REPORT ALTHOUGH I WAS NOT RE-EXAMINED BY DR. KNOPHA.  THE SUBSTITUTED MEDICAL REPORT SUPPRESSES MY COMPLAINTS OF PAIN IN CHEST AND DOWN LEFT ARM, SWELLING IN HANDS AND FEET AND LOST OF STRENGTH.  IT ALSO SUPPRESS THE OBJECTIVE REPORT OF DR. LAVIN SHOWING

HEART MURMUR, STRAIGHTENING OF RETINAL ARTERIES; SUSPECTED ENLARGED LIVER AND LAB SHOWING PROTEIN IN URINE. THE VA BROOKLYN HOSPITAL TREATMENT 1-26-68 THRU 3-4-68 IS SHOWN AS OUT PATIENT CARE (OPC) –SEE TAB 4 EX-3.

THE VA DECEMBER 5, 1995 RATING SHOW VAH BROOKLYN 1968 AS OPC 2-268 AS 2-26-68 OPC TREATMENT. IT DOES NOT INCLUDE 1993 VA TREATMENT AT EO VAMC AND MIA VAMC NOR DOES IT SHOW 1993 INDICATIONS OF LVH, BRADYCARDIA, WIDENING OF AORTA, EDEMA [SIGNS OF HEART FAILURE].. THE REPORT ALSO SUPPRESS DR. LAVIN SUBJECTIVE SHOWING VARIOUS SYMPTOMS OF CHF AND VA VOID DR. LAVIN OBJECTIVE FINDINGS OF ENLARGED LIVER WHICH IS ALSO A SYMPTOM OF CHF. TAB 4 EX – 3 HEREIN.

VA RATING DECISIONS AFTER 1973 OMIT ALL INFORMATION SHOWING A HISTORY AND TREATMENT OF CARDIO-VASCULAR DISEASE BETWEEN 1967 AND 1973. VA SUPPRESSION OF THESE MEDICAL TREATMENTS ARE INTENTENTIONAL SUPPRESSION. THIS IS CLEAR BECAUSE THE VA CONFISCATED MY VA IDENTIFICATION AND CREATED A BRILL WITH THE INTENTION OF DESTROYING THESE MEDICAL RECORDS. THIS ATTEMPT AT DESTRUCTION OF THESE RECORDS CAN BE SEEN BY VA PRESISTENT REFUSAL TO PROVIDE MEDICAL RECORDS SHOWING THE PERIOD OF HOSPITALIZATION AT VA HOSPITAL BROOKLYN 1/26/68 THRU 3/4/68. THESE ACTS OF SUPPRESSION CREATED CUE AND VA REFUSED THESE RECORDS FORCING ME TO FILE IN THE US DISTRICT COURT FOR THE DISTRICT OF COLUMBUS 1:05CV 0819 PEAVEY VS GONZALES SEE DOC. 24 AND 25 ALSO DOC 8 THEREIN.

2001 VA HARASSED ME BY SENDING A MARCH 2001 NOTICE OF DEATH TO THE ATTENTION OF MY ESTATE. VA DISCONTINUED MY BENEFITS APPROXIMATELY FIVE MONTHS EVEN THOUGH THEY WERE NOTIFIED THAT I WAS NOT DEAD. VA ADMITS THAT THEY COULD NOT PRODUCE ANY CREDIBLE DOCUMENT SHOWING THAT THEY RECEIVED A NOTICE OF MY DEATH. THE VA THREATEN TO DISCONTINUE MY BENEFITS AGAIN IN 9 2002 FALSELY ALLEGING THAT VA RECEIVED A CHANGE OF ADDRESS FROM THE US POSTAL OFFICE. VA AGAIN DISCONTINUED MY BENEFITS TWO MONTHS MAY 1, 2003 THROUGH JUNE 30, 2003 ALLEGING VA WAS COLLECTING AN OVERPAYMENT OF BENEFITS. VA DENIED HARDSHIP WAIVER ALTHOUGH THE BENEFITS WERE MY PRIMARY SOURCE OF INCOME AND I WAS RATED 70% DISABLED [60% 7007 WITH INSIPID CHF AND 10% 5295 LOWER BACK SYNDROME]. TAB 2 EX 2 & 3.

2002-2004 I was treated at VA EO and University Hospital of NJ for complaints of sob, chest pains and complaints of chronic CHF, ACS and LVH. During the period 1991 through

2004 private physicians and hospitals treated me for symptoms of Chronic CHF which showed a

heart murmur, enlarged heart [diagnosed as cardiomeyopath]; Tab – 3 Ex 1 herein.

   2005-2006   a) 9/16/2005 I fainted while at a friends home and she called EMS who
documented shortness of breathe; rales; wheezing, high temperature and disorientation. I was
taken to Columbus Hospital and diagnosed with MI, Sepsis, Pneumonia, and dysfunctional
kidney. Labs showed elevated tropin and other cardiac enzymes; P02 59; LVEF of 40%. My
condition was stabilized and I was released 9/27/05. Tab-3 Ex 2&3&4.
   VARO DROD represent "you were admitted on September 16, 2005 with pneumonia, sepsis,
elevated hypertension altered mental status" then the analysis of my medical emergency and
treatment at Columbus Hospital continue "additional DROD assessments of congestive heart
failure, renal insufficiency and a hydrocele were made while you were hospitalized an
echocardiogram note left ventricle ejection faction of 40%. Tab 1 Ex 2 herein.

NOTE: 30%-50% LEVH require 60% disability rating separately from any hypertension rating.

   b) On or about August 21, 2006 I was at a relative house and fainted the next          morning
I was having difficult time breathing and he called the EMS. The EMS   examination    showed
rales and edema symptoms CHF. I was treated with nitrates and   diuretics   [infusion]   while
being transported to hospital. I arrived at emergency University   Hospital of NJ examinations
noted crackling in lungs, confusion, and vomiting. Vitals  show bp 226/130 I was diagnosed
with ACS, HTN, CAD, CHF. Hospital records show sinus bradycardia with heart rates [8/22/06
46bpm, 54bpm]; [8/23/06 39bpm, 33bpm,   48bpm, 58bpm]; [8/24/06 50bpm,55bpm,]; [8/25/06
37bpm; 45bpm, 70bpm, 37bpm,      39bpm]. See Tab 3 Ex 4 herein.
   c) ACS was precipitated by simple walking and it was accompanied with severe braydicardia.
Medical history show I have suffered persistent and repeated kidney dysfunctions [ VA 1968
note albumin in urine, abnormal IVP, and persistent penile discharge 1967-1972; protein 30H in
urine 1994-1995; kidney dysfunction 2005] over the years I refused stress tests. I have been
advised by competent medical doctors that such stress test are not advisable because these
factors. I have also been informed by competent medical doctors that I suffer cardiomeyopathy
therefore when my heart is stable I should   do nothing to provoke stress and risk further injury.
I have always agreed to echo cardiograms without stress. I signed my self out of University of
NJ hospital noting these facts and that I was leaving against the best medical advice. I informed
the doctors that I was in a homeless situation and would follow up out patient treatments for the
insertion of a catheter if my social situation allowed it. The homeless situation did not allow the
OPC for the catheter. The hospital noted lab showing hematuria RBC>150; hyaline cast &
granulocyte   and wbc 4 then note "has been seen by OPC." See Tab -3 Ex-4.

     DROD show as evidence treatment records from University Hospital of NJ of admission

of August 22, 2006 to August 27, 2006. DROD interpret the hospitalization as " you were again

hospitalized August 22, 2006, at University Hospital of New Jersey with chest pain which

resolved shortly after admission. You refused cardiac testing and remain asymptomatic on

August 25, 2006. You were released against medical advice. A hydrocele was also noted and

your were referred for outpatient treatment for that condition."

14

DROD interpretation is CUE because it notes that I refused cardiac testing but could determine I remained asymptomatic without that testing.   The VA further claims I was released against medical advice which implies I needed a longer period of hospitalization.  VA misstates the reason the Dr. prescribed out patient care noting it was to treat the hydrocele when in fact it was to insert a catheter.   The hospital performed echocardiogram but I refused infusion of thallium or heart stimulators because of the ACS, malignant blood pressure, and CHF which I suffer.  I also suffer dysfunctional kidneys and have been told by a number of doctors that such treatments could cause severe medical problems.  See Tab 1 Ex-2 herein.

**2005 VA and NPRC submissions included DD 149 for corrections of military records and** later SSOC in VARO 317 appeals indicated that I had outstanding administrative actions and had not exhausted these administrative actions.  I completed and filed these applications for correction of US Army records and filed VA form 9 and COWC timely but VA returned the documents indicating that the matter was pending 9/21/05 and the US Army Board indicated that the records supporting my claims do not exist.  I had attached the necessary proof and US Army, NPRC, and VA have acted to continue suppressing these files. Cong ¶94.

2007 MARCH 25, VA INDICATE THAT ITS C&P EXAMINATION SHOWED DIASTOLIC PRESSURE OF 242/141; 222/143 AND 242/159 WAS NOTED. THE MEDICAL REPORT OF THE EXAMINATION ALSO    SHOWS EDEMA AND LEFT VENTRICLE DYSFUNCTION.  GIVEN THESE FINDINGS AND THE HISTORY OF 7007 THE VA INDICATED I SUFFERED FROM ZERO HEART DISEASE AFTER ITS C&P EXAMINATION.  THE VA INDICATED THAT 7101 WAS RATED      60% AND THAT THE CHF 7007 WAS REDUCED TO ZERO.

VA CONTINUES TO SUPPRESS ALL MATERIAL MEDICAL RECORDS WHICH SHOW A HISTORY OF CHRONIC CHF WITH ACUTE EPISODES. THE ECTITOLOGY AND HISTORY SHOW PRIVATE DOCTORS AND VA'S OWN DOCTORS SHOW THE PROGRESSION OF HYPERTENSIVE CARDIO VASCULAR AND CARDIO-RENAL DISEASE RISING FROM T HE INJURY TO MY KUB AND OTHER UNTREATED INUJURIES AND SHOWING OF ABNORMALITIES, INJURY AND OR DISEASE TO MY GROIN WITH BRUITS, MURMURS, AND VERY DISATOLIC PRESSURES. THE DIASTOLIC PRESSURE WAS OVER 110 AFTER A PERIOD OF MEDICAL TREATMENTS THIS IS CLEAR FROM THE US ARMY RECORDS AND EARLY VA RECORDS. THE VA ACT OF SUPPRESSION IS SHOWN BY IS WILLFUL NEGLECT IN INCLUDING THESE MEDICAL FINDINGS AND BY SUPPRESSING THEE VA HOSPITAL FINDINGS OF NEPHRORATIC EFFECTS IN THE KIDNIES, NON-SOCIAL DISCHARGE FROM THE PENIS AND THE EXCESS AND PERSISTENT REFRACTORY PRESSURES OVER 120 DIASTOLIC.

DURING THE PERIOD OF MEDICAL TREATMENT BY VA AND PRIVATE DOCTORS BETWEEN 1967 THROUGH 9/25/72 I CONTINUED TO SUFFER FROM SYMPTOMS DUE TO INJURY OR DISEASE RESULTING FROM THE INJURY TO MY LOWER TORSO WHICH WAS TREATED BY VA, NY HEALTH DEPARTMENT, PRIVATE DOCTORS AND OTHER MEDICAL REMEDICIES. THE CHRONIC NATURE OF THE INJURIES SHOWED IN THE INFECTIOUS DISCHARGES AND PAIN

11

WHICH I SUFFERED TO MY STOMACH, GROWN AND RIGHT FLANK WHICH WERE ACUTE FOR OVER FIVE YEARS.

VA ACT TO SUPPRESS, ALTER, AND ATTMEPTED TO DESTROY THESE MEDICAL FACTS. VA RECEIVED MEDICAL DIAGNOSES OF LVH [1967]; MUMERS, ENLARGED HEART, CARDIO-MYEOPATHY AND ROUNDING OF THE AORTA 1993-1995 WITH SYMPTOMS OF CHF INCLUDING EDEMA AND ENLARGED LIVER AND OTHER ASSOCIATED SYMPTOMS; 2005 MI, AND ASSOCIATED SYMPTOMS OF CHF; SEPSIS; PNEUMONIA; 40% LEVH; 2006 ACS WITH LEFT VENTRICLE DYSFUNCTION AND VER Y LOW HEART RATE 33BPM TO 47 BPM AND MALIGNANTE BLOOD PRESSURE.

VA MISREPRESENTS THE MEDICAL RECORDS OF COLUMBUS HOSPITAL, UNIVERSITY HOSPITAL OF NJ AND PRIVATE PHYSICIANS COVERING A PERIOD FROM 1993 THROUGH 2007. VA ALSO SUPPRESS AND ALTERED ITS OWN RECORDS AND CONTINUED TO MISREPRESENT VA HISTORICAL RECORDS RELATED TO THE 7007 RATING. THIS WAS ANOTHER ATTEMPT BY VA TO CHANGE THE ETIOLOGY OF THE DISEASE FROM 7007 CARDIOVASCULAR DISEASE TO HYPERTENSION. VA continue attempt to change the history and etiology of 7007 violate my right to proper diagnosis and treatment of my service connected disabilities and violate §3.304 (b) (1) (2); Etiology; §3.303 (b).

4/22/2008 SOC adjudicative actions list 4/19/2007 notice of decision.    4/19/2007 rating decision changes the etiology of the claim from 7007 to 7101. VARO 317 Disregard the medical history and earlier rating of 30% Gr II-atherosclerosis [7007] August 5, 1967 to 100% January 1968 to 30% through April 1, 1973 [i.e. over 5 years];    Hypertensive heart disease [7007] August 1994 to 60% through periods of hospitalization

9/16/05 diagnosis MI showing LVEF 40% without stress 102bpm and 8/22/06 diagnosis ACS showing braydicardia 33bpm. Ignores the rating and decision of 5/21/2004 which maintains 7007 at 60% denying employ ability.  Ignore the law requiring VARO to submit     my timely filed COWC for BVA appeals; ignore the law requiring "A final and binding      agency decision shall not be subject to revision on the same factual basis except by duly      constituted appellate authorities or except as provided in § 3.105 of this part." § 3 .104.

MALICIOUS DISREGARD:

VA DROD dated 4/22/08 attempt to dismiss all appellate claims and CUE. These actions are in conjunction with the long term violations which VA had made in this matter. VA use the VARO to submit its findings after the C&P which clearly suppresses material medical facts, disregard diagnosis of certified medical doctors, deliberately create long delays while denying me proper medical assistance and continue to create long pending delays which has required me to seek congressional assistance as well as file extensive legal actions against the Department of

Veterans Administration.

The VA has and continue to engage in these malicious activities under color of laws 38 Title § 511. These acts are malpractice and have gone further. They are deliberate and used my medical condition show serious disregard for my medical health. Today I am required to respond to this DROD rating decision not withstanding that I have opposed these misrepresentations and VARO 317 continue to arbitrarily find facts, altered and suppress material facts and destroy any facts that it wish to destroy to continue its cover-up without any regard for my medical disabilities or rights to proper medical care. The DROD does not sufficiently respond to the NOD or COWC which have been filed with the Department of Veterans Administration. VA act in concert with US Army and abuse VJE process denying me various rights and subject me to violations of Equal process including arbitrary taking of benefits in 2001 and 2003. See Tab 2 herein.

The DROD show jurisdiction as the NOD 8/15/07 and the associate claim 172 however is does not respond to every issue contained in the response to the SSOC which was provided to the VA. The VA associated [172] claim which must be the 171 pending 234C COWC are said to be dismissed by the DROD. See pg. 1... also See Tab-2.

DROD omission continue the VA misrepresentation which it had presented in the 12/5/1995 rating decision which does not show any compensation for 7007 before 1972 and does not show a period of 100% for any period of hospitalization. This rating decision follows the previous attempts to suppress the history or VA treatment for the hypertensive heart disease. It correspond to VA present analysis which it attempted show the etiology as 7101. VA rated 7007 as zero showing no history or etiology of 7007. This is a deliberate attempt to suppress the etiology and VA medical treatment for Heart Disease. VA deliberately used CUE to change the cited combined ratings. They are material because the Department of VA show the rating for 7007 as zero even when the medical evidence show 40% LVEH 2005 and ACS with bradycardia 33 2006. The VA guide for rating 7007 require a minimum of 60% for any LVEH between 30-50% or two periods of hospitalization within one year. VA DROD cite LVEH of 40% and show two periods of Hospitalization within one year 9/16/2005 and 8/21/2006 yet rate 7007 as zero, asymptomatic, and then 30%. These material factors were presented in NOD p.5 to p.17. See Tab 2 ex-12.

7599-7502    KIDNEY CONDITION

13

No Service Connected. Not incurred by Service

VA acts suppressing, alternating and destroying federal records show intent to defraud:

My medical records showed injury while I was in the US Army 9/16/66. My US Army records showed I had a bruit in the abdomen, complained of pain in groin and abdomen and back. When I was released from the US Army with these same complaints and was suffered a continuous non-social discharge from my penis which includes bloody pus. The US Army had refused to provide the proper medical treatments and when the VA discovered these complaints in the VA hospital they confirmed the existence of an abnormal IVP, Urine loaded with white and red blood cells; dysfunctional kidney, and VA continued to cover-up these injuries. Dr. Paulson summary of VA hospital discharge suppressed these medical facts and the VA refused the records violating my rights which I had under FOIA 5 USC § 552. VA continues to deny release of these records until I moved for an injunction in the US District Court. ABCMR indicate that VA refuses to submit it various records which it maintain as US ARMY records custodian.

I was treated for the problem from 1968 through 1972 by the VA NY Health Clinic and private physicians and VA had records of my complaints and denied compensation because it would prove that I had a service connected injury to my KUB which would prove that the US Army  error and violated of AR 40-501. The evidence show a double pelvis and collection system with possible aberrant vessel. My complaints of groin pain and the other injuries were accompanied with protein in my urine and test by VA in 1993-1995, and multifaceted kidney dysfunction was diagnoses 1995. Grotesque hydrocele with a hernia on the right was diagnosed 2002. The VA, University Hospital of NJ, and private physicians have examined me and offer various diagnosis and solutions to the problem. VA has been provided the release for various private doctors' medical records that treated me for heart disease, and kidney infections, and hydroceles. All of those diagnoses have not been the same but many include a requirement to remedy the heart condition before doing surgical repair to the hydrocele.

The VA DROD dated April 22, 2008 alleges that the decision "is a complete grant of the issue on appeal." This is not correct as a matter of fact or law. The grant 1) change the effective date of the claim from June 9, 2003 sic April 10, 2003 to November 28, 2005, 2) does not respond to the claim 317/243C Appeal and the change in the date of all claims [according to 38 Title § 1151.] regarding further injury to my KUB evident from the grotesque hydrocele and

14

hernia; 3) does not respond to the CUE contained in 317143C COWC dated October 2003 showing taking under pretext; 4) does not provide the proper diagnosis of chronic CHF for the period of the claim but reduce the claim to 7101 hypertension of 60% and arbitrarily assign 7007 hypertensive heart disease to 30% totally ignoring the etiology and progression of the service connected claim and attempt to cover-up the US Army malfeasance. These actions by VARO 317 are violations of my rights to a BVA review and also violate my rights to Due Process because I timely filed COWC containing these claims. The VA actions also are medical malpractice because they deliberately provide erroneous diagnosis to continue these cover-ups.

VA SUPPRESS AND MISREPRESENT US ARMY MATERIAL MEDICAL FACTS

See documents from US Army Dispensary 9/18/66 showing " Got Hit by Car this morning—9/20/66 "BP left arm sitting 185/120; 12/19/66 BP profile and 1049 have all been sent forward BP 154/112; 12/22/66 "Compensation Case"--- "Hit as pedestrian from behind on 17 Sep 66 no BP taken Examination: "Entirely & unequivocally normal, including the stress of lifting 185# with the back flexed (he laughed) because the weight was me.; 3 pages with dates re: Dr. Lafallet findings after AWOL and Dr. Wise suggestion "this man must be fully evaluated cardio-renal wise. Perhaps this back pain is in truth a hydronephratic kidney or aneurysm—See Tab -7 herein.

Dr. Jackson Chief Cardio Svc. 1/31/67 report show blood pressure readings 148/98 and 138/96 and 170/110 which the VA sited in its 9/18/67 evaluation. VA does not site any blood pressure reading from the US Army dispensary records above 110. Dr. Jackson also show a heart murmur, bruit in abdomen and arteriole narrowing and left double collecting system but this information is not entirely legible in the lab data section. The same report at 2 related to chronic renal disease i.e. hydronephrosis is not legible in the report and show essentially normal IVP; 3 for renal injury secondary to old trauma to his back R/O by normal IVP and Urinalyses. Id.

DA Form 8-275-2 US Army Clinical Record Cover Dated October 4, 1966. I have been provided three different varieties of this document the first is hand written with 26 Sept as the date of the procedure. I am providing copies of this document which show alteration. The first is original which show Dr. Jackson signature and a strike through over Duty & permanent profile [duty with permanent assignment limitations]. The substitution is made by a different handwriting than that of Dr. Jackson. The next document submitted Duty & permanent profile.

show copied from Claims Folder Department of Veterans Affairs is not legible as for Dr. Jackson signature or his notes; the third version of the same document show copied from Claim Folder Department of Veterans Affairs is a typed form with the date 29 Sep 1966 and Dr. John P. Jackson name typed and a stamp Stanley P. Kotskaw registrar and no signature.

VA USED ALTERED  MEDICAL RECORDS TO DISTORT THE DEGREE OF INJURY AND DISEASE CREATING MALPRACTICE AND CAUSING ME FURTHER INJURY.

VA FORM dated 9/18/1967 note pain in chest occasional cramps in stomach & swollwen neck & sharp pains in spine, headaches, occasional dizziness throbbing in chest and under arms; the 9/18/67 rating schedule copy specific information form 9/17/66 and 9/27/66 but suppress the more material bp readings and readings of 200/140 and 200/120 for that day with EKG reveal flat T-waves and diagnosis of hypertensive cardiovascular disease.

VA hospital summary dated 3/4/68 for period of hospitalization approximately 5 months after being discharged from the US Army misrepresent the period of inpatient medical examination and treatment in the VA Hospital 1/26/68  through 3/4/68 because it suppress injuries to my KUB by not including VA Hospital Documents (2) which notes complaints "penile discharge 9-10 months ago, discharge in a.m. Returned 1 month...the summary CUE states "while in the hospital he developed urethral discharge which was treated with erythromycin." (6) clinical record show complaints of non-social discharge 2/15/68.  (13) a urinalysis indicated report dated 1/27/68 show occ. Epith cells, R&M loaded with WBC some bacteria"...summary does not support this medical finding; (17) show IVP test results dated 2/2/68 ordered by Dr. Condin show slight narrowing of pelvo-ureteral junction on the right side with possible aberrant vessel; double pelvis with proximal ureter on the left uniting below the pelvo-utertal junction and suggest arteriography on the right to confirm or rule out an aberrant vessel... Dr. Paulson summary does not contain and information of these findings on his 3/4/68 summary.  Dr. Paulson deliberately omit this material medical information.  This is clear from the doctor progress report which he wrote 2/19/ where he noted will get renogram & scan because of questionable abnormal IVP. (19) the renogram show that secretory phase on left is 2.5 and right is 4.7 with the usual range of from 3 to 6 minutes; the excretory phase is 9.5 on the left and 12.2 on the right with 9-12 minutes as the normal.  There disproportional function beyond

normal seen on the right and the IVP also notes a faint nephrographic effect at one minute in both kidneys.

VA ACTIONS ARE CLEARLY INTENTIONAL. THEY SPAN A LONG PERIOD OF TIME AND HAS REQUIRED SUBSTANTIAL CONSPIRACY TO MAINTAIN. US ARMY CONDUCTED ITS OWN CRIMINAL INVESTIGATION TO RESPOND TO CONGRESSMAN BRASSCO IN APRIL 1967 THROUGH AUGUST 5, 1967. THOSE RECORDS HAVE NOT BEEN MADE AVAILABLE FROM NPRC PURSUANT TO 5 USC 552 FOIA REQUEST. VA 136 MIS CONGRESSIONAL INTEREST FILE HAVE NOT BEEN PROVIDED AND THESE AGENCIES WHO MAINTAIN THAT THEY ARE CUSTODIANS OF MY OMPF AND US ARMY MEDICAL FILES REFUSE TO PROVIDE ADEQUATE RECORDS FOR ABCMR TO DO THEIR WORK.

## SUMARY STATEMENT

VA DROD DATED 4/22/08 CAN NOT RESPOND RESPOND TO THE APPELLATE ISSUES RAISED IN BVA INT 42[90]; 317/243C APPEALS; 317/PRE0/FEM; 317 VSC/POST1/CC OR ANY NUMBER OF NAMED THIS APPELLATE ACTION HAS TAKEN. VA DROD IS LIMITED IN SCOPE BY LAW. IT IS NOT AN APPELLATE ACTION BUT REVIEW WHICH VARO 317 INDICATE NOD JURISDICTION BUT DOES NOT PROVIDE A BVA DOCKET NUMBER SHOWING REMAND WITH ANY MANDATED JURISDICTION OF INSTRUCTIONS TO CORRECT THE FILE OR ANY CUE. THE COWC AND APPEALS SUBMITTED TO BVA AND VARO 317 HAVE BEEN LISTED HEREIN AND THE ISSUES HAVE BEEN MADE CLEAR IN COWC DATED 10/27/03 FOR 317/243C WHICH VA ACKNOWLEDGE TIMELY RECEIPT ON 10/30/03. THE ISSUES CLAIM 1) VA TAKING OF ENTITLED BENEFITS WITHOUT DUE PROCESS FOR APPROXIMATELY 7 MONTHS; 2) VA ACTS OF TAKING AGGRAVATING INJURIES TO LOWER TORSO CREATING A GROTESQUE HYDROCELE; 3) VA ACTS OF FRAUD IN PROCESS TO COVER-UP US ARMY VIOLATIONS OF RIGHTS WHICH WERE PROTECTED UNDER AR 40-501; AND NUMEROUS CONTINUED ACTS OF SUPPRESSION, ALTERING, AND DESTROYING US ARMY AND VA RECORDS TO MAINTAIN THE COVER-UP AND FRAUD.

VA DROD CONTINUE TO COVER-UP THE VA ACTS OF SUPPRESSION OF CARDIO-RENAL DISEASE AND THE DEGREE OF 7007 RATING AND COMPENSATION. ITS CONTINUES TO ATTEMPT TO HIDE THE HISTORY AND ETIOLOGY OF THE DISEASE; PREVIOUS ABUSES OF VA ISSUING THE NOTICE OF DEATH 2001; VA THREATS TO DISCONTINUE BENEFITS 2002 AND 2003 AND DENY ANY HARDSHIP CONSIDERATIONS; AND THE VA ACTS TO SUPPRESS, ALTER AND DESTROY FEDERAL RECORDS SHOW FROM VA PERIOD OF INPATIENT CARE IN VA HOSPITAL BROOKLYN 1968 WHICH SHOW ABNORMAL IVP, KUB DYSFUNCTIONS WHICH INCLUDE NON-SOCIAL DISCHARGES FROM THE PENIS, DYSFUNCTIONS IN THE RT KIDNEY, PROTEIN IN URINE AND LEFT VENTRICLE HYPERTROPHY OF THE HEART.

VA DROD DATED 4/22/08 HAS THE SAME DATE OF THE SSOC WHICH MAKE ALL MATTERS THEREIN BEYOND THE AUTHORITY OF 317 VARO ORIGINAL JURISDICTIONS. ALL OF THE APPELLATE ISSUES HAVE BEEN ADDRESSED IN A COWC WHICH HAVE NOT BEEN DOCKETED WITH BVA.

VARO 317 SUBMITTED ITS SOC DATED JUNE 29, 05 AND COWC DATED 8/28/05 IS STAMPED BY VARO 317 RECEIVED 8/31/05. VARO 317 CAN NOT RESOLVE APPELLATE ISSUES IN ANY PENDING MATTERS. THE DROD IS A NON-RESPONSIVE TO MY APRIL 3, 2009 REQUEST FOR INFORMATION ABOUT THE BVA DOCKET OF THE MATTER AND DENIAL OF ALL 5 USC 552 FOIA REQUEST REGARDING THE CONTINUED SUPPRESSION OF THE RECORDS AND REFUSAL TO SUBMIT THE RECORDS TO ABCMR. THE SUBMISSION OF DROD IS REPETITIONS AND NON-RESPONSIVE TO A REQUEST FOR DOCKETING INFORMATION HOWEVER THIS STATEMENT IS PROVIDED TO PROVIDE NOTICE OF THE CONTINUAL TACTICAL DELAY AND VIOLATIONS OF MY RIGHTS WHICH EXIST UNDER 5 USC § 706G.

## SPECIFICALLY THE SUBSTANTIAL EVIDENCE PROVIDE:

1) VA HAS ACTED TO SUPPRESS, ALTER, AND OR DESTROY FEDERAL DOCUMENTS FROM MY US ARMY AND VA MEDICAL FILED WHICH IT ALLEGES IT IS THE OFFICIAL CUSTODIAN. VA HAS ACTED SINCE 1967 IN CONCERT WITH THE US ARMY TO MISREPRESENT MEDICAL RECORDS WHICH SHOW US ARMY VIOLATED THE RIGHTS I HAD UNDER AR 40-501. VA ACTIONS HAVE BEEN CUE AS THEY CONTINUE TO ENTER FALSE STATEMENTS AS TO THE STATUS OF SOC, NOD AND BVA FILINGS BY ENTERING ITS DOCUMENT [SOC DATED 6/29/05] INTO THE COURT PROCEEDING TO ALLEGE THE US DISTRICT COURT LACK JURISDICTIONAL. VA CONTINUES TO ABUSE THE PROCESS BY INDEFINITELY PENDING BVA ACTIONS SINCE 9/21/05 AND REFUSING TO RESOLVE ANY CUE OR CORRECT ANY RECORDS.

2) THE COURT WAS NOTIFIED OF DEFENDANT'S VA ACTS VIOLATING DUE PROCESS WHICH ARE NOT WITHIN THE AUTHORITY AND SCOPE OF 38 TITLE § 511. VA HAS ACTED UNDER COLOR OF LAW TO CONTINUE A COVER-UP AND USED FRAUD IN THE PROCESS. THE PRESENT DROD IS A CONTINUATION OF THIS RUSE AND HAVE BEEN REPORTED TO THE SECRETARY OF VETERANS AFFAIRS AS OF JULY 28, 2008. VARO 317 SUBMISSIONS INDICATE THAT NO GENUINE ACTION HAVE BEEN TAKEN TO CORRECT THE CUE. THE SECRETARY OF VA HAS BEEN PROVIDED AN AFFIDAVIT OF POINTS AND THE ISSUES ARE NOT NEW. A MOTION FOR INJUNCTION WAS FILED IN 1:05CV 0819 DOC 33 AND 35 AND THE CLAIMS AND FACTS OF FRAUD HAVE BEEN ESTABLISHED.

3) THE US DISTRICT COURT HAS BEEN PROVIDED A PROPOSED FINDING OF FACTS AND LAW UPON WHICH THESE ACTS ARE BASED DOC 48 AND DEFENDANTS DID NOT SUBMIT A TIMELY OPPOSITION. DEFENDANTS RECENTLY PROVIDED A STATEMENT OF OPPOSITION BUT DOES NOT PROPOSE ANY STATEMENTS, AFFIDAVITS BEYOND THE ERRONEOUS STATEMENTS PROVIDED IN DOC 8 BY STOCK AND LEVIN WHICH HAVE BEEN DISPROVE BY SUBSTANTIAL EVIDENCE PROVIDED IN DOC 14 AND SUBSEQUENT FILINGS OF DOC 27 AND OTHER SUBMISSIONS SHOWING VA HAD SUPPRESS THE MEDICAL INFORMATION SHOW IN INJURY TO KUB, KIDNEY AND PRESENTLY CONTINUE THOSE CUE. THIS STATEMENT WILL RESPOND TO VA DROD AND PROVIDE SUBSTANTIAL EVIDENCE TO ESTABLISH THE FOLLOWING FACTS:

A) VA REFUSES TO PROVIDE INFORMATION FROM ITS FILES SHOWING STATUS OF ALL APPELLATE ACTIONS RELATED TO COWC FILED AND NUMERATED IN DOC 33 & 35. VA SUBMITTED DROD WITH WARNING THAT "IF YOU ARE NOT SATISFIED WITH OUR RESPONSE, YOU HAVE THE RIGHT TO APPEAL THIS DISCLOSURE TO THE OFFICE OF GENERAL COUNSEL."

B) THE SUBSTANTIAL EVIDENCE SHOW THAT VA SUPPRESSED MATERIAL MEDICAL EVIDENCE CONTAINED IN MY US ARMY MEDICAL FILE WHICH SHOW DIASTOLIC PRESSURE AS HIGH AS 120, AND ABNORMAL IVP, BRUIT IN ABDOMEN, HEART CONDITION (MUMMER). SEE DISPENSARY EVIDENCE AND DR. JACKSON STATEMENT TAB -7 HEREIN.

C) THE EVIDENCE WHICH VA SUPPRESSED WAS INTENTIONAL BECAUSE THE VA INITIAL RATING DECISION REPORT LESS MATERIAL MEDICAL FINDINGS FROM US ARMY RECORDS OFTEN FROM THE SAME PAGES AS THOSE MORE MATERIAL FINDINGS WHICH WERE SUPPRESSED. VA ALSO HAD ITS OWN RECORDS OF BLOOD PRESSURE SHOWING 240/140 UPON INITIAL EXAMINATION AND DID NOT SHOW THE 185/120 FROM THE US ARMY RECORDS OR NOTE ANY PRESSURE FROM THE US ARMY RECORD HIGHER THAN 110 DIASTOLIC. ANY SUCH READING WOULD SUPPORT US ARMY VIOLATION OF AR 40-501. BECAUSE A DIASTOLIC READING HIGHER THAN 110 AFTER A PERIOD ON MEDICATION WHILE AMBULATORY MAKE THE PERSON UNSUITABLE FOR FURTHER ENLISTMENT.

D) VA ALSO CITE THE LOWER READINGS FROM DR. JACKSON REPORT DATED 1/31/67 AND PROVIDE NO OTHER RECORD OF VITAL SIGNS RECORDED TO PEAVEY RECORDS FROM 1/31/67 THROUGH

8/5/67. THE MATERIAL INFORMATION IN DR. JACKSON REPORT SHOW BRUIT IN ABDOMEN, MUMMER AND AGAIN AR40-501 INDICATE THAT DYSFUNCTIONS OF THE HEART OR KIDNEY WITH ANY HYPERTENSION MADE THE SOLDIER UNFIT FOR DUTY. THE VA ACT TO SUPPRESS ALL EVIDENCE OF HEART AND KIDNEY DYSFUNCTIONS.

E) VA FOLLOW THE CONTINUOUS ACTION OF SUPPRESSING MEDICAL EVIDENCE SHOWING CARDIO-RENAL INJURY AND DISEASES. DR. WISE SUGGESTED ARTERIOGRAPHY AFTER REVIEWING THE US ARMY RECORD OF IVP SHOWING DOUBLE COLLECTING SYSTEM AND BELIEVING THERE MIGHT BE CARDIO-RENAL DAMAGE. HIS SUGGESTION WAS R/O BY DR. JACKSON DIAGNOSIS THAT THE IVP WAS NORMAL. FIVE MONTHS LATER THE VA HOSPITAL BROOKLYN DID ITS OWN TEST AND FOUND ABNORMAL IVP, KIDNEY DYSFUNCTIONS, NEPHROGRAPHIC EFFECTS IN BOTH KIDNEYS, ALBUMIN +4 IN URINE, AND URINE WAS ALSO LOADED WITH WBC AND HAD RED BLOOD CELLS AND I COMPLAINT OF NON-SOCIAL DISCHARGE WHEN I WAS ADMITTED NOTING THAT I HAD BEEN SUFFERING FROM THE CONDITION FOR MORE THAN TEN MONTH SINCE THE ACCIDENT. I CONTINUED T SUFFER FROM NON-SOCIAL DISCHARGE FROM MY PENIS THROUGH 1972 AND WAS EXAMINED AND TREATED BY VA, PRIVATE DOCTORS, BROOKLYN HEALTH DEPARTMENT. SEE TAB – 6 HEREIN.

F) VA CONTINUOUSLY SUPPRESSED THESE MEDICAL FACTS AND HAD TO BE BROUGHT TO COURT TO RELEASE VARIOUS DOCUMENTS RELATED TO THE MEDICAL FACTS. THESE FACTS MAKE IT CLEAR THAT US ARMY KNEW I HAD CARDIO-RENAL INJURY AND SUFFERED THE EXTREME HYPERTENSION AND WAS BEYOND RETENTION IN THE US MILITARY.

G) VA CONTINUED TO SUPPRESS THESE MEDICAL FACTS AND ENGAGED IN MALPRACTICE TO INTENTIONALLY DENY THE FACTS. VA ACTS WERE DELIBERATE BECAUSE DR. PAULSON NOTED IVP QUESTIONABLE ABNORMAL IN HIS DR. PROGRESS NOTES BUT FAIL TO MENTION IT IN THE MEDICAL SUMMARY WHICH HE WROTE. HE CHARACTERIZED THE CONDITION AS URETHRITIS DEVELOPED WHILE I WAS IN THE HOSPITAL. MY ADMISSION REPORT SHOW THAT I COMPLAINED OF THE PROBLEM AND INDICATED THAT IT WAS RECURRING FOR MORE THAN 10 MONTHS WITH THE ONSET A MONTH BEFORE ADMISSION. KIDNEY DYSFUNCTION WITH HYPERTENSION WAS AGAIN DISQUALIFYING UNDER AR 40-501.

H) VA CONTINUED TO DENY AND SUPPRESS ALL EVIDENCE OF KIDNEY DYSFUNCTIONS AND ACT TO SUPPRESS EVIDENCE OF DETERIORATING CARDIO VASCULAR DISEASE. VA 9/25/72 EXAMINATION SHOWED I STILL SUFFERED FROM THE NON-SOCIAL DISCHARGE FROM MY PENIS AND IT LABELED IT A STRAIN; VA FOUND PROTEIN IN MY URINE ( 30H) 1993-1995 AND SUPPRESSED THE FINDINGS; VA CONFIRMED ENLARGE HEART BY X-RAY 1993 AND VARIOUS SYMPTOMS OF CHF 1993-1995 AND RECEIVED OTHER PRIVATE DOCTORS DIAGNOSIS OF CARDIOMEYOPATHY (DR. PANCHETTA WILSON – PHYSICIAN FOR OVER 10 YEARS). YET VA IGNORED VARIOUS MATERIAL MEDIAL DIAGNOSIS OF HEART DISEASE AND ALTERED ITS OWN MEDICAL RECORDS TO LIMIT THEIR RATING DECISION TO INSIPID CHF.

I) I COMPLAINED TO CONGRESSMAN AND SENATORS AS VA HARASSED, THREATEN, AND COERCED ME. FINALLY VA DISCONTINUED MY ENTITLED BENEFITS IN 2001 SAYING I WAS DEAD AND AGGRAVATED OTHER MEDICAL PROBLEMS WHICH I HAD CAUSING A GROTESQUE HYDROCELE; ATTEMPT TO DESTROY MY ORIGINAL FILES. VA CONTINUE IT ATTEMPT TO COVER-UP ITS FRAUD AND MISREPRESENTATIONS AND CONTINUE TO SUPPRESS THE COMPENSATION PERIOD FOR 7007 1967 THROUGH 1994. DROD MISREPRESENT THIS PERIOD OF TREATMENT AND AGAIN CALL MEDICAL DIAGNOSIS OF MI AND ACS HOSPITALIZATION FOR HYPERTENSION.

J) THE VA RECORDS SHOW 7007 30% FROM 1967; 100% FROM 1/26/68; 30% FROM APRIL 1, 73. DROD DOES NOT SHOW THIS PERIOD OF DISABILITY OR COMPENSATION AND CONTINUE TO SUPPRESS THE EARLIER PERIOD WHICH SHOW THE US ARMY MALFEASANCE. THE DROD

19

CONTINUE THE MISREPRESENTATION AND ATTEMPT TO BLAME ME INDICATING THAT I HAVE REFUSED MEDICAL CARE.

K) 2001 – 2007 VA HAS ACTED TO CONTINUE MISREPRESENTING THE MY MEDICAL CONDITIONS AFTER I MADE CLAIMS FOR MY ADDITIONAL INJURIES TO MY GROIN AND SCROTUM.  2005 VA RECORDED COLUMBUS HOSPITAL TREATMENT LABELING IT FOR PNEUMONIA WHEN I WAS TAKEN TO THE HOSPITAL FOR A HEART ATTACK (DIAGNOSED MI) AND TREATED FOR PNEUMONIA, SEPSIS, AND DYSFUNCTIONAL KIDNEYS.  VA NOTE COLUMBUS HOSPITAL RECORDED 40% LVEH.  VA FOLLOW THE SAME PRACTICE WITH UNIVERSITY HOSPITAL OF N. J. 2006 ADMISSION IGNORING I THE FACT THAT I SUFFERED ANOTHER HEART ATTACK (DIAGNOSED ACS) VA NOTE THAT I SIGNED MY SELF OUT, REFUSED CARDIAC EXAMINATION, AND WAS ASYMPTOMATIC.  VA INDICATE THAT I WAS ORDERED OPC FOR THE HYDROCELE BUT ACTUALLY IT WAS TO HAVE A CATHETER INSERTED WHICH I DID NOT CHOOSE TO DO BECAUSE OF MY HOMELESS SITUATION.  VA CONTINUE TO MISREPRESENT THE RECORDS AFTER THEIR C&P INDICATING THAT THE CHF 7007 RATED ZERO. VA REACH THIS DECISION AFTER REVIEWING ALL THE HISTORY OF THIS DISEASE AND MY MOST RECENT MEDICAL EPISODES WHILE NOTING THAT VA C&P TEST SHOWED LVEH OF 65% AND LEFT VENTRICLE DYSFUNCTION AND ENLARGED AND CALCIFIED AORTA.

L) VA ADMIT TO 60% DISABILITY DUE TO 7101; LEVH OF 40% AND TWO EPISODES OF HOSPITALIZATION FOR THE SERVICE CONNECTED 7007 REQUIRE A MINIMUM OF 60% SEPARATE AND APART FROM 7101; THE KUB DAMAGE IS AT LEASE 30% FROM 1967 AND THE VA ADMIT DISABILITY FOR 5295 AT 10% FROM 1967.  THIS WOULD DICTATE A SCHEDULER DISABILITY OF OVER 100%.

REMEDY

VARO 317 IS LIMITED IN ITS AUTHORITY TO PROVIDE ANY REMEDY IN THIS MATTER.  VARO 317 ISSUED THE 12/4/95 DECISION AND THE 6/29/05 SOC AND 4/19/07 AND 4/22/08 SSOC WHICH HAVE ALSO PASSED THEIR JURISDICTION BECAUSE THEY HAVE PROVIDED FINAL DECISIONS AFTER THE NOD.  ALL CUE ARE APPELLATE MATTERS AND AT BEST THE VA AND ITS APPLICABLE AUTHORIZES CAN PROVIDE THE MEDICAL COMPENSATION BASED UPON THE FACTS.

1) EFFECTIVE DATE OF CURRENT CLAIM 4/10/03 TOTAL AND PERMANENT DISABILITY
2) UNEMPLOYABILITY 100% 1967 THROUGH 1976 AND 1993 THROUGH 2003
3) SCHEDULER DISABILITY FOR 7007 60% FROM 1994 TO 60%FROM 4/10/03
4) SCHEDULER DISABILITY FOR 7101 0% FROM 1994  TO 60% FROM 1998
5) DISABILITY FOR  TO KUB AND KIDNEY 30% FROM 1967
6) TOTAL AND PERMANENT DISABILITY FROM 1994
7) VA SHALL MAKE ALL RECORDS INCLUDING CUE CORRECTIONS AVAILABLE TO ABCMR

*Morris J. Peavey*

MORRIS J. PEAVEY, JR.

305-688-0759

Exceptions to DROD Dated April 22, 2008 VARO 317
TABULATIONS:

### TAB-1  JENNIFER KALDOR MAY 7, 2009 SUBMISSIONS:

EXHIBIT 1)   Jennifer Kaldor Letter dated May 7, 2009 re: 317/SSD/PA/tmd
       2)   VARO 317 Decision Review Officer Decision Dated April 22, 08 6-pages
       3)   VARO 137 letter; by Barry M Barker dated March 06, 2009
Re:317/VSC/21PC/VK 2-pages.
       4)   Senator Bill Nelson to Morris Peavey Re: VARO 317 dated Mar 6, 2009.

2

C 23 448 613
Peavey, Morris J

If you are looking for general information about benefits and eligibility, you should visit our web site at http://www.va.gov, or search the Frequently Asked Questions (FAQs) at http://iris.va.gov.

Sincerely yours,

*Jennifer Kaldor*

Jennifer Kaldor
Privacy Officer / FOIA Officer

Contact us on the Internet at:  https://iris.va.gov

Enclosure(s):    Rating Decision(s) dated April 22, 2008



**DEPARTMENT OF VETERANS AFFAIRS**
**VA Regional Office**
**P.O. Box 1437**
**St. Petersburg, FL 33731**

**Morris J. Peavey**

**VA File Number**
**23 448 613**

**Decision Review Officer Decision**
**April 22, 2008**

## INTRODUCTION

The records reflect that you are a veteran of the Vietnam Era and Peacetime. You served in the Army from July 24, 1964 to August 5, 1967. We received a Notice of Disagreement from you on August 15, 2007 about one or more of our earlier decisions. Based on a review of the evidence listed below, we have made the following decision(s) on your claim.

## DECISION

1 . Entitlement to individual unemployability is granted effective November 28, 2005.

2 . Entitlement to a separate evaluation for hypertension is granted with an evaluation of 60 percent effective November 28, 2005.

3 . Evaluation of hypertensive heart disease, which is currently evaluated 60 percent disabling, is decreased to 30 percent effective November 28, 2005.

4 . Basic eligibility to Dependents' Educational Assistance is established from November 28, 2005.

Morris J. Peavey
23 448 613
Page 2

# EVIDENCE

- VA examination, Miami VA Medical Center, dated March 7, 2007
- Social Security Administration records received in January 2008
- VA Form 21-8940, "Application for increased compensation based on unemployability" dated April 7, 2003
- Treatment records from University Hospital of New Jersey for admission of August 22, 2006 to August 27, 2006.
- Treatment records from Columbia Hospital for admission of September 16, 2005, to September 27, 2005.
- Rating decisions of September 26, 1994, December 4, 1995, March 20, 2004, and Statement of the Case dated September 30, 2005, and all evidence cited therein are incorporated herein by reference.
- Treatment records, Miami VA Medical Center, dated January 4, 2006
- Treatment records, East Orange, NJ VA Medical Center, dated May 3, 2004 through September 28, 2005

# REASONS FOR DECISION

## 1. Entitlement to individual unemployability.

Entitlement to individual unemployability is granted because you are unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities.

You are service connected for hypertension evaluated at 60 percent, hypertension heart disease evaluated at 30 percent, and lumbosacral strain evaluated at 10 percent. You have a 4 year college degree. You last worked on July 12, 2001 in accounting at a restaurant. Records also show that you worked in construction from May to June 2001.

Social Security Administration records show that you were granted social security disability benefits and found to be disabled as of September 1994. Records show that your disabilities are your hypertension and heart disease.

Due to the severity of your service connected hypertension and hypertensive heart disease, employment history, and education level, it is conceded that you are unable to obtain and retain a substantially gainful occupation.

We have assigned an effective date of November 28, 2005, the date we received your claim, as you have the evidence shows that your conditions have worsened and you have continuously pursued your claim.

**This is a complete grant of the issue on appeal and therefore removed from your pending appeal.**

COPIED FROM CLAIMS FOLDER DEPT OF VA AFFAIRS-317

COPIED FROM C VIMS FOLDER DEPT OF V  AFFAIRS-317

| Decision Review Officer Decision | Department of Veterans Affairs VA Regional Office | | | Page 1 04/22/2008 |
|---|---|---|---|---|
| NAME OF VETERAN Morris J. Peavey | VA FILE NUMBER 23 448 613 | SOCIAL SECURITY NR 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 | POA | COPY TO |

| ACTIVE DUTY | | | |
|---|---|---|---|
| EOD | RAD | BRANCH | CHARACTER OF DISCHARGE |
| 07/24/1964 | 08/05/1967 | Army | Honorable |

| LEGACY CODES | | | |
|---|---|---|---|
| ADD'L SVC CODE | COMBAT CODE | SPECIAL PROV CDE | FUTURE EXAM DATE |
|  | 1 |  | None |

<u>JURISDICTION</u>: Notice of Disagreement Received 08/15/2007

<u>ASSOCIATED CLAIM(s)</u>: 172; Grant of Benefits; 08/31/07

**SUBJECT TO COMPENSATION (1. SC)**

7101          HYPERTENSION
              Service Connected, Vietnam Era, Incurred
              60% from 11/28/2005

7007          HYPERTENSIVE HEART DISEASE
              Service Connected, Vietnam Era, Incurred
              0% from 03/01/1973
              60% from 08/30/1994
              30% from 11/28/2005

5237          LUMBOSACRAL STRAIN (FORMERLY UNDER DIAGNOSTIC CODE
              5295)
              Service Connected, Vietnam Era, Incurred
              10% from 10/01/1967

*COMBINED EVALUATION FOR COMPENSATION :*

10% from 10/01/1967
60% from 08/30/1994
80% from 11/28/2005
Individual Unemployability Granted from November 28, 2005

**NOT SERVICE CONNECTED/NOT SUBJECT TO COMPENSATION (8.NSC Peacetime, Vietnam Era)**

7599-7502     KIDNEY CONDITION
              Not Service Connected, Not Incurred/Caused by Service

COPIED FROM CLAIMS FOLDER DEPT OF V AFFAIRS -317

Morris J. Peavey
23 448 613
Page 3

## 2.  Entitlement to a separate evaluation for hypertension.

Entitlement to a separate evaluation for hypertension has been granted and an evaluation
of 60 percent.

The treatment records received from Columbia Hospital show you were admitted on
September 16, 2005, with pneumonia, sepsis, elevated hypertension and altered mental
status.  Additional assessments of congestive heart failure, renal insufficiency and a
hydrocele were made while you were hospitalized.  An echocardiogram noted left
ventricle ejection fraction of 40 percent.

You were again hospitalized on August 22, 2006, at University Hospital of New Jersey
with chest pain which resolved shortly after admission.  You refused cardiac testing and
remained asymptomatic at discharge on August 25, 2006.  You were released against
medical advice.  A hydrocele was also noted and you were referred for outpatient
treatment for that condition.

Treatment records from the Miami VA Medical Center and East Orange, NJ VA Medical
Center were reviewed and showed that you were seen for uncontrolled blood pressure in
May 2004.  You refused to do a thallium stress test or echocardiogram.  You were again
seen in September 2005 for complaints of chest pain and high blood pressure.  It was
noted that you were uncooperative and did not want any treatment.  You only wanted to
have your scripts filled.  In January 2006, you were found to have hypertensive urgency.
After reviewing your case and determining a management plan, the physician noted that
you left the office without received medical advice or care.  It was recommended that
your undergo a thallium est and echocardiogram.  A review of your vital signs showed a
blood pressure reading of 228/130 in April 2004, 210/102 in May 2004, 214/123 on
September 28, 2005, and 227/133 and 235/145 in January 2006.

On the VA examination of March 7, 2007, the history of your refractory hypertension
since military service was noted as were the hospitalizations in 2005 and 2006.  It was
noted that preliminary studies during the 2006 hospitalization detected no cardiac
damage.  Echocardiogram done on March 6, 2007, noted left ventricle ejection fraction of
65 percent with evidence of left ventricle hypertrophy which was seen as consisted with
your long-standing hypertension.  Diastolic dysfunction was also noted.  Examination
reported blood pressures of 242/141, 224/143, 222/143 and 242/159 in various positions.
There was chronic edema of bilateral lower extremities but pedal and peripheral pulses
were palpable.  Diagnosis was severe hypertension.  You were referred to the emergency
room to treat the severely elevated blood pressure but declined this treatment.

Morris J. Peavey
23 448 613
Page 5

On the VA examination of March 7, 2007, the history of your refractory hypertension since military service was noted as were the hospitalizations in 2005 and 2006. It was noted that preliminary studies during the 2006 hospitalization detected no cardiac damage. Echocardiogram done on March 6, 2007, noted left ventricle ejection fraction of 65 percent with evidence of left ventricle hypertrophy which was seen as consisted with your long-standing hypertension. Diastolic dysfunction was also noted. Examination reported blood pressures of 242/141, 224/143, 222/143 and 242/159 in various positions. There was chronic edema of bilateral lower extremities but pedal and peripheral pulses were palpable. Diagnosis was severe hypertension. You were referred to the emergency room to treat the severely elevated blood pressure but declined this treatment.

The rating criteria for evaluating the cardiovascular system changed on January 12, 1998. This changed allowed for separate evaluations for heart disease and hypertension. As the evidence shows that assigning separate evaluations for your heart and hypertension would warrant an overall higher evaluation, we are now evaluating your disability under the new criteria.

We have assigned a 30 percent evaluation based on objective evidence of left ventricular hypertrophy. An evaluation of 30 percent is assigned if there is workload greater than 5 METs but not greater than 7 METs resulting in dyspnea, fatigue, angina, dizziness, or syncope; or evidence of cardiac hypertrophy or dilatation on electrocardiogram, echocardiogram, or X-ray. A higher evaluation of 60 percent is not warranted unless there is more than one episode of acute congestive heart failure in the past year; or workload greater than 3 METs but not greater than 5 METs resulting in dyspnea, fatigue, angina, dizziness, or syncope; or left ventricular dysfunction with an ejection fraction of 30 to 50 percent. One MET (metabolic equivalent) is the energy cost of standing quietly at rest and represents an oxygen uptake of 3.5 milliliters per kilogram of body weight per minute.

We have assigned an effective date of November 28, 2005, the date we received your claim, and the evidence shows that separate evaluations are warranted.

## 4. Eligibility to Dependents' Educational Assistance under 38 U.S.C. chapter 35.

Eligibility to Dependents' Educational Assistance is derived from a veteran who was discharged under other than dishonorable conditions; and, has a permanent and total service-connected disability; or a permanent and total disability was in existence at the time of death; or the veteran died as a result of a service-connected disability. Also, eligibility exists for a serviceperson who died in service. Finally, eligibility can be derived from a service member who, as a member of the armed forces on active duty, has been listed for more than 90 days as: missing in action; captured in line of duty by a hostile force; or forcibly detained or interned in line of duty by a foreign government or power.

Morris J. Peavey
23 448 613
Page 6

Basic eligibility to Dependents' Education Assistance is granted as the evidence shows the veteran currently has a total service-connected disability, permanent in nature.

We have assigned an effective date of November 28, 2005, the date we granted entitlement to individual unemployability, as the evidence shows that your conditions are permanent in nature.

## REFERENCES:

Title 38 of the Code of Federal Regulations, Pensions, Bonuses and Veterans' Relief contains the regulations of the Department of Veterans Affairs which govern entitlement to all veteran benefits.  For additional information regarding applicable laws and regulations, please consult your local library, or visit us at our web site, www.va.gov.

COPIED FROM CLAIMS FOLDER DEPT OF VA AFFAIRS-317

COPIED FROM C VIMS FOLDER DEPT OF V AFFAIRS 317

| Decision Review Officer Decision | Department of Veterans Affairs VA Regional Office | | | Page 1 04/22/2008 |
|---|---|---|---|---|
| NAME OF VETERAN Morris J. Peavey | VA FILE NUMBER 23 448 613 | SOCIAL SECURITY NR 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 | POA | COPY TO |

| ACTIVE DUTY | | | |
|---|---|---|---|
| EOD | RAD | BRANCH | CHARACTER OF DISCHARGE |
| 07/24/1964 | 08/05/1967 | Army | Honorable |

| LEGACY CODES | | | |
|---|---|---|---|
| ADD'L SVC CODE | COMBAT CODE | SPECIAL PROV CDE | FUTURE EXAM DATE |
| | 1 | | None |

**JURISDICTION:** Notice of Disagreement Received 08/15/2007

**ASSOCIATED CLAIM(s):** 172; Grant of Benefits; 08/31/07

**SUBJECT TO COMPENSATION (1. SC)**

7101      HYPERTENSION
Service Connected, Vietnam Era, Incurred
60% from 11/28/2005

7007      HYPERTENSIVE HEART DISEASE
Service Connected, Vietnam Era, Incurred
0% from 03/01/1973
60% from 08/30/1994
30% from 11/28/2005

5237      LUMBOSACRAL STRAIN (FORMERLY UNDER DIAGNOSTIC CODE 5295)
Service Connected, Vietnam Era, Incurred
10% from 10/01/1967

**COMBINED EVALUATION FOR COMPENSATION :**

10% from 10/01/1967
60% from 08/30/1994
80% from 11/28/2005
Individual Unemployability Granted from November 28, 2005

**NOT SERVICE CONNECTED/NOT SUBJECT TO COMPENSATION (8.NSC Peacetime, Vietnam Era)**

7599-7502      KIDNEY CONDITION
Not Service Connected, Not Incurred/Caused by Service

| Decision Review Officer Decision | Department of Veterans Affairs VA Regional Office | | | Page 2 04/22/2008 |
|---|---|---|---|---|
| NAME OF VETERAN Morris J. Peavey | VA FILE NUMBER 23 448 613 | SOCIAL SECURITY NR 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 | POA | COPY TO |

7599-7523          RIGHT HYDROCELE
Not Service Connected, Not Incurred/Caused by Service

**ANCILLARY DECISIONS**

Basic Eligibility under 38 USC Ch 35 from 11/28/2005

_____
S. Fisher, Decision Review Officer

Morris J. Peavey
23 448 613
Page 3

## 2. Entitlement to a separate evaluation for hypertension.

Entitlement to a separate evaluation for hypertension has been granted and an evaluation of 60 percent.

The treatment records received from Columbia Hospital show you were admitted on September 16, 2005, with pneumonia, sepsis, elevated hypertension and altered mental status. Additional assessments of congestive heart failure, renal insufficiency and a hydrocele were made while you were hospitalized. An echocardiogram noted left ventricle ejection fraction of 40 percent.

You were again hospitalized on August 22, 2006, at University Hospital of New Jersey with chest pain which resolved shortly after admission. You refused cardiac testing and remained asymptomatic at discharge on August 25, 2006. You were released against medical advice. A hydrocele was also noted and you were referred for outpatient treatment for that condition.

Treatment records from the Miami VA Medical Center and East Orange, NJ VA Medical Center were reviewed and showed that you were seen for uncontrolled blood pressure in May 2004. You refused to do a thallium stress test or echocardiogram. You were again seen in September 2005 for complaints of chest pain and high blood pressure. It was noted that you were uncooperative and did not want any treatment. You only wanted to have your scripts filled. In January 2006, you were found to have hypertensive urgency. After reviewing your case and determining a management plan, the physician noted that you left the office without received medical advice or care. It was recommended that your undergo a thallium est and echocardiogram. A review of your vital signs showed a blood pressure reading of 228/130 in April 2004, 210/102 in May 2004, 214/123 on September 28, 2005, and 227/133 and 235/145 in January 2006.

On the VA examination of March 7, 2007, the history of your refractory hypertension since military service was noted as were the hospitalizations in 2005 and 2006. It was noted that preliminary studies during the 2006 hospitalization detected no cardiac damage. Echocardiogram done on March 6, 2007, noted left ventricle ejection fraction of 65 percent with evidence of left ventricle hypertrophy which was seen as consisted with your long-standing hypertension. Diastolic dysfunction was also noted. Examination reported blood pressures of 242/141, 224/143, 222/143 and 242/159 in various positions. There was chronic edema of bilateral lower extremities but pedal and peripheral pulses were palpable. Diagnosis was severe hypertension. You were referred to the emergency room to treat the severely elevated blood pressure but declined this treatment.

Morris J. Peavey
23 448 613
Page 4

The rating criteria for evaluating the cardiovascular system changed on January 12, 1998 and allowed for separate evaluations for hypertension and heart disease. As the additional evidence further clarifies that your hypertension has worsened and warrants a higher evaluation, we have assigned a separate 60 percent evaluation. An evaluation of 60 percent is assigned if diastolic pressure is predominantly 130 or more.

We have assigned an effective date of November 28, 2005, the date we received your claim for an increase, as the additional evidence shows that your condition has worsened and you have continuously pursued your claim.

**This is the highest available evaluation for this condition. Therefore, this is a complete grant of the benefit sought on appeal and therefore removed from your pending appeal.**

### 3. Evaluation of hypertensive heart disease currently evaluated as 60 percent disabling.

The evaluation of hypertensive heart disease is decreased to 30 percent.

The treatment records received from Columbia Hospital show you were admitted on September 16, 2005, with pneumonia, sepsis, elevated hypertension and altered mental status. Additional assessments of congestive heart failure, renal insufficiency and a hydrocele were made while you were hospitalized. An echocardiogram noted left ventricle ejection fraction of 40 percent.

You were again hospitalized on August 22, 2006, at University Hospital of New Jersey with chest pain which resolved shortly after admission. You refused cardiac testing and remained asymptomatic at discharge on August 25, 2006. You were released against medical advice. A hydrocele was also noted and you were referred for outpatient treatment for that condition.

Treatment records from the Miami VA Medical Center and East Orange, NJ VA Medical Center were reviewed and showed that you were seen for uncontrolled blood pressure in May 2004. You refused to do a thallium stress test or echocardiogram. You were again seen in September 2005 for complaints of chest pain and high blood pressure. It was noted that you were uncooperative and did not want any treatment. You only wanted to have your scripts filled. In January 2006, you were found to have hypertensive urgency. After reviewing your case and determining a management plan, the physician noted that you left the office without received medical advice or care. It was recommended that your undergo a thallium est and echocardiogram.

A VA examination was ordered to evaluate your level of disability.

COPIED FROM CLAIMS FOLDER DEPT OF VA AFFAIRS-317

COPIED FROM C'AIMS FOLDER DEPT OF V  AFFAIRS - 317

Morris J. Peavey
23 448 613
Page 5

On the VA examination of March 7, 2007, the history of your refractory hypertension
since military service was noted as were the hospitalizations in 2005 and 2006. It was
noted that preliminary studies during the 2006 hospitalization detected no cardiac
damage. Echocardiogram done on March 6, 2007, noted left ventricle ejection fraction of
65 percent with evidence of left ventricle hypertrophy which was seen as consisted with
your long-standing hypertension. Diastolic dysfunction was also noted. Examination
reported blood pressures of 242/141, 224/143, 222/143 and 242/159 in various positions.
There was chronic edema of bilateral lower extremities but pedal and peripheral pulses
were palpable. Diagnosis was severe hypertension. You were referred to the emergency
room to treat the severely elevated blood pressure but declined this treatment.

The rating criteria for evaluating the cardiovascular system changed on January 12, 1998.
This changed allowed for separate evaluations for heart disease and hypertension. As the
evidence shows that assigning separate evaluations for your heart and hypertension
would warrant an overall higher evaluation, we are now evaluating your disability under
the new criteria.

We have assigned a 30 percent evaluation based on objective evidence of left ventricular
hypertrophy. An evaluation of 30 percent is assigned if there is workload greater than 5
METs but not greater than 7 METs resulting in dyspnea, fatigue, angina, dizziness, or
syncope; or evidence of cardiac hypertrophy or dilatation on electrocardiogram,
echocardiogram, or X-ray. A higher evaluation of 60 percent is not warranted unless
there is more than one episode of acute congestive heart failure in the past year; or
workload greater than 3 METs but not greater than 5 METs resulting in dyspnea, fatigue,
angina, dizziness, or syncope; or left ventricular dysfunction with an ejection fraction of
30 to 50 percent. One MET (metabolic equivalent) is the energy cost of standing quietly
at rest and represents an oxygen uptake of 3.5 milliliters per kilogram of body weight per
minute.

We have assigned an effective date of November 28, 2005, the date we received your
claim, and the evidence shows that separate evaluations are warranted.

## 4.  Eligibility to Dependents' Educational Assistance under 38 U.S.C. chapter 35.

Eligibility to Dependents' Educational Assistance is derived from a veteran who was
discharged under other than dishonorable conditions; and, has a permanent and total
service-connected disability; or a permanent and total disability was in existence at the
time of death; or the veteran died as a result of a service-connected disability. Also,
eligibility exists for a serviceperson who died in service. Finally, eligibility can be
derived from a service member who, as a member of the armed forces on active duty, has
been listed for more than 90 days as: missing in action; captured in line of duty by a
hostile force; or forcibly detained or interned in line of duty by a foreign government or
power.

Morris J. Peavey
23 448 613
Page 6

Basic eligibility to Dependents' Education Assistance is granted as the evidence shows
the veteran currently has a total service-connected disability, permanent in nature.

We have assigned an effective date of November 28, 2005, the date we granted
entitlement to individual unemployability, as the evidence shows that your conditions are
permanent in nature.

## REFERENCES:

Title 38 of the Code of Federal Regulations, Pensions, Bonuses and Veterans' Relief
contains the regulations of the Department of Veterans Affairs which govern entitlement
to all veteran benefits.  For additional information regarding applicable laws and
regulations, please consult your local library, or visit us at our web site, www.va.gov.

COPIED FROM CLAIMS FOLDER DEPT OF VA AFFAIRS-317



DEPARTMENT OF VETERANS AFFAIRS
Regional Office
P.O. Box 1437
St. Petersburg, FL 33731-1437

MAR 0 5 2009

**In Reply Refer To:** 317/VSC/21PC/VK

The Honorable Bill Nelson
United States Senator
225 E. Robinson St., Suite 410
Orlando, FL 32801

C 23 448 613
PEAVEY, Morris J., Jr.

Dear Congressman Nelson:

This is in response to your inquiries dated October 20, 2008 and October 27, 2008, on behalf of
Mr. Morris J. Peavey, Jr..

## Confirmation of Receipt of Additional Information:

On October 17, 2008 and October 27, 2008, The Department of Veterans Affairs Regional
Office (VARO) received and entered evidentiary documents into Mr. Peavey's claim file,
forwarded by your office. The VARO Appeals Team will review the aforementioned documents
for the continued processing of Mr. Peavey's current appeal, effective June 16, 2008. Once an
appellate decision is rendered and authorized, Mr. Peavey will receive written notification.

In a letter dated October 6, 2008, addressed to your office, Mr. Peavey wrote the following
statement: "The facts of my case are clear and the US Army and VA have acted in concert to
suppress, alter, and destroy federal documents to conceal their misconduct."

The Department of Veterans Affairs (DVA) does not condone such activities. If Mr. Peavey
feels the DVA has acted inappropriately, in any manner, he should contact the DVA Inspector
General at 1-800-488-8244 or visit the website at http://www.va.gov/oig

## Questions or Concerns:

Mr. Peavey may telephone the VA toll-free at 1-800-827-1000. A Veterans Service
Representative (VSR) will be available to assist him. He may also contact his County Veterans
Service Officer, listed in his local telephone directory under "County Government," for
assistance.

2

Your concern on behalf of Mr. Peavey is appreciated.

Sincerely yours,

BARRY M. BARKER
Director



# United States Senate
WASHINGTON DC 20510-0905

BILL NELSON
FLORIDA

March 26, 2009

Mr. Morris Peavey, Jr.
12315 Northwest 23rd Avenue
Miami, Florida 33167

Dear Mr. Peavey:

In response to my inquiry on your behalf, I am enclosing a copy of the correspondence I received from the St. Petersburg VA Regional Office. I appreciate you giving me the opportunity to look into this issue.

If I can assist you with any other matter, please do not hesitate to let me know.

Sincerely,

Bill Nelson

BN/fd

Enclosure

Exceptions to DROD  Dated April 22, 2008 VARO 317
TABULATIONS:

## TAB-2
### FOIA REQUEST FOR VA APPEALLATE INFORMATION FROM JAMES P. TERRY, CHAIRMAN VBA :

EXHIBIT 1)  Letter by Morris Peavey dated April 3, 2009 requesting information from BVA file related to COWC and status of all appeal able issues before the BVA.

EXHIBIT 2)  VA Debt Management Ctr.  Notice of Death to Peavey Estate

EXHIBIT 3)  VARO 317 by Beatrice L. Rue dated 8/1/03 notice no credible information showing VA ever received Notice of death and VA Form 9 should be received by October 30, 2003.

EXHIBIT 4)  BVA COWC AND supplement to VA Form 9 dated October 27, 2003. 6 pages.  Response to VARO L. Rue.

EXHIBIT 5)  PEAVEY letter dated February 5, 2004 to Elijah D. Clark Chairman BVA requesting status of COWC filed per L. Rue.

EXHIBIT 6)  BVA letter by Sharon Braxton dated February 19 2004 acknowledging the fact that VBA received VA Form 9 on October 30, 2003 and forwarded to 317 VARO January 5, 2004.

EXHIBIT 7)  BVA COWC dated 8/28/05 stamped adj. int Aug 31, 2005 show 171 pend with initials. Stamped VARO 317/231A received Aug.  31, 2005. 3 – pages.

EXHIBIT 8)  BVA DIR Management administration BVA dated 9/21/05 C 234 48 613 notice of 171 pending re: 014 returned to VARO 317. 2 pages.

EXHIBIT  9)  VA Health Eligibility Ctr notice of Priority 5 not eligibility for benefits dated October 6, 2005.

EXHIBIT 10)  Morris J. Peavey dated 10/19/05 correspondence  to VA Health Eligibility letter dated 10/6/05.

EXHIBIT  11)   Morris J. Peavey dated 7/18/08 correspondence with attached affidavit re:  SSOC dated 2/22/208.  3 pages.

EXHIBIT  12)   Supplemental NOD for NOD filed 5/3/2007 dated August 12, 2007. Show duplicate 171 pend with initials September 4 2007.

EXHIBIT  13)  VA Form 10-10EZ printed May 20, 2009 show service connected benefit rating of 60%.

Morris J. Peavey, Jr.
C/O Eric Peavey
12315 NW 23rd Avenue
ᵢᵢ, Florida   33167

Morris J. Peavey, Jr
23-448-613
317/243C

ᵢ 3, 2009

James P. Terry,  Chairman
Board of Veterans Appeal
810 Vermont Avenue
Washington,  DC

Honorable Mr. Terry:

The tabs attached to this letter will show that I received an notice of death from VARO
317 March 2001 and my service connected disability was discontinued for five months
although the VARO was timely notified that I was not dead.

The Taking of my SVC benefits were prolonged not withstanding the fact that I suffered
CHF with other medical disabilities which VA rated 60% 7007 and 10% 2595.  I
complain  to my congressional representative and VA admitted that it did not receive any
credible notice of my death and indicated that I had until October 30, 2003 to file with
BVA. I filed the proper notice with VA and the timely and proper BVA COWC but no
BVA decision was rendered and the Blue Binder was sent to VBA and I was notified that
VA had no jurisdiction over the complaint because it contained complaints of
constitutional violations.

My records indicate that I was not immediately informed of the status of the VA form 9
which I filed with VA and I inquired with BVA and was informed that VARO indicated I
had withdrawn the complaint. This was not true.

As you may see from tab -1 I made numerous efforts to get information regarding the
status of the claim which was filed with VA and was given many different answers.  I
also continued to acquire information from my US Army medical records which VA was
named as the official custodian by the National Archives.  Therefore I went to the District
Court and filed the complaint indicating VA Violations of my constitutional rights which
caused me physical injuries. The VARO entered the court alleging that 38 Title sec. 511
denied jurisdiction to the US District Court not with standing the fact that  VBA indicated
that the VA had no jurisdiction and the VA refused to provide copies of my US Army
medical records and refused to provide medical records from VA which show
hospitalization in 1968 at Brooklyn hospital and early complaints of groin injuries, kidney
dysfunctions, and non-social discharge from my penis after the accident in the US Army.

Exceptions to DROD  Dated April 22, 2008 VARO 317
TABULATIONS:

TAB-2
FOIA REQUEST FOR VA APPEALLATE INFORMATION FROM JAMES P.
TERRY, CHAIRMAN VBA :

EXHIBIT 1)  Letter by Morris Peavey dated April 3, 2009 requesting information from
BVA file related to COWC and status of all appeal able issues before the BVA.

EXHIBIT 2)   VA Debt Management Ctr.  Notice of Death to Peavey Estate

EXHIBIT 3)   VARO 317 by Beatrice L. Rue dated 8/1/03 notice no credible information
showing VA ever received Notice of death and VA Form 9 should be received by
October 30, 2003.

EXHIBIT 4)  BVA COWC AND supplement to VA Form 9 dated October 27, 2003. 6
pages.  Response to VARO L. Rue.

EXHIBIT 5)   PEAVEY letter dated February 5, 2004 to Elijah D. Clark Chairman BVA
requesting status of COWC filed per L. Rue.

EXHIBIT 6)  BVA letter by Sharon Braxton dated February 19 2004 acknowledging the
fact that VBA received VA Form 9 on October 30, 2003 and forwarded to 317 VARO
January 5, 2004.

EXHIBIT 7)  BVA COWC dated 8/28/05 stamped adj. int Aug 31, 2005 show 171 pend
with initials. Stamped VARO 317/231A received Aug.  31, 2005. 3 – pages.

EXHIBIT 8)  BVA DIR Management administration BVA dated 9/21/05 C 234 48 613
notice of 171 pending re: 014 returned to VARO 317. 2 pages.

EXHIBIT  9)  VA Health Eligibility Ctr notice of Priority 5 not eligibility for benefits
dated October 6, 2005.

EXHIBIT 10)  Morris J. Peavey dated 10/19/05 correspondence  to VA Health Eligibility
letter dated 10/6/05.

EXHIBIT  11)   Morris J. Peavey dated 7/18/08 correspondence with attached affidavit
re: SSOC dated 2/22/208.  3 pages.

EXHIBIT  12)   Supplemental NOD for NOD filed 5/3/2007 dated August 12, 2007.
Show duplicate 171 pend with initials September 4 2007.

EXHIBIT  13)   VA Form 10-10EZ printed May 20, 2009 show service connected benefit
rating of 60%.

Morris J. Peavey, Jr.
C/O Eric Peavey
12315 NW 23rd Avenue
    ᵢi, Florida  33167

                                    Morris J. Peavey, Jr
                                    23-448-613
                                    317/243C


    ᵢ 3, 2009

James P. Terry,  Chairman
Board of Veterans Appeal
810 Vermont Avenue
Washington,  DC

Honorable Mr. Terry:

The tabs attached to this letter will show that I received an notice of death from VARO
317 March 2001 and my service connected disability was discontinued for five months
although the VARO was timely notified that I was not dead.

The Taking of my SVC benefits were prolonged not withstanding the fact that I suffered
CHF with other medical disabilities which VA rated 60% 7007 and 10% 2595.  I
complain  to my congressional representative and VA admitted that it did not receive any
credible notice of my death and indicated that I had until October 30, 2003 to file with
BVA. I filed the proper notice with VA and the timely and proper BVA COWC but no
BVA decision was rendered and the Blue Binder was sent to VBA and I was notified that
VA had no jurisdiction over the complaint because it contained complaints of
constitutional violations.

My records indicate that I was not immediately informed of the status of the VA form 9
which I filed with VA and I inquired with BVA and was informed that VARO indicated I
had withdrawn the complaint. This was not true.

As you may see from tab -1 I made numerous efforts to get information regarding the
status of the claim which was filed with VA and was given many different answers.  I
also continued to acquire information from my US Army medical records which VA was
named as the official custodian by the National Archives.  Therefore I went to the District
Court and filed the complaint indicating VA Violations of my constitutional rights which
caused me physical injuries.  The VARO entered the court alleging that 38 Title sec. 511
denied jurisdiction to the US District Court not with standing the fact that  VBA indicated
that the VA had no jurisdiction and the VA refused to provide copies of my US Army
medical records  and refused to provide  medical records from VA which show
hospitalization in 1968 at Brooklyn hospital and early complaints of groin injuries, kidney
dysfunctions, and non-social discharge from my penis after the accident in the US Army.

I responded to the VARO SOC dated 6/29/05 which was mailed to me late and a part of a ruse before the court to support a defense that my action was about VA Benefits and the US District Court had no jurisdiction. The attached documents at Tab-1 and Tab-2 clearly show that this was not the case. VA produce some records and I was forced to respond to the SOC. I filed  a timely COWC which the VA stamp received August 31, 2005.

I was hospitalized due to acute CHF and MI with other complications to include dysfunctional kidneys, sepsis and pneumonia on or about September 14, 2005. The BVA returned the COWC to VARO on or about 9/21/05 indicating that it was received by error and VA provided me a notice October 6, 2005 indicating that I was a priority 5 and refused to provide me any assistance related to recovering from the period of hospitalization when I was released September 27. 2005.

I complained to Secretary Jim Nicholson, Secretary about the VARO continued efforts to deny my degree of medical disability and the malicious actions which 317 and VA medical Center in Miami engaged.

Tab 3 herein will provide you with information which show a continued attempt by VARO 317 to deny my rights to the BVA review and this matter has been brought to the attention of the Secretary of Veterans Affairs. The COWC reply to SSOC 4/22/2008 and the copy of the NOD will provide you with the latest response to VARO 317 Statements and findings.

Please provide me with all information from your files which will show what records you received;  docketed or remanded for VARO actions; Dismissed related to Statement of appeal  for 317/243C and any 317/Appeals/SF for C-23-448-613. Note claims for CUE review are dismissed providing the reasons for dismissal; provide information showing all decisions by BVA in the cited matter. Please certify any statement finding of facts and final decisions of the Board. Please expedite the statement for the records to be presented to the US District Court for the District of Columbia  1:05 CV0819 RWR Peavey V. Alberto Gonzalez.

Your immediate attention will be greatly respected and appreciated.

Sincerely

Morris J. Peavey, Jr.
305-688-0759
CC:  Congressman Bill Nelson

TAB-1

1.     RE:  DEPARTMENT OF VETERANS AFFAIRS TO ESTATE OF MORRIS PEAVEY, JR  NOTICE OF DEATH.

2.     VARO Letter dated August 1, 2003 re: Beatrice L. Rue letter VA have no credible information in their file show VA ever received any notice of death for Morris J. Peavey, Jr.  VA never received any notice of change of address from USPS; VA apology for never including Peavey 9/10/02 letter [nod] and notifying the denial indicating peavey should appeal on or before October 30, 2003. RO 317/243C [2 pg.]

3.     COWC control re: RO 317/243C dated October 27, 2003 timely filed on or before October 30. 2003 providing a statement of 6 pages including cover page.  The complaint provide the BVA information notifying them that VARO engaged in an arbitrary taking of his benefits subjecting him to violations of equal protection and due process.  The document also notify the BVA that VARO actions caused him further injuries and were attempts to suppress, alter, and destroy his medical records which show that he was injured beyond AR 40-501. [6 pgs.]

4.     VA BVA letter dated February 19, 2004 notifying Morris J. Peavey, Jr. that the board was informed that Peavey withdrew his appeal and the BVA forwarded his October 30, 2003 notebook and VA Form 9 and other evidence to the regional office.

 **Department of
Veterans Affairs**

MARCH 21, 2001

Debt Management Center
Bishop Henry Whipple
Federal Building
P.O. Box 11930
St. Paul MN 55111-0930

REPRESENTATIVE OF THE ESTATE OF:
MORRIS J. PEAVEY JR
12315 N W 23 AVE
MIAMI FL. 33167

In Reply Refer To: 389
File Number:
Payee Number        00
Person Entitled: MJPEAV
Deduction Code:    30

We are sorry to learn of the death of          MORRIS J PEAVEY JR
And wish to express our sympathy.

## WHAT YOU SHOULD KNOW

VA benefits that are paid for the month in which death occurs, or for subsequent months, must be returned. This includes any checks or amounts electronically deposited in a bank account after the payee's death. The only exception is when a surviving spouse is entitled to the benefit for the month of death.

## HOW DO YOU KNOW IF A SPOUSE IS ENTITLED?

For information regarding the surviving spouse benefit, please call, toll-free, 1-800-827-1000 as soon as possible. Hearing impaired should call: 1-800-829-4833.

## HOW DO I RETURN VA BENEFIT PAYMENTS?

See the back of this letter for information about returning VA benefit payments.

## WHO DO I CALL IF I HAVE QUESTIONS REGARDING THIS LETTER?

You should contact VA Debt Management Center by calling toll-free, 1-800-827-0648.

Chief, Operations Division

----------------------------------------------------------------

FOR PROPER CREDIT TO YOUR ACCOUNT, PLEASE DETACH AND RETURN WITH YOUR PAYMENT

| | 2002231 | PAYMENT REMITTANCE |
|---|---|---|

| • FILE NO. | | AMOUNT ENCLOSED | ENTER YOUR CURRENT ADDRESS BELOW ONLY IF THE ONE ABOVE IS INCORRECT. PLEASE INCLUDE YOUR ZIP CODE. |
|---|---|---|---|
| PAYEE NO. | 00 | $ | |
| PERSON ENTITLED | MJPEAV | YOUR TELEPHONE NO. | |
| DEDUCTION CODE | 30 | | |

• Please include this number on your check or money order.

PL 4-478, FEB 2001



**DEPARTMENT OF VETERANS AFFAIRS**
**Regional Office**
**P.O. Box 1437**
**St. Petersburg, FL 33731-1437**

August 1, 2003

Morris J. Peavey, Jr.
C/O Eric Peavey
12315 NW 23rd Avenue
Miami, FL 33167

In Reply Refer To: 317/243C

Dear Mr. Peavey:

This will acknowledge receipt of your letter dated March 20, 2003, in which you discuss documents you received as a result of your Freedom of Information request. In particular, you identified two specific requests that you believe the documentation was not provided for.

> 1. *Proof that the VA actually received a notice of my death. This information was first requested in my letter dated April 8, 2001 addressed to the Department of Veterans Affairs Debt Management Center. <u>To date I have received nothing from files to show that the VA actually receive (sic) such a notice as they originally alleged.</u>* " (Underscore represents red)

There is nothing in your records that would show VA received <u>written notice</u> of your death.

> 3. *Copies of information from you (sic) files showing that the USPS United States Post Office actually notified VA that I had moved and effected a change of address from 12315 NW 23rd Avenue, Miami, Florida 33167. <u>I still have not received any information related to this request.</u>* " (Underscore represents red)

There is no such notice from the United States Post Office.

In addition to the above, you stated VA did not include your letter of September 10, 2002 you sent to the Debt Management Center setting forth the reasons for your disagreement. Our failure to include this letter was an oversight on our part. We apologize for that oversight and regret any inconvenience caused. A copy of that letter is enclosed.

I would like to take this opportunity to discuss the appeal process. On December 18, 2002, we sent a Statement of the Case continuing denial of your request for waiver of repayment of the overpayment of $1,538.00. Should you wish to appeal that decision, your appeal must be

MORRIS J. PEAVEY, JR.
C 23 448 613

received by VA on or before October 30, 2003.  For your assistance, another VA Form 9, Appeal
To Board Of Veterans' Appeals, is enclosed.

Please let us know if we can be of further assistance.

Sincerely yours,

*Beatrice L. Rue*

BEATRICE L. RUE
Chairperson/Hearing Officer
Committee on Waivers and Compromises

Enclosures

# APPEAL TO BOARD OF VETERANS' APPEALS

VA Department of Veterans Affairs

**IMPORTANT:** *Read the attached instructions before you fill out this form. VA also encourages you to get assistance from your representative in filling out this form.*

| 1. NAME OF VETERAN (Last Name, First Name, Middle Initial) | 2. CLAIM FILE NO. (Include prefix) | 3. INSURANCE FILE NO., OR LOAN NO. |
|---|---|---|
| Morris J. Peavey, Jr. | C 23 448 613 | FRH 1677 10 76 |

**4. I AM THE:**
[X] VETERAN  [ ] VETERAN'S WIDOW/ER  [ ] VETERAN'S CHILD  [ ] VETERAN'S PARENT
[ ] OTHER (Specify)

**5. TELEPHONE NUMBERS**

| A. HOME (Include Area Code) | B. WORK (Include Area Code) |
|---|---|
| 1-395-688-0759 | N/A |

**6. MY ADDRESS IS:** (Number & Street or Post Office Box, City, State & ZIP Code)

12315 NW 23RD AVENUE
MIAMI, FLORIDA  33167

**7. IF I AM NOT THE VETERAN, MY NAME IS:** (Last Name, First Name, Middle Initial)

N/A

**8. HEARING**

**IMPORTANT:** *Read the information about this block in paragraph 6 of the attached instructions. This block is used to request a Board of Veterans' Appeals hearing. DO NOT USE THIS FORM TO REQUEST A HEARING BEFORE A VA REGIONAL OFFICE HEARING OFFICER.* Check one (and only one) of the following boxes:

A. [X] I DO NOT WANT A BVA HEARING.

B. [ ] I WANT A BVA HEARING IN WASHINGTON, DC.

C. [ ] I WANT A BVA HEARING AT A LOCAL VA OFFICE BEFORE A MEMBER, OR MEMBERS, OF THE BVA. *(Not available at Washington, DC or Baltimore, MD, Regional Offices.)*

COWC CONTRC

**9. THESE ARE THE ISSUES I WANT TO APPEAL TO THE BVA:** (Be sure to read the information about this block in paragraph 6 of the attached instructions.)

A. [X] I WANT TO APPEAL ALL OF THE ISSUES LISTED ON THE STATEMENT OF THE CASE AND ANY SUPPLEMENTAL STATEMENTS OF THE CASE THAT MY LOCAL VA OFFICE SENT TO ME.

B. [ ] I HAVE READ THE STATEMENT OF THE CASE AND ANY SUPPLEMENTAL STATEMENT OF THE CASE I RECEIVED. I AM ONLY APPEALING THESE ISSUES: (List below.)

A) The Statements of facts are not based upon the best evidence available to the VA and in VA records. Therefore the findings of facts and decisions are not supported by the best evidence.  B) The acts of the VA is one of taking and therefore a violation of due process and equal protection.  c) The findings, decisions, and subsequent withholding of benefits caused the veteran injury which costed the veteran medical, legal, and other costs far in excess of $1,538. Therefore the veteran has not been an unjust enrichment but a serious injury to the veteran. These charges are supported by facts at para (10) herein and this memorandum supporting his Appeal.

**10. HERE IS WHY I THINK THAT VA DECIDED MY CASE INCORRECTLY:** (Be sure to read the information about this block in paragraph 6 of the attached instructions.)

a) The VA indicates that it received a notice of the veteran's death and consequently discontinued his SVC benefits. In the process of restoring those benefits, the VA maintains that it overpaid two months of benefits and that having made such an overpayment Morris J. Peavey, Jr. [Peavey] would be unjustly enriched by allowing him to keep those benefits. The VA did not use its best evidence in its files to establish these facts and therefore its decisions are not based upon any evidence, facts, or laws. It is [Peavey's] contention that the VA did not receive a notice of his death and that the actions to take [discontinue] his benefits are acts of harrassment reprisal and abuse of process. It is further an attempt to destroy the following historical facts and record which creates the VA liability and provide a record of continuous violations of due process and equal protection denying the veteran his rights to fair and good medical treatment, rehabilitation, proper compensation and all the benefits to which the veteran in entitled.

b) Peavey was struck by an automobile while marching in a military formation September 16, 1966 and suffered injuries. Those injuries caused him to be medically unfit for military duty according to military regulations. At the time he was an excellent soldier with the rank of Spec. E4 serving in the elite first strike [82 Airborne Division] unit. The injuries caused him to be hospitalized and placed upon two medical profiles. Peavey was taken off Abn Status and restricted from engaging in the MOS [military occupational spec.] for which he had most training. That training was as an a heavy weapons specialist [4.2 mortar asst gunner] and fire direction specialist. The medical injury was to his back and kidney and there was elevated high blood pressure and eventually the involvement of his heart.

*(Continue on the back, or attach sheets of paper, if you need more space.)*

| 11. SIGNATURE OF PERSON MAKING THIS APPEAL | 12. DATE | 13. SIGNATURE OF APPOINTED REPRESENTATIVE, IF ANY (Not required if signed by appellant. See paragraph 6 of the instructions.) | 14. DATE |
|---|---|---|---|
| *Mois J. Peavey, Jr.* | 10/27/03 | | 10/27/03 |

VA FORM

VA FORM 9

C 23-448-613      FRH  1677 10 76
MORRIS PEAVEY  12315 NW 23RD  AVENUE
MIAMI, FLORIDA   33167

COWC  CONTROL

DO NOT WANT BVA HEARING

A) The statement of facts are not based upon the best evidence available to VA and in
VA records.  Therefore the findings of facts and decisions are not supported by the best
evicence.  B)  The acts of the VA is one of taking and there fore a violation of due
process and equal protection.  C) The findings, decisions, and subsequent withholdings of
beniefits cause the veteran injury which costed the veteran medical, legal, and other costs
far in excess of $ 1,538.  Therefore the veteran has not been an unjust enrichment but a
serious injury to veteran.  These charges are supported by facts at para (10) herein and
this memorandum supporting the appeal.

        a)  The VA indicates that it received a notice of the veteran's death and
consequently discontinued his SVC benefits.  In the process of restoring those benefits,
the VA maintains that it overpaid two months of benefits and that having made such an
overpayment Morris J. Peavey, Jr. [Peavey] would be unjustly enriched by allowing him
to keep those benefits.  The VA did not use its best evidence from its files to establish
these facts and therefore its decisions are not based upon any evidence, facts, or laws.  It
is [Peavey's] contention that the VA did not receive a notice of his death and that the
actions to take [discontinue] his benefits are acts of harassment reprisal and abuse of
process.  It is further an attempt to destroy the following historical facts and record which
creates the VA liability and provide a record of continuous violations of due process and
equal protection denying the veteran his rights to fair and good medical treatment,
rehabilitation, proper compensation and all the benefits to which the veteran is entitled.
        b)  Peavey was strut by an automobile while marching in a military formation
September 16, 1966 [sic] and suffered injuries.  Those injuries caused him to be
medically unfit for military duty according to military regulations.  At the time he was an
excellent soldier with the rank of Spec. E4 serving in the elite first strike [82 Airborne
Division] unit.  The injuries caused him to be hospitalized and placed upon two medical
profiles.  Peavey was taken off abn status and restricted from engaging in the MOS
[military occupational spec.] for which he had most training.  That training was as a
heavy weapons specialist [4.2 mortar asst. gunner] and fire direction specialist.  The
medical injury was to his back and kidney and there was elevated high blood pressure
and eventually the involvement of his heart.
        There were objective findings of a blood pressure with a diastolic pressure over
110mm.  There were objective findings of a systolic murmur, enlarged heart and irregular
EKG [flat T waves.]  Being in an airborne unit [once off jump status] he became
technically a leg.  He was teased and harassed and finally given many details.  The

harassment spilled over into his attempt to get proper medical treatments. Finally he was pushed to the limit and went AWOL and the US ARMY gave [sic] him summary court-martial, reduced him in rank from specialist E4 to Private E2 [2 grades] and gave him a certificate of unsuitability for both enlistment and re-enlistment and he was not discharged from the US Army for medical reasons.

Peavey was transferred to a leg outfit and the harassment continued. He was attacked by a number of soldiers under orders of an NCO to take him to the orderly room and he ᵕ.ught them off. As a result he was charged with insubordination striking a NCO and a number of other charges. He was given a bogus special court-martial and placed in the military stockade with an order to discharge him from the military for disciplinary not medical reasons. Peavey got the Congress involved and was retired. He was found not guilty on all charges and specifications and released from the Army. His military discharge show that he was banned from further enlistment. He was retained in the US Army reserves until August 1970.

c) August 1967 Peavey filed a claim of service-connected disability with Department of VA. All of his medical claims were supported by objective medical evidence. He was found to have high blood pressure with heart and kidney dysfunctions. The diastolic pressure was between 110 and 120 there was evidence of heart enlargement. The diagnosis was hypertensive cardio-vascular disease [30%] and lower back strain [10%]. January 1968 he suffered from severe chest pains, shortness of breath and other symptoms of heart attack. Peavey was hospitalized in the Veteran's Hospital at 800 Poly Place Brooklyn, NY. His disability rating went from 40% to 100% due to hospitalization between January 26 and March 4, 1968. When he was released his rate went back to 40% and remained until December 1, 1972. He was enrolled in trade school and colleges and received a bachelor degree in Economics/Accounting from 1969 thru 1976 under the VA Rehabilitation CH 31. He was on a stipend for the entire period of the VA Rehab. He received private medical attention and finally acquired a fully employed status as a financial analyst with the NJ Office of Cable TV 1976 through 1980 and self employed owner of an economic development office from 1978 thru 1983. In 1971 Peavey begun to practice the faith of Islam and was harassed by an employer 1982 [Polytechnic University], he filed an EEOC complaint a finding of religious discrimination was entered against [Polytechnic] but EEOC did not seek any enforcement because he was involved in helping his sister Mamie Horne in a complaint against the USDOJ. From 1983 Peavey was Employed by J&R Air Condition and Heating Appl, Inc. as a Program Developer and was discharged because of a lack of funds. The IRS had placed a lien on the bank account of the company based upon out dated claims. Around the same time 1990-1991 EEOC destroyed the files related to the action in which Peavey prevailed against Polytechnic University. He was forced to return to migrant labor work [1991] and when his hands began to swell he was no longer able to do the hard work which he had done since 1985. He worked as a light carpenter and painter from 1991-1993 and the medical problems continued. Peavey went to the VA Medical Center in Miami, Fla and filed a claim for increased benefits. The objective medical findings in 1993 were high blood pressure with a diastolic pressure above 10 [in the range of 120] readings sometimes 240 over 120; left ventricle hypertrophy; Bradycardia [51] below 60; $CO_2$

levels of 33; protein [albumin] in urine and other evidence of enlarged aorta and possible involvement with the liver. Peavey was not given the increase disability. He refilled in 1994 and similar findings were discovered on objective examination and he was again denied and he was told that there was no medical history that he was treated by VA facilities or had any history of medical treatments for his medical condition over the years. Peavey gathered some of the old medical files and information which he had and sent them with a complaint to Senator Sam Nunn Chairman of the Armed Services Committee and Senator from GA. Peavey disability rating was increased from 0% to 50% [sic] for hypertensive Heart Disease and remained 10% for the back for 60% combined rate. He continued to receive 60% disability and have been forced into a homeless situation living off the good grace of his family. His rent has been totally subsidized my family and friends since 1991. While receiving benefits of 60% in March 2001 his service connected benefits were terminated. The Department of Veterans Affairs sent his family a notice of death and cut-off his benefits. Peavey provided VA with information showing that he was not dead. They continued to withhold his benefits from March 1, 2001 thru July 31, 2001 and again confiscated two months benefits from May 1, 2003 thru June 30, 2003 alleging they were recovering the over payment. The VA ignored a hardship request made by the veteran. The VA alleges that their actions were caused because they received a notice of Peavey's death but that is not the case. Their actions go further. They have altered and destroyed hospital records, these changes are designed to show a varying diagnosis and degree of disability. They have indicated that the original records of claim do not exist. They allege that the records of Peavey's hospitalization in the Brooklyn VA Hospital do not exist. They have even alleged as late as May 2, 2003 that Peavey never received Veteran's Disability even through he had received SVC Disability benefits [between 10% and 100%] continuously since November 11, 1967 from September 1967.

The Department of Veterans Affairs has not only suppressed records according to the National Personnel Records Center, they have acquired Peavey's Military Medical records which they maintain are not in their possession. The National Personnel Records Center alleges that VA requested these records and they were on loan. They latter indicate they were sent to the VA August 8, 01 and they don't expect them to be returned. The US Congress was reviewing Peavey's complaint against the VA for their arbitrary discontinuance of Peavey's Service Connected Disability between April 25, 2001 and September 11, 2001.

c) The Department of Veterans Affairs decided Peavy's case incorrectly because the very act of taking his benefits in not based upon any credible evidence that VA received a notice of death. The VA actions of delays and finally the second taking is unexplained and are clearly attacks upon his medical condition because his condition requires an environment free of stress. It required proper nutrition, rest, anxiety free environment and management of the high blood pressure. The Department of Veterans Affairs acts create serious negative factors with trigger problems for persons with Peavey's medical conditions. Their actions are adversary [sic] and foreclose him from proper Medical treatments in their facilities. First the US Government has a liability and responsibility for the injuries, which Peavey suffered while in the military. As a citizen

he would have had equity rights and tort claims to cover damages because of the auto injuries. Since he was a soldier he was foreclosed from recovery via the tort claim act, the government appoints the VA as the vehicle to care for these injuries and damages. The action of the VA discontinuance of his benefits is not a simple error of a clerk. It is one in a long series of federal agency attacks upon the veteran. The VA has proven by the subsequent acts, so-called lost records, destruction of or at lease [sic] suppression of information which was contained in both military and records of he VA Hospital Records that this is more than a simple error. The VA has resisted FOIA requests for more than two years. There, Peavey has claimed a violation of Due Process and violation of Equal Protection under the Law.

This is support [sic] by the fact that no credible notice of death was ever received by the VA and after they were given notice that Peavey was alive they deliberately produced erroneous information which they indicate was from their files to his Congress person and him to support their false claim of receiving a notice of death. They also suppressed various FOIA request and have confiscated military medical records which should be maintained by the National Records Center and ignore FOIA request related to those records. The VA action caused Peavey further injury, legal costs, and medical costs beyond the alleged overpayment and the finding and decisions are incorrect as a matter of evidence, facts and the laws, which were cited in this case.

The Statement of the Case in the appeal indicates that the issue question Peavey's entitlement to wavier of service connected disability overpayment of $1,538.00. First the taking was based upon erroneous and false statements. Second the taking caused the veteran medical injury and harm and lost of benefits subjecting his [sic] to grave situations. The effects of the action have been far reaching and continue to destabilize his living situation since the SVC disability is his primary source of income. This taking has shown a callous disregard for the welfare and medical injury to the veteran and a deliberate reading of the veteran cash resources. The finding of facts indicates the veteran had a cash balance of $10 after meeting his monthly engagements. This is not true the statement submitted by the Veteran indicated that he had a net cash deficit of $166.00 for April and May 2003 using the most favorable circumstances. In the financial status report the veteran indicated that he had agreed to pay his brother $600 to live in his ALF and was unable to pay more than $350.00 and had at lease [sic] $1,800 in arrears. The so-called $10 after meeting obligations is no where to be seen. Even if we allow the Department of Veterans Affairs this reading anywhere in the Veteran's statement, the willful refusal of the Department of Veteran's Affairs to acknowledge the Veteran's statements dated March 33, 2003 and the VA Form 5655 which was submitted April 7, 2003 is totally ignored by the VA when they come to their computation of the So-called $10 ready cash. The Department of Veterans indicate that they believed that the Veteran had a net of $10 left after he took care of his monthly expenses yet, on May 1, 2003 thru part of July 2003 they confiscated all of his SVC disbility compensation to recover $1,538. They did not confiscate $10 a month. They have not acknowledged the Veterans hardship request nor have they provided an audit of the taking to show they have satisfied their claim or lien against the Veteran. The character and nature of these actions in the face of the Veteran's medical condition are callous disregard for the veteran's

entitlement, his right to proper payment of benefits or any laws respecting his rights to due process or equal protection. They are clearly done with total disregard for the ability of the Veteran to meet the basic necessity of life. The Department of Veteran's Affairs are at fault yet they blame the Veteran. What they have done has been unjust and an attack upon a Veteran with a serious disability.

Respectfully submitted:

Morris J. Peavey, Jr.
With Counsel:  Nashid Sabir, Esq.

Dated October 27, 2003
Mailed to BVA  before October 30, 2003

Morris J. Peavey, Jr.
C/O Eric Peavey
12315 NW 23rd Avenue
 ami, Florida  33167

February 5, 2004

                                        Ref:  C23 448 613
                                        MJ Peavey 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
                                        RO/317/243C-602

Board of Veterans Appeals
810 Vermont Avenue NW
Washington, DC 20420
Attention: Elijah D. Clark

Dear Chairman:


        On or about October 28, 2003 I submitted an appeal [within the required deadline]
to your attention by placing it with a carrier [Federal Express] who delivered it to 810
Vermont Avenue B12.  The Federal Express confirmation of delivery indicates that G.
Taylor signed for the legal documents on October 29 at 9:20 a.m. within the proper time
limit. The statement on appeal was signed by me, Morris J. Peavey, Jr. and my legal
counsel Nashid Sabir, Esq.  I was informed by Attorney Sabir that he had filed a notice of
appearance and copy of fee arrangement with BVA within the 30-day requirement.

        On January 5, 2004 I sent a letter to your attention requesting information and
acknowledgement of receipt of a timely filed appeal from the decisions and actions taken
by RO 317 which are clear violations and abuses of the process.  The VARO also refused
to respect my right to information in violation of laws under the Federal Statutes of FOIA
and Privacy Acts of 1974. There is also evidence of alteration and destruction of VA
records and suppression and potential destruction of Army Personnel Records.   My
request for acknowledgement or receipt [i.e. a docket number and disposition of the case]
is within my rights and the fact this matter relate to serious violations of process,
alteration and destruction of federal records and aggravation of my present medical
condition make it a very serious matter.  My letter dated January 5, 2004 was mailed
certified 7002 3150 0002 1460 8308 and on or about 1/21/04, I had not received proper
notice of the returned receipt card from USPS.  I complained and on or about 1/22/04, I
received the card showing it was signed by Pam Munford on Jan 12, 2004.

        On or about January 4, I had not received any response to my letter so I called
your office and spoke to someone identifying herself as Maryann. Per our conversation, I
have been informed that your office received the legal documents related to my appeal c
23 448 613 RO/317/243C-602 on October 30, 2003.  I was also informed that your office
also received my letter dated 1/5/04 but you did not receive any other correspondence or
notice from my attorney Nashid Sabir.  I was told by Maryann that no docket was

assigned but the case and all the legal documents were sent to the regional office [i.e. St. Petersburg. She indicated that she could not give me any more information related to my inquiry but told me to call the regional office. She further indicated that no docket number would be assigned and that the case would not be before the BVA until the regional office filed the case.

This letter is to reduce the telephone communication to writing. It is also a request for confirmation related to the receipt and disposition of the action and a status of the present appeal process. If I am being directed to the RO please indicate who is representing the BVA at this point in the process at the RO and who I should contact.

Respectfully requested:

Morris J. Peavey, Jr.

DEPARTMENT OF VETERANS AFFAIRS
Board of Veterans' Appeals
Washington DC 20420

FEB 19 2004

In Reply Refer To: 014DNT114
REDACT

Mr. Morris J. Peavey, Jr.
C/o Eric Peavey
9231 5 NW 23rd Avenue
Miami, FL 33167

Dear Mr. Peavey:

This is in response to your February 3, 2004, correspondence that was received at the Board on February 13.

The Board was informed by the Department of Veterans Affairs Regional Office in St. Petersburg, that the benefits you sought on appeal were withdrawn from appellate status due to your failure to respond. Because of this action, your October 30, 2003, a notebook, VA Form 9 and other evidence and your correspondence of January 3, 2004 were forwarded to the regional office. The correspondence referenced in your letter from your attorney has not been received at the Board. If you have a different understanding of the course of events taken by the regional office, you should contact that office as soon as possible so that the appeal can be reinstated.

I hope this information has been helpful.

Sincerely yours,

Marvin H. Foiles
Acting Director
Management and Administration

TAB -2

1.     RE: VA form 9 completed in response to VARO SOC dated 6/29/05 which was mailed to Peavey on or about 7/05/05 and VA stamped received August 31, 2005. The form is dated 8/28/05. COWC indicate that affidavit was attached.

2.     VBA referral of correspondence indicate;   We are referring the enclosed records for your information and necessary action.  They were delivered to the Board in error.  It is marked 171 pent and dated 9/21/05. Attached sheet show back stamp received by BVA Intake team September 6, 2005 and VARO September 27, 2005.

3.     Department of Veterans Affairs letter dated October 6, 2005 notifying peavey "You are currently enrolled in Priority Group 5.

4.     Morris J. Peavey, Jr. letter dated October 19, 2005 to Jim Nicholson, Secretary complaining about Gary M. Baker letter erroneously alleging that he was priority five after he notified the US District Court that he was incapacitated with MI September 14, 2005.  The letter further notify VA secretary of VA erroneous Brill Files and request his records be corrected to reflect the correct degree of disability which he had been rated.

# APPEAL TO BOARD OF VETERANS' APPEALS

**IMPORTANT:** *Read the attached instructions before you fill out this form. VA also encourages you to get assistance from your representative in filling out this form.*

| 1. NAME OF VETERAN (Last Name, First Name, Middle Initial) | 2. CLAIM FILE NO. (Include prefix) | 3. INSURANCE FILE NO., OR LOAN NO. |
|---|---|---|
| PEAVEY, MORRIS J. JR. | C 23-448-613 | |

**4. I AM THE:**
[X] VETERAN  [ ] VETERAN'S WIDOW/ER  [ ] VETERAN'S CHILD  [ ] VETERAN'S PARENT
[ ] OTHER (Specify)

**5. TELEPHONE NUMBERS**

| A. HOME (Include Area Code) | B. WORK (Include Area Code) | 6. MY ADDRESS IS: (Number & Street or Post Office Box, City, State & ZIP Code) |
|---|---|---|
| 305-688-0759 | N/A | C/O Eric Peavey 12315 NW. 23rd Avenue Miami, Florida 33167 |

**7. IF I AM NOT THE VETERAN, MY NAME IS:** (Last Name, First Name, Middle Initial)

N/A

**8. HEARING**

*IMPORTANT: Read the information about this block in paragraph 6 of the attached instructions. This block is used to request a Board of Veterans' Appeals hearing. DO NOT USE THIS FORM TO REQUEST A HEARING BEFORE A VA REGIONAL OFFICE HEARING OFFICER.*

Check one (and only one) of the following boxes:

A. [X] I DO NOT WANT A BVA HEARING.
B. [ ] I WANT A BVA HEARING IN WASHINGTON, DC.
C. [ ] I WANT A BVA HEARING AT A LOCAL VA OFFICE BEFORE A MEMBER, OR MEMBERS, OF THE BVA.
     (Not available at Washington, DC, or Baltimore, MD, Regional Offices.)

**COWC CONTROL**

**9. THESE ARE THE ISSUES I WANT TO APPEAL TO THE BVA:** (Be sure to read the information about this block in paragraph 6 of the attached instructions.)

A. [X] I WANT TO APPEAL ALL OF THE ISSUES LISTED ON THE STATEMENT OF THE CASE AND ANY SUPPLEMENTAL STATEMENTS OF THE CASE THAT MY LOCAL VA OFFICE SENT TO ME.

B. [ ] I HAVE READ THE STATEMENT OF THE CASE AND ANY SUPPLEMENTAL STATEMENT OF THE CASE I RECEIVED. I AM ONLY APPEALING THESE ISSUES: (List below.)

FILE / 7/ PEND
EP FINAL
EP
ADJ. INT AUG 3 1 2005

**10. HERE'S WHY I THINK THAT VA DECIDED MY CASE INCORRECTLY:** (Be sure to read the information about this block in paragraph 6 of the attached instructions.)

The VARO 317 has shown an extreme animus and disregard for my health and well being in that it discontinued my disability benefits falsely alledging it received a notice of my death. This action continued for about 5 months and caused me physical injury.

The VARO 317 in deciding my disability acted to altermedical records and deminish my entitled benefits which should have been based upon medical facts taken in examination by certified doctors not upon the order of an adm. personnel.

CB Gibbard an adm. personnel acted in concert with Dr. Knopa at VAMC Mia to alter and change subjective and objective medical findings and diminish my disability rating in the past and his so-called finding of facts are tainted

*(Continue on the back, or attach sheets of paper, if you need more space.)*

| 11. SIGNATURE OF PERSON MAKING THIS APPEAL | 12. DATE | 13. SIGNATURE OF APPOINTED REPRESENTATIVE, IF ANY (Not required if signed by appellant. See paragraph 6 of the Instructions.) | 14. DATE |
|---|---|---|---|
| *Morris J. Peavy, Jr.* | 8/28/05 | | |

VA FORM
JAN 1998(RS) **9**

JetForm

In 1993-1995 I was examined by VACM for swelling in hands and ankles and
pain in left chest down left arm at times when I work and frequent head-
aches and a general lost of my strength since 1993

VA test and Labs performed 1993 showed edema, high levels of serum $CO_2$   (33H)
Bp.200/118 Cardiac Bradycardia (51 bmp) and x-ray showing enlagred aorta
and rounding of the Left ventricle explained by hyperthrophy carpenter work
provoked these symptoms I was no longer to work because of a general weakness
I was re-examined 8/3/95 more than a year later and the symptoms presisted
although I didn't work at all the Dr. examination showed enlarged liver, Enlarged
heart, and protein (30H) in my urine all signs of CHF  . Dr. Knopha re-drafted the
doctor's reports eliminating these specific signs of CHF diminishing the diagnosis
to CHF insipent not acute or chronic CHF.   See Affadivit par. 16 thru 25

The fact finder decision that work I preform July 2001 is proof I was gainfully
employed after indicating I was totally disable by reason of unemployability
is a mis-interpetation of substantially gainful employment.  see Affidavit par. 34 thru 4

The fact finder decision that my missing a schedule appoint -ment didn't
give him the benefit of fully evaluating the claim pursuant to Title 38 sec.3.655(b)
The VA did examine me and preformed comparable test for emergency complaint
related to heart troubles and also examined groin providing VA with X-rays and
Ek&, and all the various test that would have been form in C&P examination
These VA Examinations were made available to the fact finder which they
chose not to use since I didn't make the specific examination schedule for VAMC MIA

I have provided a reasonable cause for not making the exam and was exam
by the VA and notified VA of the exam making  information available to evaluate
my medical condition if that is what they seek.  The fact finder chose
not to use any of the medical information from VA exam, my private physicians,
UMD NJ Hospital, or any certified Medical Dr. that I was not specifically
ordered to use by MR. CB Gibbard.  See Affadavit par. 32 thru 33

*Irving D. Penny P*

AUG 3 1 2005

VARO 317/23·A



### DEPARTMENT OF VETERANS AFFAIRS
**Board of Veterans' Appeals**
**Washington DC  20420**

9-21-05

In Reply Refer To: 014

Department of Veterans Affairs
Director  317
Regional Office,  ST PETERSBURG

C  234 NG  613
PEAVEY, MORRIS  J

SUBJ:  Referral of correspondence

☐  We are referring the enclosed correspondence for reply and any necessary action.  If applicable and the case is not in an appellate status, you should include in your reply appropriate information as to any appellate rights the claimant may have.

☐  The enclosed communication initiated by this Board was returned undelivered.  Please remail when the correct address is ascertained, with any necessary explanation.

☐  The enclosed correspondence with a copy of our reply is referred for your information and any necessary action, as the records are located in your office.

☒  We are referring the enclosed records for your information and necessary action.  They were delivered to the Board in error

☐  The enclosed correspondence is referred for your information and any necessary action, as the records are located in your office.  This appeal was docketed at the Board on _____, and will be recalled from your station for review in its proper docket order.

☐  We are returning the enclosed for any necessary action, as the records were returned on

_____

Carrie M. Johnson-Clark
Director, Management and Administration

FILE
EP
EP
ADJ. INT.

171

PEND
FINAL

RECEIVED
SEP 27 2005
VARO 317/23/4

RECEIVED
SEP 0 6 2005
BVA INTAKE TEAM (014/MT)



**HEALTH ELIGIBILITY CENTER**
2957 CLAIRMONT RD NE STE 200
ATLANTA GA 30329-1647

OCTOBER 6, 2005

In Reply Refer To: 742/006
PEAVEY JR., MORRIS J
SSN: 264726975

#BWNHMJZ
#676722296MJP2      #

ldlllllllllllllllllllllllllllllllllllllllllllll
MR MORRIS J PEAVEY JR.
12315 NW 23RD AVE
MIAMI FL 33167-1925

Dear MR PEAVEY:

I am pleased to confirm your enrollment in the Department of Veterans Affairs (VA) health care system. This letter is to notify you of your priority group and provide information about enrollment.

**What This Means To You**

- You are currently enrolled in Priority Group 5.

- Information about enrollment priority groups and some *Frequently Asked Questions* and answers are enclosed.

- Enrollment, which occurs on a year-to-year basis, gives you access to a broad range of health care services at VA facilities anywhere in the country. Services include preventive, primary and specialty care, both inpatient and outpatient. You can use these services even if you have Medicare, Medicaid, TRICARE, or private health insurance coverage. VA recommends you continue any health insurance coverage you currently maintain.

- Your enrollment will be reviewed and renewed each year depending upon your priority and VA available funds. You will be notified of any changes in your enrollment status.

- Contact the Enrollment Coordinator at your local VA health care facility if you wish to obtain an appointment for care.

- Should you choose to cancel your enrollment for any reason, please notify the VA Health Eligibility Center, 2957 Clairmont Road NE Suite 200, Atlanta, Georgia 30329, in writing.

**What You Can Do If You Disagree With Our Decisions**

- If you have received a Purple Heart award, provide us with sufficient documentation and you will be upgraded to Priority Group 3 if you are in a lower priority group. Please see the enclosed *Frequently Asked Questions* for details.

- If you wish to appeal our decisions, follow the instructions on the enclosed VA Form 4107VHA, "Your Rights To Appeal Our Decision." Return your Notice of Disagreement to the Enrollment Coordinator at your local VA health care facility.

**If You Have Questions**

If you have any questions, please contact the VA Health Benefits Service Center for assistance at the toll-free number, 1-877-222-VETS (8387). You can find additional information on eligibility and enrollment on VA's website at www.va.gov/healtheligibility.

Thank you for enrolling with the Department of Veterans Affairs health care system. We will do our best to provide you health care that is second to none.

Sincerely,

Gary M. Baker
Director, Health Eligibility Center
Enclosures

VA Form 600C
FEB 2005

*Questions? Call 1-877-222-VETS*

000003830

Elixir H600C6

Morris J. Peavey, Jr.
c/o Eric Peavey
12315 NW 23rd Avenue
Miami, Florida 33167

October 19, 2005

Jim Nicholson, Secretary
Department of Veterans Affairs
810 Vermont Avenue
Washington, DC

Dear Sir:

Enclosed is a copy of a letter to Gary M. Baker, Director, Health Eligibility Center. It responds to a letter which he sent me showing me as 0% disabled and in his priority-5 eligibility group. I have advised him of my correct degree of disability and the fact that my injuries are service connected and requested that his records be corrected.

I have notified the US District Court that I have been incapacitated as of September 14, 2005. I will be providing the VA with various medical bills and request for housing assistance. I am concerned that the notice direct me to appeal any disagreement with the BVA. I submit this matter to your attention and again request that the VA correct its records and any BRILL FILES to reflect the true degree of my disability.

Respectfully submitted:

Morris J. Peavey, Jr.
Enclosure

RECEIVE
OCT 25 2005
EXECUTIVE CORRESPONDENCE SECTION
DEPT. OF VETERANS AFFAIRS (032D)

RECEIVED
OFFICE OF THE SECRETARY
DEPT. OF VETERANS AFFAIRS
05 OCT 24 PM 4: 02

C23 448 6/13

## TAB-3

1.   RE:   Letter from Morris J. Peavey, Jr. dated July 18, 2008 to the attention of BC Gibbard responding to his May 20, 2008 letter and again provided a supplemental to my VA Form 9 which was submitted to him on June 9, 2008 with the attached NOD dated 8/17/07.

Morris J. Peavey, Jr.
C/O Eric Peavey
12315 NW 23rd Avenue
Miami, Florida 33167

July 18, 2008

317/vsc/appeals/man
CSS 23 448 613

Department of Veterans Affairs
St Petersburg Regional Office
PO Box 1437
St. Petersburg FL   33731

Attention BC Gibbard:

The attached affidavit will respond to your letter dated May 20, 2008 with the attached
rating decision dated 4/22/08.    It will respond to various discrepancies and is a
supplement to my VA Form 9 for appeal, which was submitted to you on June 9, 2008
with the attached NOD dated 8/12/07.

Respectfully submitted:

Morris J. Peavey, Jr.
Enc
CC  Secretary of Veterans Affairs.

COWC Reply to SSOC 4/22/2008

Morris J. Peavey, Jr.
317/Appeals/SF
C-23-448-613

Statements of Appeal of SSOC 4/22/2008

I. **Statement of case dated 4/22/2008 arbitrary replaces the SOC dated 6/29/05. Technically it is an SSOC and cannot** Summarily dismiss adjudicative actions contained in SOC dated 6/29/2005 which include 4/10/2003 as the date of VA claim.

II. **Additional material medical records show deteriorated heart function** since the 60% 7007 12-4-1995 rating.

III. SSOC **dated 4/22/2008 alter or suppress material medical claims contained in the SOC dated 6/29/2005 changing the original claims and dates of benefits: §3.104 and 38 U.S.C. 5104.**

IV. **VARO reasoning and basis for reducing 7007 60% rating is unsound and is not supported by medical diagnosis or prognosis. It totally disregard the law and rating guide-lines for evaluating  chronic CHF and the progressive deterioration of the heart in diagnosed chronic hypertensive heart disease showing Cardiomyopathy, with CHF, and diastolic dysfunction with severe Bradycardia. The rating examiner mistakenly believes that CHF diagnosed asymptomatic after four days hospitalization mean full recovery of the heart.**

V. **VA misstates various facts attempting to establish neglect on my part in providing for my care. VA misrepresentations include some material omissions and substitutions which truncate various treatment periods. VA also alleges missing appointments. VA notes some missed appointments but VA does not accurately account my response or reasons regarding missing appointments. VA misstates the records of rating for 7007.**

VI. **VA indicates that I missed a scheduled C&P orthopedic appointment and that the 10% rating remain for the lumbar sprain which was rated and maintained since August 5, 1967. I have not made a claim for increases of the 5295 rating over the years. The majority or my back injuries have been felt in the Rt. Flank and I have made claims for injuries to my right kidney which was covered up over the years. Those pains have been supported by objective evidence of the penile discharge, abnormal IVP, and dysfunctional right kidney show claims filed 1968, 1972, 1994.**

VII. **Material service connected injuries to lower torso is shown through out the US Army medical records. There are deliberate omissions and alterations in the documentations of blood pressures, associations with automobile accident. Errors in**

diagnosis can on obscure the record that shows the injuries to my lower torso were severe enough to cause 7 days hospitalization in US Army hospital, repeated sick call, 2 light duty profiles, removal from jump status, 30 day convalescence leave and discharge With/3B restriction upon enlistment:

VIII.   VA continues to erroneously allege that IVP were normal and no kidney or genitourinary conditions were found in 1995. VA further indicate that no mention of a hydrocele at that time.

IX.   VA suppressed the medical facts which support any finding showing US Army violation of AR 40-501. This includes VA examinations which confirmed complaints of pain in the right flank and groin. These objective medical findings also show albumin in urine during the 1968 hospital examinations and persistent high blood pressure with diastolic of 120 or more. The 1993-1995 objective findings and symptoms indicating Chronic CHF was also suppressed while the VA attempt to destroy the history of VA medical diagnosis of Gr. II Arteriosclerosis and the symptoms of CHF. Lab on 8/3/95 shows protein in urine 30H. The VA rated cardiovascular disease under the 7007 etiology in 1995 at 60% under 7007 from August 1994 and 0% under 7101 essential hypertension. This rating is unchanged [13 years] until 4/17/2007 rating.   VA present actions are designed to tactically dismiss 317/243C appeal and 317/appeals filed responding to SOC dated 6/29/05: See Tab-1 herein.

XI.   VA has not docketed any COWC which has been filed while the RO arbitrarily change ratings to fashion its own evidence but not correct its CUE.  VA show adjudicative actions as claim received 11/28/2005 however this claim was actually received 4/10/2003 and 11/28/05 and 10/2/2006 provide supplementary information to the original claim which had a COWC pending. VA 4/22/08 SSOC action is an arbitrary dismissal of the claim which they received 4/10/03.  The SOC dated 6/29/05 show that VA listed evidence which it cited to denial of the finding of chronic CHF.

XII.    VA CUE past diagnosis does not serve to provide proper diagnosis of injury and or disease resulting from the blunt force trauma which I suffered from being struck by the automobile.  These CUES have led to misdiagnosis and medical malpractice.  The issue of the hydrocele falls in the same category.  A hydrocele is a symptom of an injury or weakness in a wall.  VA can not rule out SVC for this symptom of an injury for the following reasons.

Respectfully submitted:

Morris J. Peavey, Jr.
12315 NW 23rd Avenue
Miami, Florida  33167
1-305-688-0759

C/O Eric E. Peavey
12315 NW 23rd Avenue
Miami, Florida 33167

August 12, 2007                          BVA 0140 INT-42 [90]
                                         317/243C Appeals
                                         317/Pre01/FEM
                                         317/VSC/POST1/CC

                                         PEAVEY, Morris J
                                         Re: Supplementary NOD 5/3/2007

Department of Veterans Affairs
PO Box 1437
St. Petersburg, Florida 33731

Enclosed with this letter please find a revised notice of disagreement to respond to your
rating decision dated April 17, 2007. The notice is in detail to provide the VA with a
complete response to your documentation and the actions which were pending at the time
when I filed supplemental and additional material claim information showing two periods
of hospitalization for heart attacks in 2005 and 20006.

I had been informed by VA that 317-243C Appeals and 317/Pre01 was pending in your
attached statement dated September 27, 2001. Since VA alleged in the US District Court
in Peavey VS. Alberto Gonzales 1:05; CV-0819 that I had not exhausted administrative
actions in these matters this detail NOD is necessary to keep the records straight. I have
not reopened any action before the VA but continue to provide additional material
documentation of my Chronic Heart Condition. I did not reopen any claims May 2006 as
is erroneously claimed and this will respond your additional rating decision and
supplement my NOD dated May 3, 2007.

You have indicated that I did not prefect an appeal or appeals however, I provided VARO
317 and the BVA completed VA Form 9 i.e. COWC on or before October 30, 2003 and
August 30, 2005. Attached to these forms were complete responses to VA SOC and
SSOC which it mailed to me July 3, 2005 and the L RUE notice in her letter dated
August 31, 2003 regarding 317/243C matters related to "Taking."

The enclosed document as the 5/3/07 contains information related to these matters
because they are CUE and therefore not time bar. The regional or the Secretary can
correct the CUE which is jurisdictional at any time. Contrary to your letter allegations
that the appeal had not been perfected; CUE is not time bar and the Secretary can correct
them on his own motion. The RO correction and or the Secretary own motion can cure
those matters within the jurisdiction of the VA leaving the US Army to contend with
correcting its own record. There is clearly an injury to my KUB which the VA has
attempted to conceal. There is clearly a total disability 1967-1976 due to my release from
the US Army injured and restricted to light work only and no work during periods of
discomfort during that period when I had not completed Chapter 31 Rehab. There is

FILE
EP _____        PEND
EP _____        FINAL
ADJ. INT. _____   SEP 0 4 2007

clearly chronic CHF 1993-present coupled with malignant hypertension and injury to my KUB notably present below my pelvo-urethral junction.

The present actions of the VA support the proof of willful deceit which supports the allegations of fraud and tactical delay not error or misinterpretation.

I have requested copied of the medical records VA have received from University Hospital which you have cited that they diagnosed CHF resolved after 5 days of hospitalization and that the condition is presently minimal.   I have not received a response regarding these records.

Respectfully submitted:

Morris J. Peavey, Jr.
12315 NW 23rd Avenue
Miami, Florida 33167
1-305-688-759 Messsages
Enclosure
CC Secretary of VA
    Senator Bill Nelson

RECEIVED
AUG 2 2 2007

DUPLICATE

C/O Eric E. Peavey
12315 NW 23rd Avenue
Miami, Florida  33167

August 12, 2007                                    BVA 0140 INT-42 [90]
                                                   317/243C Appeals
                                                   317/Pre01/FEM
                                                   317/VSC/POST1/CC
                                                   C 23 448 613
                                                   PEAVEY, Morris J
                                                   Re: Supplementary NOD 5/3/2007

Department of Veterans Affairs
PO Box 1437
St. Petersburg, Florida  33731

NOTICE OF DISAGREEMENT:

     THIS will response to the Department of Veterans request dated June 13, 2007
and postmarked June 15, 2007 "Please specify which issues from your rating decision
that you would like to appeal.  No further action will be taken on your appeal until we
clearly identify the issues with which you disagree.  Until clarification is received, your
disagreement is considered inadequate." To insist in responding to Department of VA
present request please review and integrate the sections and documents contained The
NOD dated May 3, 2007:

These facts support my motion to correct CUE

     PLEASE provided requested Evidence to support VA erroneous allegations that I
refused any test that was not contraindicated by my heart condition or kidney dysfunction
while treated at University Hospital of NJ at any period.  This support the exceptions and
evidence contained in the NOD filed May 3, 2007 and all other timely filed NOD and
request for BVA Appeals previously filed in these matters initially filed 9/10/02-6/9/03.

**I.**   **RECORDS REQUESTED:**   **COPY-**   Treatment   records   from
University Hospital of NJ for admission of August 22, 2006
to August 27, 2006; rating decision of September 26, 1994
VA cite as evidence; SOC which VA cites dated September 30,
2005.  Requested May 3, 2007.

DUPLICATE

1

## II. SCHEDULAR DISABILITY:

HISTORY AND MEDICAL FACTS

1. All relevant evidence necessary for an equitable disposition of determination of this claim show that while Morris J. Peavey, Jr. [Peavey] was in the US Army he was struck as a pedestrian by an automobile and sustained injuries to his torso, suffering severe back pains, headaches, dizziness and fainting; hypertension [diastolic over 110], injury to the groin and examinations showed hypertension, heart murmur, bruit in abdomen, double bladder, narrowing of arteries.

2. Peavey was hospitalized September 28, 1966 and went on 30 days convalescence leave November 18, 1966 through December 18, 1966. The US Army issued two light duty profiles. "3P" for hypertension was issued October 4, 1966; "1L" for lower back syndrome with Code D and Code U was issued October 24, 1966. The PULSE rating of "3P" with code D restricts all strenuous physical activities and the Code U restricted all parachute jumping. Both physical profiles were permanent.

3. Peavey was discharged from the US Army August 5, 1967 and September 18, 1967 VA C&P examination showed Peavey scheduler disabled 7007 Hypertensive Cardiovascular Disease 30% and 5292 Lower Back Syndrome 10%. Peavey was diagnosed with cardiovascular LV hypertrophy, heart murmur and Blood pressure 170/110; 200/140; 200/120; EKG SHOW FLAT t-waves at that time. Peavey complained of pains in the lower back to include severe pains in the right flank.

4. On January 26, 1968 Peavey present to VA Hospital Brooklyn with complaints of chest pains and shortness

DUPLICAT

2

breath and was hospitalized. Peavey was employed as a NYU library clerk at the time of the hospitalization. Upon hospital admission, Peavey also complained of pain in groin and penile discharge. Objective examination found Peavey suffered hypertensive cardio vascular disease, IVP showed injury to KUB [i.e. faint nephrographic effects at 1 minute bilaterally; slight narrowing at the pelvo-urethral junction on the right side; possible aberrant vessel could not be ruled out; double pelvis with proximal on left uniting about 3 cm. below the pelvo-urethral junction. Renal-gram showed kidney dysfunction on the right; and penile discharge was non social and unidentified; Urinalysis showed urine loaded with WBC.

5. Renal Graph showed secretion phase left 2.5 and right 4.7 minutes. The range for normal is from 3 to 6 minutes t/2max. The excretion phase shows the left 9.5 and the right 12.2. The normal range for excretion is 9-12 minutes.

CUE CLAIM RELATED TO DISABILITY: Peavey claim injuries to heart and kidney coupled with hypertension in violation of AR 40-501 upon release of US Army August 5, 1967.

6. VA did not rate the renal dysfunction but suppressed the medical finding which shows abnormal result of the IVP and Renal gram. The final medical report did not mention these examinations. VA also misrepresented the penile discharge by showing it as starting in the hospital when the records clearly showed that the Peavey indicated that it was recurring and existing when he was admitted to the hospital VA Hospital January 26, 1968. Peavey was rated 100% 7007 January 26-April 1, 1968.

7. VA medical records verified the abnormal IVP, and renal dysfunction within six months of Peavey's release

DUPLICAT

3

from the US Army.   Dr. Condin had ordered the IVP 2/2/68
and suggested arteriography on the right to confirm or rule
out aberrant vessel.   The abnormal IVP findings were not
reported in Dr. Paulson final summary and no abnormality of
the kidney were compensated.   VA suppressed these medical
indications   and   called   the   IVP   normal   in   all   further
reporting.

    8.  The findings of injury to Peavey KUB support his
claim to suffer hypertension and dysfunction of kidney and
heart therefore making him beyond the standards set forth
in AR 40-501.   VA suppressed the finding of hypertension
over 110 diastolic in Peavey records refusing to include
185/120 and 154/112 and called IVP examinations by US Army
normal when in fact the US Army show two IVP 9/26/66   and
9/29/66 producing one showing double bladder. Peavey was
rated 100% disabled January 26, 1968 through April 1, 1968.

    9.  Peavey was rated 30% 7007 and 10% 5292 April 1,
1968   through   January   1,   1973.   Peavey   entered   VA
rehabilitation   chapter   31   to   be   trained   for   sedentary
employment [1969-1972] and received 10% disability plus a
stipend equal too 100% while in training [10%--plus welfare
when   on   break]   through   October   1976.   VA   denied   Peavey
proper evaluation for his disability which was found to be
a   permanent   light   duty   medical   disability   by   the   US   Army
profiles.     Since   he   was   not   qualified   for   sedentary
employment before he completed Chapter 31 rehabilitation he
was clearly fully disable for reason of employment until he
finished the training October 1976.   Peavey SSA earnings
show that he did not earn more than casual earnings during
the period August 5, 1967 through October 1976.

    10.   Peavey was substantially employed in sedentary
employment 1977 through 1980; 1982. Peavey's employed in

DUPLICATE

4

other than sedentary employment 1983-1989. 1989-1990; Peavey was substantially employed in sedentary employment 1990 and unemployed or less than substantially employed effectively 1991.

## CHRONIC CONGESTIVE HEART:

11. 1991 Peavey suffered swelling in hands, shortness of breath, chest pains and hypertension. 1993-1995 Peavey was treated by VA for complaints of edema in hands and feet, shortness of breath, headaches, severe tiredness and lost of strength objective examinations showed heart murmur, enlarge heart, enlarge liver, edema, x-ray showed rounding of heart and shift in spine; cardiac braycardia 51 bpm all symptoms of a failing heart with diastolic hypertension over 120.

12. VA completed the 1995 rating decision suppressing the history of hypertensive heart disease and symptoms of Left ventricle hypertrophy; heart murmur; and symptoms of chronic congestive heart failure suppressing all showing of edema, enlarge liver, heart murmur and 1993 examinations and showing of high levels of $CO_2$, heart enlargement and bradycardia.    VA suppression of these records was intentional and deliberate and VA continued to suppress these records per the order of C.B. Gibbard a rating specialist without further examination.

### INJURY -- TRAUMA TO GROIN & LOWER BACK

13. 1995 examination showed protein in Peavey urine and this fact was also eliminated from the report on kidney dysfunction and Peavey's claim was denied. 2001 plaintiff disability compensation was discontinued and he suffered a groin pull and hydrocele was treated by various priDUPLICATE

physicians and the VA 2002, 2003, 2004, 2005, 2006. The hydrocele is grotesque and limit walking, lifting, and stooping. IVP show double plaintiff suffered double bladder, double pelvis, and aberrant vessel below his pelvo-urethral junction after the accident. Peavey complained of pain in groin and US Army discovered bruit in abdomen after accident and double bladder on IVP.

14. 7509 Hydronephrosis; 7517 bladder injuries; are rated as severe renal dysfunction based upon the frequent attack or colic with infections (pyonephrosis), Kidney function impaired and or bladder rated as voiding dysfunction. Severe repeated attacks which were evident 1968-1972 should have been rated due to the persistent infections which required medication. The bladder injury was discovered while Peavey was still in the US Army and the complaint of pains in the groins was persistent so was the pain in the right flank. Private Doctors and VA have also shown protein in urine 1995, Hydrocele 2002, 2003, 2004 multifactor kidney dysfunction and sepsis 2005. The VA suppressed the complaints and findings of abnormalities on IVP and all other lab findings of proteins in urine.

## MALIGNANT HYPERTENSION WITH DIASTOLIC OVER 120

15. **7101** Hypertensive vascular disease (hypertension and isolated systolic hypertension): The VA admits diastolic in excess of 130 per 2007 C&P. VA admit diastolic over 130 rates 60% while attempting to minimize 7007 Hypertensive Heart disease to zero. Peavey has shown a history of malignant hypertension from the time he was struck in the back by the automobile 1966. He has required medical treatment and severe restrictions on his diet since that period. 7101 **Note 3:** Evaluate hypertension separately

6

from hypertensive heart disease and other types of heart disease.

16. Peavey was rated 7007 Hypertensive Heart condition 60% and 5292 lower back syndrome 10% the flawed rating decision which was issued by VA December 5, 1995. 2005 peavey suffered chest pains, nausea, fainting, MI, Sepsis, pneumonia, and multifactor kidney function and was hospitalized 11 days. Echo-cardio-gram showed 40% LVEF, with enlarged aorta, and valve regurgitation. Peavey has not been able to return to any substantial employment but have engaged in casual employment on per diem basis 2001 and 2004. April 19, 2007 VA rating decision label Peavey CHF minimal and do not warrant 60%.

17. Peavey 2001 employment led to further injury to his KUB and a grotesque hydrocele. Peavey was hospitalized for a heart attack at Columbus Hospital 9/16/2005. He was again hospitalized for a heart attack 8/21/2006 at University Hospital of NJ. He was not employed at the time of either cardiac injury. Peavey has been unable to engage in any level of substantial employment because of his medical disabilities. On August 21, 2006 was transported by EMS to hospital, showed rales, fainting, fever, short breath and vomiting. He was administered diuretic by IV and a urethral caters inserted. Peavey's heart rate ranged 35bpm to 47bpm. Peavey has shown a diminished heart and impaired function. Dr. Wilson indicates cardiomyopathy since 1993. He had been unable to maintain even casual employment since 2004 and lived in a homeless situation. He was not engaging in any appreciable level of activity beyond walking six to eight blocks at a slow pace before the second heart attack.

18. Symptoms of chronic CHF existed 1993 and caused

DUPLICATE

Peavey to be unable to maintain even causal employment.    VA
examined Peavey and ignored all medical indications. The VA
has rated Peavey 60% Hypertensive Cardiovascular disease
with CHF and this rating has continued for 13 years and the
heart have showing that it function has deteriorated
evident of the symptoms shown paragraph 11-12; 16-17
herein.    The VA indicates that its examination show chronic
edema and a blood pressure with diastolic of 130 admitting
that this require 60% under 7101.    VA also admits the
existence of a hydrocele and erroneously states that CHF is
a-symptomatic. Chronic edema, diminished heart capacity
shown by the 35-47bpm reduced from the 72 which existed
when the 60% was established; a reading of 40% LVEF reduced
from 70% when the rate was established and two periods of
hospitalization for CHF within the year September 14, 2005
and August 21, 2006 and the hydrocele are symptomatic of
Chronic CHF. All of these symptoms point to further
deterioration of the heart muscle not improvement.

## §4.10 Functional impairment.

The basis of disability evaluations is the ability of
the body as a whole, or of the psyche, or of a system or
organ of the body to function under the ordinary conditions
of daily life including employment. Whether the upper or
lower extremities, the back or abdominal wall, the eyes or
ears, or the cardiovascular, digestive, or other system, or
psyche are affected, evaluations are based upon lack of
usefulness, of these parts or systems, especially in self-
support. This imposes upon the medical examiner the
responsibility of furnishing, in addition to the
etiological, anatomical, pathological, laboratory and
prognostic data required for ordinary medical

DUPLICAT

classification, full description of the effects of disability upon the person's ordinary activity. In this connection, it will be remembered that a person may be too disabled to engage in employment although he or she is up and about and fairly comfortable at home or upon limited activity.

19. Peavey's diagnosis of chronic CHF and cardiomyopathy is based upon certified medical doctor's diagnosis, and treatment which indicate chronic congestive heart failure, dysfunctional kidney with hydrocele, and malignant hypertension since 1993. The information and criteria related to these diagnosis were taken from the VA Health and Occupational evaluations in VA Occupational Handbook 5019; 38 CFR § 4 Criteria for VA disability rating, and the Physician's Guide for Disability Evaluation Examinations.

20. The fact finders have deliberately altered, suppressed, and misstated medical records committing fraud with intent to deceive. The rating decisions have bifurcated the various symptoms and objective medical findings related to chronic CHF; kidney dysfunction, hypertension and attempted to effect a change of diagnosis from 7007 to 7101. The schedules require that both be evaluated and rated. It is clear that malignant hypertension exist and so is there a history of heart disease showing hypertrophy, cardiomyopathy and finally CHF. The etiology of 7007 shows the progress of the disease. It is coupled with malignant hypertension.

21. **§4.13 Effect of change of diagnosis:** The repercussion upon a current rating of service connection when change is made of a previously assigned diagnosis or etiology must be kept in mind. The aim should be the

DUPLICATE

reconciliation and continuance of the diagnosis or etiology upon which service connection for the disability had been granted.

22. The relevant principle enunciated in 7007 entitled "Diagnosis Congestive Heart Failure," *Provide an estimate of the level of activity (expressed in METs and supported by specific examples*, such as slow stair climbing, or shoveling snow) that results in dyspnea, fatigue, angina, dizziness, or syncope; If left ventricular dysfunction is present, and the ejection fraction is 50 percent or less; If there is chronic congestive heart failure or there has been more than one episode of acute congestive heart failure in the past year; With myocardial infarction - for three months following myocardial infarction: Heart size and method of determination, heart rhythm and rate, heart sounds, blood pressure; Evidence of congestive heart failure - rales, edema, liver enlargement, etc.: Chest X-ray, EKG, exercise stress test, echocardiogram, Holter monitor, thallium study, angiography, etc., as appropriate, and as required or indicated.

23. Peavey meets all evaluation criteria for the diagnosis of chronic CHF with malignant hypertension and impaired KUB. All of these impairments exist at severe levels of disability and can be traced back to the accident 1966. 1967 He was rated 30% based upon hypertrophy and dilated aorta documented by EKG and X-ray; He has received continuous medication and subject himself to test when they are not contraindicated; 1991-1993 edema, enlargement of heart, liver, heart murmur, bradycardia and complaints of serve weakness; there is 2005 record of LVEF of 40% capacity; there is more than two periods of hospitalization for CHF within one year 2005-2006 during this examination;

The separate evaluation for malignant hypertension and Chronic CHF is scheduler 100%. See **§4.100**

24.   Peavey has provided VA with complaints of fraud, destruction of records, request for increase of claims of scheduler disability and 100% due to umemployability. Peavey filed for disability increase 1969, 1971, 1972, 1993, 1994, 2003, and 2005. Peavey also complained VA had conspired with US Army and NPRC to suppress, alter and destroy US Army medical records and early VA records showing Hypertension with heart disease and kidney injury. VA act with malicious intent and refuse to correct any CUE which have been brought to its attention. VA suppressed files related to IVP and provided false statements to the US District Court respecting FOIA for VA Hospital 1968 and VA 1993 records. VA refused to release these records without court actions. VA ignoring material records which does not fit rating specialist prejudged and arbitrary evaluations.

25.   VA has perjured itself before the US District court falsely alleging that Peavey kidney i.e. IVP and renal gram was normal. VA stated that VA had not records of Peavey ever being hospitalized at VA Hospital 1968; that Peavey had only OPC treatment at VA hospital Brooklyn 1968 no treatment or examination by VA 1993, VA entered false medical history in Peavey Rating report for December 5, 1995 indicating that Peavey had not been examined by VA between 1972 and C&P examination August 3, 1995.  On Jan 18, 2006 VA provided Brooklyn Hospital records showing abnormal IVP, penile discharge, dysfunction of right kidney.   VA admit suppression of Dr. Lavin examination showing chronic CHF with one by Dr. Khopa and Dr. Khopa did not examine Peavey and his report discarded specific

DUPLICATE

information related to subjective and objective diagnosis of chronic CHF. The 7007 rating standing for 13 years and showing a more diminished heart than it was establishing the rating. This fact indicates a greater degree of disability.

26. Peavey has submitted complaints to VA Secretary, Jim Nicholas reporting the VA regional office abuse of process; violations of 5 USC 552; deliberate delay of process; clearly unmistakable errors; VA "Taking." Plaintiff has filed 3 timely NOD and COWC requesting BVA reviews and has been directed to the US District Court concerning the "Taking" and fraud. The evidence support Peavey's claim of injury by automobile, abnormal IVP, and VA suppression, alteration, and destruction of medical records. The VA ignore Peavey's deteriorating medical condition and today indicate that their examination March 2007 show diastolic blood pressure of 145 and chronic edema and indicate plaintiff has a minimal heart condition.

**NOTICE OF DISAGREEMENT: NOD**

27. This notice of disagreement will supplement NOD to date [to included respond to all elements of submission of a Rating Decision dated April 19, 2007. They provide NOD response to VA rating decisions and provide a complaint of R/O 317 abuse of discretion and refusal to forward any COWC, supplemental claims for increase disability filed after heart attacks September 16, 2005 and August 21, 2006. These new claims for increase disability provided new material evidence and supplemented claims already pending [317/243C] and [317/Appeals i.e. 317/Premo1] and claims filed with COWC timely filed on or before October 30, 2003 and August 30, 2005; VA Form 9 were completed and submitted.    November 2005 and October 2006 supplemental

 DUPLICATE

claims were filed because of new periods of Hospitalization showed new material medical documentation of continued chronic heart failure.

28. VA has rated 7007 at 60% w/insipid CHF effective August 1994 and lower back strain 5292 at 10% effective 1967 and 7101 hypertension at 60% quoting blood pressure at 130 and indicated that KUB/Hydrocele is denied.

29. This rating is CUE because VA admit insipid CHF 7007 August 1994 by suppressing symptoms of chronic CHF (¶ 15-17 herein.) VA suppresses history of rating under 7007. This is CUE because VA admits to hospitalization for CHF 2005-2006 within one year plus LVEF 40% 2005. This shows two episodes that required hospitalization within a year. Peavey was treated at UNMJ and VA EO for emergency episodes which were relieved in the emergency rooms and did not require hospitalization 2003 and 2004. Peavey has suffered chest pain and sob at home which when rest and medication relieve it he do not go to hospital 1993-2007.

30. VA indicates that Peavey refused testing but does not indicate the nature of test or the reasons those test were refused. VA does not provide information how these test support or disprove chronic CHF. VA does not indicate which test which Peavey refused or if they were contraindicated for individuals with kidney dysfunctions or anyone who had LVEF less than 50%. VA evaluation of 60% Cardio-vascular is CUE because Chronic CHF require 100% Scheduler

31. VA admits to 7101 60% scheduler for Malignant Hypertension. This should be computed separately from the chronic CHF. (¶ 15-18 herein). The VA record has shown hypertrophy, heart murmur and enlargement of the heart from the early history. The present attempt to deny the heart

disease is CUE because VA has recited a history of heart disease, CHF, valve regurgitation, enlargement, Badycardia 35-47bpm. VA has also compensated CHF at 60% for 13 years. According to VA employment standards 140/90 can be incapacitating.   VA ignores medical records and Peavey requirement of Medical regiments for controlling CHF, hypertension, diuretics, cholesterol, and chest pains. VA admit Scheduler 60% requirement for hypertension this should be counted separate from CHF hence there is scheduler great than 100%.

32.   VA denies any compensation for injuries to Peavey evident by grotesque hydrocele stating that IVP was normal and that there was no service connection. Peavey indicated that the hydrocele appeared after aggravating what he believes was a groin pull while the VA restricted his entitle benefits for five months. Peavey further note that VA allegations that IVP was normal is CUE and VA has acted to cover-up the injury which he received to his KUB due to trauma caused by the accident 1966.   There have been an abnormality which the VA has willfully concealed and the abnormality appear to his KUB showing both double bladder and pelvis and injury below his pelvo-utheral junction with evidence of infection and passing a pus discharge for over five years after the accident. US Army records indicate Peavey was denied medical treatment but persistently claim pain in stomach, groin, right flank and back after the injury.

33. VA admit Peavey made claims for kidney injury 1971, and 1994 but VA indicate IVP normal and no finding of kidney injury. This is CUE because VA released documents from its file which show Peavey authorized private Doctors and NYC Health Department to release medicals records of

treatment for persistent non-social penile discharge--1968 through 1972. US Army medical records show complaints of pain in right flank, bruit in abdomen, and pains in groin. VA suppressed these records while erroneously calling IVP and renal gram normal. VA denying the existence of various VA Hospital records showing abnormal IVP, WBC in urine, hydro-Nephrosis or any dysfunction of the kidney. Earlier evaluation of abnormal IVP would have been under Kidney dysfunction and although the hydrocele was aggravated by activities well beyond the period of enlistment the weakness, and injury to the area can not be disassociated. Peavey should have been rated for injuries to the KUB evident of abnormal IVP with persistent infection.

34. VA denies 100% scheduler disability and denies 100% unemployables. VA admit that Peavey claimed 100% umemployability 1994, 2003, and presently. It is noted that presently VA has avoided 7007 chronic CHF by suppressing symptoms and attempt to change the etiology of this claim from CHF to essential hypertension.

35. Peavey has claimed CUE and has noted fraud in VA 1995 Rating procedure. VA 2003 procedure also extends from abuses and taking under pretext. VA suppressed medical records re: VA Brooklyn Hospital 1968 obscuring the history of Peavey medical condition and treatment; Suppress certified medical records from Private doctors and VA doctors who did not agree with CB Gibbard and rating specialist; refused FOIA requests while demanding proof in 317/243C; erroneously alleging Peavey refuse to comply with VA need for proof while VA suppress records showing symptoms of Chronic CHF and Kidney dysfunction; while VA did not reschedule C&P for three years; and submitted sworn statements to US District Court that Peavey had not

DUPLICATE

exhausted remedies before VA and US Army while continuing to suppress records showing VA and US Army engaging in tactical delays and pretext.

36. VA provides no basis to deny Peavey 100% disability due to unemployables because Peavey medical condition requires a scheduler disability beyond 100%. VA present denial of 100% due to unemployables is CUE because VA admits 60% for at least one disability. VA admits to further deterioration of Peavey CHF providing evidence of LVEF 40% and diastolic hypertension bp 145 and braydicardia 35-47bpm and hydrocele.

37. VA admits to two hospitalizations [CHF episodes] within a year while this matter was under review. Peavey authorized medical records which show treatment for more than the two episodes. Peavey has provided VA with SSA records which show no substantial employment since 1990 and not taxable earnings since 1993. Peavey provided VA with exceptions to CB Gibbard SOC dated June 30, 2005 that denied 100% Umemployability because he engaged in casual employment for shanty restaurant 2001. Peavey notified VA that he worked for Kurt Johnson 2001 further injured him it was also casual. Peavey indicated casual employment 2004. No employment and nominal activities caused hospitalization 2005-2006 for heart attacks. VA does not take into account peavey's use of medications on his ability to maintain any level of employment. VA does not accept his statements of pain, tiredness or inability to maintain consistent employment.

38. It should be noted that VA has indicated Peavey did not perfect "his appeal" but VA accepted timely NOD. Peavey submitted timely NOD in both 317/243C and 317/Appeals. Peavey completed exceptions to VA Decisions

and ratings regarding these appeals with proper completed VA Form 9 [COWC]. Peavey was given ambiguous information by VA regarding the status of these appeals and when Peavey complained about the abuse of process in the US District Court VA alleged that Peavey 317/Appeals were pending. Neither appeal had been docket with BVA when Peavey inquired June 22, 2005. The BVA never reviewed the actions or provided a decision. VA is required to correct all CUE. Correction of VA CUE and the most recent material medical records support more than 100% scheduler disability. The issue of 100% due to unemployables is supported by SSA records as well.

39. VA standard examples of incapacitating conditions are symptomatic angina pectoris; persistent congestive heart failure; symptomatic vascular disease of the brain, kidneys, or other viscera; recent myocardial infarction; valvular heart disease; congenital heart diseases; aneurysm of a major blood vessel and occlusive arterial disease; persistent hypertension (i.e., b.p. consistently over 140/90). b. Incapacitating conditions of the genitourinary tract include: prostates, renal or bladder malignancies, and chronic renal disease of a vascular, infectious, or hypertensive origin. See VA Health Standards 5019A.

40. Disability evaluations are based upon the average impairment of earning capacity as determined by a schedule for rating disabilities. 38 U.S.C.A. § 1155 (West 1991); 38 C.F.R. Part 4 (1994). Separate rating codes identify the various disabilities. 38 C.F.R. Part 4 (1994). In determining the current level of impairment, the disability must be considered in the context of the whole recorded history, including service medical records. 38 C.F.R. §§ 4.2, 4.41 (1994). An evaluation of the level of disability

DUPLICATE

present also includes consid[ _____ ]ion of the functional impairment of the veteran's ability to engage in ordinary activities, including employment, and the effect of pain on the functional abilities.   38 C.F.R. §§ 4.10, 4.40, 4.45, and 4.59 (1994).

Respectfully submitted:

*(signature)*

Morris J. Peavey, Jr. ~~Morris J. Peavey, Jr.~~

DUPLICATE

18

OMB APPROVED NO. 2900-0091
Estimated Burden Avg. 45 min.
Expiration Date 6/30/2007

```
=============================================================================================
D E P A R T M E N T   O F   V E T E R A N S   A F F A I R S          APPLICATION FOR HEALTH BENEFITS
=============================================================================================


                              SECTION I - GENERAL INFORMATION
           Federal law provides criminal penalties, including a fine and/or imprisonment for up to 5 years,
           for concealing a material fact or making a materially false statement. (See 18 U.S.C. 1001)
---------------------------------------------------------------------------------------------
1. VETERAN'S NAME (Last, First, Middle Name)    |2. OTHER NAMES USED        |3. MOTHER'S MAIDEN NAME
   PEAVEY,MORRIS J                              |                           |  BLANFORD
4. GENDER     |5. WHAT IS YOUR RACE?    ___AMERICAN INDIAN OR ALASKA NATIVE      ___ASIAN    ___BLACK OR AFRICAN AMERICAN
   MALE       |                         ___NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER   WHITE   ___UNKNOWN BY PATIENT
6. ARE YOU SPANISH, HISPANIC,  |7. SOCIAL SECURITY NUMBER  |9. DATE OF BIRTH (mm/dd/yyyy)  |10. RELIGION
   OR LATINO?                  |   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             |   07/21/1945                  |   ISLAM
8. CLAIM NUMBER                                |9A. PLACE OF BIRTH (City & State)
   23448613                                    |   NEWARK, NEW JERSEY
11. PERMANENT ADDRESS (Street)    |11A. CITY   |11B. STATE               |11C. ZIP CODE (9 digits)
   12315 NW 23RD AVENUE           |   MIAMI    |   FLORIDA               |   33167
11D. COUNTY                   |11E. HOME TELEPHONE NUMBER (Include area code) |11F. E-MAIL ADDRESS
   MIAMI-DADE (086)           |   305 688 0759
11G. CELLULAR TELEPHONE NUMBER (Include area code)     |11H. PAGER NUMBER (Include area code)

12. TYPE OF BENEFIT(S) APPLIED FOR:
   HEALTH SERVICES
13. IF APPLYING FOR HEALTH SERVICES OR ENROLLMENT, WHICH VA MEDICAL CENTER  |14. HAVE YOU BEEN SEEN AT A VA HEALTH CARE FACILITY?
   OR OUTPATIENT CLINIC DO YOU PREFER?  MIAMI VAMC                          |   YES, LOCATION: EAST ORANGE-VA NEW JERSEY HCS
15. DO YOU WANT AN APPOINTMENT WITH A VA DOCTOR OR PROVIDER AS SOON AS ONE BECOMES  |16. CURRENT MARITAL STATUS
   AVAILABLE?                                                                        |   DIVORCED
17. NAME, ADDRESS AND RELATIONSHIP OF NEXT OF KIN          |17A. NEXT OF KIN'S HOME TELEPHONE NUMBER
   PEAVEY,AMY - DAUGHTER                                   |   (Include area code)
   5. EGERTON TERRACE                                      |17B. NEXT OF KIN'S WORK TELEPHONE NUMBER
   EAST ORANGE, NEW JERSEY 07018                           |   (Include area code)
18. NAME, ADDRESS AND RELATIONSHIP OF EMERGENCY CONTACT    |18A. EMERGENCY CONTACT'S HOME TELEPHONE NUMBER
   PEAVEY,AMY - DAUGHTER                                   |   (Include area code)
   5. EGERTON TERRACE                                      |18B. EMERGENCY CONTACT'S WORK TELEPHONE NUMBER
   EAST ORANGE, NEW JERSEY                                 |   (Include area code)
19. INDIVIDUAL TO RECEIVE POSSESSION OF YOUR PERSONAL PROPERTY LEFT ON PREMISES UNDER VA CONTROL AFTER YOUR DEPARTURE OR AT THE
   THE TIME OF DEATH  (NOTE: THIS DOES NOT CONSTITUTE A WILL OR TRANSFER OF TITLE):
=============================================================================================
VA FORM 10-10EZ FEB 2005        PRINTED: May 20, 2009@14:12:47        Clerk: JL/                    PAGE 1
```

| APPLICATION FOR HEALTH BENEFITS, Continued | VETERAN'S NAME (Last, First, Middle) | SOCIAL SECURITY NUMBER |
|---|---|---|
| | PEAVEY,MORRIS J | 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 |

## SECTION II - INSURANCE INFORMATION  (Use Separate Sheet for Additional Insurance)

| | |
|---|---|
| 1. ARE YOU COVERED BY HEALTH INSURANCE? (Including coverage through a spouse or another person)   NO | 2. HEALTH INSURANCE COMPANY NAME, ADDRESS AND TELEPHONE NUMBER |
| 3. NAME OF POLICY HOLDER | |

| 4. POLICY NUMBER | 5. GROUP CODE | 6. ARE YOU ELIGIBLE FOR MEDICAID? NO |
|---|---|---|

| | |
|---|---|
| 7. ARE YOU ENROLLED IN MEDICARE HOSPITAL INSURANCE PART A? | 7A. EFFECTIVE DATE (mm/dd/yyyy) |
| 8. ARE YOU ENROLLED IN MEDICARE HOSPITAL INSURANCE PART B? | 8A. EFFECTIVE DATE (mm/dd/yyyy) |
| 9. NAME EXACTLY AS IT APPEARS ON YOUR MEDICARE CARD | 10. MEDICARE CLAIM NUMBER |

| 11. IS NEED FOR CARE DUE TO ON THE JOB INJURY?  NO | 12. IS NEED FOR CARE DUE TO ACCIDENT?  NO |
|---|---|

## SECTION III - EMPLOYMENT INFORMATION

| | |
|---|---|
| 1. VETERAN'S EMPLOYMENT STATUS    NOT EMPLOYED | 1A. COMPANY NAME, ADDRESS AND TELEPHONE NUMBER |
| Date of retirement (mm/dd/yyyy) If employed or retired, complete item 1A | |
| 2. SPOUSE'S EMPLOYMENT STATUS | 2A. COMPANY NAME, ADDRESS AND TELEPHONE NUMBER |
| Date of retirement (mm/dd/yyyy) If employed or retired, complete item 2A | |

## SECTION IV - MILITARY SERVICE INFORMATION

| 1. LAST BRANCH OF SERVICE | 1A. LAST ENTRY DATE | 1B. LAST DISCHARGE DATE | 1C. DISCHARGE TYPE | 1D. MILITARY SERVICE NUMBER |
|---|---|---|---|---|
| ARMY | JUL 24, 1964 | AUG 05, 1967 | HONORABLE | 12701916 |

2. ANSWER YES OR NO:

| | | | |
|---|---|---|---|
| A.  ARE YOU A PURPLE HEART AWARD RECIPIENT? | NO | F. DO YOU NEED CARE OF CONDITIONS POTENTIALLY RELATED TO SERVICE IN SOUTHWEST ASIA? | NO |
| B.  ARE YOU A FORMER PRISONER OF WAR? | NO | | |
| C.  DO YOU HAVE A VA SERVICE-CONNECTED RATING? | YES | G. WERE YOU EXPOSED TO AGENT ORANGE WHILE SERVING IN VIETNAM? | NO |
| C1. IF YES, WHAT IS YOUR RATED PERCENTAGE? | 60% | | |
| D.  DID YOU SERVE IN COMBAT AFTER 11/11/1998? | NO | H. WERE YOU EXPOSED TO RADIATION WHILE IN THE MILITARY? | NO |
| C.  WAS YOUR DISCHARGE FROM MILITARY FOR A DISABILITY INCURRED OR AGGRAVATED IN THE LINE OF DUTY? | NO | I. DID YOU RECEIVE NOSE & THROAT RADIUM TREATMENTS WHILE IN THE MILITARY? | NO |
| E1. ARE YOU RECEIVING DISABILITY RETIREMENT PAY INSTEAD OF VA COMPENSATION? | NO | J. DO YOU HAVE A SPINAL CORD INJURY? | NO |

## SECTION V - PAPERWORK REDUCTION ACT AND PRIVACY ACT INFORMATION

The Paperwork Reduction Act of 1995 requires us to notify you that this information collection is in accordance with the clearance requirements of section 3507 of the Paperwork Reduction Act of 1995. We may not conduct or sponsor, and you are not required to respond to, a collection of information unless it displays a valid OMB number. We anticipate that the time expended by all individuals who must complete this form will average 45 minutes. This includes the time it will take to read instructions, gather the necessary facts and fill out the form.

Privacy Act Information: VA is asking you to provide the information on this form under 38 U.S.C., sections 1705, 1710, 1712, and 1722 in order for VA to determine your eligibility for medical benefits. Information you supply may be verified through a computer-matching program. VA may disclose the information that you put on the form as permitted by law. VA may make a "routine use" disclosure of the information as outlined in the Privacy Act systems of records notices and in accordance with the VHA Notice of Privacy Practices. You do not have to provide the information to VA, but if you don't, VA may be unable to process your request and serve your medical needs. Failure to furnish the information will not have any affect on any other benefits to which you may be entitled. If you provide VA your Social Security Number, VA will use it to administer your VA benefits. VA may also use this information to identify veterans and persons claiming or receiving VA benefits and their records, and for other purposes authorized or required by law.

| APPLICATION FOR HEALTH BENEFITS, Continued | VETERAN'S NAME (Last, First, Middle) | SOCIAL SECURITY NUMBER |
|---|---|---|
| | PEAVEY,MORRIS J | 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 |

## SECTION VI - FINANCIAL DISCLOSURE

Failure to disclose your previous year's financial information may affect your eligibility for health care benefits.  Your financial information is used by VA to accurately determine if you should be responsible for copayments for office visits, pharmacy, inpatient, nursing home and long term care, and for some veterans, priority for enrollment.  You are not required to provide this information.  However, completing the financial disclosure section results in a more accurate determination of your eligibility for health care services/benefits.

___  NO, I DO NOT WISH TO PROVIDE INFORMATION IN SECTIONS VII THROUGH X.  I understand that VA is currently not enrolling veterans who decline to provide financial information unless other special eligibility factors exist.  However, if I am enrolled, I agree to pay the applicable VA copayments.  (Sign and date the application in Section XII.)

X  YES, I WILL PROVIDE SPECIFIC INCOME AND/OR ASSET INFORMATION TO ESTABLISH MY ELIGIBILITY FOR CARE.  (Complete all sections below that apply to you with last calendar year's information.  Sign and date the application in Section XII.)

## SECTION VII - DEPENDENT INFORMATION  (Use a separate sheet for additional dependents)

| 1.  SPOUSE'S NAME (Last, First, Middle Name) | 2.  CHILD'S NAME (Last, First, Middle Name) | |
|---|---|---|
| 1A.  SPOUSE'S MAIDEN NAME | 2A.  CHILD'S RELATIONSHIP TO YOU | |
| 1B.  SPOUSE'S SOCIAL SECURITY NUMBER | 2B.  CHILD'S SOCIAL SECURITY NUMBER | 2C.  DATE CHILD BECAME YOUR DEPENDENT |
| 1C.  SPOUSE'S DATE OF BIRTH (mm/dd/yyyy)     1D.  DATE OF MARRIAGE (mm/dd/yyyy) | 2D.  CHILD'S DATE OF BIRTH (mm/dd/yyyy) | |
| 1E.  SPOUSE'S ADDRESS AND TELEPHONE NUMBER (Street, City, State, ZIP) | 2E.  WAS CHILD PREMANENTLY AND TOTALLY DISABLED BEFORE THE AGE OF 18? | |
| | 2F.  IF CHILD IS BETWEEN 18 AND 23 YEARS OF AGE, DID CHILD ATTEND SCHOOL LAST CALENDAR YEAR? | |
| 3.  IF YOUR SPOUSE OR DEPENDENT CHILD DID NOT LIVE WITH YOU LAST YEAR, ENTER THE AMOUNT YOU CONTRIBUTED TO THEIR SUPPORT      SPOUSE  $            CHILD  $ | 2G.  EXPENSES PAID BY YOUR DEPENDENT CHILD FOR COLLEGE, VOCATIONAL REHABILITATION OR TRAINING (e.g., tuition, books, materials)  $ | |

## SECTION VIII - PREVIOUS CALENDAR YEAR GROSS ANNUAL INCOME OF VETERAN, SPOUSE AND DEPENDENT CHILDREN  (INCOME YEAR: 2004)
(Use a separate sheet for additional dependents' financial information)

| | VETERAN | SPOUSE | CHILD 1 |
|---|---|---|---|
| 1.  GROSS ANNUAL INCOME FROM EMPLOYMENT (wages, bonuses, tips, etc.) EXCLUDING INCOME FROM YOUR FARM, RANCH, PROPERTY OR BUSINESS | $ 0.00 | $ | $ |
| 2.  NET INCOME FROM YOUR FARM, RANCH, PROPERTY OR BUSINESS | $ 10068.00 | $ | $ |
| 3.  LIST OTHER INCOME AMOUNTS (Social Security, compensation, pension, interest, dividends.  Exclude welfare) | $ 0.00 | $ | $ |

## SECTION IX - PREVIOUS CALENDAR YEAR DEDUCTIBLE EXPENSES  (INCOME YEAR: 2004)

| | |
|---|---|
| 1.  TOTAL NON-REIMBURSED MEDICAL EXPENSES PAID BY YOU OR YOUR SPOUSE (e.g., payments for doctors, dentists, medications, Medicare, health insurance, hospital and nursing home)  VA will calculate a deductible and the net medical expenses you may claim. | $ 3000.00 |
| 2.  AMOUNT YOU PAID LAST CALENDAR YEAR FOR FUNERAL AND BURIAL EXPENSES FOR YOUR DECEASED SPOUSE OR DEPENDENT CHILD  (Also enter spouse or child's information in Section VII.) | $ |
| 3.  AMOUNT YOU PAID LAST CALENDAR YEAR FOR YOUR COLLEGE OR VOCATIONAL EDUCATIONAL EXPENSES (e.g., tuition, books, fees, materials)  DO NOT LIST YOUR DEPENDENT'S EDUCATIONAL EXPENSES | $ 0.00 |

APPLICATION FOR HEALTH BENEFITS, Continued   | VETERAN'S NAME (Last, First, Middle)   | SOCIAL SECURITY NUMBER
                                             | PEAVEY,MORRIS J                         | 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

SECTION X - PREVIOUS CALENDAR YEAR NET WORTH   (INCOME YEAR:  2004)   (Use a separate sheet for additional dependents)

| | VETERAN | SPOUSE | CHILD 1 |
|---|---|---|---|
| 1. CASH, AMOUNT IN BANK ACCOUNTS (e.g., checking and savings accounts, certificates of deposit, individual retirement accounts, stocks and bonds) | $ 0.00 | $ | |
| 2. MARKET VALUE OF LAND AND BUILDINGS MINUS MORTGAGES AND LIENS (e.g., second homes and non-income-producing property.  Do not count your primary home.) | $ 0.00 | $ | |
| 3. VALUE OF OTHER PROPERTY OR ASSETS (e.g., art, rare coins, collectibles) MINUS THE AMOUNT YOU OWE ON THESE ITEMS.  INCLUDE VALUE OF FARM, RANCH, OR BUSINESS ASSETS.  Exclude household effects and family vehicles. | $ 11000.00 | $ | Included in Veteran amount |

SECTION XI - CONSENT TO COPAYMENTS

If you are a 0% service-connected veteran and do not receive VA monetary benefits or a nonservice-connected veteran (and you are not an Ex-POW, Purple Heart Recipient, WWI veteran or VA pensioner) and your household income (or combined income and net worth) exceeds the established threshold, this application will be considered for enrollment, but only if you agree to pay VA copayments for treatment of your nonservice-connected conditions.  If you are such a veteran, by signing this application you are agreeing to pay the applicable VA copayment as required by law.

SECTION XII - ASSIGNMENT OF BENEFITS

I understand that pursuant to 38 U.S.C. section 1729, VA is authorized to recover or collect from my health plan (HP) for the reasonable charges of nonservice-connected VA medical care or services furnished or provided to me.  I hereby authorize payment directly to VA from any HP under which I am covered (including coverage provided under my spouse's HP) that is responsible for payment of the charges for my medical care, including benefits otherwise payable to me or my spouse.

ALL APPLICANTS MUST SIGN AND DATE THIS FORM.  REFER TO INSTRUCTIONS WHICH DEFINE WHO CAN SIGN ON BEHALF OF THE VETERAN.

SIGNATURE OF APPLICANT                                                    | DATE
                                                                          |

VA FORM 10-10EZ FEB 2005         PRINTED: May 20, 2009@14:12:47      Clerk: JL/                    PAGE 4

Exceptions to DROD  Dated April 22, 2008 VARO 317
TABULATIONS:

TAB-3

MEDICAL EVIDENCE FROM VA SOC DATED 6/26/05 FILED WITH THE US
DISTRICT COURT AND MATERIAL MEDICAL CERTIFICATION OF
INCAPACITY 2005:

EXHIBIT  1)  VARO 317 STATEMENT OF THE CASE DATED 6/29/2005` 14-pages.

EXHIBIT  2)  Notice of incapacity with medical certified diagnosis of medical treatment
from Columbus Hospital of Newark, NJ  with ambulance report.

EXHIBIT  3)  Ambulance report  Columbus Hospital Newark, NJ.

EXHIBIT  4)  Ambulance report    University Hospital of NJ.

EXHIBIT  5)  BVA  171 Pending COWC  VA acknowledge receipt 8/31/05

| **Statement of the Case** | ***Department of Veterans Affairs*** *St. Petersburg Regional Office* | | Page 1 06/29/2005 |
|---|---|---|---|
| NAME OF VETERAN Peavey, Morris J   JR | VA FILE NUMBER 23.448 613 | SOCIAL SECURITY NR 264 72 6975 | POA |

## ISSUE:

1. Entitlement to individual unemployability.
2. Evaluation of hypertensive heart disease currently evaluated as 60 percent disabling.

## EVIDENCE:

- Treatment reports, New Jersey Medical School, from September 17, 2002 through May 14, 2003
- Response dated July 16, 2003, from Shanty Restaurant
- No response to request for prior employment information (21-4192) requested June 26, 2003, from Kurt Johnson
- Treatment reports, Dr. Panchetta Wilson, from February 27, 1990 through June 17, 2003
- Letter to the veteran dated April 22, 2003
- VA Form 21-8940, "Application for Increased Compensation Based on Unemployability", received April 10, 2003
- The claimant failed to report for a VA examination scheduled at VAMC Miami on March 25, 2004. Evidence expected from this examination which might have been material to the outcome of this claim could not be considered.
- Treatment reports from East Orange VAMC NJ., from April 19, 2004 to May 3, 2004
- Statement in Support of Claim, VA Form 21-4138, dated December 8, 2004
- Letter with attached affidavit received December 13, 2004
- Appeal election letter sent to claimant. Your response did not elect the Decision Review Officer review nor, the Traditional Appeal Process, therefore, this appeal will follow the traditional process.

## ADJUDICATIVE ACTIONS:

Military Service:  Honorable 07-24-64 to 08-05-67

04-10-2003     Claim received.

05-20-2004     Claim considered based on all the evidence of record.

05-21-2004     Claimant notified of decision.

06-23-2004     Notice of Disagreement received.

06-29-2005     The veteran was furnished a Statement of the Case outlining actions taken on the claim.

| Statement of the Case | Department of Veterans Affairs<br>St. Petersburg Regional Office | | Page 2<br>06/29/2005 |
|---|---|---|---|
| NAME OF VETERAN<br>Peavey, Morris J   JR | VA FILE NUMBER<br>23 448 613 | SOCIAL SECURITY NR<br>264 72 6975 | POA |

## PERTINENT LAWS; REGULATIONS; RATING SCHEDULE PROVISIONS:

Unless otherwise indicated, the symbol "§" denotes a section from title 38 of the Code of Federal Regulations. Pensions, Bonuses and Veterans' Relief. Title 38 contains the regulations of the Department of Veterans Affairs which govern entitlement to all veteran benefits.

§3.102 (New)  Reasonable doubt.

It is the defined and consistently applied policy of the Department of Veterans Affairs to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. By reasonable doubt is meant one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. It is a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility. It is not a means of reconciling actual conflict or a contradiction in the evidence. Mere suspicion or doubt as to the truth of any statements submitted, as distinguished from impeachment or contradiction by evidence or known facts, is not justifiable basis for denying the application of the reasonable doubt doctrine if the entire complete record otherwise warrants invoking this doctrine. The reasonable doubt doctrine is also applicable even in the absence of official records, particularly if the basic incident allegedly arose under combat, or similarly strenuous conditions, and is consistent with the probable results of such known hardships. (Authority: 38 U.S.C. 501(a))

§3.104  Finality of decisions.

        (a) The decision of a duly constituted rating agency or other agency of original jurisdiction shall be final and binding on all field offices of the Department of Veterans Affairs as to conclusions based on evidence on file at the time VA issues written notification in accordance with 38 U.S.C. 5104.  A final and binding agency decision shall not be subject to revision on the same factual basis except by duly constituted appellate authorities or except as provided in §3.105 of this part.

        (b) Current determinations of line of duty, character of discharge, relationship, dependency, domestic relations questions, homicide, and findings of fact of death or presumptions of death made in accordance with existing instructions, and by application of the same criteria and based on the same facts, by either an Adjudication activity or an Insurance activity are binding one upon the other in the absence of clear and unmistakable error.

        [29 FR 1462, Jan. 29, 1964, as amended at 29 FR 7547, June 12, 1964; 56 FR 65845, December 19, 1991]

§3.159 (09/03)  Department of Veterans Affairs assistance in developing claims.

| Statement of the Case | Department of Veterans Affairs<br>St. Petersburg Regional Office | | Page 3<br>06/29/2005 |
|---|---|---|---|
| NAME OF VETERAN<br>Peavey, Morris J   JR | VA FILE NUMBER<br>23 448 613 | SOCIAL SECURITY NR<br>264 72 6975 | POA |

(a) Definitions. For purposes of this section, the following definitions apply:

(1) Competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also mean statements conveying sound medical principles found in medical treatises. It would also include statements contained in authoritative writings such as medical and scientific articles and research reports or analyses.

(2) Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person.

(3) Substantially complete application means an application containing the claimant's name; his or her relationship to the veteran, if applicable; sufficient service information for VA to verify the claimed service, if applicable; the benefit claimed and any medical condition(s) on which it is based; the claimant's signature; and in claims for nonservice-connected disability or death pension and parents' dependency and indemnity compensation, a statement of income

(4) For purposes of paragraph (c)(4)(i) of this section, event means one or more incidents associated with places, types, and circumstances of service giving rise to disability.

(5) Information means non-evidentiary facts, such as the claimant's Social Security number or address; the name and military unit of a person who served with the veteran; or the name and address of a medical care provider who may have evidence pertinent to the claim.



(b) VA's duty to notify claimants of necessary information or evidence.

(1) When VA receives a complete or substantially complete application for benefits, it will notify the claimant of any information and medical or lay evidence that is necessary to substantiate the claim. VA will inform the claimant which information and evidence, if any, that the claimant is to provide to VA and which information and evidence, if any, that VA will attempt to obtain on behalf of the claimant. VA will also request that the claimant provide any evidence in the claimant's possession that pertains to the claim. If VA does not receive the necessary information and evidence requested from the claimant within one year of the date of the notice, VA cannot pay or provide any benefits based on that application. If the claimant has not responded to the request within 30 days, VA may decide the claim prior to the expiration of the one-year period based on all the information and evidence contained in the file, including information and evidence it has obtained on behalf of the claimant and any VA medical examinations or medical opinions. If VA does so, however, and the claimant subsequently provides the information and evidence within one year of the date of the request, VA must readjudicate the claim. (Authority: 38 U.S.C. 5103) (THIS SUBPARAGRAPH HAS BEEN INVALIDATED BY THE UNITED

| Statement of the Case | Department of Veterans Affairs<br>St. Petersburg Regional Office | | Page 4<br>06/29/2005 |
|---|---|---|---|
| NAME OF VETERAN<br>Peavey, Morris J   JR | VA FILE NUMBER<br>23 448 613 | SOCIAL SECURITY NR<br>264 72 6975 | POA |

STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT IN DECISION DATED SPETEMBER 22, 2003)

(2) If VA receives an incomplete application for benefits, it will notify the claimant of the information necessary to complete the application and will defer assistance until the claimant submits this information.  (Authority: 38 U.S.C. 5102(b), 5103A(3))

(c) VA's duty to assist claimants in obtaining evidence. Upon receipt of a substantially complete application for benefits, VA will make reasonable efforts to help a claimant obtain evidence necessary to substantiate the claim. In addition, VA will give the assistance described in paragraphs (c)(1), (c)(2), and (c)(3) to an individual attempting to reopen a finally decided claim. VA will not pay any fees charged by a custodian to provide records requested.

(1) Obtaining records not in the custody of a Federal department or agency. VA will make reasonable efforts to obtain relevant records not in the custody of a Federal department or agency, to include records from State or local governments, private medical care providers, current or former employers, and other non-Federal governmental sources. Such reasonable efforts will generally consist of an initial request for the records and, if the records are not received, at least one follow-up request. A follow-up request is not required if a response to the initial request indicates that the records sought do not exist or that a follow-up request for the records would be futile. If VA receives information showing that subsequent requests to this or another custodian could result in obtaining the records sought, then reasonable efforts will include an initial request and, if the records are not received, at least one follow-up request to the new source or an additional request to the original source.

(i) The claimant must cooperate fully with VA's reasonable efforts to obtain relevant records from non-Federal agency or department custodians. The claimant must provide enough information to identify and locate the existing records, including the person, company, agency, or other custodian holding the records; the approximate time frame covered by the records; and, in the case of medical treatment records, the condition for which treatment was provided.

(ii) If necessary, the claimant must authorize the release of existing records in a form acceptable to the person, company, agency, or other custodian holding the records.  (Authority: 38 U.S.C. 5103A(b))

(2) Obtaining records in the custody of a Federal department or agency. VA will make as many requests as are necessary to obtain relevant records from a Federal department or agency. These records include but are not limited to military records, including service medical records; medical and other records from VA medical facilities; records from non-VA facilities providing examination or treatment at VA expense; and records from other Federal agencies, such as the Social Security Administration. VA will end its efforts to obtain records from a Federal department or agency only if VA concludes that the records sought do not exist or that further efforts to obtain those records would be futile. Cases in which VA may conclude that no further



| Statement of the Case | Department of Veterans Affairs<br>St. Petersburg Regional Office | | Page 5<br>06/29/2005 |
|---|---|---|---|
| NAME OF VETERAN<br>Peavey, Morris J   JR | VA FILE NUMBER<br>23 448 613 | SOCIAL SECURITY NR<br>264 72 6975 | POA |

efforts are required include those in which the Federal department or agency advises VA that the requested records do not exist or the custodian does not have them.

(1) The claimant must cooperate fully with VA's reasonable efforts to obtain relevant records from Federal agency or department custodians. If requested by VA, the claimant must provide enough information to identify and locate the existing records, including the custodian or agency holding the records; the approximate time frame covered by the records; and, in the case of medical treatment records, the condition for which treatment was provided. In the case of records requested to corroborate a claimed stressful event in service, the claimant must provide information sufficient for the records custodian to conduct a search of the corroborative records.

(ii) If necessary, the claimant must authorize the release of existing records in a form acceptable to the custodian or agency holding the records.  (Authority: 38 U.S.C. 5103A(b))

(3) Obtaining records in compensation claims. In a claim for disability compensation, VA will make efforts to obtain the claimant's service medical records, if relevant to the claim; other relevant records pertaining to the claimant's active military, naval or air service that are held or maintained by a governmental entity; VA medical records or records of examination or treatment at non-VA facilities authorized by VA; and any other relevant records held by any Federal department or agency. The claimant must provide enough information to identify and locate the existing records including the custodian or agency holding the records; the approximate time frame covered by the records; and, in the case of medical treatment records, the condition for which treatment was provided.  (Authority: 38 U.S.C. 5103A(c))

(4) Providing medical examinations or obtaining medical opinions.

(i) In a claim for disability compensation, VA will provide a medical examination or obtain a medical opinion based upon a review of the evidence of record if VA determines it is necessary to decide the claim. A medical examination or medical opinion is necessary if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim, but:

(A) Contains competent lay or medical evidence of a current diagnosed disability or persistent or recurrent symptoms of disability;

(B) Establishes that the veteran suffered an event, injury or disease in service, or has a disease or symptoms of a disease listed in §3.309, §3.313, §3.316, and §3.317 manifesting during an applicable presumptive period provided the claimant has the required service or triggering event to qualify for that presumption; and

(C) Indicates that the claimed disability or symptoms may be associated with the established event, injury, or disease in service or with another service-connected disability.

| Statement of the Case | Department of Veterans Affairs St. Petersburg Regional Office | | Page 6 06/29/2005 |
|---|---|---|---|
| NAME OF VETERAN Peavey, Morris J  JR | VA FILE NUMBER 23 448 613 | SOCIAL SECURITY NR 264 72 6975 | POA |

(ii) Paragraph (4)(i)(C) could be satisfied by competent evidence showing post-service treatment for a condition, or other possible association with military service.

(iii) Paragraph (c)(4) applies to a claim to reopen a finally adjudicated claim only if new and material evidence is presented or secured. (Authority: 38 U.S.C. 5103A(d))

(d) Circumstances where VA will refrain from or discontinue providing assistance. VA will refrain from providing assistance in obtaining evidence for a claim if the substantially complete application for benefits indicates that there is no reasonable possibility that any assistance VA would provide to the claimant would substantiate the claim. VA will discontinue providing assistance in obtaining evidence for a claim if the evidence obtained indicates that there is no reasonable possibility that further assistance would substantiate the claim. Circumstances in which VA will refrain from or discontinue providing assistance in obtaining evidence include, but are not limited to:
(1) The claimant's ineligibility for the benefit sought because of lack of qualifying service, lack of veteran status, or other lack of legal eligibility;

(2) Claims that are inherently incredible or clearly lack merit; and

(3) An application requesting a benefit to which the claimant is not entitled as a matter of law. (Authority: 38 U.S.C. 5103A(a)(2))

(e) Duty to notify claimant of inability to obtain records.

(1) If VA makes reasonable efforts to obtain relevant non-Federal records but is unable to obtain them, or after continued efforts to obtain Federal records concludes that it is reasonably certain they do not exist or further efforts to obtain them would be futile, VA will provide the claimant with oral or written notice of that fact. VA will make a record of any oral notice conveyed to the claimant. For non-Federal records requests, VA may provide the notice at the same time it makes its final attempt to obtain the relevant records. In either case, the notice must contain the following information:
(i) The identity of the records VA was unable to obtain;

(ii) An explanation of the efforts VA made to obtain the records;

(iii) A description of any further action VA will take regarding the claim, including, but not limited to, notice that VA will decide the claim based on the evidence of record unless the claimant submits the records VA was unable to obtain; and

(iv) A notice that the claimant is ultimately responsible for providing the evidence.

(2) If VA becomes aware of the existence of relevant records before deciding the claim, VA will notify the claimant of the records and request that the claimant provide a release for the records. If the claimant does not provide any necessary release of the relevant records that VA is unable to

| Statement of the Case | Department of Veterans Affairs<br>St. Petersburg Regional Office | | Page 7<br>06/29/2005 |
|---|---|---|---|
| NAME OF VETERAN<br>Peavey, Morris J   JR | VA FILE NUMBER<br>23 448 613 | SOCIAL SECURITY NR<br>264 72 6975 | POA |

obtain, VA will request that the claimant obtain the records and provide them to VA.  (Authority: 38 U.S.C. 5103A(b)(2))

(f) For the purpose of the notice requirements in paragraphs (b) and (e) of this section, notice to the claimant means notice to the claimant or his or her fiduciary, if any, as well as to his or her representative, if any.  (Authority: 38 U.S.C. 5102(b), 5103(a))

[55 FR 52273, Dec. 21, 1990, as amended at 66 FR 45630, Aug. 29, 2001]


§3.655  Failure to report for Department of Veterans Affairs examination.

(a) General. When entitlement or continued entitlement to a benefit cannot be established or confirmed without a current VA examination or reexamination and a claimant, without good cause, fails to report for such examination, or reexamination, action shall be taken in accordance with paragraph (b) or (c) of this section as appropriate. Examples of good cause include, but are not limited to, the illness or hospitalization of the claimant, death of an immediate family member, etc. For purposes of this section, the terms "examination" and "reexamination" include periods of hospital observation when required by VA.

(b) Original or reopened claim, or claim for increase. When a claimant fails to report for an examination scheduled in conjunction with an original compensation claim, the claim shall be rated based on the evidence of record. When the examination was scheduled in conjunction with any other original claim, a reopened claim for a benefit which was previously disallowed, or a claim for increase, the claim shall be denied.

(c) Running award.

(1) When a claimant fails to report for a reexamination and the issue is continuing entitlement, VA shall issue a pretermination notice advising the payee that payment for the disability or disabilities for which the reexamination was scheduled will be discontinued or, if a minimum evaluation is established in part 4 of this title or there is an evaluation protected under §3.951(b) of this part, reduced to the lower evaluation. Such notice shall also include the prospective date of discontinuance or reduction, the reason therefor and a statement of the claimant's procedural and appellate rights. The claimant shall be allowed 60 days to indicate his or her willingness to report for a reexamination or to present evidence that payment for the disability or disabilities for which the reexamination was scheduled should not be discontinued or reduced.

(2) If there is no response within 60 days, or if the evidence submitted does not establish continued entitlement, payment for such disability or disabilities shall be discontinued or reduced as of the date indicated in the pretermination notice or the date of last payment, whichever is later.

| Statement of the Case | Department of Veterans Affairs<br>St. Petersburg Regional Office | | Page 8<br>06/29/2005 |
|---|---|---|---|
| NAME OF VETERAN<br>Peavey, Morris J   JR | VA FILE NUMBER<br>23 448 613 | SOCIAL SECURITY NR<br>264 72 6975 | POA |

(3) If notice is received that the claimant is willing to report for a reexamination before payment has been discontinued or reduced, action to adjust payment shall be deferred. The reexamination shall be rescheduled and the claimant notified that failure to report for the rescheduled examination shall be cause for immediate discontinuance or reduction of payment. When a claimant fails to report for such rescheduled examination, payment shall be reduced or discontinued as of the date of last payment and shall not be further adjusted until a VA examination has been conducted and the report reviewed.

(4) If within 30 days of a pretermination notice issued under paragraph (c)(1) of this section the claimant requests a hearing, action to adjust payment shall be deferred as set forth in §3.105(h)(1) of this part. If a hearing is requested more than 30 days after such pretermination notice but before the proposed date of discontinuance or reduction, a hearing shall be scheduled, but payment shall nevertheless be discontinued or reduced as of the date proposed in the pretermination notice or date of last payment, whichever is later, unless information is presented which warrants a different determination. When the claimant has also expressed willingness to report for an examination, however, the provisions of paragraph (c)(3) of this section shall apply. (Authority: 38 U.S.C. 501(a))

§4.104 (7007)  Schedule of ratings-cardiovascular system

7007  Hypertensive heart disease:

> With definite signs of congestive failure, more than sedentary
> employment precluded        100
> With marked enlargement of the heart, confirmed by roentgenoqram,
> or the apex beat beyond midclavicular line, sustained diastolic
> hypertension, diastolic 120 or more, which may later have been
> reduced, dyspnea on exertion, more than light manual labor is
> precluded        60
> With definite enlargement of the heart, sustained diastolic
> hypertension of 100 or more, moderate dyspnea on exertion 30

§4.15  Total disability ratings

The ability to overcome the handicap of disability varies widely among individuals. The rating, however, is based primarily upon the average impairment in earning capacity, that is, upon the economic or industrial handicap which must be overcome and not from individual success in overcoming it. However, full consideration must be given to unusual physical or mental effects in individual cases, to peculiar effects of occupational activities, to defects in physical or mental endowment preventing the usual amount of success in overcoming the handicap of disability and to the effect of combinations of disability. Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation; Provided, That permanent total disability shall be taken to exist when the impairment is reasonably certain to continue throughout

| Statement of the Case | Department of Veterans Affairs<br>St. Petersburg Regional Office | | Page 8<br>06/29/2005 |
|---|---|---|---|
| NAME OF VETERAN<br>Peavey, Morris J   JR | VA FILE NUMBER<br>23 448 613 | SOCIAL SECURITY NR<br>264 72 6975 | POA |

(3) If notice is received that the claimant is willing to report for a reexamination before payment has been discontinued or reduced, action to adjust payment shall be deferred. The reexamination shall be rescheduled and the claimant notified that failure to report for the rescheduled examination shall be cause for immediate discontinuance or reduction of payment. When a claimant fails to report for such rescheduled examination, payment shall be reduced or discontinued as of the date of last payment and shall not be further adjusted until a VA examination has been conducted and the report reviewed.

(4) If within 30 days of a pretermination notice issued under paragraph (c)(1) of this section the claimant requests a hearing, action to adjust payment shall be deferred as set forth in §3.105(h)(1) of this part. If a hearing is requested more than 30 days after such pretermination notice but before the proposed date of discontinuance or reduction, a hearing shall be scheduled, but payment shall nevertheless be discontinued or reduced as of the date proposed in the pretermination notice or date of last payment, whichever is later, unless information is presented which warrants a different determination. When the claimant has also expressed willingness to report for an examination, however, the provisions of paragraph (c)(3) of this section shall apply. (Authority: 38 U.S.C. 501(a))

§4.104 (7007)  Schedule of ratings-cardiovascular system

7007  Hypertensive heart disease:

> With definite signs of congestive failure, more than sedentary
> employment precluded          100
> With marked enlargement of the heart, confirmed by roentgenogram,
> or the apex beat beyond midclavicular line, sustained diastolic
> hypertension, diastolic 120 or more, which may later have been
> reduced, dyspnea on exertion, more than light manual labor is
> precluded      60
> With definite enlargement of the heart, sustained diastolic
> hypertension of 100 or more, moderate dyspnea on exertion 30

§4.15  Total disability ratings

The ability to overcome the handicap of disability varies widely among individuals. The rating, however, is based primarily upon the average impairment in earning capacity, that is, upon the economic or industrial handicap which must be overcome and not from individual success in overcoming it. However, full consideration must be given to unusual physical or mental effects in individual cases, to peculiar effects of occupational activities, to defects in physical or mental endowment preventing the usual amount of success in overcoming the handicap of disability and to the effect of combinations of disability. Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation; Provided, That permanent total disability shall be taken to exist when the impairment is reasonably certain to continue throughout

| Statement of the Case | Department of Veterans Affairs<br>St. Petersburg Regional Office | | Page 9<br>06/29/2005 |
|---|---|---|---|
| NAME OF VETERAN<br>Peavey, Morris J   JR | VA FILE NUMBER<br>23 448 613 | SOCIAL SECURITY NR<br>264 72 6975 | POA |

the life of the disabled person. The following will be considered to be permanent total disability:
the permanent loss of the use of both hands, or of both feet, or of one hand and one foot, or of the
sight of both eyes, or becoming permanently helpless or permanently bedridden. Other total
disability ratings are scheduled in the various bodily systems of this schedule.

§4.16  Total disability ratings for compensation based on unemployability of the individual.

(a) Total disability ratings for compensation may be assigned, where the schedular rating is less
than total, when the disabled person is, in the judgment of the rating agency, unable to secure or
follow a substantially gainful occupation as a result of service-connected disabilities: Provided,
That, if there is only one such disability, this disability shall be ratable at 60 percent or more, and
that, if there are two or more disabilities, there shall be at least one disability ratable at 40 percent
or more, and sufficient additional disability to bring the combined rating to 70 percent or more.
For the above purpose of one 60 percent disability, or one 40 percent disability in combination,
the following will be considered as one disability:

  (1) Disabilities of one or both upper extremities, or of one or both lower
extremities, including the bilateral factor, if applicable,

  (2) Disabilities resulting from common etiology or a single accident,

  (3) Disabilities affecting a single body system, e.g. orthopedic, digestive,
respiratory, cardiovascular-renal, neuropsychiatric,

  (4) Multiple injuries incurred in action, or

  (5) Multiple disabilities incurred as a prisoner of war.

It is provided further that the existence or degree of nonservice-connected disabilities or previous
unemployability status will be disregarded where the percentages referred to in this paragraph for
the service-connected disability or disabilities are met and in the judgment of the rating agency
such service-connected disabilities render the veteran unemployable. Marginal employment shall
not be considered substantially gainful employment. For purposes of this section, marginal
employment generally shall be deemed to exist when a veteran's earned annual income does not
exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as
the poverty threshold for one person. Marginal employment may also be held to exist, on a facts
found basis (includes but is not limited to employment in a protected environment such as a
family business or sheltered workshop), when earned annual income exceeds the poverty
threshold. Consideration shall be given in all claims to the nature of the employment and the
reason for termination. (Authority: 38 U.S.C. 501(a))

  (b) It is the established policy of the Department of Veterans Affairs that all veterans who
are unable to secure and follow a substantially gainful occupation by reason of service-connected
disabilities shall be rated totally disabled  Therefore, rating boards should submit to the Director,



| Statement of the Case | Department of Veterans Affairs St. Petersburg Regional Office | | Page 10 06/29/2005 |
|---|---|---|---|
| NAME OF VETERAN Peavey, Morris J  JR | VA FILE NUMBER 23 448 613 | SOCIAL SECURITY NR 264 72 6975 | POA |

Compensation and Pension Service, for extra-schedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in paragraph (a) of this section. The rating board will include a full statement as to the veteran's service-connected disabilities, employment history, educational and vocational attainment and all other factors having a bearing on the issue.

§4.18  Unemployability

A veteran may be considered as unemployable upon termination of employment which was provided on account of disability, or in which special consideration was given on account of the same, when it is satisfactorily shown that he or she is unable to secure further employment. With amputations, sequelae of fractures and other residuals of traumatism shown to be of static character, a showing of continuous unemployability from date of incurrence, or the date the condition reached the stabilized level, is a general requirement in order to establish the fact that present unemployability is the result of the disability. However, consideration is to be given to the circumstances of employment in individual claims, and, if the employment was only occasional, intermittent, tryout or unsuccessful, or eventually terminated on account of the disability, present unemployability may be attributed to the static disability. Where unemployability for pension previously has been established on the basis of combined service-connected and nonservice-connected disabilities and the service-connected disability or disabilities have increased in severity, §4.16 is for consideration.

§3.340  Total and permanent total ratings and unemployability

(a) Total disability ratings:

(1) General. Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. Total disability may or may not be permanent. Total ratings will not be assigned, generally, for temporary exacerbations or acute infectious diseases except where specifically prescribed by the schedule.

(2) Schedule for rating disabilities. Total ratings are authorized for any disability or combination of disabilities for which the Schedule for Rating Disabilities prescribes a 100 percent evaluation or, with less disability, where the requirements of paragraph 16, page 5 of the rating schedule are present or where, in pension cases, the requirements of paragraph 17, page 5 of the schedule are met.

(3) Ratings of total disability on history. In the case of disabilities which have undergone some recent improvement, a rating of total disability may be made, provided:

(i) That the disability must in the past have been of sufficient severity to warrant a total disability rating;



| Statement of the Case | Department of Veterans Affairs<br>St. Petersburg Regional Office | | Page 11<br>06/29/2005 |
|---|---|---|---|
| NAME OF VETERAN<br>Peavey, Morris J   JR | VA FILE NUMBER<br>23 448 613 | SOCIAL SECURITY NR<br>264 72 6975 | POA |

(ii) That it must have required extended, continuous, or intermittent hospitalization, or have produced total industrial incapacity for at least 1 year, or be subject to recurring, severe, frequent, or prolonged exacerbations; and

(iii) That it must be the opinion of the rating agency that despite the recent improvement of the physical condition, the veteran will be unable to effect an adjustment into a substantially gainful occupation. Due consideration will be given to the frequency and duration of totally incapacitating exacerbations since incurrence of the original disease or injury, and to periods of hospitalization for treatment in determining whether the average person could have reestablished himself or herself in a substantially gainful occupation.

(b) Permanent total disability. Permanence of total disability will be taken to exist when such impairment is reasonably certain to continue throughout the life of the disabled person. The permanent loss or loss of use of both hands, or of both feet, or of one hand and one foot, or of the sight of both eyes, or becoming permanently helpless or bedridden constitutes permanent total disability. Diseases and injuries of long standing which are actually totally incapacitating will be regarded as permanently and totally disabling when the probability of permanent improvement under treatment is remote. Permanent total disability ratings may not be granted as a result of any incapacity from acute infectious disease, accident, or injury, unless there is present one of the recognized combinations or permanent loss of use of extremities or sight, or the person is in the strict sense permanently helpless or bedridden, or when it is reasonably certain that a subsidence of the acute or temporary symptoms will be followed by irreducible totality of disability by way of residuals. The age of the disabled person may be considered in determining permanence.

(c) Insurance ratings. A rating of permanent and total disability for insurance purposes will have no effect on ratings for compensation or pension.

§3.341 (06/03)  Total disability ratings for compensation purposes.

(a) General. Subject to the limitation in paragraph (b) of this section total-disability compensation ratings may be assigned under the provisions of §3.340. However if the total rating is based on a disability or combination of disabilities for which the Schedule for Rating Disabilities provides an evaluation of less than 100 percent, it must be determined that the service-connected disabilities are sufficient to produce unemployability without regard to advancing age.  (Authority: 38 U.S.C. 1155)

(b) Incarcerated veterans. A total rating for compensation purposes based on individual unemployability which would first become effective while a veteran is incarcerated in a Federal, State or local penal institution for conviction of a felony, shall not be assigned during such period of incarceration. However, where a rating for individual unemployability exists prior to incarceration for a felony and routine review is required, the case will be reconsidered to determine if continued eligibility for such rating exists.  (Authority: 38 U.S.C. 5313(c))

| Statement of the Case | Department of Veterans Affairs<br>St. Petersburg Regional Office | | Page 12<br>06/29/2005 |
|---|---|---|---|
| NAME OF VETERAN<br>Peavey, Morris J   JR | VA FILE NUMBER<br>23 448 613 | SOCIAL SECURITY NR<br>264 72 6975 | POA |

(c) Program for vocational rehabilitation. Each time a veteran is rated totally disabled on the basis of individual unemployability during the period beginning after January 31, 1985, the Vocational Rehabilitation and Employment Service will be notified so that an evaluation may be offered to determine whether the achievement of a vocational goal by the veteran is reasonably feasible. (Authority: 38 U.S.C. 1163)

§3.321(b)(1)  General rating considerations

Ratings shall be based as far as practicable, upon the average impairments of earning capacity with the additional proviso that the Secretary shall from time to time readjust this schedule of ratings in accordance with experience. To accord justice, therefore, to the exceptional case where the schedular evaluations are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.

§19.33  Timely filing of Notice of Disagreement or Substantive Appeal questioned within the agency of original jurisdiction.

If, within the agency of original jurisdiction, there is a question as to the timely filing of a Notice of Disagreement or Substantive Appeal, the procedures for an administrative appeal must be followed. (Authority: 38 U.S.C. 7105, 7106)

§20.302  Rule 302.  Time limit for filing Notice of Disagreement, Substantive Appeal, and response to Supplemental Statement of the Case.

(a) Notice of Disagreement. Except in the case of simultaneously contested claims, a claimant, or his or her representative, must file a Notice of Disagreement with a determination by the agency of original jurisdiction within one year from the date that that agency mails notice of the determination to him or her. Otherwise, that determination will become final. The date of mailing the letter of notification of the determination will be presumed to be the same as the date of that letter for purposes of determining whether an appeal has been timely filed. (Authority: 38 U.S.C. 7105(b)(1))

(b) Substantive Appeal. Except in the case of simultaneously contested claims, a Substantive Appeal must be filed within 60 days from the date that the agency of original jurisdiction mails the Statement of the Case to the appellant, or within the remainder of the 1-year period from the date of mailing of the notification of the determination being appealed, whichever period ends later. The date of mailing of the Statement of the Case will be presumed to be the same as the date of the Statement of the Case and the date of mailing the letter of notification of

| Statement of the Case | Department of Veterans Affairs St. Petersburg Regional Office | | Page 12 06/29/2005 |
|---|---|---|---|
| NAME OF VETERAN Peavey, Morris J  JR | VA FILE NUMBER 23 448 613 | SOCIAL SECURITY NR 264 72 6975 | POA |

(c) Program for vocational rehabilitation. Each time a veteran is rated totally disabled on the basis of individual unemployability during the period beginning after January 31, 1985, the Vocational Rehabilitation and Employment Service will be notified so that an evaluation may be offered to determine whether the achievement of a vocational goal by the veteran is reasonably feasible. (Authority: 38 U.S.C. 1163)

§3.321(b)(1)  General rating considerations

Ratings shall be based as far as practicable, upon the average impairments of earning capacity with the additional proviso that the Secretary shall from time to time readjust this schedule of ratings in accordance with experience. To accord justice, therefore, to the exceptional case where the schedular evaluations are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.

§19.33  Timely filing of Notice of Disagreement or Substantive Appeal questioned within the agency of original jurisdiction.

If, within the agency of original jurisdiction, there is a question as to the timely filing of a Notice of Disagreement or Substantive Appeal, the procedures for an administrative appeal must be followed. (Authority: 38 U.S.C. 7105, 7106)

§20.302  Rule 302.  Time limit for filing Notice of Disagreement, Substantive Appeal, and response to Supplemental Statement of the Case.

(a) Notice of Disagreement. Except in the case of simultaneously contested claims, a claimant, or his or her representative, must file a Notice of Disagreement with a determination by the agency of original jurisdiction within one year from the date that that agency mails notice of the determination to him or her. Otherwise, that determination will become final. The date of mailing the letter of notification of the determination will be presumed to be the same as the date of that letter for purposes of determining whether an appeal has been timely filed. (Authority: 38 U.S.C. 7105(b)(1))

(b) Substantive Appeal. Except in the case of simultaneously contested claims, a Substantive Appeal must be filed within 60 days from the date that the agency of original jurisdiction mails the Statement of the Case to the appellant, or within the remainder of the 1-year period from the date of mailing of the notification of the determination being appealed, whichever period ends later. The date of mailing of the Statement of the Case will be presumed to be the same as the date of the Statement of the Case and the date of mailing the letter of notification of

| Statement of the Case | Department of Veterans Affairs
St. Petersburg Regional Office | | Page 13
06/29/2005 |
|---|---|---|---|
| NAME OF VETERAN
Peavey, Morris J   JR | VA FILE NUMBER
23 448 613 | SOCIAL SECURITY NR
264 72 6975 | POA |

the determination will be presumed to be the same as the date of that letter for purposes of determining whether an appeal has been timely filed.  (Authority: 38 U.S.C. 7105 (b)(1), (d)(3))

(c) Response to Supplemental Statement of the Case. Where a Supplemental Statement of the Case is furnished, a period of 60 days from the date of mailing of the Supplemental Statement of the Case will be allowed for response. The date of mailing of the Supplemental Statement of the Case will be presumed to be the same as the date of the Supplemental Statement of the Case for purposes of determining whether a response has been timely filed. Provided a Substantive Appeal has been timely filed in accordance with paragraph (b) of this section, the response to a Supplemental Statement of the Case is optional and is not required for the perfection of an appeal, unless the Supplemental Statement of the Case covers issues that were not included in the original Statement of the Case. If a Supplemental Statement of the Case covers issues that were not included in the original Statement of the Case, a Substantive Appeal must be filed with respect to those issues within 60 days in order to perfect an appeal with respect to the additional issues. (Authority: 38 U.S.C. 7105(d)(3))

38 USC Section 5107.  Burden of proof; benefit of the doubt

(a) Except when otherwise provided by the Secretary in accordance with the provisions of this title, a person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded.  The Secretary shall assist such a claimant in developing the facts pertinent to the claim.  Such assistance shall include requesting information as described in section 5106 of this title.

38 USC Section 1110  Basic entitlement

For disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this subchapter, but no compensation shall be paid if the disability is a result of the person's own willful misconduct or abuse of alcohol or drugs.

**DECISION:**

X  Entitlement to Individual Unemployability is not found.
2.  Evaluation of hypertensive heart disease remains evaluated as 60 percent disabling.

| Statement of the Case | Department of Veterans Affairs<br>St. Petersburg Regional Office | | Page 14<br>06/29/2005 |
|---|---|---|---|
| NAME OF VETERAN<br>Peavey, Morris J   JR | VA FILE NUMBER<br>23 448 613 | SOCIAL SECURITY NR<br>264 72 6975 | POA |

## REASONS AND BASES:

### 1. Entitlement to individual unemployability.

Entitlement to individual unemployability is denied because you have not been found unable to secure or follow a substantially gainful occupation as a result of service connected disabilities.

You stated you last worked in July 2001, in accounting for Shanty Restaurant.  You stated you became to disabled to work in June 2001, in construction as you were injured.  You are service connected for hypertensive heart disease, evaluated as 60 percent disabling since August 30, 1994, and your service connected lumbosacral strain has been evaluated as 10 percent disabling since October 1, 1967.  A VA examination was scheduled to evaluate your service connected conditions.  You failed to report to that examination.

Based on the evidence of record we are unable to determine if you are unemployable due to your service connected conditions.

### 2. Evaluation of hypertensive heart disease currently evaluated as 60 percent disabling.

The evaluation of hypertensive heart disease is continued as 60 percent disabling.  An evaluation of 60 percent is assigned if there is more than one episode of acute congestive heart failure in the past year; or workload greater than 3 METs but not greater than 5 METs resulting in dyspnea, fatigue, angina, dizziness, or syncope; or left ventricular dysfunction with an ejection fraction of 30 to 50 percent.  A higher evaluation of 100 percent is not warranted unless there is chronic congestive heart failure; or workload of 3 METs or less resulting in dyspnea, fatigue, angina, dizziness, or syncope; or left ventricular dysfunction with an ejection fraction of less than 30 percent.  One MET (metabolic equivalent) is the energy cost of standing quietly at rest and represents an oxygen uptake of 3.5 milliliters per kilogram of body weight per minute.

You failed to report for scheduled VA examination and based on the evidence of record we are unable to evaluate your hypertensive heart disease.

*U. S. DISTRICT COURT*
*FoR THE DISTRICT of COLUMBIA*

**CASE NUMBER 1:05CV00819RWR**

**MORRIS J. PEAVEY, JR.**

**Vs**

**ALBERTO GONZALEZ, et al**

## MEMORANDUM

### NOTICE OF INCAPACITATION

This will notify the court that I am presently (September 16, 2005)

incapacitated and hospitalized and unable to make any Calendars,

Motions Sessions or Respond to the Defendant or Court since this date.

Please accept this notice.

Respectfully submitted by:

*Morris J. Peavey, Jr*

Morris J. Peavey, Jr., Pro Se
12315 NW 23rd Avenue
Miami, Florida 33167
(305) 688-0759
September 20, 2005

COPIED FROM CLAIMS FOLDER DEPT OF VA AFFAIRS-317 JPPORT
PATIENT REPORT (MICU)



634178

COPIED FROM CLAIMS FOLDER DEPT OF VA AFFAIRS-31

UMDNJ

EMERGENCY PHYSICIAN RECORD
Dyspnea (COPD, CHF, and Other)

**HPI**

**ROS**

**PAST HX**

**SOCIAL HX**

**FAMILY HX** CAD



COPIED FROM CLAIMS FOLDER DEPT OF VA AFFAIRS-317

## DISCHARGE INSTRUCTION FORM FOR PATIENT

**1. MEDICATION TO TAKE AT HOME**

NAME · DOSE · WHEN

**2. ACTIVITY**

**3. DIET**

**4. WOUND CARE**

### FOLLOW - UP APPOINTMENTS / ADDITIONAL INSTRUCTIONS

OFFICE, CLINIC, AGENCY · DATE · TIME · LOCATION · PHONE NO

**NURSING INSTRUCTIONS**



**DEPARTMENT OF VETERANS AFFAIRS**
**Board of Veterans' Appeals**
**Washington DC  20420**

9 - 21 - 05

In Reply Refer To. 014

Department of Veterans Affairs
Director
Regional Office,  Λ VETERSBRG

C  52N NQ GA
CRAIG, MORRIS J

SUBJ:  Referral of correspondence

☐  We are referring the enclosed correspondence for reply and any necessary action.  If applicable and the case is not in an appellate status, you should include in your reply appropriate information as to any appellate rights the claimant may have.

☐  The enclosed communication initiated by this Board was returned undelivered.  Please remail when the correct address is ascertained, with any necessary explanation.

☐  The enclosed correspondence with a copy of our reply is referred for your information and any necessary action, as the records are located in your office.

☒  We are referring the enclosed records for your information and necessary action.  They were delivered to the Board in error

☐  The enclosed correspondence is referred for your information and any necessary action, as the records are located in your office.  This appeal was docketed at the Board on _____, and will be recalled from your station for review in its proper docket order.

☐  We are returning the enclosed for any necessary action, as the records were returned on

_____

Carrie M. Johnson-Clark
Director, Management and Administration

FILE
EP
EP _____ 171
ADJ.T. _____ PEND
_____ FINAL

AUG 3 1 2005
VARO
7/23



RECEIVED
SEP 0 6 2005
BVA INTAKE TEAM (014HT)

Exceptions to DROD  Dated April 22, 2008 VARO 317
TABULATIONS:

TAB-4

VARO 317 RATING DECISION DATED  DECEMBER 4, 1995  EVIDENCE OF
COMPENSATION AND MEDICAL C&P 1993-1995

EXHIBIT  1)   VARO 317 RATING DECISION DATED DECEMBER 4,  1995

EXHIBIT  2)   C&P Medical certifications by doctor Lavin MD.

EXHIBIT  3)  C & P Medical certification by Dr. Kopha substitute Dr. Lavin

EXHIBIT  4)  VA provide some digital records of the 1993 treatments and examinations
given at VAMC  MIA

OMB Approved No. 2900-0075
Respondent Burden: 15 minutes

**VA** Department of Veterans Affairs   FOLDER DESIGNATION STATEMENT IN SUPPORT OF CLAIM

PRIVACY ACT INFORMATION: The law authorizes us to request the information we are asking you to provide on this form (38 U.S.C. 501(a) and (b)). The responses you submit are considered confidential (38 U.S.C. 5701). They may be disclosed outside the Department of Veterans Affairs (VA) only if the disclosure is authorized by the Privacy Act, including the routine uses identified in the VA system of records, 58VA21/22, Compensation, Pension, Education and Rehabilitation Records - VA, published in the Federal Register. The requested information is considered relevant and necessary to determine maximum benefits under the law. Information submitted is subject to verification through computer matching programs with other agencies.

RESPONDENT BURDEN: Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Clearance Officer (723), 810 Vermont Ave., NW, Washington, DC 20420; and to the Office of Management and Budget, Paperwork Reduction Project (2900-0075), Washington, DC 20503. PLEASE DO NOT SEND THIS FORM OR APPLICATIONS FOR BENEFITS TO THESE ADDRESSES.

| FIRST NAME - MIDDLE NAME - LAST NAME OF VETERAN *(Type or print)* | SOCIAL SECURITY NO. | VA FILE NO. |
|---|---|---|
| MORRIS JAMES PEAVEY, JR. | 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 | C/CSS- 23448613 |

The following statement is made in connection with a claim for benefits in the case of the above-named veteran.

I am currently 0% S/C for
my heart condition. I have been
seen at VAMC MIAMI since 1993. I
have also been seen at VAMC
N.Y. During 1968, I was seen
at the VA Clinic at East Orange N.J.
— MAY 93.

RECEIVED VSD

AUG 30 1994

020

MIAMI, FLORIDA

RECEIVED

SEP 1 2 1994

SUPPORT UNIT

SEP 15 1994

N N

RECEIVED
SEP 01 1994
VARO 317?31A
St. Petersburg, FL

(CONTINUE ON REVERSE)

I CERTIFY THAT the statements on this form are true and correct to the best of my knowledge and belief.

| SIGNATURE | DATE SIGNED |
|---|---|
| Morris J. Peavey | 8/22/94 |

| ADDRESS | DAYTIME TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| 12315 NW 23 Ave MIAMI FL. 33167 | (305) 688-0759 |

PENALTY: The law provides severe penalties which include fine or imprisonment, or both, for the willful submission of any statement or evidence of a material fact, knowing it to be false.

VA FORM
OCT 1993  **21-4138**     EXISTING STOCKS OF VA FORM 21-4138,
APR 1992, WILL BE USED.     *U.S GPO: 1993-301-790/94805

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (317)

| *Department of Veterans Affairs* | POA  *AL/NONE* | | PAGE  1  DATE OF RATING  December 4, 1995 | |
|---|---|---|---|---|
| **RATING DECISION** | NAME OF VETERAN  M. J. PEAVEY | | SOCIAL SECURITY NUMBER  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 | VA FILE NUMBER  23 448 613 |

## ISSUE:

1  Evaluation of hypertensive heart disease currently evaluated as 0 percent disabling.
2.  Evaluation of lumbosacral strain currently evaluated as 10 percent disabling.
3  Whether the claim for service connection for kidney disease is well grounded.
4  Entitlement to individual unemployability.

## EVIDENCE:

VA examinations dated 4-24-95, 8-3-95 and 9-5-95, Miami, FL.
Service medical records for the period 7-21-64 to 6-30-67.
VA Form 21-8940.
VA outpatient treatment reports from Brooklyn, NY, dated 2-2-68 and 2-26-68.

## DECISION:

1  Evaluation of hypertensive heart disease, which is currently 0 percent disabling, is increased to 60 percent effective August 30, 1994
2  Evaluation of lumbosacral strain, which is currently 10 percent disabling, is continued.
3.  The claim for service connection of kidney disease is not well grounded.
4  Entitlement to individual unemployability is denied.

## REASONS AND BASES:

1.  The evaluation of hypertensive heart disease is increased to 60 percent disabling effective August 30, 1994  An evaluation of 60 percent is granted whenever more than light manual labor is precluded with marked enlargement of the heart or the apex beat beyond midclavicular line, sustained diastolic hypertension of 120 or more, and dyspnea on exertion  A higher evaluation of 100 percent is not warranted unless the record shows definite signs of congestive failure which preclude more than sedentary employment.

The veteran has not been on medication since February 1995, according to the VA examination.  Blood pressure readings were 240/120, 240/120, 235/120, 220/120, 220/120  The heart had a normal sinus rhythm  The lungs were clear  A quiet mitral murmur was heard  There was no ankle edema  The apex beat was beyond  the mid-clavicular line, but this was not confirmed by xray  He refused a stress thallium test at this time  The diagnoses included hypertensive cardiovascular disease, incipient congestive heart failure, suspected coronary artery disease and mild hypertensive retinopathy.

2  The evaluation of lumbosacral strain is continued as 10 percent disabling.  An evaluation of 10 percent is granted for characteristic painful or limited motion  A higher evaluation of 20 percent is not warranted unless

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (317)

| Department of Veterans Affairs | POA ALNONE | PAGE  1   DATE OF RATING   December 4, 1995 | |
|---|---|---|---|
| **RATING DECISION** | NAME OF VETERAN<br><br>M. J. PEAVEY | SOCIAL SECURITY NUMBER<br>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 | VA FILE NUMBER<br>23 448 613 |

## ISSUE:

1. Evaluation of hypertensive heart disease currently evaluated as 0 percent disabling.
2. Evaluation of lumbosacral strain currently evaluated as 10 percent disabling.
3. Whether the claim for service connection for kidney disease is well grounded.
4. Entitlement to individual unemployability.

## EVIDENCE:

VA examinations dated 4-24-95, 8-3-95 and 9-5-95, Miami, FL.
Service medical records for the period 7-21-64 to 6-30-67.
VA Form 21-8940.
VA outpatient treatment reports from Brooklyn, NY, dated 2-2-68 and 2-26-68.

## DECISION:

1. Evaluation of hypertensive heart disease, which is currently 0 percent disabling, is increased to 60 percent effective August 30, 1994.
2  Evaluation of lumbosacral strain, which is currently 10 percent disabling, is continued.
3. The claim for service connection of kidney disease is not well grounded.
4. Entitlement to individual unemployability is denied.

## REASONS AND BASES:

1. The evaluation of hypertensive heart disease is increased to 60 percent disabling effective August 30, 1994. An evaluation of 60 percent is granted whenever more than light manual labor is precluded with marked enlargement of the heart or the apex beat beyond midclavicular line, sustained diastolic hypertension of 120 or more, and dyspnea on exertion. A higher evaluation of 100 percent is not warranted unless the record shows definite signs of congestive failure which preclude more than sedentary employment.

The veteran has not been on medication since February 1995, according to the VA examination. Blood pressure readings were 240/120, 240/120, 235/120, 220/120, 220/120. The heart had a normal sinus rhythm. The lungs were clear. A quiet mitral murmur was heard. There was no ankle edema. The apex beat was beyond the mid-clavicular line, but this was not confirmed by xray. He refused a stress thallium test at this time. The diagnoses included hypertensive cardiovascular disease, incipient congestive heart failure, suspected coronary artery disease and mild hypertensive retinopathy.

2. The evaluation of lumbosacral strain is continued as 10 percent disabling. An evaluation of 10 percent is granted for characteristic painful or limited motion. A higher evaluation of 20 percent is not warranted unless

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (317)

| *Department of Veterans Affairs* | BOX AL | PAGE 2   DATE OF RATING   December 4, 1995 | |
|---|---|---|---|
| **RATING DECISION** | NAME OF VETERAN<br><br>M. J. PEAVEY | SOCIAL SECURITY NUMBER<br><br>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 | VA FILE NUMBER<br><br>23 448 613 |

evidence demonstrates muscle spasm on extreme forward bending and unilateral loss of lateral spine motion in a standing position.

The veteran complained of right lower back pain without radiation. Flexion was 85 degrees, extension 30 degrees, bilateral lateral flexion 30-35 degrees, and bilateral rotation 30 degrees. Straight leg raising to 45 degrees did not produce back pain. Diagnosis was chronic low back syndrome. A higher evaluation requires a greater degree of limitation of motion or muscle spasm, not shown.
The rule regarding benefit of reasonable doubt does not apply because the preponderance of evidence is unfavorable.

3.  The law provides that a person who submits a claim for VA benefits must submit evidence sufficient to justify a belief that the claim is well grounded. A well-grounded claim is a plausible claim, one which has merit on its own, or is capable of substantiation. Such a claim need not be conclusive, but it must be accompanied by evidence which shows that the claimed condition exists and is possibly related to service.

There is no record of kidney disease showing a chronic disability subject to service connection. In order to establish a well-grounded claim, it is necessary to provide evidence which demonstrates the existence of the claimed condition and its possible relationship to service.

Service medical records show on 1-31-67, that there was no evidence of renal vascular disease. An intravenous pyelogram was normal. It showed only that the veteran had a left double collecting system. Renal injury secondary to his back trauma was ruled out. Chronic renal disease was ruled out. He was seen at the VA Hospital, Brooklyn, NY, in February 1968, after service discharge on 8-5-67. An intravenous pyelogram and renogram were normal with no disease found. Current VA examination indicated the right flank pain was coming from his back and not from his kidneys.

The rule regarding benefit of reasonable doubt does not apply because the preponderance of evidence is unfavorable.

4.  Entitlement to individual unemployability is denied because the claimant has not been found unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. The veteran is considered capable of gainful employment.

The veteran, who is 50 years old, last worked fulltime on 4-30-90, as a program developer. He has an MBA degree. He has experience working as a carpenter, and as a migrant farm laborer. He has worked as a financial analyst. It is not shown the veteran is precluded from all forms of sedentary employment, although he is probably precluded from ordinary manual labor.

The rule regarding benefit of reasonable doubt does not apply because the preponderance of evidence is unfavorable.

VA FORM
JUN 1994     **21-6796**     SUPERSEDES VA FORM 21-6796, NOV 1992, WHICH WILL NOT BE USED.

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (317)

| *Department of Veterans Affairs* | PAGE 3 | | DATE OF RATING   December 4, 1995 | |
|---|---|---|---|---|

| **RATING CODESHEET** | REGIONAL OFFICE NUMBER<br>317 | NAME OF VETERAN<br>M. J. PEAVEY | | VA FILE NUMBER<br>23 448 613 |
|---|---|---|---|---|

| ACTIVE DUTY *(Month/Day/Year)* | | | | ADDITIONAL SERVICE CODE | COMBAT STATUS | SPECIAL PROVISION CODE | FUTURE EXAM *(Month/Year)* |
|---|---|---|---|---|---|---|---|
| EOD | RAD | EOD | RAD | | | | None |

| COPY TO:<br>AL | | | | EFFECTIVE DATE | BASIC | HOSPITAL | LOSS OF USE | ANAT. LOSS | OTHER LOSS |
|---|---|---|---|---|---|---|---|---|---|
| | | | S | | | | | | |
| | | | M | | | | | | |
| | | | C | | | | | | |

**JURISDICTION:** Claim for increase received 8-30-94.

      1. SC (VE INC)

7007      HYPERTENSIVE HEART DISEASE
              0% from 03-01-73
              60% from 08-30-94

5295      LUMBOSACRAL STRAIN
              10% from 10-01-67

COMB:  SC  10% from 03-01-73
             60% from 08-30-94

      18B.  IU not found

C. BRYIE
RATING SPECIALIST

VA FORM
JUN 1994  **21-6796c**      SUPERSEDES VA FORM 21-6796c, NOV 1992, WHICH WILL NOT BE USED    AVEY8613.RTG

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (317)

| *Department of Veterans Affairs* | POA    AL | PAGE  2   DATE OF RATING   December 4, 1995 | |
|---|---|---|---|
| **RATING** **DECISION** | NAME OF VETERAN M  J. PEAVEY | SOCIAL SECURITY NUMBER 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 | VA FILE NUMBER 23 448 613 |

evidence demonstrates muscle spasm on extreme forward bending and unilateral loss of lateral spine motion in a standing position.

The veteran complained of right lower back pain without radiation.  Flexion was 85 degrees, extension 30 degrees, bilateral lateral flexion 30-35 degrees, and bilateral rotation 30 degrees.  Straight leg raising to 45 degrees did not produce back pain.  Diagnosis was chronic low back syndrome  A higher evaluation requires a greater degree of limitation of motion or muscle spasm, not shown.
The rule regarding benefit of reasonable doubt does not apply because the preponderance of evidence is unfavorable.

3.  The law provides that a person who submits a claim for VA benefits must submit evidence sufficient to justify a belief that the claim is well grounded.  A well-grounded claim is a plausible claim, one which has merit on its own, or is capable of substantiation.  Such a claim need not be conclusive, but it must be accompanied by evidence which shows that the claimed condition exists and is possibly related to service

There is no record of kidney disease showing a chronic disability subject to service connection.  In order to establish a well-grounded claim, it is necessary to provide evidence which demonstrates the existence of the claimed condition and its possible relationship to service

Service medical records show on 1-31-67, that there was no evidence of renal vascular disease.  An intravenous pyelogram was normal.  It showed only that the veteran had a left double collecting system Renal injury secondary to his back trauma was ruled out.  Chronic renal disease was ruled out.  He was seen at the VA Hospital, Brooklyn, NY, in February 1968, after service discharge on 8-5-67.  An intravenous pyelogram and renogram were normal with no disease found.  Current VA examination indicated the right flank pain was coming from his back and not from his kidneys

The rule regarding benefit of reasonable doubt does not apply because the preponderance of evidence is unfavorable

4  Entitlement to individual unemployability is denied because the claimant has not been found unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities   The veteran is considered capable of gainful employment

The veteran, who is 50 years old, last worked fulltime on 4-30-90, as a program developer  He has an MBA degree  He has experience working as a carpenter, and as a migrant farm laborer  He has worked as a financial analyst  It is not shown the veteran is precluded from all forms of sedentary employment, although he is probably precluded from ordinary manual labor

The rule regarding benefit of reasonable doubt does not apply because the preponderance of evidence is unfavorable.



# Compensation and Pension

DATE OF EXAMINATION:
8/3/95

PLACE OF EXAMINATION:
Veterans Administration Medical Center in Miami.

TYPE OF EXAMINATION:
This is a worksheet for nephritis, except for chronic pyelonephritis.

SPECIFIC EVALUATION INFORMATION

VITAL SIGNS:  The blood pressure was 220/120.

GENERAL:  The pain that he is getting in his right flank is coming from his back, not from his kidneys.  Suspect coronary artery disease as a complication of his hypertension.

LABORATORY DATA:  Waiting urinalysis to see if there is albumin or casts present.  There is no edema in the ankles at this time.  Awaiting urine to determine if he has red blood cells.  Ordered is a creatinine and BUN.

DIAGNOSES:
1.  Hypertensive cardiovascular disease.
2.  Incipient congestive heart failure, suspect coronary artery disease.

EL :TLF305  1743
D: 08/03/95
T: 08/03/95                            E. LAVIN, MD

---

| PATIENT NAME | SOC. SEC. # | ADM DATE | DIS DATE | WARD/SVC |
|---|---|---|---|---|
| PEAVEY, MORRIS J. JR. | -72-6975 | 08/03/95 | | |
| SF 507 | DICTATING: E. LAVIN, MD | | | |
| COMPENSATION AND PENSION | VAMC MIAMI,FL | | | PAGE 1 |

# Compensation and Pension

**DATE OF EXAMINATION:**
8/3/95

**PLACE OF EXAMINATION:**
Veterans Administration Medical Center in Miami.

**TYPE OF EXAMINATION:**
This is a compensation and pension evaluation for diseases of the heart (cardiovascular).

**MILITARY/MEDICAL HISTORY:**
The veteran served in the United States Army from 1964-1967.  He had an Honorable Discharge.  His basic training was at Fort Dix, New Jersey, with advanced training at Fort Gordon and Fort Benning, Georgia.  He was in the paratroopers, 82nd airborne division.  He was also at Fort Bragg and on two occasions in the Dominican Republic.

While in the service, he was discovered to have high blood pressure when he was hospitalized for back pain.  He was also discovered to have a heart murmur and enlarged heart.  Later on in his career, the veteran developed pneumonia.

**SUBJECTIVE COMPLAINTS:**
The veteran complains about swollen ankles; pain in the left chest down the left arm at times, but not recently.  There has been no swelling recently.  He gets this when he works very hard, like picking strawberries.  He gets frequent headaches and since he has been working hard, he has found that he has lost his strength.  He has had no recent chest pain.

**OBJECTIVE FINDINGS:**
The veteran's blood pressure is 240/120.  He has a normal sinus rhythm.  His rate is about 72; respiratory rate 18.  There are no adventitious sounds heard in the lungs.  There is no pedal or abdominal edema.  Suspect possible slight

## Compensation and Pension

enlargement of the liver.  The carotid area is without bruits.  He has a
quiet mitral murmur, early systolic, grade 1-2.  There is straightening of
the retinal arteries, but no hemorrhagic areas have been found.

LABORATORY DATA:
An electrocardiogram as ordered.  X-rays of the chest was ordered as well as
stress thallium test--awaiting results.

DIAGNOSES:
1.  Hypertensive cardiovascular disease.
2.  Incipient congestive heart failure.
3.  Hypertensive retinopathy (mild).
4.  Rule out the possibility of coronary artery disease.


EL :TLF305  1743
D: 08/03/95
T: 08/03/95

E. LAVIN, MD

*Addendum:*
*Patient Refused the stress Test.*
*Will request that he return to*
*Hypertension clinic TO Recieve*
*Therapy.*

---

PATIENT NAME                    SOC. SEC. #     ADM DATE    DIS DATE    WARD/SVC
PEAVEY, MORRIS J. JR.            -72-6975        08/03/95
SF 507                          DICTATING: E. LAVIN, MD
COMPENSATION AND PENSION              VAMC MIAMI,FL                     PAGE  2

# Compensation and Pension

DATE OF EXAMINATION:
8/3/95

PLACE OF EXAMINATION:
Veterans Administration Medical Center in Miami.

TYPE OF EXAMINATION:
This is a compensation and pension evaluation hypertension. (cardiovascular).

MILITARY/MEDICAL HISTORY:
The veteran served in the United States Army from 1964-1967. He had an
Honorable Discharge. His basic training was at Fort Dix, New Jersey, with
advanced training at Fort Gordon and Fort Benning, Georgia. He was in the
paratroopers, 82nd airborne division. He was also at Fort Bragg and on two
occasions in the Dominican Republic.

While in the service, he was discovered to have high blood pressure when he
was hospitalized for back pain. He was also discovered to have a heart
murmur and enlarged heart. Later on in his career, the veteran developed
pneumonia.

SPECIFIC EVALUATION INFORMATION

BLOOD PRESSURE READINGS:
Standing blood pressure is 240/120; sitting 235/120; lying 220/120.

CURRENT MEDICATIONS:
The veteran has been taking no medications since February 1995.

ENLARGED HEART:
Not confirmed by x-ray, but the apex beat is beyond the mid clavicular line
at the level of the 5th intercostal space. _not confirmed on_
_Chest X._

| PATIENT NAME | SOC. SEC. # | ADM DATE | DIS DATE | WARD/SVC |
|---|---|---|---|---|
| PEAVEY, MORRIS J. JR. | -72-6975 | 08/03/95 | | |
| SF 507 | DICTATING: E. LAVIN, MD | | | |
| COMPENSATION AND PENSION | VAMC MIAMI,FL | | | PAGE 1 |

## Compensation and Pension

SPECIAL DIAGNOSTIC TEST:
Stress thallium.

DIAGNOSES:
1.  Hypertensive cardiovascular disease ~~with cardiomegaly~~.
2.  Incipient congestive heart failure, *suspected*
3.  Suspect he may have coronary artery disease by history only.

4 - Pt advised by phone to return ASAP for B.P. recheck
@ L

EL :TLF305  1743
D: 08/03/95
T: 08/03/95

*Colleen Lavine*
E. LAVIN. MD

5. Veteran chose not to have thallium stress test
done at this time
@ 14

## Compensation and Pension

DATE OF EXAMINATION:
9/5/95

PLACE OF EXAMINATION:
Veterans Administration Medical Center in Miami.

TYPE OF EXAMINATION:
This is a compensation and pension evaluation for diseases of the heart and
hypertension (cardiovascular).

MILITARY/MEDICAL HISTORY:
The veteran served in the United States Army from 1964-1967. He had an
Honorable Discharge. His basic training at was Fort Dix, New Jersey, with
advanced training at Fort Gordon, Georgia, and Fort Benning, Georgia. He was
in the paratroopers, 82nd Airborne Division. He was also at Fort Bragg, and
on two occasions in the Dominican Republic.

While in the service, the veteran was discovered to have high blood pressure
when he was hospitalized for back pain. He was also discovered to have a
heart murmur and enlarged heart, according to the veteran. Later on in his
career, the veteran developed pneumonia.

SPECIFIC EVALUATION INFORMATION:

BLOOD PRESSURE READINGS:
Standing 240/120; sitting 235/120; lying 220/120.

CURRENT MEDICATIONS:
The veteran has been taking no medications since February 1995.

ENLARGED HEART:
Not confirmed by x-ray, but the apex beat is beyond the mid clavicular line,
at the level of the 5th intercostal space. This was not confirmed by x-ray.

| PATIENT NAME | SOC. SEC. # | ADM DATE | DIS DATE | WARD/SVC |
|---|---|---|---|---|
| PEAVEY, MORRIS J. JR. | -72-6975 | 09/05/95 | | |
| SF 507 | DICTATING: E. LAVIN, MD | | | |
| COMPENSATION AND PENSION | VAMC MIAMI,FL | | | PAGE 1 |

# Lab Result

```
                                            ---- CBC ----

     BLOOD      08/03    09/23              Reference
                1995     1993
                13:56    12:07     Units    Ranges
  ---------------------------------------------------------------------------
     WBC          5       4.4      K/cmm    3.6 to 11.1
     RBC         5.19     5.17     M/cmm    4.27 to 5.49
     HGB        14.4     14.2      g/dL     12.9 to 16.1
     HCT        43.1     42.1       %       37.7 to 46.5
     MCV         83 L    81.4 L    fL       79.3 to 94.8
     MCH        27.8 L   27.5      Pg       26.8 to 33.2
     MCHC       33.4     33.8      g/dL     33.5 to 35.5
     RDW        12.7     13.0       %       12 to 15.1
     PLT         245      234      K/cmm    165 to 353
     MPV         9.7 H   10.3 H    fL       7.5 to 10.7
     NE%        48.2     42.9 L     %       43.3 to 71.9
     LYMPH %    38.5     42.9 H     %       16.7 to 43.5
     MONO %      9.1      9.1       %       4.6 to 12.4
     EOSINO%     3.1      3.2       %       .7 to 7.8
     BASO%       1.1      1.9       %       .2 to 1.1
     NE#         2.3      1.9 L  thousand   1.9 to 7.2
     LYMPH #     1.9      1.9    thousand   1.1 to 2.7
     MONOS #      .5       .4    thousand   .3 to .8
     EOS #        .2       .1    thousand   .04 to .48
     BASO #       .1       .1    thousand   .02 to .08
     Comments:            a
     a. SEE AUTOMATED DIFFERENTIAL.


                                            ---- URINALYSIS ----

     URINE      08/03    09/23              Reference
                1995     1993
                13:56    12:07     Units    Ranges
  ---------------------------------------------------------------------------
     UR.COL   YELLOW   YELLOW              <ORANGE
     UR.CLAR                              <SLCLOUDY
     UR.pH      6.5      7.5 H            5 to 7
     UR.SPGR  1.025    1.015             1.005 to 1.03
     UR.BILI    0        0      mg/dL    <SMALL
     UR.BLD     0        0      mg/dl    <TR
     UR.GLU     0        0      mg/dL    <TR
     UR.KET     0        0      mg/dL    0 to <10
     UR.LEUK   NEG      NEG     Leu/ul   <TR
     UR.NITR    0        0      mg/dl    <POS
     UR.PROT   30 H      0      mg/dL    <TR
     UROBILI   NEG      NEG     mg/dl    .2 to 4
```

| PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|

PEAVEY, MORRIS
12315 NW 23RD AVENUE
MIAMI, FLORIDA   33167          Printed at MIAMI VAMC
264126975

P

# Lab Result

```
EOSINO                    %       0 to .6
BASO                      %       0 to .3
ATYP LY                   %       0 to 5
META                      %       0 to 0
MYELO                     %       0 to 0
PROS                      %       0 to 0
BLASTS                    %       0 to 0
PLASMA                   "%"
PLT.E                             Adq
PL MORP
NORMOCY
ANISO
SHISTO
OVALOCY
TEARDP
ACANTHO
STOMATO
NORMOCH
POLYCHR
HYPO
SPHEROC
TARGET
TOXIC G
OTHER
Comments:      a
a. SEE AUTOMATED DIFFERENTIAL.


                                      ---- LIPID PANEL ----

SERUM      09/24            Reference
           1993
           10:58     Units     Ranges
-------------------------------------------------------------------
CHOL        252     mg/dL    75 to 200
TRIG        129     mg/dL    75 to 200
HDLC         40     mg/dL    35 to 55
LDLCHOL             mg/dL    25 to 100
LDLC        186     mg/dl    50 to 160
Comments:      a
a. SEE INTERIM REPORT FOR INTERPRETATION
   Evaluation for CHOL:
   REFERENCE VALUE INTERPRETATION:
   BORDERLINE 200-239 mg/dL
   DESIRABLE  <200   mg/dL
   HIGH       >240   mg/dL
   Evaluation for TRIG:
   LIPID METABOLISM DISORDER: >200 mg/dL
```

| PATIENT NAME AND ADDRESS (Mechanical imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|
| PEAVEY, MORRIS<br>12315 NW 23RD AVENUE<br>MIAMI, FLORIDA  33167<br>264126975 | Printed at MIAMI VAMC |

# Lab Result

```
Evaluation for HDLC:
RISK INDICATOR: <35 mg/dL
```

```
                        ---- MISCELLANEOUS TESTS ----

   DATE      TIME   SPECIMEN        TEST        VALUE            Ref ranges
--------------------------------------------------------------------------------
08/03/1995 13:56   URINE           APPEAR :    CLEAR
08/03/1995 13:56   SERUM           GLUCOSE:    90.    mg/dL     70 to 115
08/03/1995 13:56   SERUM           UR NIT:     10.    mg/dL     6 to 23
08/03/1995 13:56   SERUM           CREAT:      1.4    mg/dL     .7 to 1.2
08/03/1995 13:56   SERUM           NA:         141.   mmol/L    136 to 145
08/03/1995 13:56   SERUM           K:          4.3    mmol/L    3.5 to 5.1
08/03/1995 13:56   SERUM           CL:         101.   mmol/L    98 to 107
08/03/1995 13:56   SERUM           CA:         9.5    mg/dL     8.4 to 10.4
08/03/1995 13:56   SERUM           PHOS:       2.9    mg/dL     2.7 to 4.5
08/03/1995 13:56   SERUM           PROTEIN:    7.4    g/dL      6.6 to 8.7
08/03/1995 13:56   SERUM           ALBUMIN:    4.1    g/dL      3.4 to 4.8
08/03/1995 13:56   SERUM           ALKPHOS:    74.    U/L       40 to 129
08/03/1995 13:56   SERUM           LDH:        454.   U/L       135 to 225
08/03/1995 13:56   SERUM           ANT GAP:    10.    MMOL/L    9 to 16
08/03/1995 13:56   SERUM           AST:        27.    U/L       0 to 38
08/03/1995 13:56   SERUM           ECO2:       30.    mmol/L    22 to 29
09/24/1993 10:58   SERUM           GLUCOSE:    90.    mg/dL     70 to 115
09/24/1993 10:58   SERUM           UR NIT:     13.    mg/dL     6 to 23
09/24/1993 10:58   SERUM           CREAT:      1.4    mg/dL     .7 to 1.2
09/24/1993 10:58   SERUM           NA:         140.   mmol/L    136 to 145
09/24/1993 10:58   SERUM           K:          4.9    mmol/L    3.5 to 5.1
09/24/1993 10:58   SERUM           CL:         102.   mmol/L    98 to 107
09/24/1993 10:58   SERUM           LDL/HDL:    4.7 H            1 to 3.5
09/24/1993 10:58   SERUM           ANT GAP:    · 6. L  MMOL/L   9 to 16
09/24/1993 10:58   SERUM           CHOLHDL:    6.3 H            1 to 5
09/24/1993 10:58   SERUM           CHYLO:      ABSENT
09/24/1993 10:58   SERUM           APPEAR:     CLEAR
09/24/1993 10:58   SERUM           ECO2:       33. H  mmol/L    22 to 29
SEE INTERIM REPORT FOR INTERPRETATION
Evaluation for APPEAR:
HDLC reference range for females is 35-86 mg/dl.

HDLC values below normal range appear to be associated with a
higher than average risk of coronary artery disease. Values
above the normal range appear to be associated with a lower
than average risk of coronary artery disease.

CHOL/HDLC reference range for females is <4.4

CHOL/HDLC ratios greater than normal appear to be associated
```

| PATIENT NAME AND ADDRESS (Mechanical imprinting, if available) | VISTA Electronic Medical Documentation |
| --- | --- |

PEAVEY, MORRIS
12315 NW 23RD AVENUE
MIAMI, FLORIDA 33167          Printed at MIAMI VAMC
264126975

Case 1:05-cv-00819-RWR   Document 56-1   Filed 07/06/09   Page 137 of 193

# Lab Result

Printed On Jan 22

with a higher than average risk of coronary artery disease.

LDLC reference ranges:   <30 yrs.:50-170 mg/dl
                         30-50 yrs.:70-190 mg/dl
                         >50 yrs.:80-210 mg/dl

LDLC/HDLC ratio reference ranage for females is <3.2

LDLC/HDLC ratios greater than normal appear to be associated
with a higher than average risk of coronary artery disease.

LDLC calculation is not valid when triglyceride level is above
400 mg/dl or when a type III hyperlipoproteinemia is apparent.

| | | | | |
|---|---|---|---|---|
| 09/23/1993 12:07 | SERUM | CA: | 9.3 mg/dL | 8.4 to 10.4 |
| 09/23/1993 12:07 | SERUM | PHOS: | 2.7 mg/dL | 2.7 to 4.5 |
| 09/23/1993 12:07 | SERUM | PROTEIN: | 7.5 g/dL | 6.6 to 8.7 |
| 09/23/1993 12:07 | SERUM | ALBUMIN: | 4.5 g/dL | 3.4 to 4.8 |
| 09/23/1993 12:07 | SERUM | T.BILI: | .5 mg/dL | 0 to 1 |
| 09/23/1993 12:07 | SERUM | ALKPHOS: | 80 U/L | 40 to 129 |
| 09/23/1993 12:07 | SERUM | LDH: | 291 L U/L | 135 to 225 |
| 09/23/1993 12:07 | SERUM | AST: | 16 U/L | 0 to 38 |
| 09/23/1993 12:07 | SERUM | ALT: | 22 U/L | 0 to 41 |
| 09/23/1993 12:07 | URINE | APPEAR : | CLEAR | |

==============================================================================

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available) | **VISTA Electronic Medical Documentation**

PEAVEY, MORRIS
12315 NW 23RD AVENUE
MIAMI, FLORIDA  33167
264126975

Printed at MIAMI VAMC

# Progress Note

```
LOCAL TITLE: ECHO CONSULT RESPONSE
DATE OF NOTE: MAR 06, 2007@14:03     ENTRY DATE: MAR 06, 2007@14:03:45
     AUTHOR: .HASAN,TAHIRA          EXP COSIGNER:
     URGENCY:                            STATUS: COMPLETED

ECHOCARDIOGRAM REPORT
Procedure Date: 03-05-2007
Patient Name: PEAVEY, MORRIS
MRN: 264126975

Preliminary Diagnosis:
.      C & P
Procedures Performed:
.      93307-26  Echocardiogram, 2D, MM
.      93320-26  Echo Doppler
.      93325-26  Echo Color FLow
Technical Quality:

PRCEDURE AND ATTESTATION:
  Study interpretations were done in the presence of the attending physician.



2D MEASUREMENTS:
q       LA:  3.1 cm  ( .2-4.0)
q      IVSd:  1.2 cm   (.6-1.0)
q      LVEDd:  5.4 cm   (3.7-5.6)
q      LVEDs: 3.8 cm   (1.5-3.6)
q      LVPWd:  1.1 cm   (.6-1.1)
q      Aorta:  2.5 cm   (<4)

VALVULAR AND COLOR FLOW MEASUREMENTS:
Fractional Shortening:  29.63 %

OBSERVATIONS:

Ø       Left Ventricle
Normal left ventricular size.    Hyperdynamic LV systolic function, LVEF=>65%.
There are no segmental wall motion abnormalities.
 Mild concentric left ventricular hypertrophy. The pulse/tissue doppler
pattern is suggestive of impaired relaxation indicating diastolic dysfunction.

Ø       Right Ventricle
Normal right ventricular size. Normal RV systolic function.

Ø       Left Atrium
The left atrium is within normal limits.
```

| PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|
| PEAVEY, MORRIS<br>12315 NW 23RD AVENUE<br>MIAMI, FLORIDA  33167<br>264126975 | Printed at MIAMI VAMC |

# Progress Note

```
  Hem/Lymph.        :
  Allergy/Immuno    :


Physical Examination:

 Vital Signs - Most Recent in VistA
  Temp  : 98.4 F [36.9 C] (01/04/2006 14:28)

  BP    : right 227/133 (01/04/2006 14:30)
          left  235/145

  Pulse : 78 (01/04/2006 14:28)


  Resp  : 18 (01/04/2006 14:28)
  Wt    : 229.8 lb [104.5 kg] (01/04/2006 14:28)
  Ht    : 70 in [177.8 cm] (01/04/2006 14:28)
  BMI   : 33*
  Pain  : 6 (01/04/2006 14:28)

  General           :
  HEENT             :
  Cardio            :
  Resp              :
  GI                :
  GU                :
  Musc/Skel         :
  Skin              :
  Neuro             :
  Psych             :
  Endocrine         :
  Hem/Lymph         :
  Allergy/Immuno    :

Provider : KNOPKA,FELIPE
  Specimen: URINE.              UR 0803 49
                                08/03/1995 13:56
```

| Test name | Result | units | Ref. | range | Site Code |
|---|---|---|---|---|---|
| APPEARANCE | CLEAR | | | | |
| URINE COLOR | YELLOW | | | | |
| SPECIFIC GRAVITY | 1.025 | | 1.01 - 1.03 | | |
| URINE PH | 6.50 | | 5 - 7 | | |
| URINE PROTEIN | 30 H | mg/dl | NEG - POS | | |
| URINE GLUCOSE | 0 | mg/dl | NEG - POS | | |
| URINE KETONES | 0 | mg/dl | NEG - POS | | |
| URINE BILIRUBIN | 0 | mg/dl | NEG - POS | | |
| URINE BLOOD | 0 | Ery/uL | NEG - POS | | |

---

**PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)** | **VISTA Electronic Medical Documentation**

PEAVEY, MORRIS
12315 NW 23RD AVENUE
MIAMI, FLORIDA  33167          Printed at MIAMI VAMC
264126975

# Progress Note

```
Hem/Lymph      :
Allergy/Immuno :


Physical Examination:

Vital Signs - Most Recent in VistA
  Temp  : 98.4 F [36.9 C] (01/04/2006 14:28)

  BP    : right 227/133 (01/04/2006 14:30)
          left  235/145

  Pulse : 78 (01/04/2006 14:28)


  Resp  : 18 (01/04/2006 14:28)
  Wt    : 229.8 lb [104.5 kg] (01/04/2006 14:28)
  Ht    : 70 in [177.8 cm] (01/04/2006 14:28)
  BMI   : 33*
  Pain  : 6 (01/04/2006 14:28)

  General       :
  HEENT         :
  Cardio        :
  Resp          :
  GI            :
  GU            :
  Musc/Skel     :
  Skin          :
  Neuro         :
  Psych         :
  Endocrine     :
  Hem/Lymph     :
  Allergy/Immuno :

Provider : KNOPKA, FELIPE
  Specimen: URINE.          UR 0803 49
                            08/03/1995 13:56
```

| Test name | Result | units | Ref. | range | Site Code |
|---|---|---|---|---|---|
| APPEARANCE | CLEAR | | | | |
| URINE COLOR | YELLOW | | | | |
| SPECIFIC GRAVITY | 1.025 | | 1.01 - 1.03 | | |
| URINE PH | 6.50 | | 5 - 7 | | |
| URINE PROTEIN | 30 H | mg/dl | NEG - POS | | |
| URINE GLUCOSE | 0 | mg/dl | NEG - POS | | |
| URINE KETONES | 0 | mg/dl | NEG - POS | | |
| URINE BILIRUBIN | 0 | mg/dl | NEG - POS | | |
| URINE BLOOD | 0 | Ery/uL | NEG - POS | | |

---

**PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)** | **VISTA Electronic Medical Documentation**

PEAVEY, MORRIS
12315 NW 23RD AVENUE
MIAMI, FLORIDA  33167          Printed at MIAMI VAMC
264126975

# **Progress Note**

```
     ANTON GAP                        10.     MMOL/L      9  -   16



   Laboratory Results in VistA



--------  Wellness Screen ------------------------------------------

     Please assess and indicate preventative health measures.

   Cancer Screening
No Occult Blood results in last 12M


Pap Smear            :   Results/Scheduled/Date

     Cardiovascular Risk

     Diabetic Screening
--------------------------------------------------------------------

Assessment        : 60 y/o male presents with Hypertensive urgency only on
hydralazine and nitro patch.

Interviewed patient and after presenting his case and determining management
plan the patient left my office without receiving medical advice or care.

1. HTN: pt is not very cooperative. Not taking prescribed meds. Recommend
increasing hydralazine to 50 mg PO BID and restarting Felodipine 10 mg po qday.
2. Angina: continue with nitro patch. Suggest thallium stress.
3. Inguinal hernia: will consider sending consult to general surgery

Plan/Orders
 1 Meds             :
 2 Lab/X-Ray        : CBC with differential, CMP, PSA, Lipid panel,
 3 Consults         :
 4 Nursing Orders   :
 5 Return to Clinic: Pt left without care.
 6 Other            :


Patient discussed with Attending Physician
        (Name)    :

/es/ KATYA S DIMAS
PGY1 2005-2006 GENERAL MED
Signed: 01/04/2006 15:59
```

---

PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | **VISTA Electronic Medical Documentation**

PEAVEY, MORRIS
12315 NW 23RD AVENUE
MIAMI, FLORIDA  33167
264126975

Printed at MIAMI VAMC

Page ·

# Progress Note

Receipt Acknowledged By:
01/04/2006 16:23      /es/ Seymour S Feld, MD
                           Staff Provider

01/04/2006 ADDENDUM                        STATUS: COMPLETED
Patient's case reviewed and discussed with the resident immediately
following the patient's visit on  1/04/2006              . I agree with the
resident's finding, the patient's history, diagnosis, and plan of care
as documented by the resident.

This pt. apparently left Dr. Dimas' office while she was discussing his case with
me. Should he return, I would strongly recommend adjusting his meds - at least,
his hydralazine should dose should be increased and he should take the felodipine.
He also needs a thallium est in view of his hx., and possibly an ECHO, before a
Cardiology consult (which he is requesting) could even be considered.

/es/ Seymour S Feld, MD
Staff Provider
Signed: 01/04/2006 16:23

LOCAL TITLE: NURSING OUTPATIENT NOTE
DATE OF NOTE: JAN 04, 2006@14:33      ENTRY DATE: JAN 04, 2006@14:33:59
       AUTHOR: MAYCOCK,GLORIA      EXP COSIGNER:
       URGENCY:                                STATUS: COMPLETED

PAIN (0-10)      6 (01/04/2006 14:28)
TEMPERATURE -    98.4 F [36.9 C] (01/04/2006 14:28)
PULSE -          78 (01/04/2006 14:28)
RESPIRATION -    18 (01/04/2006 14:28)
BLOOD PRESSURE - 227/133 (01/04/2006 14:28)
PATIENT HEIGHT - 70 in [177.8 cm] (01/04/2006 14:28)
PATIENT WEIGHT - 229.8 lb [104.5 kg] (01/04/2006 14:28)
BMI -            33*

A 60 year old male came in today accompanied by his brother for his first
routine appointment with his Provider,he states "I am having pain in my
neck,headaches,and pain in my groin,at the moment the pain is a 6/10". B/P
(R)227/133,(L)235/145,Provider is aware.

Prostate CA Screen Education:
     Patient received oral and written information about prostate cancer
          screening this visit. Risk and benefits of prostate cancer
          screening were discussed with patient. Patient was provided an
          opportunity to ask questions and discuss information. Patient
          instructed to discuss PSA testing with provider, if he would like
          test done.

| PATIENT NAME AND ADDRESS (Mechanical imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|
| PEAVEY, MORRIS<br>12315 NW 23RD AVENUE<br>MIAMI, FLORIDA  33167<br>264326975 | Printed at MIAMI VAMC |

# Progress Note

Functional Activity Screen :
    A functional/physical activity screen was performed with the patient
        answering the following questions,
    Patient affirms that difficulty is experienced when walking on level
        ground.
    Patient affirms that difficulty is experienced when climbing stairs.
    Patient affirms that difficulty is experienced when getting out of a
        chair.
    Follow up by provider for the above positive screens.
Nutritional Screening :
    Last BMI Score: 33*
    Patient has BMI>25. Patient encouraged to attend Weight Management
        program.
    Healthy living brochure, which includes information on guidelines for
        healthy nutrition, importance of regular activity/exercise, and
        Weight Management class was given and discussed with the patient.
        Patient verbalized understanding of information.
PTSD:
    1. SCREEN FOR PTSD
      Have you ever had any experience that was so frightening, horrible,
          or upsetting that, in the past month, you:
        A.  Have had any nightmares about it or thought about it when you
            did not want to?
        (No)
        B.  Tried hard not to think about it; went out of your way to
            avoid situations that remind you of it?
        (No)
        C.  Were constantly on guard, watchful, or easily startled?
        (No)
        D.  Felt numb or detached from others, activities, or your
            surroundings?
        (No)
        The screening for PTSD was negative.
Blood Pressure Check:
    Patient blood pressure recorded.
    227/133
Depression Screening :
    The 2 question depression screen was performed and the patient's
        depression screen is negative.
Alcohol Use Screening (AUDIT-C):
    The patient states they have not consumed any alcohol in over a year.
Tobacco use Screen :
    Patient has never used tobacco in any form or has not used for at
        least the past seven years.
Hepatitis C Risk Assessment :
    Patient was assessed for the following risk factors, as listed below,
        past or present and none were found:

---

| PATIENT NAME AND ADDRESS (Mechanical imprinting, if available) | VISTA Electronic Medical Documentation |
|---|---|

PEAVEY, MORRIS
12315 NW 23RD AVENUE
MIAMI, FLORIDA  33167          Printed at MIAMI VAMC
264126975

Pag

Exceptions to DROD Dated April 22, 2008 VARO 317
TABULATIONS:

TAB-5

Documents of treatments for KUB injury after release from VA Hospital 1968

Exhibit 1)   VBA Docket #70-16-501  Dated January 21, 1971

Exhibit 2)   VA rating Board  Suppress VA Hospital  1968.

Exhibit 3)   VA 9/8/71  VA same as Exhibit 2 herein above

Exhibit 4)   VA Form 21-2545 complaint Back pain, Discharge from penis 9/25/72 and
6/22/71

Exhibit 5)   VA by Dr. Pollak  scratch through 9/25/72 replace 10/3 show  penile
discharge strain ??

Exhibit 6)   VA November 13, 1972 by Dr. Robert Levinson MD  Exam 9/25/72 Normal
BP; Normal Chest;  x-Ray; IVP ect.

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (317)

## BOARD OF VETERANS APPEALS

WASHINGTON, D.C.  20420

| | | |
|---|---|---|
| IN THE APPEAL OF | ) | FINDINGS AND DECISION |
| | ) | |
| MORRIS J. PEAVEY, JR. | ) | |
| C 23 448 613 | ) | |
| | ) | DATE JAN 2 1 1971 |
| | ) | |
| | ) | |
| | ) | DOCKET NO.   70-16 501 |
| | ) | |

### THE ISSUE

Increased ratings for hypertensive heart disease and lumbosacral strain, currently evaluated at thirty per cent (30%) and ten per cent (10%), respectively.

### CONSULTATIONS BY THE BOARD

H. L. Winder, Staff Legal Adviser

ACTIONS LEADING TO PRESENT APPELLATE STATUS

The veteran, in his substantive appeal, has indicated an intent to raise the issues of entitlement to severance pay and character abuse by the service. It is pointed out that the Veterans Administration has no jurisdiction of these matters and accordingly they will not be considered in this appeal.

CONTENTIONS

The veteran contends, in substance, that his diastolic blood pressure is consistently above 110 and that he has left ventricle hypertrophy with shortness of breath when climbing two flights of stairs. He stated he had been inactive for two years due to the heart condition which has hindered him in engaging in employment for which he has been trained. He also contends he has frequent and persistent back pain with irregular joint spaces in the spine.

THE EVIDENCE

A hospital summary discloses the veteran was hospitalized in January 1968 when he complained of chest pain and shortness of breath. Examination of the heart revealed the aortic second was greater than the pulmonic second with no murmurs. Blood pressure was 150/110 in both the lying and standing positions. During hospitalization he was treated with aldomet, intermittent furosemide and a low salt diet which resulted in the diastolic pressure receding to a lower range averaging approximately 95. He was discharged from the hospital on March 4, 1968, when the diagnosis was described as essential hypertension. Mr. Peavey was officially examined by this Administration in August 1968 when he complained of pains in the chest and low back. Clinical examination showed the heart rhythm was regular and blood pressure was 140/88 in the sitting position and 130/84 in the recumbent position. Mr. Peavey was able to forward flex to 90 degrees and right and left lateral flexion was shown as 35 degrees. Backward extension was accomplished to 25 degrees with no pain or restriction of motion. X-ray examination of the lumbar and lumbosacral spine showed no evidence of any abnormality in the bodies, processes and intervertebral spaces. The heart measurements were within normal limits. It was diagnostically concluded that hypertensive heart disease could not be found. It was also concluded the veteran had lumbar myalgia. The veteran was reexamined by this Administration in September 1969 at which time it was recorded for clinical purposes he had had hypertension since 1966 and had been treated by a private physician for occasional headaches and precordial pain upon exertion or at rest. Clinical examination of the heart revealed it was of borderline size and heart sounds were good. The pulmonic second was greater than the aortic second and a Grade II precordial systolic murmur was noted. Blood pressure

- 2 -

was 152/102 and electrocardiogram was reported as normal. Upon orthopedic examination, it was recorded for clinical purposes that the veteran had occasional pain in the right lower back which receded when lying down. Clinical examination revealed the veteran could undress easily and bend over normally at the waist to remove shoes and trousers. Range of motion of the entire spine was normal with the exception of a minimal restriction of hyperextension. Lasegue's sign was negative and the reflexes were within normal limits. A vague diffuse tenderness was noted in the lumbar area. The diagnoses were lumbar myalgia and hypertensive arteriosclerotic heart disease, Class II.

Copies of service records were received which disclosed the veteran had been assigned to limited duty during service for high blood pressure and a low back syndrome.

P. J. Hersch, M.D., reported he had treated the veteran on several occasions between June 1968 and January 1969 for occasional chest pains and stinging sensations in the upper torso. He said that blood pressure was 160/100, 140/80, and 170/105 and he diagnosed the condition as labile hypertension. A statement from A. Villanueva, M.D., disclosed the veteran had been under his care for hypertension in June and July 1969. He stated that periodic examinations would be advisable and desirable due to the veteran's disability.

Additional copies of service records concerning court-martial proceedings were received and are of record.

E. I. Bradford, M.D., reported the veteran had been under his care since November 1966 for a back ailment. He stated that Mr. Peavey should be referred to an orthopedist. Another statement from P. J. Hersch, M.D., revealed the veteran was medically unfit to perform any work other than light labor. He said the veteran had been treated for hypertension with salt restriction and aldomet. A statement from J. C. Carr, M.D., revealed he had treated the veteran for essential hypertension and that blood pressure readings were recorded as 154/108, 164/94, 170/120, and 164/116. He stated that in his opinion the veteran may perform light work but he was partially disabled and from time to time experienced some vertigo cephalgia.

## THE LAW AND REGULATIONS

Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. (38 U.S.C. 355; 38 C.F.R. Part 4) Separate diagnostic codes identify the various disabilities.

The rating schedule provides a thirty per cent (30%) evaluation where there is a definite enlargement of the heart with sustained diastolic

- 3 -

hypertension of 100 or more and moderate dyspnea on exertion.  A higher
evaluation, sixty per cent (60%), is contemplated where there is a marked
enlargement of the heart confirmed by X-ray or sustained diastolic
hypertension of 120 or more with severe dyspnea on exertion.  (Diagnostic
Code 7007)

A ten per cent (10%) evaluation is provided by the rating schedule for
lumbosacral strain with characteristic pain on motion.  The next higher
evaluation, twenty per cent (20%), contemplates muscle spasm on extreme
forward bending and loss of lateral spine motion.  (Diagnostic Code 5295)

## DISCUSSION AND EVALUATION

Although the veteran contends he has left ventricular hypertrophy with
shortness of breath and diastolic blood pressure consistently above
110, the recent examination revealed that chest X-ray showed the heart
was within normal limits and no sustained diastolic hypertension was
found.

In connection with the veteran's back disability, the recent examination
showed no significant limitation of motion of the lumbar spine, no muscle
spasm or loss of lateral spine motion and no neurologic disease.

## FINDINGS OF FACT

1.  The veteran's heart condition is manifested by a Grade II systolic
murmur.  There is no marked enlargement of the heart or sustained
diastolic hypertension of 120 or more.

2.  There is no spasm or significant limitation of motion of the back
and no neurologic disease is present.

## CONCLUSION OF LAW

The medical findings do not warrant a rating in excess of the thirty per
cent (30%) and ten per cent (10%) evaluations currently assigned for
hypertensive heart disease and lumbosacral strain.  (38 U.S.C. 355;
38 C.F.R. Part 4, Diagnostic Codes 7007, 5295)

## DECISION

Entitlement to increased ratings for hypertensive heart disease and
lumbosacral strain is not established.  The benefits sought on appeal
are denied.

KENNETH E. EATON
Associate Member

WALTER ATKINSON, M.D.
Associate Member

C. G. JAQUETTE
Associate Member

- 4 -

COPIED FROM CLASS-FOLDER DEPARTMENT OF VETERANS AFFAIRS (317)

# Memorandum

TO : AuThorizAtion fec.

FROM : RabnE Bd. 1

DATE: 6-22-71

C 23448613 -

SUBJECT:
1. Advise Vet. that. Hospital Report for his period of hospitalization AT BRLyN VAH showed he had an Acote urethral discharge and an Infection and the Renagram showed Normal Kidney function.

2. IN ABsence of evidence of a chronic Renal disFunction attributable to S/c Hypertension No further action is indicated.

Bd /

*Buy U.S. Savings Bonds Regularly on the Payroll Savings Plan*

3010-109

COPIED FROM ADAMS GOVERNMENT DEPARTMENT OF VETERANS AFFAIRS (317)

# *Memorandum*

TO    :  *Authorization Sec.*

FROM  :  *Bd.*

DATE: 9-8-71

C 2344P613

SUBJECT:

1. *Above veterans H.I. healed & blank selected offices to urethral conditions and does not serve to establish a chronic Kidney condition*

2. *No further Board action is indicated*

*Buy U.S. Savings Bonds Regularly on the Payroll Savings Plan*

5010-109

Approved Exception to SF88
Budget Bureau No. 76-R0246

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS

1. SERIAL SECURITY NO
C 234 486 13  26 272 6975

# REPORT OF MEDICAL EXAMINATION FOR DISABILITY EVALUATION

2. INSURANCE FILE NO (V H R. etc., if pertinent)

INSTRUCTIONS FOR PREPARING THIS FORM.—This report must be completely executed.  Describe the results of a general examination of every system and body part including, but not restricted to, the systems and body parts involved in the history and present complaints.  Wherever indicated, specialists' examinations, X-rays, laboratory examinations, etc., should be recommended.  If additional space is needed, comments may be continued in item 44 or on separate sheets attached to this form.

| 3. LAST NAME—FIRST NAME—MIDDLE NAME OF VETERAN (Type or print) | 4. PURPOSE OF EXAMINATION | 5. DATE OF EXAMINATION |
|---|---|---|
| Peavey  Morris  James  Jr. | Comp | 9-25-72 |

| 6. HOME ADDRESS (Street or RFD number, city, State, and ZIP Code) | 7. PLACE OF EXAMINATION | 8. AGE |
|---|---|---|
| P.O. Box  1993  Newark, New Jersey  07101 | VAOPC NWK, N.J | 27 |

## SECTION A—OCCUPATIONAL HISTORY SINCE LATEST DISCHARGE FROM MILITARY SERVICE OR LATEST VA EXAMINATION

| 9. NAME AND ADDRESS OF EMPLOYER (If unemployed enter "None".) | 10. TYPE OF WORK | 11. MONTHLY WAGES | DATES OF EMPLOYMENT | | 14. TIME LOST IN PAST 12 MONTHS |
|---|---|---|---|---|---|
| | | | 12. FROM | 13. TO | |
| None | | | | | |
| | | | | | |
| | | | | | |

14B. REASON FOR TIME LOST (If any)
Medical — Lived on Social welfare for Past 5 yrs.

## SECTION B—MEDICAL HISTORY SINCE LATEST VA EXAMINATION AS RELATED BY PERSON EXAMINED

15. NARRATIVE HISTORY (Include manner and date of origin)

Treated  1968 - 1970  by  Dr. P. Hersch  Eastern Parkway for High Blood  and  Heart Condition. - Medication daily
Treated  1968  To present  by  Brooklyn Health Clinic for penial Discharge (non social in origin)
Treated  1970 To present by Doctor Carr  High street Newark  N.J.  High Blood & Heart Condition

| 16A. NAME AND ADDRESS OF DOCTOR OR HOSPITAL | CONDITION TREATED | FROM | TO |
|---|---|---|---|
| Dr. Paul J. Hersh  1145 Eastern Pky | High Blood Heart Cond | 1968 | 1970 |
| 16B. Dr. Sheki  Tampa Florida | Kidney infection | 1970 | |
| Dr. Edmond  East Orange N.J. | Penis Discharge (non soc.) | 1971 | |
| 16C. Dr. J.C. Carr  608 High street | High Blood Heart Cond. | 1970 | Present |

17. PRESENT COMPLAINT (Symptoms only, not diagnosis)

Frequent pains in Groin and Back and discharge from penis. Poor circulation in feet and burning and stinging in feet and toes. pain in chest and shortness of breathe and headaches and dizziness.
▓▓▓ back pains, Occasional Lost of memory.

FOR RATING PURPOSES
OCT 20 1972

I HEREBY CERTIFY that the entries under Occupational and Medical History are complete and correct to the best of my knowledge.

| 18. DATE SIGNED | 19. SIGNATURE OF PERSON EXAMINED (Do not print) |
|---|---|
| 9-25-72 | X Morris Peavey Jr. |

PENALTY.—The law provides severe penalties which include fine or imprisonment, or both, for the wilful submission of any statement or evidence of a material fact, knowing it to be false, or for the fraudulent acceptance of any payment to which you are not entitled.

VA FORM
OCT. 1968  21–2545  EXISTING STOCKS OF VA FORM 21-2545, MAR. 1965, WILL BE USED

Standard Form 519
Rev. August 1954
Bureau of the
Budget Circular A-32

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS

| CLINICAL RECORD | RADIOGRAPHIC REPORTS |
|---|---|

ATTACH 3D REPORT ALONG HERE ↑ AND SUCCEEDING ONES ON ABOVE LINES

SS# 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

PATIENT'S LAST NAME—FIRST NAME—MIDDLE NAME

PEAVEY, MORRIS J. JR,

DOB 7-21-945

VE        DD 8-67

(Above space for mechanical imprinting, if used)

| REGISTER NO. | WARD NO. |
|---|---|
| 234-486-13 | C |

| AGE | SEX | (Check one) |
|---|---|---|
| 27 | M | ☐ BEDSIDE, WHEELCHAIR, OR STRETCHER  ☐ BED PATIENT  ☐ AMBULATORY |

EXAMINATION REQUESTED

PERTINENT CLINICAL HISTORY, OPERATIONS, PHYSICAL FINDINGS, AND PROVISIONAL DIAGNOSIS

FILM NO. 77695   DATE OF REQUEST 9-25-72   REQUESTED BY

RADIOGRAPHIC REPORT   10-3

**LUMBOSACRAL SPINE:**   No significant pathologic change is demonstrated in bone or joint structures.

DATE OF REPORT:   10/10/72: ems

ROBERT POLLAK, M.D.

SIGNATURE (Specify location of laboratory if not part of requesting facility)

VAOPsc Newark N.J.

(NAME OF HOSPITAL OR OTHER MEDICAL FACILITY)

Standard Form 519-A (Rev. Aug. 1954)
Promulgated by Bureau of the Budget
Circular A-32 (Rev.)
RADIOGRAPHIC REPORT
519-207

PATIENT'S IDENTIFICATION (For typed or written entries give: Name—last, first, middle, grade, date, hospital or medical facility)

| REGISTER NO. | WARD NO. |
|---|---|

RADIOGRAPHIC REPORTS

Standard Form 519
519-106

OPTIONAL FORM NO. 10
MAY 1962 EDITION
GSA FPMR (41 CFR) 101-11.6

UNITED STATES GOVERNMENT

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (317)

*Memorandum*

TO      :    Adjudication Officer

FROM    :    Robert M. Levinson, M. D.
             Staff Physician

DATE:    November 13, 1972
561(126(N)111/RML:lm
C 2344 86 13
PEAVEY, M. J. Jr.

SUBJECT:    Reconcillation of Diagnosis

1.   A complete review of the C folder shows intermittent hypertension.

2.   The chest X-rays, cardiograms and IvP, and renogram were normal.

3.   The examination of 9/25/72 shows normal blood pressures.

Diagnosis:   History and record of essential hypertension not found at
this examination.

*Robert M. Levinson, MD*

ROBERT M. LEVINSON, M. D.



*Buy U.S. Savings Bonds Regularly on the Payroll Savings Plan*

Approved Exception to SF88
Budget Bureau N° 76-R0246

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS

**REPORT OF MEDICAL EXAMINATION FOR DISABILITY EVALUATION**

1. SOCIAL SECURITY NO: c 234 486 13 | 26-4-72-6975
2. INSURANCE FILE NO (V.H.B. etc., if pertinent)

INSTRUCTIONS FOR PREPARING THIS FORM.—This report must be completely executed. Describe the results of a general examination of every system and body part including, but not restricted to, the systems and body parts involved in the history and present complaints. Wherever indicated, specialists' examinations, X-rays, laboratory examinations, etc., should be recommended. If additional space is needed, comments may be continued in item 44 or on separate sheets attached to this form.

3. LAST NAME—FIRST NAME—MIDDLE NAME OF VETERAN (Type or print): Peavey  Morris  James  Jr.
4. PURPOSE OF EXAMINATION: Comp
5. DATE OF EXAMINATION: 9-25-72
6. HOME ADDRESS (Street or RFD number, city, State, and ZIP Code): P.O. Box 1993 Newark, New Jersey 07101
7. PLACE OF EXAMINATION: VAOPC NWK, N.J.
8. AGE: 27

**SECTION A—OCCUPATIONAL HISTORY SINCE LATEST DISCHARGE FROM MILITARY SERVICE OR LATEST VA EXAMINATION**

| 9. NAME AND ADDRESS OF EMPLOYER (If unemployed enter "None".) | 10. TYPE OF WORK | 11. MONTHLY WAGES | 12. FROM | 13. TO | 14. TIME LOST IN PAST 12 MONTHS |
|---|---|---|---|---|---|
| None | | | | | |

14B. REASON FOR TIME LOST (If any): Medical — Lived on Social welfare for Past 5 yrs.

**SECTION B—MEDICAL HISTORY SINCE LATEST VA EXAMINATION AS RELATED BY PERSON EXAMINED**

15. NARRATIVE HISTORY (Include manner and date of origin):
Treated 1968 - 1970 by Dr. P. Hersch  Eastern Parkway for High Blood and Heart Condition. - Medication daily
Treated 1968 To present by Brooklyn Health Clinic for penile Discharge (non social in origin)
Treated 1970 To present by Doctor Carr  High street Newark N.J.  High Blood & Heart Condition

| 16. NAME AND ADDRESS OF DOCTOR OR HOSPITAL | CONDITION TREATED | FROM | TO |
|---|---|---|---|
| 16A. Dr. Paul J. Hersh 1145 Eastern Pky | High Blood Heart Cond | 1968 | 1970 |
| 16B. Dr. Shehi  Tampa Florida | Kidney Infection | 1970 | |
| Dr. Edmond  East orange N.J. | Penis Discharge (non soc) | 1970 | |
| 16C. Dr. J. C. Carr 608 High Street | High Blood Heart Cond | 1970 | Present |

17. PRESENT COMPLAINT (Symptoms only, not diagnosis):
Frequent pains in groin and Back and discharge from penis. Poor circulation in feet and burning and stinging in feet and toes. Pain in Chest and shortness of breathe and headaches and dizziness. ████ back pains. Occasional lost of memory.

FOR RATING PURPOSES
OCT 20 1972

I HEREBY CERTIFY that the entries under Occupational and Medical History are complete and correct to the best of my knowledge.

18. DATE SIGNED: 9-25-72
19. SIGNATURE OF PERSON EXAMINED (Sign and print): X Morris Peavey Jr.

PENALTY.—The law provides severe penalties which include fine or imprisonment, or both, for the wilful submission of any statement or evidence of a material fact, knowing it to be false, or for the fraudulent acceptance of any payment to which you are not entitled.

VA FORM
OCT. 1968  **21-2545**  EXISTING STOCKS OF VA FORM 21-2545, MAR. 1965 WILL BE USED

Exceptions to DROD  Dated April 22, 2008 VARO 317
TABULATIONS:

TAB-6

VA hospital records 1968 showing injuries and disease to KUB.

EXHIBIT  1)  Dr. Paulson hospital summary dated 3/4/68

EXHIBIT  2)   Hospital admission marked 2-pages

EXHIBIT  3) Urinalyses loaded with WBC & red blood cells

EXHIBIT  4)  Abnormal IVP

EXHIBIT  5)  Dr. Paulson questionable abnormal IVP

EXHIBIT  6) Renogram showing disparent function in Rt. Kidney

DIAGNOSES (List and number in order of clinical importance all established diagnoses which treatment was given. Place the letter "X" before the one diagnosis responsible for the major part of the patient's stay.) | ICDA CODE

**X Essential Hypertension.**

Major diagnoses noted but not treated

OPERATIONS PERFORMED AT THIS HOSPITAL DURING CURRENT ADMISSION | DATE

SUMMARY (Brief statement should include, if applicable, history, pertinent physical findings, course in hospital, treatment given, condition at discharge, date patient can resume pre-hospital activity, recommendations for follow-up treatment, medications furnished at discharge, and competency opinion.)

This 22 yr old n/m was admitted with the c.c. of chest pain off and on for 1 yr., more frequently in the past 6 mos. 2 kinds of pain were present first a sharp pain lasting 1 to 2 seconds, the second a squeezing pain lasting about 30 min present from 1-2 mos. He would get short of breath with the pain but not at other times. He was noted to be hypertensive in the Army running 170/110 on 1 discharge. On admission to this hospital he had a pulse of 74, BP 150/110 both lying and standing. Examination of the heart revealed a loud M1,A2 greater than P2, no murmurs. No peripheral edema was present. Lungs were clear. His venous pressure was 12½ cm rising to 17 cm with abdominal pressure. Circulation time with Decoline 13 seconds. The pt was treated with Aldomet and intermittant Furosemide and low salt diet and his pressure gradually turned to diastolic now being in the normal range averaging approximately 95. While in the hospital he developed urethral discharge which was treated with erythromycin. Culture of the smear proved to be negative. Culture revealed staphlococcus epidermatous. He is now discharged to hypertensive clinic on Aldomet 250 mgms qid and Furosemide 40 mgms on Mondays and Friday, and low salt diet.

APROVED FOR MEDICAL ADEQUACY: R. E. FREMONT, M.D. CHIEF, CARDIOVASCULAR SEC

| ADMISSION DATE | DISCHARGE DATE | TYPE OF DISCHARGE | INPATIENT DAYS | SIGNATURE OF PHYSICIAN |
|---|---|---|---|---|
| 1/26/68 | 3/4/68 | PHC | 38 | J. E. PAULSON, M.D. |

VA Form 10-1000 NOV 1965   EXISTING STOCK OF VA FORM 10-1000, NOV 1964, WILL BE USED.   MEDICAL INTERN   **HOSPITAL SUMMARY**

NYRO DD 3/5/68   DT 3/5/68   JOSEFA   * GPO : 1965 OF—794-217

Standard Form 506
Revised August 1954
Bureau of the Budget
Circular A-32 (Rev.)

| CLINICAL RECORD | | PHYSICAL EXAMINATION | | |
|---|---|---|---|---|

| DATE OF EXAM | HEIGHT | WEIGHT | | | TEMPERATURE | PULSE | BLOOD PRESSURE |
|---|---|---|---|---|---|---|---|
| 1/26/61 | 5'4" | AVERAGE | MAXIMUM | PRESENT 178 | 99 | 74 | 180/110 |

INSTRUCTIONS.—Describe (1) General Appearance and Mental Status; (2) Head and Neck (General); (3) Eyes; (4) Ears; (5) Nose; (6) Mouth; (7) Throat; (8) Teeth; (9) Chest (General); (10) Lungs; (11) Cardiovascular; (12) Abdomen; (13) Hernia; (14) Genitalia; (15) Rectum; (16) Prostate; (17) Back; (18) Extremities; (19) Neurological; (20) Skin; (21) Lymphatics.

1) well built, muscular, healthy looking, man in no distress. well orientated and cooperative

2) to ♂ P.E.R.L., all movements present, sclera = no jaundice or anemia, few teeth missing, fauces good color, tongue normal, Weber & Rinne hearing tests normal; no neck, submandibular or axillary nodes; no raised J.V.P.; trachea midline; thyroid not palpable;

9) muscular, symmetrical, no dyspnea, upper border liver 5th-6th space

10) Ⓡ diaphragmatic elevation by percussion; breath sounds normal no rales or ronchi

11) Pulse reg; no finger clubbing; B.P. Stand = 150/110, lying 150/110, extremities warm, peripheral pulse all present —

Heart Apex 5th I.C.S., m₁ very loud, m₁ > m₂, a₂ > p₂, no murmurs.

no sacral or ankle edema, no hepatomegaly.

Venous Pressure 12½ cm H₂O, Abd. Press rose to 17

Circ Time 13.5 sec.

(Continue on reverse side)

PATIENT'S IDENTIFICATION (For typed or written entries give: Name—last, first, middle; grade; date; hospital or medical facility)
6047A   M
1234 LINCOLN PL BKLYN NY   P HO  S M
VERA   SIS        7 21 45
SA              493 1622
ARMY RA          8 5 67  N
SC 40PCT HEART COND  82.00   NYRO
CARDIAC NEUROSIS   NO ORGANIC DIS

| REGISTER NO. | WARD NO. |
|---|---|
| VA HOSPITAL BROOKLYN NY | |
| 627 | |

PHYSICAL EXAMINATION
Standard Form 506
506-104


Standard Form 504
Rev. August 1954
Bureau of the Budget
Circular A-32

U.S. GOVERNMENT PRINTING OFFICE : 1961 O—505988

| CLINICAL RECORD | HISTORY—Part I |
|---|---|

NATURE AND DURATION OF COMPLAINTS (*Include circumstance of admission*)

Pains in Chest ō off + on for year.

22 years.

### HISTORY OF PRESENT ILLNESSES

Pains becomming more frequent in past 6 mos., began to awaken patient from sleep during past few days. Also has pain in low back.

Chest Pain = sharp pain + squeezing, duration sharp pain second or two; squeezing pain 30 min. the latter type pain began few months ago. No perspiration w. pain + no vomit, does have S.O.B. w. pain. No S.O.B. without pain. Ankle swelling once 9-10 months ago. No hemoptysis, no h. of Rheumatic fever. Treated for hypertension in army 120/90 upon discharge. (his recording 190/120 before treatment) No medication @ present; Last med for ↑ B.P. in April 67.

Hospitalizations  1) Sept '66   Pneumonia
                  2) Jan 67   Hypertension

Penile discharge 9-10 mos ago, discharge in a.m., returned 1 month ago.

(Continue on reverse side)

PATIENT'S IDENTIFICATION (*For typed or written entries give: Name—last, first, middle; grade; date; hospital or medical facility*)

PEAVEY NORRIS J JR
      6047A  M PL358   DIR 1 26 68
1234 LINCOLN PL BKLYN NY      P HO  S M
VERA  SIS          7 21 45
SA           493 1622
ARMY RA12701916   7 24 64   8 5 67  N
SC 40PCT HEART COND  82.00   NYRO
CARDIAC NEUROSIS + NO ORGANIC DIS

| REGISTER NO. | WARD NO. |
|---|---|

VA HOSPITAL
BROOKLYN NY
527

HISTORY—Part 1
Standard Form 504
504–105

(2)

| | | |
|---|---|---|
| 6047A  M PL358  DLR 1  26 68 | REGISTER OR UNIT NO. | WARD NO.  ☐ BED PATIENT |
| LINCOLN PL BKLYN NY     P HO | V.A. HOSPITAL | BROOKLYN  AMBULATORY |
| STS            7 21 45 | REQUESTED BY | DATE OF REQUEST |
| SA          493 1622 | | 527 | 1/29 |
| P412701916   7 24 64    8 5 | DATE, TIME, AND METHOD OF COLLECTION |

PATIENT'S LAST NAME—FIRST NAME—MIDDLE NAME.

| | | MICROSCOPIC; REMARKS |
|---|---|---|
| COLOR-APPEARANCE | Yellow – hazy | sec. Epith cells |
| REACTION | ACID | |
| SPECIFIC GRAVITY | 1.030 | R + M |
| ALBUMIN | NEGATIVE | |
| SUGAR | NEGATIVE | Loaded with WBC |
| ACETONE | | Some bacteria (motile) |
| BILE | | |

DATE OF REPORT: 1/27/68

SIGNATURE

NAME OF MEDICAL FACILITY

**URINALYSIS**

PEAVEY MORRIS J JR
7 21 45    P

| | AGE | SEX | (Check one) |
|---|---|---|---|
| | | | ☐ BEDSIDE, WHEELCHAIR, OR STRETCHER  ☐ BED PATIENT  ☐ AMBULATORY |

EXAMINATION REQUESTED
VAH BKLYN NY

REQUESTED BY
Condon

DATE OF REQUEST

*(Above space for mechanical imprinting, if used)*

PERTINENT CLINICAL HISTORY, OPERATIONS, PHYSICAL FINDINGS, AND PROVISIONAL DIAGNOSIS

22 year old hypertensive with hist of disease for one year

FEB 2 1968

FILM NO. 76150         76150          DATE OF REPORT 2/12/68

RADIOGRAPHIC REPORT

IVP 2/2/68: Preliminary abdominal view is essentially normal. Following
intravenous injection of the opaque media there is faint nephrographic effect
at 1 minute which is symmetrical and equal. The excretory urogram shows prompt
clearance bilaterally. There is noted a slight narrowing at the pelvo-ureteral
junction on the right side and the possibility of an aberrant vessel cannot be
excluded. There is a double pelvis and proximal ureter on the left uniting about
3 cm. below the pelvo-ureteral junction. The visualized portions of both ureters
are not dilated or otherwise abnormally changed. The urinary bladder is well outlined
with dye and is normal in appearance.
IMPRESSION: Suggest selective renal arteriography on the right to confirm or rule out
the presence of an aberrant vessel.

VAH BKLYN 9,N.Y.mg        I.KRUSZELNYCKA MD.

SIGNATURE: (Specify location of laboratory if not part of requesting facility)

Standard Form 519-A (Rev. Aug. 1954)
Promulgated by Bureau of the Budget

---

PATIENTS LAST NAME — FIRST NAME — MIDDLE NAME          REGISTER NO.        WARD NO.

PEAVEY MORRIS J JR                     10E
        6047A  M PL358  DIR 1 26 68
1274 LINCOLN PL BKLYN NY      P HO  S M
VERA  5.C              7 21 45
SA  TO T          493 1622
ARMY RA 11701916   7 24 64   8 5 67  N
SC 40

VA HOSPITAL
BROOKLYN N Y

| AGE | SEX | (Check one) |
|---|---|---|
| | | ☐ BEDSIDE, WHEELCHAIR, OR STRETCHER  ☐ BED PATIENT  ☐ AMBULATORY |

EXAMINATION REQUESTED
527

REQUESTED BY
PA & lat

DATE OF REQUEST

*(Above space for mechanical imprinting, if used)*

PERTINENT CLINICAL HISTORY, OPERATIONS, PHYSICAL FINDINGS, AND PROVISIONAL DIAGNOSIS

CARDIAC NEUROSIS F/O ORGANIC DIS

JAN 29 1968

FILM NO. 76150          DATE OF REPORT FEB 1 1968

RADIOGRAPHIC REPORT

"There is no x-ray evidence of
cardiovascular, pulmonary, pleural,
mediastinal or osseous abnormality."

VA Hospital
Brooklyn, N. Y. 11202

SIGNATURE: (Specify location of laboratory if not part of requesting facility)
Irma Kruszelnycka M D

Standard Form 519-A (Rev. Aug. 1954)
Promulgated by Bureau of the Budget
Circular A-22
RADIOGRAPHIC REPORT
519-A

(NAME OF HOSPITAL OR OTHER MEDICAL FACILITY)

# DOCTOR'S PROGRESS NOTES
### (Sign all notes)

| DATE | |
|------|---|
| 2/19 | Will get Renogram & Scan [illegible] o? also on IVP. Electrol & elupe culture shows staph [illegible] & to [illegible]. Will BX I [illegible]. Will increase allowed to 250 gid ([illegible] only 250 gm) BP 145/92 |
| 2/20 | BP 135/85 |
| 2/21 | BP 142/95 |
| 3/4/68 | Discharged today PHC to hypertensive clinic RTC 1 month |
| 3/14/68 | Hypertensive Clinic BP sitting — 130/88 asymptomatic Discharge on ff. Med: furosemide 40 mg 2X a week, Aldomet 250 mg gid |

DOCTOR'S PROGRESS NOTES
Standard Form 509
(Reverse)



Standard Form 504
Rev. August 1954
Bureau of the Budget
Circular A-32

U.S. GOVERNMENT PRINTING OFFICE : 1961 O—609888

| CLINICAL RECORD | HISTORY—Part I |
|---|---|

NATURE AND DURATION OF COMPLAINTS *(Include circumstance of admission)*

Pains in Chest ↑ off + on for year.

### HISTORY OF PRESENT ILLNESSES

22 years.

Pains becomming more frequent in past 6 mos., began to awaken patient from sleep during past few days. Also has pain in low back.

Chest Pain = sharp pain, squeezing, duration sharp pain second or two; squeezing pain 30 min. the latter type pain began few months ago. No perspiration or pain + no vomit, does have S.O.B. w pain. No S.O.B. without pain. Ankle swelling since 9-10 months ago. No hemoptysia, no hist of Rheumatic fever. Treated for hypertension in army 12% upon discharge. (His recording 190/120 before treatment) No medication @ present; Last med for ↑ B.P. in April 67.

Hospitalizations ) Sept '66 Pneumonia
2) Jan 67 Hypertension

Penile discharge 9-10 mos ago, discharge in A.m., returned 1 month ago.

*(Continue on reverse side)*

PATIENT'S IDENTIFICATION *(For typed or written entries give: Name—last, first,*
*middle; grade; date; hospital or medical facility)*

| | REGISTER NO. | WARD NO. |
|---|---|---|

PEARLY NORRIS J JR

6047A   M PL358   DIR 1 26 68
1234 LINCOLN PL BKLYN NY   P HO S M
VERA   SIS   7 21 45
SA   493 1622
ARMY   7 24 64   8 5 67   N
SC 40PCT HEART COND 82.00   NYRO
CARDIAC NEUROSIS ≠\0 ORGANIC DIS

VA HOSPITAL
BROOKLYN NY
527

HISTORY—Part I
Standard Form 504
504-105

②

## PHYSICAL EXAMINATION

Abdomen: No masse, scar, tenderness, or enlarged viscera.

Rectal deferred due to late hour

Genital profire intact

INITIAL IMPRESSION    Hypertension

SIGNATURE OF PHYSICIAN

Standard Form 513
Rev. August 1954
Bureau of the Budget
Circular A–32

| **CLINICAL RECORD** | **CONSULTATION SHEET** |

### REQUEST

| TO: *R & I Service* | FROM: (*Requesting ward, unit, or clinic*) *10 W* | DATE OF REQUEST *2-20 68* |

REASON FOR REQUEST (*Complaints and findings*)

*For renal Scan & renogram —*
*20 y/o male hypertensive*

2/20/68

PROVISIONAL DIAGNOSIS

DOCTOR'S SIGNATURE *Nielson* | APPROVED | PLACE OF CONSULTATION ☐ BEDSIDE ☐ ON CALL | ☐ EMERGENCY ☐ ROUTINE

### CONSULTATION REPORT

**February 26, 1968**

A renogram following the administration of $^{131}$I hippuran reveals evidence for normal bilateral renal function. Tmax, the secretory phase, is attained on the left in 2.5 minutes and on the right in 4.7 minutes. The usual range of normal is from 3 to 6 minutes. T/2max, the excretory phase, is attained on the left in 9.5 minutes and on the right in 12.2 minutes. The usual range of normal is from 9 to 12 minutes.

Conclusion: The above findings are interpreted as indicative of bilateral normal renal function.

A renal scan is not indicated in a hypertensive workup in the presence of a normal renogram. If there is another indication for renal scan, we will be pleased to perform the study upon submission of a consultation request.

JULIUS EISENBERG, M.D.
Asst. Chief, Radioisotope Service

*(Continued on reverse side)*

| SIGNATURE AND TITLE | DATE | IDENTIFICATION NO. | ORGANIZATION |

| PATIENT'S IDENTIFICATION (*For typed or written entries give: Name—last, first, middle; grade; date; hospital or medical facility*) | REGISTER NO. | WARD NO. |

**CONSULTATION SHEET**
Standard Form 513
513–104

PEAVEY MORRIS J JR
7 21 45        P

10 WEST
VAH BKLYN NY

(19)

Exceptions to DROD  Dated April 22, 2008 VARO 317
TABULATIONS:

## TAB-7

### VA C&P WITH FINDINGS 9/18/67-10/01/67 ALSO INCLUDING US ARMY EXTRACTS FROM DISPENSARY RECORDS

EXHIBIT  1)  VA Form 21-2545 complaint chest pains, cramps in stomach and dizziness

EXHIBIT  2)   VA rating decision 1967

EXHIBIT  3)  DA 8-275-2  show alterations duty & Permanent profiles struck through and changes to assignment limitations [hand other than originating doctor-Jackson] profile 3P from original document from NPRC.

EXHIBIT  4)  DA 8-275-2 From VA file folder illegible no Dr. Signature.  Appear to be a bad copy of exhibit -3 here.

EXHIBIT  5)  DA 8-275-2 from VA file typed with date different from 26 Sep 66 to 29 Sep 66.

EXHIBIT  6)  X-Ray and IVP order IVP impressions double upper collection system on left.
EXHIBIT  7)  Dr. Jackson Clinical report dated 1/311/67.

EXHIBIT  8)  US Army Dispensary 17 Sept 66 " Got hit by Car." Bp   160/100 and 9/19/66 bp was 185/120 both examinations on same page.

EXHIBIT  9)  US Army Dispensary 10/NOV/66 to 19/Dec/66 bp 170/90 and  154/112 readings on same page

EXHIBIT  10) US Army Dispensary 22/12/66  "Compensation Case" by Dr. H. Wise.

EXHIBIT  11) Dr. Lafallet Statement "( he laugh) because the weight was me."

EXHIBIT  12)  Dr. Wise on AWOL need for complete Cardio-Renal examination suggest a possibility of hydro-nephratic Kidney.  Also see Tab 6 here.

| ~TE.—S..gded areas to be completed by Input Activity | RATING DECISION | 3. CLAIM NUMBER C— 23 448 613 | 4. TYPE OF RATING |
|---|---|---|---|
| 1. COPIES TO: ☒ INS. ☐ MEDICAL ☐ R&E OR OE FOLDER ☐ OTHER (Specify) | 2. ADDRESS OF VETERAN (If required on copy) 295 Cozine Avenue (Apt1-H) Brooklyn, NY 11207 | 5. SEX OF VET. 1—MALE 2—FEMALE | 6. INITIALS & SURNAME OF VETERAN M. J. PEAVEY, JR. |

| 7. BRANCH OF SVC. | 8. ACTIVE DUTY DATES (Month, day year) EOD 7-24-64  RAD 8-5-67 | 9. COMBAT DISAB. 1—NONE 2—COMPENSABLE 3—NON COMPENS. 4—BOTH | 1 | 10. NO. OF S/C DISAB. (0 through 9) (9 to show 9 or more) | 11. EMPLOYABILITY 1—EMPLOYABLE OR NOT AN ISSUE 2—UNEMPLOYABLE | 1 |
|---|---|---|---|---|---|---|

| 12. DATE OF BIRTH (Month, day, year) 7-21-45 | 13. FUTURE DATE CONTROL (Mo., Reason code, yr.) 9-01-70 | 14. COMPETENCY 1—COMPETENT OR NOT AN ISSUE 2—INCOMPETENT | 15. DATE OF DEATH | 16. DATE OF LAST EXAMINATION 9-18-67 | 17. DATE THIS RATING 11-20-67 |
|---|---|---|---|---|---|

18. NARRATIVE Int. rat. est. SC for hypertension heart disease and lumbosacral strain.

J.        Original claim (filed at separation)

I.        SC for heart condition and back condition

F.        Exam at induction was non-contributory.  BP reading at induction was recorded as 130/80.

SR's show a history of veteran having been hit as a pedestrian, by an automobile, from behind during September 1966.  Veteran complained of backaches continuously from September 1966 until discharge from service.  Orthopedic exam was negative during service.

On 9-17-66, BP reading of 170/90 was recorded and on 9-27-66 BP reading of 160/100 was noted.  On 1-25-67, veteran was evaluated for elevated BP and BP readings of 148/98 and 138/96 were recorded and impression diagnosis was: Hypertensive vascular disease.  Notation was also made of veteran's low back persisting.  On 1-31-67, Cardiology Consultation re-affirmed diagnosis of essential hypertension, labile.

Separation exam revealed diagnosis of high blood pressure and BP reading of 140/110 was recorded.  No evidence of back condition at time of discharge from service.

Separation exam disclosed complaint by veteran of pain in chest and occasional cramps in stomach.  He also complained of sharp pains in spine and headaches with occasional dizziness and throbbing in chest and under arm.  X-ray of chest showed that the heart is of normal size, position and contour.  BP readings were recorded of 170/110, 200/140 and 200/120.  EKG revealed flat T-waves in AVL.  Diagnosis established of: Hypertensive cardiovascular disease.  Cited VA Orthopedic exam shows range of motion of the spine is free, full, unrestricted and pulls in all directions except in forward flexion.  The extreme of forward flexion produces pain and recovery to the direct is somewhat irregular.  There is some mild spasm of the paravertebral musculature in the lumbar area.  There is some pain and tenderness

| E.—Shaded areas to be completed by Input Activity | **RATING DECISION** | 3. CLAIM NUMBER 23 448 613 C- | 4. TYPE OF RATING |
|---|---|---|---|
| 1. COPIES TO: ☐ INS. ☐ MEDICAL ☐ R&E OR OR FOLDER ☐ OTHER (Specify) | 2. ADDRESS OF VETERAN (If required on copy) | 5. SEX OF VET. 1—MALE 2—FEMALE | 6. INITIALS & SURNAME OF VETERAN M. J. PEAVEY, JR. |

| 7. BRANCH OF SVC. | 8. ACTIVE DUTY DATES (Month, day year) EOD / RAD | 9. COMBAT DISAB. 1—NONE 2—COMPENSABLE 3—NON COMPENS. 4—BOTH | 10. NO. OF S/C DISAB. (0 through 9) (9 is show 9 or more) | 11. EMPLOYABILITY 1—EMPLOYABLE OR NOT AN ISSUE 2—UNEMPLOYABLE |
|---|---|---|---|---|

| 12. DATE OF BIRTH (Month, day, year) | 13. FUTURE DATE CONTROL (Mo., Reason code, yr.) | 14. COMPETENCY 1—COMPETENT OR NOT AN ISSUE 2—INCOMPETENT | 15. DATE OF DEATH | 16. DATE OF LAST EXAMINATION | 17. DATE THIS RATING |
|---|---|---|---|---|---|

**18. NARRATIVE**

-2-

elicited on hard percussion over the spinous processes of the lumbar vertebrae. X-ray of lumbosacral spine reveals that size, shape, outline and structure of the vertebrae and sacrum are normal. The intervertebral spaces are of usual width. Diagnosis: Lumbosacral strain, mild.

In view of the extensive treatment for back condition and complaint of back pain since alleged injury during September 1966, and in view of lumbosacral strain diagnosed at time of VA exam, conducted approximately one and one-half months after discharge from service, SC for back condition is conceded.

|  | 1. SC 38 USC 331 (INC PTE) |
|---|---|
| 7007 | 30% from 8-6-67 |
|  | 1. SC 38 USC 310 (INC VE) |
|  | 30% from 10-1-67 |
|  | HYPERTENSIVE HEART DISEASE |
| 5295 | 10% from 8-6-67 (INC PTE) |
|  | 10% from 10-1-67 (INC VE) |
|  | LUMBOSACRAL STRAIN |
|  | 3. Not Entitled 38 USC 336 |
| COMB: | 40% from 8-6-67 (PTE) |
|  | 40% from 10-1-67 (VE) |

| 19. OVER SIX | 20. SPECIAL MONTHLY COMPENSATION | | | | 21. SPECIAL PROVISION CODE | | |
|---|---|---|---|---|---|---|---|
|  | A. PARA. CODE | B. LOSS USE | C. ANAT. LOSS | D. OTHER LOSS | 1—PAR. 29 2—PAR. 30 | 3—VAR 1321 4—VAR 1322 | 5—ANAL RATING 6—OTHER OR COMB. |

22. CLAIMANT REPRESENTED BY: ☐ AL ☐ VFW ☐ DAV ☐ ARC ☐ AMVETS ☐ OTHER (Specify)

23. RATING BOARD NO. C&P BD — 24. STATION NO. 306

| 25. RATING SPECIALIST (Medical) P J CARRANO M D | 26. RATING SPECIALIST (Legal) A NATALE | 27. RATING SPECIALIST (Occupational) I Y BENREY | AN: ca562a |
|---|---|---|---|

NOTE - SHADED AREAS TO BE COMPLETED BY INPUT ACTIVITY

| 1. COPY TO | | | RATING DECISION | 2. FILE NUMBER |
|---|---|---|---|---|
| ☐ INS. ☐ MED | ☐ OE FOLDER ☐ R&E FOLDER | ☐ OTHER (Specify) | | 23 448 613 |

| 3. TRANS. CODE | 4. DATE OF ISSUE | 5. LAST EXAMINATION | 6. DATE OF DEATH | 7. INITIALS AND SURNAME OF VETERAN |
|---|---|---|---|---|
| 15 | | HR: 1-26-68 to 3-4-68 | | M.J. PEAVEY |

| 8. TYPE OF RATING | 9. SEX | 10. BRANCH | 11. ACTIVE DUTY (Mo., day, yr.) | 12. ADDTL. SVC. | 13. DATE OF BIRTH (Mo., day, yr.) | 14. COMBAT | 15. EMPLOYABILITY |
|---|---|---|---|---|---|---|---|
| 4 | ☐ MALE ☐ FEMALE | RAD | EOD | 1.WT. 2.PTE 3.SCD | | 1. NONE 2. COMP 3. NON COMP 4. BOTH | 1. EMPLOYABLE OR NOT AN ISSUE  2. UNEMPLOYABLE |

| 16. COMPETENT ☐ NOT AN ISSUE ☐ INCOMPETENT | 17. NO. OF S/C DISAB. (0 through 9) (9 is there is 10 or more) | | 18. FUTURE DATE CONTROLS | | | | 19. DATE OF THIS RATING |
|---|---|---|---|---|---|---|---|
| | 1 | 2 | PHYSICAL EXAM. | | OTHER CONTROL | | 8-8-68 |

| | | | PHYSICAL EXAM. | | | OTHER CONTROL | | |
|---|---|---|---|---|---|---|---|---|
| | | | MO. | YR. | REASON | | ACT. NO. | YR. REASON |
| | | | 3 | 71 | 01 | 1. ESTABLISH 2. CANCEL | | |

20. NARRATIVE

J.

I.

F.

D.

7007

Hospital Report

Evaluation of hypertensive heart disease and Individual Unemployability

Cited hospital report shows that the veteran was admitted with chief complaint of chestpain of one year's intermittent duration and more frequently over the past six months with shortness of breath when the pain struck. His BP was 150/110, both standing and lying down. His heart showed a loud M-1, A-2 and greater P-2. After medication, his diastolic pressure was reduced to 95. The diagnosis was essential hypertension. The veteran was discharged to Hypertension Clinic for further follow-up. Forms 7132 dated 3-5-68 showed a period of convalescence was not indicated.

Increase in pre-hospitalization evaluation for hypertensive heart disease is not indicated. The hospital diagnosis of essential hypertension is another discription for the veteran's SC'd hypertensive heart disease.

1. SC 38ᴜ USC 310   (INC VE)
30% from 10-1-67
100% from 1-26-68  (Par. 29, 1945S)
30% from 4-1-68
HYPERTENSIVE HEART DISEASE

NOTE. SHADED AREAS TO BE COMPLETED BY INPUT ACTIVITY

| COPY TO | RATING DECISION | 2. FILE NUMBER |
|---|---|---|
| ☑ INS.  ☐ OE FOLDER  ☐ OTHER (Specify) <br> ☐ MED  ☐ R&E FOLDER | | C 23 448 613 |

| 3. TRANS. CODE | 4. DATE OF ISSUE | 5. LAST EXAMINATION | 6. DATE OF DEATH | 7. INITIALS AND SURNAME OF VETERAN |
|---|---|---|---|---|
| | | | | M. J. PEAVEY |

| 8. TYPE OF RATING | 9. SEX | 10. BRANCH | 11. ACTIVE DUTY (Mo., day, yr.) | | 12. ADDTL. SVC. | 13. DATE OF BIRTH (Mo., day, yr.) | 14. COMBAT | 15. EMPLOYABILITY |
|---|---|---|---|---|---|---|---|---|
| | ☐ MALE ☐ FEMALE | | EOD | RAD | 1.WT 2.PTE 3.SCD | | 1. NONE 2. COMP 3. NON COMP 4. BOTH | 1. EMPLOYABLE OR NOT AN ISSUE 2. UNEMPLOYABLE |

| 16. COMBINED EVAL | 17. NR. OF S/C DISAB. | 18. FUTURE DATE CONTROLS | | | | | | 19. DATE OF THIS RATING |
|---|---|---|---|---|---|---|---|---|
| | | PHYSICAL EXAM. | | OTHER CONTROL | | | | 8-8-68 |
| | | MO. | YR. | REASON 01 | 1. ESTABLISH 2. CANCEL | ACT. NO. | YR. REASON | |

**20. NARRATIVE**

-2-

| 5295 | 10% from 8-6-67 (INC PTE) |
|---|---|
| | 10% from 10-1-67 (INC VE) |
| | LUMBOSACRAL STRAIN |

| COMB: | 40% from 10-1-67 |
|---|---|
| | 100% from 1-26-68 (Par. 29, 1945S) |
| | 40% from 4-1-68 |

VERIFIED
AUG 1 4 1968
E SWEAT

| 21. SPECIAL PROVISION CODE | | 22. SPECIAL MONTHLY COMPENSATION | | | | 23. OVER SIX |
|---|---|---|---|---|---|---|
| PAR. 29    3-VAR 1321    5-ANAL. RATING <br> PAR. 30    4-VAR 1322    6-OTHER OR CCMB. | | A. SMC PAR CODE | B. LOSS OF USE | C. ANAT. LOSS | D. OTHER LOSS | |

| 24. CLAIMANT REPRESENTED BY: | 25. RATING BOARD NO. | 26. R.O. NO. |
|---|---|---|
| ☐ AL  ☐ VFW  ☐ DAV  ☐ ARC  ☐ AMVETS  ☑ OTHER (Specify) | BD "B" | 306 |

| 27. RATING SPECIALIST (Medical) | 28. RATING SPECIALIST (Legal-Occupational) | 29. RATING SPECIALIST (Legal-Occupational) |
|---|---|---|
| P. A. ORLANDO, M.D. CHM. ☐ | S. SALPETER CHM. ☐ | A. SYEKREK CHM. ☐ |

VA FORM 21-6706    SUPERSEDES VA FORM 21-6706, FEB 1965

*NOTE - SHADED AREAS TO BE COMPLETED BY INPUT ACTIVITY*

| 1. COPY TO | | | **RATING DECISION** | 2. FILE NUMBER |
|---|---|---|---|---|
| ☐ INS. | ☐ OE FOLDER | ☐ OTHER (Specify) | | C 2344 86 13 |
| ☐ MED | ☐ R&E FOLDER | | | |

| 3. TRANS. CODE | 4. DATE OF ISSUE | 5. DATE OF LAST EXAMINATION | 6. DATE OF DEATH | 7. INITIALS AND SURNAME OF VETERAN |
|---|---|---|---|---|
| | | 09-25-72 | | M. J. PEAVEY |

| 8. TYPE OF RATING | 9. SEX | 10. BRANCH | 11. ACTIVE DUTY (Mo., day, yr.) | | 12. ADDTL. SVC. | 13. DATE OF BIRTH (Mo., day, yr.) | 14. COMBAT | 15. EMPLOYABILITY |
|---|---|---|---|---|---|---|---|---|
| | ☐ MALE | | EOD | RAD | 1.WT. | | 1. NONE | 1. EMPLOYABLE OR NOT AN ISSUE |
| | ☐ FEMALE | | 07-24-64 | 08-05-67 | 2.PTE 3.SCD | | 2. COMP 3. NON COMP 4. BOTH  1 | 2. UNEMPLOYABLE  1 |

| 16. COMPETENCY | 17. NO. OF S/C DISAB. (0 through 9) (10 through 8) (or more) | 18. FUTURE DATE CONTROLS | | | | | | | 19. DATE OF THIS RATING |
|---|---|---|---|---|---|---|---|---|---|
| 1. COMPETENT OR NOT AN ISSUE | | PHYSICAL EXAM. | | | OTHER CONTROL | | | | |
| 2. INCOMPETENT | | MO. | YR. | REASON | 1. ESTABLISH 2. CANCEL | ACT. | MO. | YR. | REASON | 12-01-72 |
| | | 09 | 74 | 01 | | | | | | |

**20. NARRATIVE**

VAR 1105E

J.       Scheduled examination

I.       Disability evaluation hypertensive heart disease, lumbosacral
         strain.

F.       The veteran is in receipt of a 30% evaluation for the heart
         disease, 10% for the back disability.

         The report of current examination discloses blood pressure
         readings 140/70, 136/70. EKG disclosed no abnormality. Chest
         x-ray was normal. Diagnoses history of hypertensive heart
         disease, asymptomatic at present.

         Examination of the back disclosed chronic recurrent lumbo-
         sacral strain on history. There was normal range of motion,
         no evidence of atrophy.

         Since the evidence disclosed hypertensive heart disease a
         request was made for reconciliation of diagnosis. Memo of
         11-13-72 by the Staff Physician discloses that a complete
         review of the C folder disclosed intermittent hypertension.
         The chest x-rays, cardiogram and IVP, and renogram were normal.
         The examination of 9-25-72 disclosed normal blood pressure.
         Diagnosis history and record of essential hypertension not
         found on this examination.

D.       Since the report of current examination discloses no evidence
         of pathology , reduction is made in accordance with cited
         regulation.

         By reason of the recurrent nature of the back disability,
         the present compensable evaluation is continued with reexamination
         scheduled as above.

| RATING DECISION CONTINUATION SHEET | NAME OF VETERAN  M. J. PEAVEY | CLAIM NUMBER  C 2344 86 13 |
|---|---|---|

PAGE 2   OF RATING DATED: 12-01-72

1.  SC 38 USC 310 (INC VE)
30% From 04-01-68

7101                 0% From 03-01-73
HYPERTENSIVE HEART DISEASE, NOW NOT FOUND

5295-5294          10% From 10-01-67   (CONTINUED)
LUMBOSACRAL STRAIN

COMB.              40% From 04-01-68
10% From 03-01-73

| 21. SPECIAL PROVISION CODE | | 22. SPECIAL MONTHLY COMPENSATION | | | | 23. OVER EX |
|---|---|---|---|---|---|---|
| 1 - PAR. 29   3 - VAR 1321   5 - ANAL. RATING | | A. SMC PAR CODE | B. LOSS OF USE | C. ANAT. LOSS | D. OTHER LOSS | |
| 2 - PAR. 30   4 - VAR 1322   6 - OTHER OR COMB.   7 - PAR. 29   5 | | | | | | |
| 24. CLAIMANT REPRESENTED BY: | | | 25. RATING BOARD NO.  1 | | | 26. R.O. NO.  309 |
| A   VFW   DAV   ARC   AMVETS   OTHER (Specify) | | | | | | |
| 27. RATING SPECIALIST (Medical)  A. J. LEVENS, M.D.   CHM. | 28. RATING SPECIALIST (Legal-Occupational)  HIGGINS   ph   CHM. | | 29. RATING SPECIALIST (Legal-Occupational)  H. CLARKE   CHM. | | | |

VA FORM  21-6796b
DEC. 1970

EXISTING STOCKS OF VA FORM 21-6796b,
MAY 1968, WILL BE USED.

TYPE OF TRAINING

- [ ] SCHOOL ONLY
- [ ] CORRESPONDENCE ONLY
- [ ] SCHOOL AND ON-THE-JOB (Majority school)
- [ ] ON-THE-JOB ONLY
- [ ] ON-THE-JOB AND SCHOOL (Majority on-the-job)
- [ ] SCHOOL AND CORRESPONDENCE
- [ ] ON-THE-JOB AND CORRESPONDENCE
- [ ] INSTITUTIONAL ON-FARM (Self-proprietorship)
- [x] INSTITUTIONAL ON (Employer-trainer)
- [ ] INDEPENDENT INSTRUCTOR
- [ ] SHELTERED WORKSHOP
- [ ] SPECIAL RESTORATIVE
- [ ] TRAINING IN THE HOME
- [ ] SPECIAL SERVICE (Tutorial, reader, or other)
- [ ] OTHER (Specify)

| 19. EXPECTED DATE OF REHABILITATION | 20. TRAINING TIME (Complete only for school type of training) | 21. SRP CASE |
|---|---|---|
| | [ ] FULL TIME   [ ] 3/4   [ ] 1/2 | [ ] SRP   [x] NOT SRP |

22. CHANGE OF STATUS EFFECTED FOR WHICH THIS CERTIFICATION ISSUED (Check appropriate block or blocks)

- [ ] TRAINING DECLINED
- [x] TRAINING INTERRUPTED
- [ ] REHABILITATED
- [ ] CHANGE IN PLACE OF TRAINING
- [ ] INDUCTED INTO TRAINING
- [ ] DISCONTINUED
- [ ] FOR RECORD PURPOSES
- [ ] OTHER (Specify)
- [x] REENTERED TRAINING
- [ ] MEDICAL REASONS
- [ ] CHANGE OF EMPLOYMENT OBJECTIVE

| 23. EFFECTIVE DATE(S) OF CHANGE OF STATUS | 24. ENDING DATE OF AWARD (Last pay date) |
|---|---|

25. REASON AND AUTHORITY FOR CHANGE OF STATUS (Enter the basis for the change of status including the facts and circumstances involved and cite the specific subparagraph(s) of VA Regulations under which the change of status is being effected.)

1. Reentrance 10287(A)
2. Disabled Status: 70%
3. Marital Status: Veteran two (2) Children

SPECIAL PAYMENT

| 26. WAGE SCHEDULE | A. TYPE OF TRAINING  [ ] APPRENTICE  [ ] OTHER | | |
|---|---|---|---|
| B. PERIOD | C. RATE (If less than monthly) | | D. MONTHLY |
| | HOURLY | WEEKLY | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| E. BEGINNING WAGE OF TRAINED WORKER | | | |
| F. NO. OF HOURS IN STANDARD WORK WEEK | G. OVERTIME RATE | | |

THIS IS TO CERTIFY that the information given above is correct and that all applicable VA instructions governing vocational rehabilitation under Chapter 31 have been complied with.

| DATE | SIGNATURE AND TITLE OF RESPONSIBLE PERSON |
|---|---|
| 29 Sep 75 | Burke   VRS |

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (3 77) ~~DATE~~ 24 Oct 66
(AR 40-501)

| TO: | FROM: |
|---|---|
| Commanding Officer<br>C Company 2/504<br>82d Airborne Division<br>Fort Bragg, North Carolina 28307 | Brigade Surgeon<br>North Dispensary<br>82d Airborne Division<br>Fort Bragg, North Carolina 28307 |

LAST NAME - FIRST NAME - MIDDLE INITIAL, GRADE, SERVICE NO.
AND ORGANIZATION

PEAVEY, Morris J. Jr
RA 12 701 916
E-4
C Company
2/504
82d Airborne Division
Fort Bragg, North Carolina 28307

**INSTRUCTIONS**

Complete Section D of this form in lieu of DA Form 8-118,
whenever a medical board is held for the sole purpose of
permanently revising the physical profile to or from a nu-
merical designator "3".

PREPARE COPIES AS INDICATED BELOW:
Unit Commander - 1 copy when Item 1 or 2 is checked
Appropriate Commander or HQ - 1 copy when Item 3 is
checked.
Health Record Jacket, (DD Form 722) - 1 copy
Clinical Record - 1 copy when appropriate

### SECTION A - DUTY STATUS (Check Applicable Item(s))

| | | |
|---|---|---|
| 1 | X | INDIVIDUAL IS RETURNED TO YOUR UNIT FOR DUTY (AR 40-3, AR 635-40 series) |
| 2 | | INDIVIDUAL IS RETURNED TO YOUR UNIT FOR SEPARATION PROCESSING (AR 40-3, AR 635-40 series) |
| 3 | | INDIVIDUAL ~~IS/IS~~ (IS NOT) MEDICALLY QUALIFIED FOR Parachute Jumping |
| | | AS EVIDENCED BY A MEDICAL EXAMINATION AND A REVIEW OF HIS HEALTH RECORD THIS DATE |

### SECTION B - PHYSICAL PROFILE
(Complete all items. When applicable "R" or "T" will be entered with numerical designator under appropriate factor)

| | | P | U | L | H | E | S | |
|---|---|---|---|---|---|---|---|---|
| 4 | PREVIOUS | 1 | 1 | 1 | 1 | 1 | 1 | PREVIOUS |
| 5 | PRESENT | 3P | 1 | 1 | 1 | 1 | 1 | PRESENT |

6 INDIVIDUAL HAS THE DEFECT(S) LISTED BELOW. (All defects requiring a 3 or 4 in any PULHES factor will be reported in non-technical language)

Low Back Syndrome

☐ Continued under remarks

### SECTION C - ASSIGNMENT RESTRICTIONS, OR GEOGRAPHICAL, OR CLIMATIC AREA LIMITATIONS (Check Applicable Item(s))

| | | |
|---|---|---|
| 7 | | INDIVIDUAL REQUIRES NO MAJOR ASSIGNMENT, GEOGRAPHICAL, OR CLIMATIC AREA LIMITATIONS |
| 8 | X | MAJOR ASSIGNMENT, GEOGRAPHICAL, OR CLIMATIC AREA LIMITATIONS ARE ESTABLISHED BELOW (AR 40-3, AR 40-501, AR 635-40 series. Describe specific assignment limitations or restrictions as outlined in Chapter 9, AR 40-501.) |

No parachute Jumping
Code: D
Code: U

☐ Continued under remarks

| | | |
|---|---|---|
| 9 | X | THE ABOVE CONDITIONS ARE PERMANENT |
| 10 | | THE ABOVE CONDITIONS ARE TEMPORARY. INDIVIDUAL IS TO REPORT TO A MEDICAL FACILITY ON (Date)<br>FOR FURTHER PHYSICAL PROFILE EVALUATION OR MEDICAL TREATMENT AND DISPOSITION (AR 40-3, AR 40-501) |
| 11 | | SEPARATION OR RETIREMENT OF THIS INDIVIDUAL WILL NOT BE EFFECTED WITHOUT PRIOR MEDICAL EVALUATION (AR 40-3, AR 40-501, AR 616-41) |
| 12 | | THIS SUPERSEDES PREVIOUS MEDICAL CONDITION - PHYSICAL PROFILE RECORDS |

13. TYPED NAME & GRADE OF AUTHORIZED OFFICER AT MEDICAL FACILITY | SIGNATURE

HENRY A WISE II, CPT, MC

**DA** FORM 1 MAY 65 **8-274**  REPLACES EDITION OF 1 FEB 62. EXISTING SUPPLIES OF WHICH WILL
BE ISSUED AND USED UNTIL 1 MAY 66 UNLESS SOONER EXHAUSTED

*Please Return.*

Standard Form 600
Nov. 1952
Bureau of the Budget
Circular 600-107

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (317)

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |
| MAR 3 0 1967 EMERGENCY OPC W-1 | 1905 back pain from old inj. No L of M Report to dispensary in A M - Roban |
| apr 4 1967 | Out Surgeons office Pt. brought in in irons for examination following Aggressive behaviour. Exam including mental status WNL Extremely hostile Imp: Aggressive reaction Disp. Should be handled administratively William I Ferabow Capt MC |

| SEX | RACE | GRADE, RATING, OR POSITION | ORGANIZATION UNIT | COMPONENT OR BRANCH | SERVICE, DEPT. OR AGENCY |
|---|---|---|---|---|---|
| | | | | | |

| PATIENT'S LAST NAME—FIRST NAME—MIDDLE NAME | DATE OF BIRTH (DAY-MONTH-YEAR) | IDENTIFICATION NO. |
|---|---|---|
| Peavy | | |

CHRONOLOGICAL RECORD OF MEDICAL CARE
— Standard Form 600

EXH–21

| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |
|---|---|
| Central Disp. | Got hot by car this morning & now |
| 17 Sept. 66 | complains of Back & Side Pains. |
| | THERE ARE NO EXTERNAL SIGNS. |
| | CAN bend over, no limitation |
| | of motion in lumbar area |
| BP 170/90 | ① HEAt — Methyl salicylate |
| | ② ROBAXIN — APC |
| | Perryo |
| | ← instructed to come |
| | back — MONday. |
| North Dispensary Ft. Bragg, N. C. SEP 1 9 1966 | Same as above. |
| | BP 160/100 |
| | ① PHenobarbitol 30mg qid |
| | ② HEAt |
| | ③ PARAFON - FORte |
| | ③ RETurn tomorrow |
| | Perrys |
| North Dispensary Ft. Bragg, N. C. SEP 2 0 1966 | Told to return Today. |
| | BP — rt. arm sitting — 175/110 |
| | BP — lt. arm standing — 185/120 |
| | There is a Gr I/VI systolic murmur heard |
| | best at 2nd IS RSB. Also heard at |
| | apex. ALSO, this is reflected up into |
| | carotid arteries loudly. |
| | DISP: To Dr. Jackson |
| | Wise |

| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |
|------|--------|
| | after *illegible* appt. |
| | *signature* H.R. Wise CAPT |
| 10 NOV ND | BP 170/100 complains of back pain *illegible* RTC Monday N. Perez captmc |
| 19 Dec 66 | Pt complains of back pain. He has already been placed on a permanent profile as a result of this. BP is profiles + 1099 have all been sent forward. BP: 154/112 (sitting) Maybe it's time for an aortogram??? |
| 21 Dec North Dispensary Ft. Bragg, N.C. | Pt *illegible* evaluated by Med officer. Dr. Jackson consulted + will see this pt. again after Christmas. In the meantime he is to go on aldomet 250 mg qid and 500mg *illegible* hs. Probolate for back *signature* H.A. Wise |

COPIED FROM CLAIMS FOLDER, DEPARTMENT OF VETERANS AFFAIRS (317)

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (317)

Standard Form 600
Nov. 1952
Bureau of the Budget
Circular A-32
600

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |

22 Dec 66 — Compensation case
Back problem. To orthopedic
clinic on emergency basis this
AM.
Henry H. Wise II

DEC 23 1966    Compensation case
                Womack Army

Hit as pedestrian from behind
on 17 Sept 66. Hurt back, but did not
seem bad & no abnormal finding
tho high b.p. In hosp & out but
back was major complaint —
CC: Twisting excessively or sitting
over 1½ hours → pains & headaches.
Can not do his job & is taking a
lot of abuse in the unit because of
it. Because he is having so much
trouble he has got to have something
done about it.
Examination: As with all indicated
in chart. Entirely & unequivocally
normal, incuding the stress of
lifting 185# with the back flexed
(he laughed) because the weight was
me).

| SEX | RACE | GRADE, RATING OR POSITION | ORGANIZATION UNIT | COMPONENT OR BRANCH | SERVICE, DEPT. OR AGENCY |
|---|---|---|---|---|---|

| PATIENT'S LAST NAME—FIRST NAME—MIDDLE NAME | | DATE OF BIRTH (DAY-MONTH-YEAR) | IDENTIFICATION NO. |
|---|---|---|---|

CHRONOLOGICAL RECORD OF MEDICAL CARE
Standard Form 600

| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |
|------|------|

He was evaluated by Dr. LaFollette and more use of back was recommended. However, in the meantime he was put on KP. He refused to pull KP and was given an article 15 for failure to obey a lawful order. He refused this & requested a ___ ___ ___. Paperwork was in process for this.

The pt. continued to be greatly bothered by the pains in his back. As he felt that nothing was being accomplished for him here, he went AWOL to return to a local MD in NYC. Luckily, he was persuaded to return before he spent too much time away.

He was seen by me yesterday and again complained of sx of hypertension. BP was 150/80. This is to be evaluated next week by Dr. Jackson.

Today he returns with his back pains. Whether these be more supratentorial than organic, I just cannot answer. Having seen this man MANY times, I

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (317)
GOVERNMENT PRINTING OFFICE

Standard Form 600
Nov. 1952
Bureau of the Budget
Circular No. 165

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (317)

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (*Sign each entry*) |

just don't know. He stated back in October, his pain is real.

Thus, again Feavey is sent to the orthopaedic specialists for another evaluation. This becomes of much more importance than the evaluation on 23 Dec 66 for I feel sure that this man will shortly end up in front of a special courts we shall. Medical testimony will undoubtedly play a large role in that courts we shall.

Furthermore this man must be fully evaluated cardio-renal wise. Perhaps this back pain is in truth a hydronephrotic kidney or an aneurysm or who knows what. Today the orthopaedic evaluation, next week the cardio-renal.

                                                          H Wise
                                                            MC

                                                    3 FEB 67 APT

| SEX | RACE | GRADE, RATING, OR POSITION | ORGANIZATION UNIT | COMPONENT OR BRANCH | SERVICE, DEPT. OR AGENCY |
|---|---|---|---|---|---|
| PATIENT'S LAST NAME—FIRST NAME—MIDDLE NAME | | | | DATE OF BIRTH (DAY-MONTH-YEAR) | IDENTIFICATION NO. |

CHRONOLOGICAL RECORD OF MEDICAL CARE
Standard Form 600

EXH-17

Standard Form 600
Nov. 1952
Bureau of the Budget
Circular ...
COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (317)

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |

just don't know. He stated back in October, his pain is real.

Thus, again Peavey is sent to the orthopaedic specialist for another evaluation. This becomes of much more importance than the evaluation on 23 Dec 66 for I feel sure that this man will shortly end up in front of a special courts martial. Medical testimony will undoubtedly play a large role in that courts martial.

Furthermore this man must be fully evaluated cardio-renal wise. Perhaps this back pain is in truth a hydronephrotic kidney or aneurysm or who knows what. Today the orthopaedic evaluation, next week the cardio-renal.

_____ Wise
MC

| SEX | RACE | GRADE, RATING, OR POSITION | ORGANIZATION UNIT | COMPONENT OR BRANCH | SERVICE, DEPT. OR AGENCY |
|---|---|---|---|---|---|
| | | | | | |

| PATIENT'S LAST NAME—FIRST NAME—MIDDLE NAME | DATE OF BIRTH (DAY-MONTH-YEAR) | IDENTIFICATION NO. |
|---|---|---|
| | | |

EXH–17

Standard Form 600
Nov. 1952
Bureau of the Budget
Circular A-707

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (317)

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |

**MAR 3 0 1967**
EMERGENCY
DEC 'N

1905

back pain from old inj.

No L of M

Report to dispensary in A M -

Rday~

**Apr 4 1967**

Out Surgeons office

Pt. brought in in irons
for examination following
aggressive behaviour.

Exam including
mental status WNL. Extremely
hostile.

Imp: Aggressive
reaction

Disp: Should be
handled Administratively.

William I Farabow
Capt MC

| SEX | RACE | GRADE, RATING, OR POSITION | ORGANIZATION UNIT | COMPONENT OR BRANCH | SERVICE, DEPT. OR AGENCY |
|---|---|---|---|---|---|

PATIENT'S LAST NAME—FIRST NAME—MIDDLE NAME | DATE OF BIRTH (DAY-MONTH-YEAR) | IDENTIFICATION NO.

Perry

CHRONOLOGICAL RECORD OF MEDICAL CARE
- Standard Form 600

EXH–21

| PERSONNEL ACTION | DATE |
|---|---|
| *(AR 340-15)* | **20 Dec 66** |

| REFERENCE OR OFFICE SYMBOL | SUBJECT |
|---|---|
| AJDAG-FM | Termination of Airborne Status |

| TO: | FROM: |
|---|---|
| Commanding Officer<br>**2nd Bn, 504th Inf**<br>Fort Bragg, North Carolina | Commanding General<br>82d Airborne Division<br>Fort Bragg, North Carolina |

| NO. | PROCESSING ACTIONS |
|---|---|

1

1.  The application for termination of airborne status due to ___ Deliberate Termination, **XX** Physical Disqualification, pertaining to **SP4 E4**

                                                                         (GRADE)

**PEAVEY, Norris J Jr**      **RA 12 701 916**      **HHC, 2/504th Inf**
    (NAME)                       (ASN)                  (UNIT)

is approved.

               **15 Dec 66**
    2. **XX** Effective ~~this date~~ EM is removed from parachute status and airborne qualification digit "P" is withdrawn from MOS.

    3.     Effective this date EM's parachute badge is revoked UP para 94, AR 672-5-1.

    4.  **XX** EM will be retained in unit pending further assignment instructions.

    5.  ___ EM will be retained unit until ETS.

    6.  ___ EM will be retained in unit and resubmitted to this headquarters for assignment when in transferable status.

       FOR THE COMMANDER:




                           H. E. VIA
                           WO1, USA
                           Asst AG

*CONTINUE ENTRIES ON PLAIN WHITE PAPER.*

**DA** FORM 1 OCT 55 **1049**        REPLACES EDITION OF 1 OCT 53, WHICH IS OBSOLETE        ⭐ GPO  1964 OF—715-938

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (212)

| MEDICAL CONDITION – PHYSICAL PROFILE RECORD (AR 40-501) | DATE 25 January 1967 |
|---|---|

| TO: Commanding Officer Hqs Co, 2/504, 82d Abn Div Fort Bragg, N. C. | FROM: Commanding Officer Womack Army Hospital Fort Bragg, N. C. |
|---|---|

| LAST NAME - FIRST NAME - MIDDLE INITIAL, GRADE, SERVICE NO. AND ORGANIZATION Peavey, Morris J., Jr. Pvt E2, RA 12 701 916 Hqs Co, 2/504, 82d Abn Div Fort Bragg, N. C. | INSTRUCTIONS Complete Section D of this form in lieu of DA Form 8-118, whenever a medical board is held for the sole purpose of permanently revising the physical profile to or from a numerical designator "3". PREPARE COPIES AS INDICATED BELOW: Unit Commander - 1 copy when Item 1 or 2 is checked Appropriate Commander or HQ - 1 copy when Item 3 is checked. Health Record Jacket, (DD Form 722) - 1 copy Clinical Record - 1 copy when appropriate |
|---|---|

### SECTION A - DUTY STATUS (Check Applicable Item(s))

| 1 | | INDIVIDUAL IS RETURNED TO YOUR UNIT FOR DUTY (AR 40-3, AR 635-40 series) |
|---|---|---|
| 2 | | INDIVIDUAL IS RETURNED TO YOUR UNIT FOR SEPARATION PROCESSING (AR 40-3, AR 635-40 series) |
| 3 | X | INDIVIDUAL IS (IS NOT) MEDICALLY QUALIFIED FOR full military duty. AS EVIDENCED BY A MEDICAL EXAMINATION AND A REVIEW OF HIS HEALTH RECORD THIS DATE 25 Jan 67 |

### SECTION B - PHYSICAL PROFILE
(Complete all items. When applicable "R" or "T" will be entered with numerical designator under appropriate factor)

| | | P | U | L | H | E | S | |
|---|---|---|---|---|---|---|---|---|
| 4 | PREVIOUS | 3 | 1 | 1 | 1 | 1 | 1 | PREVIOUS |
| 5 | PRESENT | 3 | 1 | 1 | 1 | 1 | 1 | PRESENT |

| 6 | INDIVIDUAL HAS THE DEFECT(S) LISTED BELOW. (All defects requiring a 3 or 4 in any PULHES factor will be reported in non-technical language) |
|---|---|
| | High blood pressure. |
| | ☐ Continued under remarks |

### SECTION C - ASSIGNMENT RESTRICTIONS, OR GEOGRAPHICAL, OR CLIMATIC AREA LIMITATIONS (Check Applicable Item(s))

| 7 | | INDIVIDUAL REQUIRES NO MAJOR ASSIGNMENT, GEOGRAPHICAL, OR CLIMATIC AREA LIMITATIONS |
|---|---|---|
| 8 | X | MAJOR ASSIGNMENT, GEOGRAPHICAL, OR CLIMATIC AREA LIMITATIONS ARE ESTABLISHED BELOW (AR 40-3, AR 40-501, AR 635-40 series. Describe specific assignment limitations or restrictions as outlined in Chapter 9, AR 40-501.) F - No assignment to isolated areas where definitive medical care is not available. (MAAG - Military Missions, etc.) Viet Nam not considered an isolated area. ☐ Continued under remarks |

| 9 | X | THE ABOVE CONDITIONS ARE PERMANENT |
|---|---|---|
| 10 | | THE ABOVE CONDITIONS ARE TEMPORARY, INDIVIDUAL IS TO REPORT TO A MEDICAL FACILITY ON (Date)_____ FOR FURTHER PHYSICAL PROFILE EVALUATION OR MEDICAL TREATMENT AND DISPOSITION (AR 40-3, AR 40-501) |
| 11 | | SEPARATION OR RETIREMENT OF THIS INDIVIDUAL WILL NOT BE EFFECTED WITHOUT PRIOR MEDICAL EVALUATION (AR 40-3, AR 40-501, AR 616-41) |
| 12 | X | THIS SUPERSEDES PREVIOUS MEDICAL CONDITION - PHYSICAL PROFILE RECORDS |
| 13. | | TYPED NAME & GRADE OF AUTHORIZED OFFICER AT MEDICAL FACILITY    SIGNATURE |

DA FORM 1 MAY 65 8-274    REPLACES EDITION OF 1 FEB 62. EXISTING SUPPLIES OF WHICH WILL BE ISSUED AND USED UNTIL 1 MAY 66 UNLESS SOONER EXHAUSTED.

EXH-12

DA FEB 62 8-274

*Please Return*

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (317)

| SECTION D - MEDICAL BOARD PROCEEDINGS |
|---|

**ACTION BY MEDICAL BOARD**
PERMANENT CHANGE OF PROFILE AS RECORDED UNDER SECTION C, IS RECOMMENDED:

14. TYPED NAME, GRADE & BRANCH OF BOARD MEMBER *(President)* | SIGNATURE

JOHN W. CARSON, JR., MAJ., MC

15. TYPED NAME, GRADE & BRANCH OF BOARD MEMBER | SIGNATURE

JOHN P. JACKSON, JR., CPT., MC

16. TYPED NAME, GRADE & BRANCH OF BOARD MEMBER | SIGNATURE

LEONARD E. REAVES III, CPT., MC

**ACTION BY APPROVING AUTHORITY**
THE FINDINGS AND RECOMMENDATIONS OF THE BOARD ARE APPROVED:

17. TYPED NAME, GRADE & TITLE OF APPROVING AUTHORITY | SIGNATURE | DATE
WILLIAM L. RICHARDSON, LTC., MC
Chief, Department of Medicine | | 5 Oct 66

REMARKS - CONTINUATION OF ITEM (    )



RECEIVED
JAN 14 1970
VETERANS ADMINISTRATION

Assignment Restrictions, or Geographical, or Climatic Area Limitations
CODE:  A - None
       B - None
       C - No crawling, stooping, running, jumping, prolonged standing or marching.
       D - No strenuous physical activity.
       E - No assignment to units requiring continued consumption of combat rations .
       F - No assignment to isolated areas where definitive medical care is not available.  (MAAG - Military
           Missions, etc.).
       G - No assignment requiring prolonged handling of heavy materials including weapons.  No overhead
           work, no pull-ups or push-ups.
       H - No assignment to unit where sudden loss of consciousness would be dangerous to self or others,
           such as work on scaffolding, handling amunition, vehicle driving, work near moving machinery.
       J - No assignment involving habitual or frequent exposure to loud noises or firing of weapons.
           *(Not to include firing for POR qualification )*
       L - No assignment which requires prolonged or repeated exposure to extreme cold.
       M - No assignment requiring prolonged or repeated exposure to high environmental temperature.
       N - No continuous wearing of combat type boots.
       P - No continuous wearing of woolen clothes.
       U - Limitation not otherwise described; to be considered individually.  Briefly define limitation in Item 8.

DA FORM 8-274

*Please Return*

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (317)

| SECTION D - MEDICAL BOARD PROCEEDINGS |
|---|

**ACTION BY MEDICAL BOARD**
PERMANENT CHANGE OF PROFILE AS RECORDED UNDER SECTION C, IS RECOMMENDED:

14. TYPED NAME, GRADE & BRANCH OF BOARD MEMBER *(President)* / SIGNATURE

JOHN W. CARSON, JR., MAJ., MC

15. TYPED NAME, GRADE & BRANCH OF BOARD MEMBER / SIGNATURE

JOHN P. JACKSON, JR., CPT., MC

16. TYPED NAME, GRADE & BRANCH OF BOARD MEMBER / SIGNATURE

LEONARD E. REAVES III, CPT., MC

**ACTION BY APPROVING AUTHORITY**
THE FINDINGS AND RECOMMENDATIONS OF THE BOARD ARE APPROVED:

17. TYPED NAME, GRADE & TITLE OF APPROVING AUTHORITY / SIGNATURE / DATE

WILLIAM L. RICHARDSON, LTC., MC
Chief, Department of Medicine — 5 Oct 66

REMARKS - CONTINUATION OF ITEM (   )

RECEIVED JAN 14 1970 VETERANS ADMINISTRATION

Assignment Restrictions, or Geographical, or Climatic Area Limitations
CODE: A - None
B - None
C - No crawling, stooping, running, jumping, prolonged standing or marching.
D - No strenuous physical activity.
E - No assignment to units requiring continued consumption of combat rations.
F - No assignment to isolated areas where definitive medical care is not available. (MAAG - Military Missions, etc.).
G - No assignment requiring prolonged handling of heavy materials including weapons. No overhead work, no pull-ups or push-ups
H - No assignment to unit where sudden loss of consciousness would be dangerous to self or others, such as work or scaffolding, handling ammunition, work or driving, work operating machinery
J - No assignment involving handling or frequent exposure to loud noises or firing of weapons (Not to include firing for POR qualification.)
L - No assignment which requires prolonged or repeated exposure to extreme cold.
M - No assignment requiring prolonged or repeated exposure to high environmental temperature.
N - No continuous wearing of combat type boots.
P - No continuous wearing of woolen clothes.
U - Limitation not otherwise described; to be considered individually. Briefly define limitation in Item 8.

EXH–9A

**SECTION D - MEDICAL BOARD PROCEEDINGS**

ACTION BY MEDICAL BG

**PERMANENT CHANGE OF PROFILE AS RECORDED UNDER SECTION C, IS RECOMMENDED:**

| 14. TYPED NAME, GRADE & BRANCH OF BOARD MEMBER | SIGNATURE |
|---|---|
| COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (317) | |
| ROBERT ARDON, CPT, MC | |
| 15. TYPED NAME, GRADE & BRANCH OF BOARD MEMBER | SIGNATURE |
| WILLIAM FARABOW, CPT, MC | |
| 16. TYPED NAME, GRADE & BRANCH OF BOARD MEMBER | SIGNATURE |
| HENRY A WISE II, CPT, MC | |

ACTION BY APPROVING AUTHORITY

THE FINDINGS AND RECOMMENDATIONS OF THE BOARD ARE APPROVED.

| 17. TYPED NAME, GRADE & TITLE OF APPROVING AUTHORITY | SIGNATURE | DATE |
|---|---|---|
| RAPHAEL DI NAPOLI, LTC, MC | | 3/02/70 |

REMARKS - CONTINUATION OF ITEM 7

**Assignment Restrictions, or Geographical, or Climatic Area Limitations**

CODE:  A - None

B - None

C - No crawling, stooping, running, jumping, prolonged standing or marching.

D - No strenuous physical activity

E - No assignment to units requiring continued consumption of combat rations.

F - No assignment to isolated areas where definitive medical care is not available. (MAAG - Military Missions, etc.).

G - No assignment requiring prolonged handling of heavy materials including weapons. No overhead work, no pull-ups or push-ups.

H - No assignment to unit where sudden loss of consciousness would be dangerous to self or others, such as work on scaffolding, handling amunition, vehicle driving, work near moving machinery.

J - No assignment involving habitual or frequent exposure to loud noises or firing of weapons. *(Not to include firing for POR qualification )*

L - No assignment which requires prolonged or repeated exposure to extreme cold.

M - No assignment requiring prolonged or repeated exposure to high environmental temperature.

N - No continuous wearing of combat type boots.

P - No continuous wearing of woolen clothes.

U - Limitation not otherwise described, to be considered individually. Briefly define limitation in Item 8.

RECEIVED JAN 28 1970

U.S. GOVERNMENT PRINTING OFFICE  1965 O  775-78

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (JFTS)     24 Oct 66
*(AR 40-501)*

| TO: Commanding Officer | FROM: Brigade Surgeon |
|---|---|
| C Company 2/504 | North Dispensary |
| 82d Airborne Division | 82d Airborne Division |
| Fort Bragg, North Carolina 28307 | Fort Bragg, North Carolina 28307 |

LAST NAME - FIRST NAME - MIDDLE INITIAL, GRADE, SERVICE NO. AND ORGANIZATION

PEAVEY, Morris J. Jr
RA
E-4 █████████
C Company
2/504
82d Airborne Division
Fort Bragg, North Carolina 28307.

**INSTRUCTIONS**

Complete Section D of this form in lieu of DA Form 8-118. whenever a medical board is held for the sole purpose of permanently revising the physical profile to or from a numerical designator "3".

PREPARE COPIES AS INDICATED BELOW:
Unit Commander - 1 copy when Item 1 or 2 is checked
Appropriate Commander or HQ - 1 copy when Item 3 is checked.
Health Record Jacket, (DD Form 722) - 1 copy
Clinical Record - 1 copy when appropriate

**SECTION A - DUTY STATUS** *(Check Applicable Item(s))*

| | | |
|---|---|---|
| 1 | X | INDIVIDUAL IS RETURNED TO YOUR UNIT FOR DUTY (AR 40-3, AR 635-40 series) |
| 2 | | INDIVIDUAL IS RETURNED TO YOUR UNIT FOR SEPARATION PROCESSING (AR 40-3, AR 635-40 series) |
| 3 | | INDIVIDUAL X̶X̶X̶X̶ (IS NOT) MEDICALLY QUALIFIED FOR Parachute Jumping |
| | | AS EVIDENCED BY A MEDICAL EXAMINATION AND A REVIEW OF HIS HEALTH RECORD THIS DATE _____ |

**SECTION B - PHYSICAL PROFILE**
*(Complete all items. When applicable "R" or "T" will be entered with numerical designator under appropriate factor)*

| | | P | U | L | H | E | S | |
|---|---|---|---|---|---|---|---|---|
| 4 | PREVIOUS | 1 | 1 | 1 | 1 | 1 | 1 | PREVIOUS |
| 5 | PRESENT | 3P | 1 | 1 | 1 | 1 | 1 | PRESENT |

6  INDIVIDUAL HAS THE DEFECT(S) LISTED BELOW. (All defects requiring a 3 or 4 in any PULHES factor will be reported in non-technical language)

Low Back Syndrome

☐ Continued under remarks

**SECTION C - ASSIGNMENT RESTRICTIONS, OR GEOGRAPHICAL, OR CLIMATIC AREA LIMITATIONS** *(Check Applicable Item(s))*

| | | |
|---|---|---|
| 7 | | INDIVIDUAL REQUIRES NO MAJOR ASSIGNMENT, GEOGRAPHICAL, OR CLIMATIC AREA LIMITATIONS |
| 8 | X | MAJOR ASSIGNMENT, GEOGRAPHICAL, OR CLIMATIC AREA LIMITATIONS ARE ESTABLISHED BELOW (AR 40-3, AR 40-501, AR 635-40 series. Describe specific assignment limitations or restrictions as outlined in Chapter 9, AR 40-501.) |

No parachute Jumping
Code:  D
Code:  U

☐ Continued under remarks

| | | |
|---|---|---|
| 9 | X | THE ABOVE CONDITIONS ARE PERMANENT |
| 10 | | THE ABOVE CONDITIONS ARE TEMPORARY. INDIVIDUAL IS TO REPORT TO A MEDICAL FACILITY ON (Date) ___ FOR FURTHER PHYSICAL PROFILE EVALUATION OR MEDICAL TREATMENT AND DISPOSITION (AR 40-3, AR 40-501) |
| 11 | | SEPARATION OR RETIREMENT OF THIS INDIVIDUAL WILL NOT BE EFFECTED WITHOUT PRIOR MEDICAL EVALUATION (AR 40-3, AR 40-501, AR 616-41.) |
| 12 | | THIS SUPERSEDES PREVIOUS MEDICAL CONDITION - PHYSICAL PROFILE RECORDS |

13  TYPED NAME & GRADE OF AUTHORIZED OFFICER AT MEDICAL FACILITY          SIGNATURE

HENRY A WISE II, CPT, MC

**DA** FORM 1 MAY 65 **8-274**     REPLACES EDITION OF 1 FEB 62, EXISTING SUPPLIES OF WHICH WILL BE ISSUED AND USED UNTIL 1 MAY 66 UNLESS SOONER EXHAUSTED

*Please Return.*

No. 1

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (317)

$

WU TELTEX WSH

$

NAVCOMSTA WSH

TLX041

APR 19 1967

R 1815292 APR 67

FM CG FT BRAGG NC

TO HONORABLE FRANK J BRASCO HOUSE OF REPRESENTATIVES WASH DC

BT          031

UNCLAS FROM AJBAG-P 14805

SIGNED: GORDON T. KIMBRELL, BRIGADIER GENERAL, USA,

DEPUTY POST COMMANDER.

    THIS IS IN REPLY TO YOUR INQUIRY IN BEHALF OF PRIVATE MORRIS J.

PEAVEY, RA 12 701 916, HEADQUARTERS BATTERY, 4TH BATTALION, 73D

ARTILLERY, FORT BRAGG, NORTH CAROLINA.

    PVT PEAVEY IS NOT BEING PROCESSED FOR A DISHONORABLE DISCHARGE.

PRIOR TO AUGUST 1966 THE CHARACTER OF PVT PEAVEYS SERVICE WAS

EXCELLENT. HOWEVER SINCE THAT TIME HIS RECORD REFLECTS THAT HE HAS

BEEN A CONSTANT TROUBLE MAKER. APPARENTLY HIS DIFFICULTIES BEGAN

TELEX SERVICE

TELEX SERVICE

DA SERVICE

TELEX-THIS MESSAGE
RECEIVED DIRECT FROM
SENDER VIA W.U. TELEX

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (317)

PAGE 2 RUEDNEA5395 UNCLAS

SHORTLY AFTER HE WAS INVOLVED IN AN ACCIDENT IN WHICH HE SUSTAINED AN

INJURY TO HIS BACK. SINCE THAT TIME HE HAS ATTEMPTED TO RELIEVE HIS

FRUSTRATION AT WHAT HE BELIEVES IS INACTION ON THE PART OF MEDICAL

AUTHORITIES IN CORRECTING HIS INJURY. THE CHIEF OF ORTHOPEDICS,

WOMACK ARMY HOSPITAL, HOWEVER, STATSS THAT PVT PEAVEY IS OVERCONCERNED

ABOUT ANY LITTLE TWINGE HE MAY BE GETTING AND THAT THERE IS

NO BASIC BACK DISEASE AND NO EVIDENCE OF RESIDUAL INJURY. AS FAR AS

THE BACK IS CONCERNED PVT PEAVEY IS FIT FOR FULL DUTY.

PVT PEAVY HAS BEEN WARNED THAT UNLESS HIS CONDUCT IMPROVES HE

WILL BE CONSIDERED FOR ELIMINATION FROM THE SERVICE AS UNSUITABLE.

HIS CONDUCT DOES IMPROVE HE WILL BE RETAINED UNTIL HIS TERM OF SERVICE

EXPIRES ON 3 AUGUST 1967. IT SHOULD BE FURTHER NOTED THAT ELIMINATION

FOR UNSUITABILITY IS NOT THE SAME THING AS A DISHONORABLE DISCHARGE

AND THAT, IN FACT, PERSONNEL BEING SEPARATED FOR UNSUITABILITY RECEIVE

A CERTIFICATE OF GENERAL DISCHARGE UNDER HONORABLE CONDITIONS.

IF I MAY BE OF FURTHER ASSISTANCE IN THIS MATTER PLEASE LET ME

KNOW

BT

COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (317)

Adjudication Officer

November 13, 1972
561(126(N)111/RML:lm
C 2344 86 13
PEAVEY, M. J. Jr.

Robert M. Levinson, M. D.
Staff Physician

Reconcillation of Diagnosis

1.   A complete review of the C folder shows intermittent hypertension.

2.   The chest X-rays, cardiograms and IvP, and renogram were normal.

3.   The examination of 9/25/72 shows normal blood pressures.

Diagnosis:   History and record of essential hypertension not found at
this examination.


ROBERT M. LEVINSON, M. D.

OPTIONAL FORM NO. 10
MAY 1962 EDITION
GSA FPMR (41 CFR) 101-11.6

UNITED STATES GOVERNMENT
COPIED FROM CLAIMS FOLDER DEPARTMENT OF VETERANS AFFAIRS (317)

# *Memorandum*

TO       :     Adjudication Officer

FROM  :     Robert M. Levinson, M. D.
                 Staff Physician

DATE:      November 13, 1972
561(126(N)111/RML:lm
C 2344 86 13
PEAVEY, M. J. Jr.

SUBJECT:    Reconcillation of Diagnosis

1.   A complete review of the C folder shows intermittent hypertension.

2.   The chest X-rays, cardiograms and IvP, and renogram were normal.

3.   The examination of 9/25/72 shows normal blood pressures.

Diagnosis:   History and record of essential hypertension not found at this examination.

*Robert M. Levinson, MD*

ROBERT M. LEVINSON, M. D.



*Buy U.S. Savings Bonds Regularly on the Payroll Savings Plan*

CERTIFICATE OF SERVICE BY MAIL

I CERTIFY that the herein attached Notice and Motion to enter a document material to the matter before this court was served upon the defendants:

Alberto Gonzales, US Attorney General
C/O General Counsel Steve Mulleins
950 Pennsylvania Avenue, SW
Washington, DC 20420

Jim Nicholson, Secretary Veterans Affairs
C/O Office of General Counsel Jim McCalim
810 Vermont Avenue, NW
Washington, DC 20420

Dr. Allen Weinstein, Archivist
C/O Office of General Counsel Gary M. Stern
National Archives and Records Administration
8601 Adelphi Road, RM 300
College Park, MD 20740

RL Hindman, Director NPRC
C/O Office of General Counsel Gary M. Stern
National Archives and Records Administration
8601 Adelphi Road, RM 300
College Park, MD 20740

John Snow, Secretary of Treasury
US Department of Treasury
C/O Office of General Counsel
Suite 510
740 15th Street, NW
Washington, DC 20220

Julia K. Douds, Assistant US Attorney
US Attorney Office
501 3rd Street NW, 4th Floor
Washington, DC 20530

BY Placing a true copy of the document with the US Post Office with the above addresses and paying proper postage for Mail certified with return receipt requested on February 20, 2009.

Respectfully submitted,

Morris J. Peavey, Jr. Pro Se
12315 NW 23rd Avenue
Miami, Florida 33167
1-305-688-0759

CERTICATE OF SERVICE BY MAIL:

I certify the the enclosed document of substantial evidence and its motion to enter it into
these proceedings was served upon the attorney for the defendants:

Eric E. Holder
US Attorney General
950 Pennsylvania Avenue, SW
Washington, DC  20420

Will A. Gunn
General Counsel for
Secretary of Department of Veterans Affairs
810 Vermont Avenue NW
Washington, DC  20420

Office of the US Attorney
Kenneth Aboneojo Esq.
501 3rd Street NW 4th Floor
Washington, DC  20530

Respectfully Submitted

morris J. Pervey Jr.
305 688 0759