UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
MORRIS J. PEAVEY, JR.,         )
                               )
          Plaintiff,           )
                               )
          v.                   )     Civil Action No. 05-819 (RWR)
                               )
ERIC H. HOLDER, JR, et al.,    )
                               )
          Defendants.          )
_____)
```

<u>MEMORANDUM OPINION</u>

Pro se plaintiff Morris J. Peavey, Jr., an African-American, Orthodox Muslim Army veteran, brings this action against the United States Attorney General, the Secretary of Veterans Affairs, the Archivist of the United States, the Director of the National Personnel Records Center ("NPRC"), the Secretary of the Treasury, and the Secretary of the Army in their official capacities, and against the Equal Employment Opportunity Commission ("EEOC") and the United States Postal Service ("USPS"), challenging several decisions by the Department of Veteran's Affairs ("VA") regarding his entitlement to benefits since his 1967 discharge from the Army, seeking to compel the release of records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and asserting a variety of claims based on the other named defendants' alleged harassment of Peavey since his

- 2 -

Army service.[1]  The defendants have moved to dismiss the

complaint or, in the alternative, for summary judgment.  Because

there is no material factual dispute and the defendants are

entitled to judgment as a matter of law on Peavey's FOIA claims,

the defendants' motion, treated as a motion for summary judgment

with respect to the FOIA claims only, will be granted.  Because

Peavey has failed to state any other claim entitling him to

relief over which the district court has jurisdiction, the

remainder of the complaint will be dismissed.

BACKGROUND

The complaint in this action consists of more than one

hundred single-spaced paragraphs and more than 100 pages of

attached exhibits.  Portions of Peavey's allegations, which cover

a timespan of more than forty years, beginning with the

circumstances leading up to Peavey's discharge from the Army in

1967, are difficult to understand and are not clear enough to be

illuminating.  Peavey alleges that he bring claims against the

---

[1]Eric H. Holder, Jr., Eric Shinseki, Adrienne Thomas, Timothy Geithner, and Pete Geren are substituted for Alberto Gonzalez, Jim Nicholson, Allen Weinstein, John Snow, and Francis Harvey under Federal Rule of Civil Procedure 25(d).  The Secretary of the Army, the EEOC, and the USPS have not been served with a copy of the complaint.  Nonetheless, because "complaints may . . . be dismissed sua sponte, if need be, under Rule 12(b)(6) whenever 'the plaintiff cannot possibly win relief[,]'" Best v. Kelly, 39 F.3d 328, 331 (D.C. Cir. 1994) (quoting Baker v. Director, U.S. Parole Comm'n, 916 F.2d 725, 726 (D.C. Cir. 1990)), claims against these defendants also will be considered.

- 3 -

defendants under the First, Fifth, Ninth, and Fourteenth
Amendments; the Freedom of Information Act ("FOIA"), 5 U.S.C.
§ 552; Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§ 2000e-5; 42 U.S.C. §§ 1981, 1983, 1985; 18 U.S.C. §§ 1001,
1503, 1505, 1512, 1519; and other unspecified common law tort
theories.  (Compl. at 2.)

   Peavey appears to be challenging several VA decisions
determining his entitlement to certain veterans benefits at
various times since his discharge.  The complaint provides a
detailed description of his medical and benefits history since
his discharge from the Army in 1967, and alleges that the VA
incorrectly determined his disability rating on several occasions
and improperly discontinued his benefits for a period of several
months in 2001 and in May and June of 2003.  Peavey states that
he sought appeals to the Board of Veterans Appeals regarding
certain benefits decisions in 1971, 1994, 2003, and 2004.  (See
Id. at 17.)  He alleges that the VA's decisions not to provide
him certain benefits were made with a discriminatory purpose,
violated his rights to due process and equal protection under the
law, and constituted an unconstitutional taking.  (Id. at 15-16.)
In addition, Peavey challenges the constitutionality of 38 U.S.C.
§ 511(a),[2] the statute limiting judicial review of decisions made

   [2]The complaint identifies the relevant statute as 38 U.S.C.
§ 211(a).  This provision has been recodified at 38 U.S.C.
§ 511(a).

- 4 -

by the VA Secretary.  He contends that § 511(a) "conflicts with
the constructs" of the First, Fifth, Ninth and Fourteenth
Amendments and abridges his "rights and privileges which he would
otherwise enjoy under the constitutional laws."  (Id. at 3.)

Peavey brings FOIA claims against the NPRC and the VA,
alleging that the NPRC, the VA, and the VA Hospital in Brooklyn,
New York failed to fully respond to his FOIA requests for records
regarding his military service and medical history.  (Id. at 13-
14, 23.)  In addition, he contends, based upon the NPRC's and
VA's failure to produce certain records related to his military
service and medical treatment that he believes they possess, that
the NPRC, the VA, and the Army have deliberately concealed,
altered, or destroyed portions of his military and medical
records in violation of FOIA and several criminal obstruction of
justice statutes.[3]  (Id. at 13, 17.)  Peavey further claims that
he filed a complaint with the Department of Justice ("DOJ")
alleging that the VA and its agents altered, suppressed, or
destroyed federal documents.  (Id. at 20-21.)  He contends that
the DOJ did not properly investigate and bring charges based upon
his complaint.  (Id. at 21.)

---

[3]Although it is difficult to discern, Peavey also appears to
allege that the agencies' deliberate acts concealing, altering,
or destroying his records violated his due process rights by
interfering with benefits determinations and his ability to
correct his military records.  (See Id. at 13, 15-16, 18, 20;
Pl.'s Mem. in Supp. of Summ. J. at 3, 37.)

- 5 -

In addition, Peavey alleges that the "IRS and EEOC [have] practiced harassment against [him] since 1983." (Id. at 11.) Specifically, Peavey contends that the IRS harassed him from 1983 to 2001 by filing at least one claim against him for back taxes, placing liens on his assets, "revoking licenses, taking assets, placing liens on assets" of his employers, and by subjecting his business clients to unwarranted audits because they were his business clients. (See Id. at 11-12.) He alleges that the EEOC violated his rights under Title VII, and his right to equal protection under the law by improperly handling a discrimination claim he filed in 1983. (Id.) Moreover, Peavey alleges that the USPS "acted to harass" him by interrupting his mail service for periods of time in 1983 to 1984 and 1990 to 1993, and on other occasions, by delaying delivery of or failing to deliver pieces of mail. (Aff. in Supp. of Compl. at 24.) Finally, Peavey seeks review of an Army Board for Corrections of Military Records ("ABCMR") decision on his May 9, 1968 application to correct his military records, alleging that the ABCMR failed to properly investigate his application for correction. (Compl. at 15.) Peavey requests $15,000,000 in damages for injuries caused by the defendants' actions, and other declaratory and injunctive relief, including an order declaring his right to certain benefits, compelling the Secretary of the Army and the Army Board of Corrections to amend his military records, and compelling the

- 6 -

defendants to provide records which he requested from the NPRC and the VA.  (<u>Id.</u> at 23-24.)

The defendants have filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted, or in the alternative, for summary judgment.[4]  Peavey has filed a motion for summary judgment, two motions for declaratory judgment that repeat the allegations and requests for relief contained in Peavey's complaint and summary

---

[4]The defendants also move to dismiss the complaint for failure to comply with the minimal pleading requirements of Rule 8(a).  Rule 8(a) sets forth a minimum standard for the sufficiency of a complaint, requiring a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  "The burden imposed by the rule is by no means exacting" and "generously accords the plaintiff wide latitude in framing his claims for relief[,] . . . particularly . . . where, as here, the plaintiff is proceeding pro se."  <u>Brown v. Califano</u>, 75 F.R.D. 497, 498 (D.D.C. 1977).  Peavey's voluminous allegations are imprecise and portions are difficult to comprehend.  However, when afforded the benefit of the less stringent standard applied to pro se complaints and when viewed in their entirety, the complaint and attachments plead sufficient allegations to provide the defendants notice of the basis of Peavey's claims and the relief which he seeks.  Accordingly, the defendants' motion to dismiss under Rule 8(a) will be denied.

- 7 -

judgment motion, and two motions for leave to file documents he

contends show the defendants' acts of "abuse of process."[5]

## DISCUSSION

"'On a motion to dismiss for lack of subject-matter

jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the

burden of establishing that the court has subject-matter

jurisdiction.'"  Peter B. v. C.I.A., 620 F. Supp. 2d 58, 67

(D.D.C. 2009) (quoting Shuler v. United States, 448 F. Supp. 2d

13, 17 (D.D.C. 2006)) (citing Lujan v. Defenders of Wildlife, 504

U.S. 555, 561 (1992)).  A court must accept as true all of the

factual allegations contained in the complaint, see Lujan, 504

U.S. at 560, and may also consider "'undisputed facts evidenced

in the record.'"  Randolph v. ING Life Ins. and Annuity Co., 486

F. Supp. 2d 1, 3 n.3 (D.D.C. 2007) (quoting Coalition for

Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir.

2003)).  The "nonmoving party is entitled to all reasonable

inferences that can be drawn in [its] favor." Artis v.

Greenspan, 158 F.3d 1301, 1306 (D.C. Cir. 1998); see also Barr v.

Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004); Bernard v. U.S.

Dep't of Defense, 362 F. Supp. 2d 272, 277 (D.D.C. 2005).

---

[5]Peavey adds to his theories of recovery in his opposition
to the defendants' motion to dismiss or for summary judgment and
his motion for summary judgment by alleging a Bivens
constitutional tort theory that is not clearly identified in his
complaint.  (See Pl.'s Opp'n to Def.'s Mot. to Dismiss or for
Summ. J. at 44; Pl.'s Mem. in Supp. of Mot. for Summ. J. at
27.)

- 8 -

A complaint can be dismissed under Rule 12(b)(6) when a plaintiff fails to state a claim upon which relief can be granted.  <u>See</u> Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, acceptable as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

<u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556, 570 (2007)).  "[A] court 'must treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  <u>Holy Land Found. for Relief & Dev. v. Ashcroft</u>, 333 F.3d 156, 165 (D.C. Cir. 2003) (quoting <u>Sparrow v. United Air Lines, Inc.</u>, 216 F.3d 1111, 1113 (D.C. Cir. 2000)).  On the other hand, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Iqbal</u>, 129 S. Ct. at 1950 (internal quotation marks omitted).  If a plaintiff fails to allege sufficient facts to support a claim, the complaint must be dismissed.  <u>See</u> <u>Twombly</u>, 550 U.S. at 555.

I.   VA'S BENEFITS DECISIONS

Peavey brings claims challenging various benefits decisions made by the VA since Peavey's 1967 discharge from the Army and challenging the constitutionality of 38 U.S.C. § 511, the statute

- 9 -

limiting judicial review of the VA's benefits decisions.  The
defendants allege that Peavey's claims challenging the VA's
benefits determinations, including his claims alleging that the
VA's acts violated his constitutional rights, should be dismissed
under Rule 12(b)(1) for lack of subject matter jurisdiction and
that Peavey's facial challenge to § 511 should be dismissed under
Rule 12(b)(6) for failure to state a claim.

Under 38 U.S.C. § 511(a), the Secretary "shall decide all
questions of law and fact necessary to a decision by the
Secretary under a law that affects the provision of benefits by
the Secretary to veterans," and review of the Secretary's
decisions "may not be reviewed by any other official or by any
court," except for limited matters listed in § 511(b) that are
excluded from § 511(a)'s limit on judicial review.  38 U.S.C.
§ 511.  Section 511(a) "precludes judicial review in Article III
courts of VA decisions affecting the provision of veterans'
benefits[.]"  Price v. United States, 228 F.3d 420, 421 (D.C.
Cir. 2000).  Instead, under the scheme created by the Veterans'
Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105 (1988),
"[t]he exclusive avenue for redress of veterans' benefits
determinations is appeal to the Court of Veterans Appeals and
from there to the United States Court of Appeals for the Federal
Circuit."  See id.

In explaining the scope of § 511(a)'s prohibition on judicial review, the D.C. Circuit has instructed that a district court lacks jurisdiction over all claims involving veterans benefits that require "the district court 'to determine first whether the VA acted properly in handling'" a benefit request. Thomas v. Principi, 394 F.3d 970, 974 (D.C. Cir. 2005) (quoting Price, 228 F.3d at 422). "[A] federal district court may not entertain constitutional or statutory claims whose resolution would require the court to intrude upon the VA's exclusive jurisdiction." Price, 228 F.3d at 422 (determining that the district court lacked jurisdiction to consider the plaintiff's federal claim because underlying the claim was an allegation that the VA unjustifiably denied him a veteran's benefit). On the other hand, § 511(a) "does not give the VA exclusive jurisdiction to construe laws affecting the provision of veterans benefits or to consider all issues that might somehow touch upon whether someone receives veterans benefits." Broudy v. Mather, 460 F.3d 106, 112 (D.C. Cir. 2006). "Section 511(a) prevents district courts from hearing a particular question only when the Secretary has 'actual[ly] deci[ded]' the question. Id. (quoting McKelvey v. Turnage, 792 F.2d 194, 198 (D.C. Cir. 1986)).

Applying this guidance, the district court has jurisdiction over Peavey's claim to the extent that it is a facial challenge to the constitutionality of § 511(a). It is not entirely clear

- 11 -

whether Peavey actually is making a facial challenge to § 511
since the bulk of his argument alleges due process violations.
Nevertheless, "[t]he burden on one making a facial challenge to
the constitutionality of a statute is heavy."  Kraft Gen. Foods,
Inc. v. Iowa Dep't of Revenue and Fin., 505 U.S. 71, 82 (1992).
It requires a showing by the litigant that the "legislative
scheme is unconstitutional in all or nearly all of its
applications."  U.S. v. Booker, 543 U.S. 220, 274 (2005).
Assuming that he is asserting a facial challenge, Peavey fails to
show how § 511 conflicts with his First, Fifth, Ninth, and
Fourteenth Amendment rights.

        Section 511's limit on judicial review does not restrict
Peavey's First Amendment right of free speech or abridge his
right to seek redress of his grievances.  It does not preclude
Peavey from expressing himself or going to court; rather, § 511
directs him to the proper judicial fora.  Peavey also has failed
to show how § 511's process of review violates the Fifth
Amendment.[6]  He has been given notice of the VA's decisions
regarding his benefits and can seek review of the decisions in
two successive courts -- the United States Court of Veterans
Appeals and the United States Court of Appeals for the Federal

---

        [6]It is the due process clause of the Fifth, not the
Fourteenth, Amendment that applies to actions of the federal
government.  Thus, Peavey's Fourteenth Amendment challenge is
unavailing.

Circuit.  With regard to the Ninth Amendment, which states that
"[t]he enumeration in the Constitution, of certain rights, shall
not be construed to deny or disparage others retained by the
people," U.S. Const. amend. IX, Peavey has not shown that the VA
has construed any of his constitutional rights so as to deny or
disparage any of his other rights.  Thus, as a matter of law,
even with reasonable inferences drawn in Peavey's favor, he has
failed to support his vague argument that § 511 is facially
unconstitutional.  Accordingly, Peavey's facial challenge to
§ 511 will be dismissed for failure to state claim entitling him
to relief.

Regarding Peavey's challenges to the VA's decisions on his
benefit claims, Peavey attempts to avoid application of § 511 by
labeling his claims as constitutional claims.  However, courts
"examine the substance of [a plaintiff's] allegations, rather
than the plaintiff's labels, to determine their true nature."
Weaver v. United States, 98 F.3d 518, 519 (10th Cir. 1996); see
Tietjen v. U.S. Veterans Admin., 884 F.2d 514, 515 (9th Cir.
1989) (finding that the court lacked jurisdiction over the
appellant's claims, even though they were brought as
constitutional challenges, because the substance of the
appellant's claims required review of a VA decision on a question
of law or fact regarding the appellant's benefits).  Here,
Peavey's claims would require reviewing whether the VA acted

- 13 -

properly in handling Peavey's benefit requests and correctly
resolved questions of fact or law when determining what benefits
Peavey was entitled to receive.   Under § 511, judicial review of
these benefits decisions is available, if at all, only in the
Federal Circuit, and the district court lacks jurisdiction over
them.   Thus, Peavey's claims challenging the VA's decisions
regarding his benefits will be dismissed for lack of
jurisdiction.

II.  FOIA CLAIMS

     Peavey brings FOIA claims against the Director of the NPRC
and the VA Secretary to compel release of requested records,
alleging that the VA, the VA Hospital Center in Brooklyn, New
York, and the NPRC failed to fully respond to his FOIA requests
for documents.   Peavey alleges that he requested copies of his
military records and early VA medical records, but his requests
"have been consistently refused."  (Compl. at 13.)   The
defendants have moved to dismiss these FOIA claims as moot or, in
the alternative, for summary judgment, alleging that these
agencies produced all documents in their possession responsive to
Peavey's requests.   In support of their motion, the defendants
submit declarations from Scott Levins, NPRC Assistant Director
for Military Records, Cynthia Stock, Assistant Chief of the
Support Services Division in the VA's Regional Office in
St. Petersburg, Florida, and Peter Juliano, Privacy Officer in

- 14 -

the New York Harbor Healthcare System in Brooklyn, New York, each
attesting to his or her agency's efforts to locate and produce
documents responsive to Peavey's requests.

The defendants move in the alternative for dismissal or
summary judgment.  Under Rule 12(d), "[i]f, on a motion under
Rule 12(b)(6) . . . , matters outside the pleadings are presented
to and not excluded by the court, the motion must be treated as
one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d);
see Wiley v. Glassman, 511 F.3d 151, 160 (D.C. Cir. 2007).
Summary judgment may be granted only where the "pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c); see Moore v. Hartman, 571 F.3d 62, 66
(D.C. Cir. 2009).  The burden falls on the moving party to
provide a sufficient factual record that demonstrates the absence
of a genuine issue of material fact.  See Beard v. Banks, 548
U.S. 521, 529 (2006).  If the moving party meets this burden,
"the nonmoving party must come forward with 'specific facts
showing that there is a genuine issue for trial.'"  Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)
(quoting Fed. R. Civ. P. 56(e)) (emphasis in original).  In
considering a motion for summary judgment, a court draws all
"justifiable inferences" from the evidence in favor of the

nonmovant.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

In FOIA cases, "[t]o meet its burden to show that no genuine issue of material fact exists, with the facts viewed in the light most favorable to the requester, the agency must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents."  <u>Weisberg v. U.S. Dep't of Justice</u>, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (internal quotation marks omitted). "In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith."  <u>Id.</u>  "The question is not 'whether there might exist any other documents possibly responsive to the request, but rather whether the <u>search</u> for those documents was <u>adequate</u>.'"  <u>Steinberg v. U.S. Dep't of Justice</u>, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting <u>Weisberg</u>, 745 F.2d at 1485).  Thus, the failure to locate a particular document which the requester seeks "does not alone render the search inadequate."  <u>Nation Magazine v. U.S. Customs Serv.</u>, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  A court may grant summary judgment for the agency relying only upon the agency's affidavits if they contain sufficient detail establishing the adequacy of a search and are not "controverted by contrary evidence."  <u>Schrecker v. U.S. Dep't of Justice</u>, 217 F. Supp. 2d 29, 33 (D.D.C. 2002).

- 16 -

A.   NPRC response

Peavey alleges that he filed a request with the NPRC on
April 7, 2003, requesting his military records pertaining to
"[a]ll disciplinary actions, to [include] Art. 15 and US courts
martial; [and all] medical records, to include medical treatment
in Unit Dispensaries and two admissions to Womack Army Hospital
1966." (Compl. at 13.)  Peavey admits that he received some
records in response to his request, but nonetheless maintains
that the NPRC provided incomplete records because his official
military personnel file ("OMPF") should have included additional
clinical and laboratory records and records relating to a
June 16, 1967 court martial.  (Pl.'s Mem. in Supp. of Summ. J. at
21-22; Pl.'s Stmt. Supporting FOIA Request at 3.)

In his declaration explaining the NPRC's efforts to respond
to Peavey's request, NPRC's Levins explains that "the NPRC is the
designated repository for the Official Military Personnel Files[7]
. . . and medical records of former Army personnel who served
from the early 1900's until 2002." (Defs.' Mot. to Dismiss or
for Summ. J., Levins Decl. ¶ 3.)  In addition, the NPRC receives
from military service departments additional records, such as an

---

[7]An OMPF contains the military personnel and medical records
of a service member and includes records relating to
"enlistment/appointment, duty stations and assignments, training,
qualifications, performance, awards and medals, disciplinary
actions, . . . separation/discharge/retirement, and other
personnel actions." (Levins Decl. ¶ 4.)

individual hospital's clinical records documenting inpatient
treatment, that are maintained as separate systems of records.
(Levins Decl. ¶ 6.)  Regarding record retention, Levins states
that the NPRC does not dispose of OMPF files, clinical records
have a retention period of fifty years, and no records have been
disposed of since the mid-1990s.  (Id. ¶¶ 5-6.)  Levins explains
that in response to Peavey's April 7, 2003 request, the NPRC
"inform[ed] plaintiff that the original medical records were
loaned to the VA, and [provided him] copies of all disciplinary
records found in the OMPF."  (Id. ¶ 7.)  Levins also explains
that in response to further inquiries from Peavey seeking
additional records, the NPRC provided Peavey "with copies of
every document in his OMPF."  (Id. ¶¶ 8-9.)  The NPRC also
supplemented its release of Peavey's OMPF with copies of Womack
Army Hospital inpatient records for 1965-1966 that were located
in a separate system of inpatient treatment records, copies of
all morning reports pertaining to Peavey from August 1966 to
April 1967, and a copy of a 1993 request by the VA for service
verification.  (Id. ¶¶ 8-9, 11, 14.)  In addition, Levins states
that the NPRC informed Peavey on April 11, 2005 that it had
erroneously reported to him that his medical records were retired
to NPRC and loaned to the VA, but had subsequently determined
that "because [Peavey's] OMPF contains a DA Form 644,
Serviceman's Statement Concerning Application for Compensation

- 18 -

from the Veterans Administration, dated August 1, 1967," his
medical records were sent directly to the VA upon his discharge
from the Army.  (Id. ¶ 11.)  Finally, regarding what searches
were made to locate responsive records, Levins states that in
addition to locating Peavey's OMPF file, the NPRC also searched
its records, using Peavey's personal identifying information, for
Peavey's entrance and separation chest x-rays, court martial
transcripts from Ft. Bragg, and morning reports for Peavey's Army
units.  (Id. ¶¶ 11-15.)  Levins concludes that "[t]o the best of
[his] knowledge, all documents capable of being located by
reference to plaintiff's personal identifying information have
been provided to [Peavey]."  (Id. ¶ 15.)

    With the Levins declaration, the NPRC has carried its burden
of demonstrating that it conducted a reasonable search calculated
to locate all relevant documents responsive to Peavey's FOIA
request.  Peavey's assertion that his OMPF should have contained
additional documents does not undermine the NPRC's undisputed
evidence demonstrating that in response to Peavey's FOIA request,
the NPRC reasonably searched its relevant systems of records that
could contain responsive documents, including Peavey's OMPF, and
produced copies of all existing OMPF records and other relevant
non-OMPF records that were located.  Thus, Peavey has not created
a material dispute about the adequacy of the NPRC's search

- 19 -

efforts, and summary judgment will be granted for the defendants
on Peavey's FOIA claim seeking release of records from the NPRC.

B.   <u>VA and VA hospital response</u>

On July 7, 2004, Peavey filed a FOIA request with the VA
seeking (1) military medical records showing he was hit by a car
and hospitalized in 1966; (2) findings and impressions from an
"intravenous pyelogram"; (3) records from his hospitalization in
a Brooklyn VA hospital in 1968, and (4) documents relating to
Peavey's employment at Shanty Restaurant.  (Def.'s Mot. to
Dismiss or for Summ. J., Stock Decl., Ex. 2; <u>see</u> Pl.'s Mem. in
Supp. of Summ. J. at 17.)  The VA's Stock states that, in
response to Peavey's request, she "caused a complete copy of
Mr. Peavey's VA C-file to be mailed to him" on August 19, 2004.
(Def.'s Mot. to Dismiss or for Summ. J., Stock Decl. at 2.)  She
further states that included in Peavey's C-file were (1) his Army
service medical records, "including doctor's orders and treatment
notes from an inpatient stay in late September to early
October 1966 and an IVP Radiographic report dated 4 Oct 66;" (2)
a hospital summary for Peavey's hospitalization at a VA hospital
in Brooklyn, New York from January 26, 1968 to March 4, 1968; (3)
New Hospital of Medicine and Dentistry records for May 14 to
September 17, 2003; (4) a letter from Shanty Restaurant; (5)
multiple requests from Peavey to the VA and other government
agencies; (6) multiple responses to Peavey's requests from the VA

- 20 -

and its offices, including the VA's Debt Management Center, the
Board of Veterans Appeals, and the VA regional office in
St. Petersburg, Florida; and (7) copies of a debt management
center audit, decisions on Peavey's benefits claims, and a
decision by a VA Committee on Waivers and Compromises.  (Id. at
1-2.)

    Brooklyn VA hospital's Juliano states that the hospital
received a request from Peavey on February 26, 2003 to have
copies of his records sent to a physician.  (Defs.' Mot. for
Leave to File Supp'l Aff., Juliano Decl. at 1.)  In response to
the request, the hospital determined that Peavey was not in its
system and advised Peavey on March 3, 2003 that a search of the
hospital's records did not identify him in its system of records.
(Id.)  Juliano further explains that "in January 2006, [the
hospital] initiated an intensive search to ensure that [it] had
located any and all files concerning [Peavey]" from 1968.  (Id.)
The hospital found that in 2005, a file-room employee attempted
to locate Peavey's 1968 records utilizing a copy of the first
page of a discharge summary provided by Peavey, but the employee
did not locate any files.  (Id. at 2.)  Juliano represents that
despite the 2005 effort, further efforts to locate Peavey's
records were made and the hospital determined that there were
paper records for Peavey that had been retired to a storage
facility in Missouri on February 5, 1975.  (Id.)  He states that

the hospital retrieved the records from the storage facility and forwarded copies to Peavey on January 20, 2006.  (Id.)

Peavey contends that the VA's response to his FOIA requests are insufficient because the VA did not find and produce copies of certain medical testing performed at an Army hospital in 1966, or any copies of clinical and laboratory records or doctors' reports from his 1968 Brooklyn VA hospital stay.  (Pl.'s Mem. in Supp. of Summ. J. at 15, 17.)  Despite Peavey's contention that these records exist and should currently be in the VA or VA hospital's possession, Peavey has not raised a factual dispute regarding the adequacy of the search efforts made by the VA's regional office and the Brooklyn VA hospital to locate these records.  The VA has submitted undisputed evidence that the VA regional office provided Peavey with a copy of his entire claims file and the VA hospital searched both its on-site and archived records, producing records relating to Peavey it retrieved from a Missouri storage facility.  Peavey offers no suggestion as to where else these agencies might have looked for his records or what other search criteria should have been used.  Accordingly, based upon the undisputed evidence that the VA regional office and Brooklyn VA hospital conducted reasonable searches in response to Peavey's FOIA requests and produced all responsive documents located during their searches, summary judgment will be

- 22 -

granted for the defendants on Peavey's FOIA claim seeking the release of records from the VA.

III. ALLEGED CONCEALMENT, ALTERATION, OR DESTRUCTION OF FEDERAL DOCUMENTS

Peavey alleges that the NPRC, the VA, and the Army acted together to conceal, alter, or destroy government records in an attempt to obstruct justice in violation of several criminal statutes, including 18 U.S.C. §§ 1001, 1503, 1505, 1512, and 1519. (Compl. at 2, 17, 20; Pl.'s Mem. in Supp. of Summ. J. at 12-23.) Section 1001 criminalizes making false or fraudulent statements "in any matter within the jurisdiction of" the federal government. 18 U.S.C. § 1001. Sections 1503, 1505, 1512, and 1519 are federal criminal obstruction of justice statutes. 18 U.S.C. §§ 1001, 1503, 1505, 1512, and 1519. Sections 1001, 1503, 1505, and 1512 do not create private causes of action. See Hamrick v. Gottlieb, 416 F. Supp. 2d 1, 4-5 (D.D.C. 2005) (finding that § 1512 contains no private right of action); Hamilton v. Reed, 29 F. App'x 202, 204 (6th Cir. 2002) (§ 1505); Anderson v. Wiggins, 460 F. Supp. 2d 1, 7-8 (D.D.C. 2006) (§ 1001); Forsyth v. Humana, Inc., 114 F.3d 1467, 1482 (9th Cir. 1997) (§ 1503). Furthermore, to date, no circuit or Supreme Court opinion has held that § 1519 creates a private right of action. Courts are "quite reluctant to infer a private right of action from a criminal prohibition alone[.]" Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S.

- 23 -

164, 190 (1994).  To determine whether a criminal statute
contains an implied private cause of action, "the central
analysis is directed at discovering legislative intent by means
of the language of the statute, the statutory structure, or some
other source."  Tax Analysts v. IRS, 214 F.3d 179, 186 (D.C. Cir.
2000) (internal quotation marks omitted).  Peavey has shown no
such legislative intent regarding § 1519.  Thus, the defendants'
motion to dismiss Peavey's claims under 18 U.S.C. §§ 1001, 1503,
1505, 1512, and 1519 will be granted.

       In addition, Peavey alleges a coordinated effort by federal
agencies to conceal, alter, or destroy documents that violated his
Fifth Amendment due process rights by interfering with his ability
to obtain benefits and correct his military records.  (See Compl.
at 13, 15-16, 18, 20; Pl.'s Mem. in Supp. of Summ. J. at 3, 37.)
He has not alleged facts in support of this conclusory allegation
that, if proven, would entitle him to relief.  "The due process
clause requires the government to provide sufficient notice and a
meaningful opportunity to be heard on the deprivation of a
protected liberty or property interest."  Rason v. Nicholson, 562
F. Supp. 2d 153, 155 (D.D.C. 2008) (citing United States v. E-
Gold, Ltd., 521 F.3d 411, 415 (D.C. Cir. 2008)).  The VA and the
Army have established administrative procedures, which Peavey
alleges he utilized, for reviewing benefits determinations and
requests to correct military records that include affording

- 24 -

aggrieved persons a meaningful opportunity to challenge erroneous records and decisions.  Peavey could have presented evidence showing that his medical and military records were incorrect or incomplete.  He has failed to allege facts explaining how his opportunities to be heard under the VA and the Army's administrative processes were rendered so inadequate by his failure to get particular documents he sought from the named agencies that he was denied a meaningful opportunity to be heard. Because Peavey has not alleged facts that, if proven, demonstrate that he did not have a meaningful opportunity to be heard on his benefits claims or records correction request, his due process claim will be dismissed for failure to state a claim.

IV.  DAMAGES CLAIMS

     Peavey seeks damages for the variety of alleged wrongs he has experienced since 1967, alleging that he is bringing both constitutional and common law tort claims.  Because Peavey's claims are brought against federal agencies and agency officials in their official capacities, such claims must be construed as claims against the United States.  "[T]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  United States v. Mitchell, 445 U.S. 535, 538 (1980) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)).  "Absent [an

express] waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994). Peavey does not expressly invoke any waiver of sovereign immunity. Nonetheless, construing his complaint liberally, Peavey's allegation that he is bringing "tort" claims (Compl. at 2) suggests that he brings his tort claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680. The United States has waived its immunity from suit for certain torts under the FTCA. 28 U.S.C. § 1346(b). The FTCA's waiver of sovereign immunity, however, does not apply to constitutional tort claims. See FDIC, 510 U.S. at 475. In addition, before a plaintiff may file suit under the FTCA, his claim must "first [be] presented ... to the appropriate Federal agency." 28 U.S.C. § 2675(a). This exhaustion of administrative remedies is a mandatory prerequisite to filing such a lawsuit in federal court. See Jones v. U.S., 296 Fed. Appx. 82, 83 (D.C. Cir. 2008); Simpkins v. District of Columbia Gov't, 108 F.3d 366, 370-71 (D.C. Cir. 1997); GAF Corp. v. United States, 818 F.2d 901, 917-20 (D.C. Cir. 1987); Jackson v. United States, 730 F.2d 808, 809 (D.C. Cir. 1984). Peavey has not alleged or provided any evidence within his voluminous filings showing that he properly exhausted his administrative remedies with respect to any potential FTCA claim against any of the defendant agencies. Since he failed to properly invoke the FTCA's limited waiver of sovereign immunity, Peavey's tort claims for

- 26 -

damages against the United States will be dismissed.  Cf. Simpkins, 108 F.3d at 371 (stating that the district court erred in reaching the merits of an unexhausted FTCA claim).

V.   CIVIL RIGHTS STATUTES

Peavey purports to bring claims under the civil rights statutes, 42 U.S.C. §§ 1981-1983 and 1985.  "These statutes, by their terms, do not apply to actions against the United States." Hohri v. United States, 782 F.2d 227, 245 n.43 (D.C. Cir. 1986), vacated on other grounds, 482 U.S. 64 (1987); see Strong-Fisher v. LaHood, 611 F. Supp. 2d 49, 52-54 (D.D.C. 2009) (concluding that § 1981 does not apply to claims against the United States). Because Peavey brings his claims solely against federal defendants in their official capacities, he has not stated claims under these civil rights statutes and these claims will be dismissed.

VI.  BIVENS CLAIMS

Peavey alleges that he is bringing claims against the defendants under a Bivens constitutional tort theory.  "A Bivens suit is an action against a federal officer seeking damages for violations of the plaintiff's constitutional rights." Simpkins, 108 F.3d at 368.  A Bivens suit must be brought against federal officers in their individual capacity and "[t]he complaint must at least allege that the defendant federal official was personally involved in the illegal conduct." Id. at 369.  Here, Peavey has neither sued nor served the named defendants in their individual

- 27 -

capacities, nor alleged any facts suggesting that the agency heads named in his complaint –– Alberto Gonzalez, Jim Nicholson, Dr. Allen Weinstein, Ronald Hindman, or John Snow -- were personally involved in the alleged conduct underlying his claims. Although improper service typically warrants dismissal without prejudice, dismissal with prejudice is appropriate and consistent "with the duty of the lower federal courts to stop insubstantial <u>Bivens</u> actions in their tracks and get rid of them" where, as here, it is clear that the plaintiff's <u>Bivens</u> claims lack merit in the total absence of allegations of personal involvement.  <u>Id.</u> at 370.  Since Peavey has failed to state <u>Bivens</u> claims against the named defendants, his <u>Bivens</u> claims will be dismissed with prejudice.

VII. OTHER CLAIMS AGAINST THE EEOC, IRS, and USPS

It is unclear what other remedies beyond damages, if any, Peavey seeks for the alleged harassment by the EEOC, IRS, and USPS.  However, to the extent Peavey's complaint can be construed with reasonable inferences drawn in his favor as attempting to raise constitutional claims not barred by the doctrine of sovereign immunity, he has failed to allege any facts stating a plausible claim that these agencies unlawfully infringed upon any of his fundamental rights.  Similarly, Peavey has not stated an actionable Title VII claim against the EEOC for the EEOC's alleged failure to prosecute his discrimination complaint.  Title VII

- 28 -

provides no cause of action against the EEOC for mishandling a discrimination complaint.  <u>See</u> <u>Nelson v. Greenspan</u>, 163 F. Supp. 2d 12, 18 (D.D.C. 2001); <u>see also</u> <u>Smith v. Casellas</u>, 119 F.3d 33, 34 (D.C. Cir. 1997) (finding that Congress did not intend to provide a cause of action under Title VII "for any improper handling of a discrimination charge by the EEOC").  Therefore, all claims against these defendants will be dismissed.

VIII.    DOJ COMPLAINT

Peavey alleges that he was injured by the DOJ's failure to investigate and bring charges based upon a complaint he filed with the DOJ accusing the VA or its agents of unlawfully concealing, altering, or destroying federal records.  (Compl. at 20-21; <u>see</u> Pl.'s Mem. in Supp. of Summ. J. at 30.)  The decision whether to institute an investigation or to bring charges in response to a particular complaint is a decision committed to an agency's discretion and presumptively unreviewable unless Congress has indicated otherwise.  <u>See</u> <u>Heckler v. Chaney</u>, 470 U.S. 821, 837-38 (1985).  Here, there is no colorable argument that Congress intended for judicial review of the DOJ's decision not to investigate or bring charges based upon Peavey's complaint against the VA.  Thus, this claim will be dismissed.

IX.  REVIEW OF ABCMR DECISION

Peavey seeks judicial review of an AMBCMR's decision not to correct his army records.  He alleges that he submitted a claim to the ABCMR upon his release from service, but the ABCMR did not properly investigate his claim to correct his military records and denied him relief.  (Compl. at 15, 17.)  In a subsequent filing, Peavey clarifies that he filed his claim with the ABCMR on May 9, 1968.  (Pl.'s Mot. for Order to Certify the Rec. (Docket Entry 41) at 2.)  He seeks an order directing the AMBCMR to overturn a January 23, 1967 court martial judgment and correct his records to reflect the rank he would have attained but for the judgment. (Id. at 23.)

The district court has jurisdiction to review an ABCMR decision.  See Lewis v. Sec'y of the Navy, Civil Action No. 89-1446 (JHG), 1990 WL 454624, at *7-8 (D.D.C. June 29, 1990).  However, a claim seeking review of an ABCMR decision must be brought within six years of the ABCMR's decision.  28 U.S.C. § 2401(a); see Lewis, 1990 WL 454624, at *8.  Although courts are hesitant to dismiss claims as untimely solely on the face of the complaint because application of a statute of limitations often requires resolution of contested questions of fact, dismissal is appropriate when "the complaint on its face is conclusively time-barred."  Firestone v. Firestone, 76 F.3d 1205, 1208-09 (D.C. Cir. 1996).  Here, it is quite clear that Peavey's claim seeking review

- 30 -

of the ABCMR's decision on his 1968 claim to correct his military
record is untimely on its face and that claim will be dismissed as
barred by the applicable statute of limitations.

CONCLUSION

Because the district court lacks jurisdiction over Peavey's
claims challenging various VA benefits determinations since 1967,
those claims will be dismissed for want of jurisdiction.  Peavey's
damages claims will be dismissed because the United States has not
waived sovereign immunity for any of his damages claims.  In
addition, Peavey has not stated actionable claims under 42 U.S.C.
§§ 1981-1983 and 1985, Title VII, 18 U.S.C. §§ 1001, 1503, 1505,
1512, and 1519, or under a Bivens theory, nor has he alleged
sufficient facts that, if proven, establish any constitutional
violations.  Moreover, Peavey is not entitled to judicial review
of the DOJ's handling of his complaint against the VA, and he has
failed timely to seek review of the ABCMR's decision on his 1968
request for correction of his military records.  Because the NPRC
and the VA have submitted unrebutted declarations demonstrating
the adequacy of their responses to Peavey's FOIA requests and such
declarations have not been excluded, the defendant's motion to
dismiss will be converted to one for summary judgment with respect
to Peavey's FOIA claims and summary judgment will be granted for
the defendants on those claims.  Because no other claims are
discernible from Peavey's pleadings, the defendants' motion to

- 31 -

dismiss will be granted, and the plaintiff's complaint will be
dismissed.  To preserve a complete record, Peavey's motions to
enter documents will be granted.  His motions for summary judgment
and for declaratory judgment will be denied as moot.

A final, appealable Order accompanies this Memorandum
Opinion.

SIGNED this 28th day of September, 2009.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge